KARL J. KRAMER (CA SBN 136433)
ELLEN S. REINSTEIN (CA SBN 227833)
ERIKA L. LABIT (CA SBN 234919)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
KKramer@mofo.com

Attorneys for Defendant and Counterclaimant
SYNAPTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELANTECH DEVICES CORPORATION, a corporation existing under the laws of Taiwan, R.O.C.,<br><br>Plaintiff,<br><br>v.<br><br>SYNAPTICS, INC., a Delaware corporation; AVERATEC, INC., a California corporation; and PROSTAR COMPUTER, INC., a California corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.   C06-01839 CRB<br><br>**SYNAPTICS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE ASSERTED CLAIMS OF THE '352 PATENT**<br><br>Date: June 1, 2007<br>Time: 10:00 a.m.<br>Courtroom 8, 19th Floor<br>Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................................... 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ................. 1

STATEMENT OF RELEVANT FACTS........................................................................... 1

    1. Elantech's Infringement Contentions..................................................... 3

    2. Synaptics' Touchpads With No Multiple-Finger Function Activated ................................................................................................ 4

    3. Synaptics' Type 1 Code ......................................................................... 5

    4. Synaptics' Type 2 Code ......................................................................... 6

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 7

I. ELANTECH'S CONTENTIONS FAIL AS A MATTER OF LAW ..................... 9

II. DEVICES WITH NO MULTIPLE-FINGER DETECTION CANNOT INFRINGE ....... 11

III. THE TYPE 1 CODE DOES NOT INFRINGE .................................................. 12

IV. THE TYPE 2 CODE DOES NOT INFRINGE .................................................. 13

CONCLUSION................................................................................................................. 13

# TABLE OF AUTHORITIES

## CASES

*Atmel Corp. v. Information Storage Devices, Inc.*,
   1998 U.S. Dist. LEXIS 17564 (N.D. Cal. Nov. 4, 1998) ...................................................... 9, 10

*Bayer AG v. Elan Pharm. Research Corp.*,
   212 F.3d 1241 (Fed. Cir. 2000) ................................................................................................ 8, 11

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*,
   262 F.3d 1258 (Fed. Cir. 2001) ....................................................................................................... 9

*Berger v. Rossignol Ski Co.*,
   2006 U.S. Dist. LEXIS 23085 (N.D. Cal. Apr. 25, 2006),
   *aff'd*, 2007 U.S. App. LEXIS 984 (Fed. Cir. Jan. 12, 2007) ............................................. *passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................. 7, 10

*E-Pass Techs., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007) .................................................................................................. 9, 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) ........................................................................................................................ 8

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*,
   265 F.3d 1311 (Fed. Cir. 2001) ....................................................................................................... 7

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
   103 F.3d 978 (Fed. Cir. 1997) ......................................................................................................... 8

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
   49 F.3d 1551 (Fed. Cir. 1995) ....................................................................................................... 12

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
   370 F.3d 1131 (Fed. Cir. 2004) ....................................................................................................... 8

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
   450 F.3d 1350 (Fed. Cir. 2006) ....................................................................................................... 8

*LG Elecs. Inc. v. Q-Lity Computer, Inc.*,
   211 F.R.D. 360 (N.D. Cal. 2002) .................................................................................................. 10

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
   324 F.3d 1308 (Fed. Cir. 2003) ....................................................................................................... 9

*Moore U.S.A., Inc. v. Standard Register Co.*,
   229 F.3d 1091 (Fed. Cir. 2000) ........................................................................................ 10, 12, 13

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ..................................................................................................... 10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) ................................................................................................ 10, 11

1

2  *Sage Prods., Inc. v. Devon Indus., Inc.*,
     126 F.3d 1420 (Fed. Cir. 1997) ..................................................................................8

3  *Southwest Software, Inc. v. Harlequin Inc.*,
4    226 F.3d 1280 (Fed. Cir. 2000) ................................................................................12

   *TechSearch L.L.C. v. Intel Corp.*,
5    286 F.3d 1360 (Fed. Cir. 2002) ........................................................................10, 13

6  *Telemac Cellular Corp. v. Topp Telecom, Inc.*,
     247 F.3d 1316 (Fed. Cir. 2001) ................................................................................12
7
   *V-Formation, Inc. v. Benetton Group SpA*,
8    401 F.3d 1307 (Fed. Cir. 2005) ..................................................................................8

9  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
     520 U.S. 17 (1997) ..................................................................................................8, 9
10
                                     **MISCELLANEOUS**
11
   Patent Local Rules
12    Rule 3-1 .....................................................................................................................9
      Rule 3-1(b) ............................................................................................................3, 9
13    Rule 3-1(c) .................................................................................................................9

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on June 1, 2007, at 10:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, defendant and counterclaimant Synaptics, Inc. ("Synaptics"), will and hereby does move the Court for an order granting summary judgment of noninfringement of the claims of U.S. Patent No. 5,825,352 ("the '352 Patent") that are asserted by Elantech Devices Corporation ("Elantech") in this action. Synaptics' motion is based on this Notice, the Memorandum of Points and Authorities below, the supporting Expert Declaration of Dr. Andrew Wolfe, executed April 20, 2007 ("Wolfe SJ Decl."), the Declaration of Karl J. Kramer, executed April 20, 2007 ("Kramer SJ Decl."), and the prior papers filed by Synaptics in connection with the Claim Construction hearing, which are incorporated herein by reference.

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Although there are many grounds on which Synaptics is entitled to judgment in this action, by this motion Synaptics seeks to resolve as efficiently as possible Elantech's claims that the accused touchpad devices infringe the specific method of "multiple-finger detection" that is claimed in the '352 Patent. As explained below, Synaptics seeks an order of:

(1) summary judgment of noninfringement because Elantech's infringement contentions fail to identify any functions of the accused touchpads that meet the "scanning" sub-limitations (a)-(c);

(2) partial summary judgment of noninfringement as to accused touchpads that do not enable multiple-finger detection functions;

(3) partial summary judgment of noninfringement as to accused touchpads containing Synaptics' Type 1 Code; and

(4) partial summary judgment of noninfringement as to the accused touchpads containing Synaptics' Type 2 Code.

**STATEMENT OF RELEVANT FACTS**

The applicants of the '352 Patent did not invent the use of finger profiles to identify the presence of multiple fingers on a touch sensor. (Kramer SJ Decl., ¶¶ 3-7.) The specific implementations for multiple finger detection that are disclosed and claimed in the '352 Patent are "processes for detection of multiple maxima with intermediate minima in

appropriate sequences to emulate the operations of cursor control and button actuations in a pointing and control device." (Wolfe SJ Decl., Ex. 2 (Abstract).) Each of the asserted claims 1 and 18 requires a method or system for "detecting the operative coupling of multiple fingers" to a touch sensor. Each of the two asserted claims also requires at least "scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first maxima, (c) identify a second maxima in a signal corresponding to a second finger following said minima, and providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima." (The full text of the asserted claims is set forth in Appendix A hereto.)

The Court has construed the "scanning" step sub-limitations (a)-(c) to mean to "identify a first peak value in a finger profile obtained from scanning the touch sensor[;] identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified[; and] after identifying the lowest value in the finger profile, identify a second peak value in the finger profile." (April 6, 2007 Claim Construction Order ("Claim Construction Order"), at 15; *cf.* Kramer SJ Decl., Ex. 1, 3rd Amended Joint Claim Construction Chart, limitations 16-18.)

The '352 Patent underscores the importance of finding the claimed "minima," or "valley," between two adjacent maxima, or "peaks." The patent explains that "[t]he *only requirement* is that, in the profile of finger-induced capacitances, the profile of the newly placed finger exhibits a zero value or a local minimum on each side of its peak value, in at least one of the X or Y directions, so that it may be distinguished from the other finger(s) in contact with the touchpad." (Wolfe SJ Decl., Ex. 2, '352 Patent, col. 11, lines 49-55 (emphasis added).) The patent explains that it is important "to ensure that a legitimate valley and two legitimate peaks have been detected, to avoid artifacts." (*Id.*, col. 10, lines 60-63.)

Although the patent expressly teaches that "thresholds" can be used to verify "peaks" and "valleys" in the finger profile (*id.*, col. 10, lines 31-60), the patent emphasizes that "artifacts" can be avoided only by detecting "legitimate" maxima and minima values in appropriate sequences. (*Id.*, col. 10, lines 60-63.) Indeed, the comparison of "threshold"

values to "maxima" values is expressly taught as a separate step that is not interchangeable with the step of locating a "minima" between two "maxima." (*Id.*, Col. 10, lines 52-65.) As disclosed in the '352 Patent, this method of avoiding artifacts was used in a system that generally sampled the capacitance values of the touchpad electrodes from between about 30 to 200 scans per second. (*Id.*, col. 6, lines 14-25.)

During prosecution of the '352 Patent, the applicants added to claims 1 and 18 (prosecution claims 1 and 35), the limitation "providing an indication of the [simultaneous] presence of two fingers in response to identification of said first and second maxima." (Kramer SJ Decl., ¶ 6 and Ex. 5, April 6, 1998 Amendment, at 3-4 ("claims 1 and 35 have been amended to further clarify the distinction of the invention from Miller").) Moreover, the applicants argued that the "scanning" limitations (a)-(c) distinguished claims 1 and 18 (prosecution claims 1 and 35), from the then-cited prior art. (*Id.*)

### 1. Elantech's Infringement Contentions

On September 1, 2006, Elantech served its "Asserted Claims and Preliminary Infringement Contentions." (Wolfe SJ Decl., Ex. 3.) Pursuant to Patent Local Rule 3-1(b), Elantech accused specifically Synaptics' "TM41 series or family, including but not limited to TM41xx134, TM41xx156, TM41xx180, TM41xx200, TM41xx220,TW41xx230, TM41xx240, TM41xx140, TM41xx301, and TM41xx221 series or families" of touchpad devices. (*Id.* at 2.) Elantech also accused specifically "the notebook products and product families of Averatec that incorporate Synaptics' touchpads, such as 22xx, 31xx, 32xx, 33xx, c35xx, 41xx, and 51xx series or families of Averatec. . . ." (*Id.*) Collectively, these are the "Accused Touchpads."

By agreement, the parties exchanged documents and exemplary code, detailing the operation of the Accused Touchpads. (Kramer SJ Decl., ¶¶ 9-10.) After reviewing the code provided by Elantech, Synaptics provided by agreement Amended Infringement Contentions that included specific evidence from the materials that Elantech had provided, including citations to specific lines of code in the accused Elantech devices that performed required claim terms in the asserted Synaptics patents. (Kramer SJ Decl., ¶ 11 and Ex. 7.) However,

1  despite having all of the relevant documentation concerning the operation of the Synaptics
2  devices, Elantech refused to provide any further evidence of infringement beyond its original
3  September 1, 2006 Infringement Contentions. (*Id.*) Instead, Elantech chose to amend only
4  its Invalidity Contentions. (*Id.*) The parties subsequently briefed and argued claim
5  construction and the Court issued its Claim Construction Order on April 6, 2007. (*Id.*)
6        In its Infringement Contentions, Elantech fails to point to any aspects in the accused
7  Synaptics touchpad devices that meet the steps of "identify a first peak value in a finger
8  profile obtained from scanning the touch sensor[;] identify the lowest value in the finger
9  profile that occurs after the first peak value, and before another peak value is identified[; and]
10 after identifying the lowest value in the finger profile, identify a second peak value in the
11 finger profile." (Claim Construction Order at 15.)
12       Although Elantech points to the Synaptics TouchPad Interfacing Guide, Second
13 Edition at 4, 5, 7, 8, 9, 20, and Figures 2-3, 2-4 and 2-6, to support its contention that some
14 versions of the accused touchpad devices report may have a multiple-finger detection
15 capability, nothing in those cited portions of the document involves scanning the touchpad to
16 identify the specific "maxima" and "minima" values required by the claims. (Wolfe SJ
17 Decl., ¶¶ 15-17.) Thus, there is no evidence presented in Elantech's infringement
18 contentions supporting any claim of infringement.

19     **2.**    **<u>Synaptics' Touchpads With No Multiple-Finger Function Activated</u>**

20       In many implementations of the Accused Touchpad devices, there is no multiple-
21 finger detection function enabled. For example, in the "current" version of Synaptics' code
22 produced pursuant to agreement of the parties, the multiple-finger detection part of the code
23 is disabled completely. (Wolfe SJ Decl., ¶¶ 18-20.) In all such versions in which a multiple-
24 finger detection function is not enabled, the Accused Touchpad is not "detecting the
25 operative coupling of multiple fingers" to a touch sensor or "providing an indication of the
26 simultaneous presence of two fingers in response to identification of said first and second
27 maxima." (*Id.*) Those required claim limitations are completely missing from
28 implementations in which the multiple-finger detection function is not enabled.

### 3. Synaptics' Type 1 Code

Synaptics developed firmware and software code that could, if enabled, identify multiple fingers on a touchpad using a "threshold" comparison method. For purposes of this motion, this code will be called the "Type 1 Code." The Type 1 Code was produced by agreement of the parties as the "exemplary code" pursuant to ¶3.3.1 of the Amended Stipulated Protective Order in this case. (Wolfe SJ Decl., ¶ 21.)



The Type 1 Code creates a data array based on "Z pressure" values every millisecond. (Wolfe SJ Decl., ¶ 22.) The code then sets a threshold value, approximately at the midpoint of the sample values. (*Id.*, ¶¶ 22-24.) Each sample in the data array is compared to the threshold to determine if it is above the threshold or below. (*Id.,* ¶ 22.) A value is stored in a bit-vector to represent each sample; the value is "1" if it is above the threshold and "0" if it is below. (*Id.*) The code then counts the number of contiguous groups of ones in the bit-vector, *i.e.*, the number of groups of contiguous traces that appear to be touched. (*Id.*) The resulting number is accumulated over 13 or 26 passes through this process. (*Id.*) Finally, the sum of these estimates is compared to some additional finger count filtering thresholds to determine what the number of fingers touching the pad along one axis could be. (*Id.*) Any "artifacts"

from any particular sampling of an electrode's capacitance are filtered through the step of accumulating the values and averaging them over multiple successive samplings. (*Id.*)

In the Type 1 Code, there is no process for scanning the touch sensor to (a) "identify a first peak value in a finger profile obtained from scanning the touch sensor;" (b) "identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified;" or (c) "after identifying the lowest value in the finger profile, identify a second peak value in the finger profile." (*Id.*; Claim Construction Order at 15.) To the extent multiple fingers are ever "detected" in Accused Touchpads using the Type 1 Code, they are detected by accumulating the binary results of simple threshold comparisons over 13 or 26 successive capacitance readings. (Wolfe SJ Decl., ¶ 22-24.) In other words, to detect multiple fingers, the Type 1 Code does not identify any specific values, and certainly not "peak" values and "lowest" values in any particular sequence. (*Id.*)

### 4. Synaptics' Type 2 Code

Synaptics has also implemented a version of code that uses extensive mathematical operations to modify the accumulated finger data so that the precise position of a finger can be better determined. For this motion, this code will be called the "Type 2 Code." The Type 2 Code was produced by agreement of the parties as the "current version" of code pursuant to the Amended Stipulated Protective Order, ¶ 3.3.1. (Wolfe SJ Decl., ¶ 25.)



1   The Type 2 Code samples the traces on an axis 12 times (once every millisecond) and
2   averages the values to reduce noise and assist in eliminating artifacts. (Wolfe SJ Decl.,
3   ¶¶ 25-26.) These samples are shown as black dots in the depiction above. The set of
4   accumulated values is then smoothed using a spatial filter to create a data sequence that
5   generally does not contain any substantial jitter or other measurement anomalies. This
6   filtered data array is shown as red circles in the depiction above. (*Id.*) The smoothed finger
7   profile is then processed using a "bit vector" algorithm to find the location of the trace with a
8   "peak." (*Id.*, ¶ 27.) A threshold value is then applied, with a finger being identified if the
9   threshold is exceeded. (*Id.,* ¶¶ 27-29.) If there is more than one such trace exceeding the
10  threshold, and the finger-counting algorithm of the Type 2 Code is enabled, the code could
11  identify each additional value meeting those criteria as an additional finger. (*Id.*)

12  In the Type 2 Code, there is no process for "scanning the touch sensor" to "identify
13  the lowest value in the finger profile that occurs after the first peak value, and before another
14  peak value is identified," or "after identifying the lowest value in the finger profile, identify a
15  second peak value in the finger profile." (Wolfe SJ Decl., ¶¶ 31-32; Claim Construction
16  Order at 15.) To the extent multiple fingers are ever "detected" in computers with Accused
17  Touchpads using the Type 2 Code, they are detected without any identification of a "minima
18  following said maxima" or a "second maxima following said minima." (*Id.* ¶¶ 19, 31-32)
19  Indeed, the algorithm does not seek to identify a lowest or minimum value following a first
20  finger or before a second finger. Such an intermediate value is irrelevant to the
21  determination in the Type 2 Code because the problem of "artifacts," to which the claimed
22  "minima" value is directed, is solved in a completely different way through prior intelligent
23  processing of the original accumulated scan data. (*Id.*)

24  **MEMORANDUM OF POINTS AND AUTHORITIES**

25  Summary judgment is an integral part of fair and efficient administration of justice.
26  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). The Court should enter summary
27  judgment if it determines there is no genuine issue of material fact such that one party should
28  prevail as a matter of law. *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1317

(Fed. Cir. 2001). A fact is not in genuine dispute if no reasonable person could find in favor of the nonmovant as to that fact. *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed. Cir. 1997).

To infringe a patent claim literally, every limitation of the claim must be found in the accused device. *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357-58 (Fed. Cir. 2006) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 40 (1997)). A plaintiff's failure of proof as to any one limitation mandates summary judgment of noninfringement. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000) ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."); *Berger v. Rossignol Ski Co.*, 2006 U.S. Dist. LEXIS 23085, at *15-19 (N.D. Cal. Apr. 25, 2006) (granting summary judgment), *aff'd*, 2007 U.S. App. LEXIS 984 (Fed. Cir. Jan. 12, 2007).

Plaintiff will also find little comfort in the application of the doctrine of equivalents, which "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002)). However, because of the potential conflict with the public-notice function of patent claims, the doctrine of equivalents is to be applied narrowly. *See, e.g.*, *Warner-Jenkinson Co. v.*, 520 U.S. at 28-29 (expressing concern that doctrine of equivalents had "taken on a life of its own," and warning that "[t]here can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement."). Importantly, "[t]he doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1313 (Fed. Cir. 2005) (quoting *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997)).

"Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29; *see also E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1221 (Fed. Cir. 2007). Thus, "if a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claimed element,' then the court should rule that there is no infringement under the doctrine of equivalents." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320-21 (Fed. Cir. 2003) (quoting *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1280 (Fed. Cir. 2001)).

## I.   ELANTECH'S CONTENTIONS FAIL AS A MATTER OF LAW.

Elantech's Infringement Contentions in this case are devoid of any meaningful information concerning most of the asserted claim limitations. Elantech has had ample opportunity to provide detailed, complete Infringement Contentions, but has simply refused to do so. Summary judgment of noninfringement should be entered for Synaptics because Elantech's Infringement Contentions do not even come close to meeting Elantech's burden of establishing infringement.

Patent Local Rule 3-1 requires that the party asserting a patent claim must provide a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." Pat. L.R. 3-1(c). The purpose of the rule is to require forthright disclosure of the patentee's infringement claim in a manner that permits a fair resolution of claim construction and, ultimately, the case. *Atmel Corp. v. Information Storage Devices, Inc.*, 1998 U.S. Dist. LEXIS 17564, at *7 (N.D. Cal. Nov. 4, 1998); *Berger*, 2006 U.S. Dist. LEXIS 23085, at *7-8. "The [P]atent [L]ocal [R]ules were adopted … to give claim charts more 'bite'" by forcing the parties to "crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Atmel Corp.*, 1998 U.S. Dist. LEXIS 17564, at *7; *see also Berger*, 2006 U.S. Dist. LEXIS 23085, at *7-8. For this reason, courts have consistently held that the "good cause" standard for amending infringement contentions is "decidedly conservative, and designed to prevent the

1  'shifting sands' approach to claim construction." *Atmel Corp*, 1998 U.S. Dist. LEXIS 17564,
2  at *7; *Berger*, 2006 U.S. Dist. LEXIS 23085, at *7-8; *LG Elecs. Inc. v. Q-Lity Computer,*
3  *Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (quoting and affirming *Atmel*); *see also O2 Micro*
4  *Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006).

5       In its Infringement Contentions, Elantech regurgitates the claim language concerning
6  the "scanning the touch sensor" step. Elantech fails, however, to identify what in the accused
7  devices meets the step or function of scanning the touch sensor to "(a) identify a first maxima
8  in a signal corresponding to a first finger, (b) identify a minima following the first maxima,
9  (c) identify a second maxima in a signal corresponding to a second finger following said
10 minima." (Wolfe SJ Decl., ¶¶ 15-17, Ex. 3, Elantech's Infringement Contentions, Ex. A at 1-
11 3, 5-7, Ex. B. at 1-3, 5-7.) Due to Elantech's failure to articulate any basis for asserting that
12 these required claim limitations are present in the accused devices, the Court should enter
13 summary judgment of noninfringement. *Celotex Corp.*, 477 U.S. at 323 n. 4; *Moore U.S.A.,*
14 *Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106-07 (Fed. Cir. 2000) (affirming summary
15 judgment for noninfringement); *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed.
16 Cir. 2002) ("[I]nfringement must be shown literally or equivalently for each limitation;
17 general assertions of facts, general denials, and conclusory statements are insufficient to
18 shoulder the non-movant's burden."); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d
19 1043, 1051 (Fed. Cir. 2001) (affirming summary judgment of noninfringement where expert
20 provided no explicit factual foundation for conclusory opinion of infringement).

21      Furthermore, Elantech cannot show that it "acted with diligence in promptly moving
22 to amend when new evidence is revealed in discovery." *O2 Micro Int'l Ltd.*, 467 F.3d at
23 1363. Elantech has had Synaptics' code for over six months and has done nothing to amend
24 its Infringement Contentions to give Synaptics fair notice of Elantech's infringement claims.
25 Notably, in both *O2 Micro* and *Berger*, this District flatly denied motions to amend
26 infringement contentions, holding that three month delays, without adequate explanations for
27 the delays, constituted a lack of diligence and "good cause" to amend. *Id.*; *Berger*, 2006 U.S.
28 Dist. LEXIS 23085, at *12.

1    Elantech has had all of the documents and information necessary to formulate its infringement contentions for more than six months, and yet has refused to provide meaningful disclosures. (Kramer SJ Decl., ¶ 10.) Plainly, Elantech filed suit without any basis for alleging that the accused devices meet required limitations of the claims. Despite ample opportunity to fish through Synaptics code, Elantech has not found a basis for its complaint. Elantech should be held to its disclosures and should not now be permitted to oppose summary judgment by pointing to any aspect of the Accused Touchpads other than as set forth in Elantech's Infringement Contentions. *O2 Micro Int'l Ltd.*, 467 F.3d at 1365. As reflected in Elantech's empty Infringement Contentions, Elantech has no basis for its infringement claims. The Court should enter summary judgment of noninfringement for Synaptics. *Berger*, 2006 U.S. Dist. LEXIS 23085, at *15.

## II. DEVICES WITH NO MULTIPLE-FINGER DETECTION CANNOT INFRINGE.

There is no dispute that the claims at issue in this case relate to and require "multiple-finger detection." The claims recite a method or system "for detecting the operative coupling of multiple fingers" to a touch sensor. (Appendix A hereto.) The claims also require "providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima." (Appendix A hereto.) Consistent with the plain meaning of this claim language, Elantech has agreed that "providing an indication" is "[t]he function of detecting the simultaneous presence of two fingers and reporting that presence to the host . . . ." (Elantech Devices Corp.'s Reply Claim Construction Brief For U.S. Patent No. 5,825,352, filed February 21, 2007, pp. 12-13.)[1] There can be no infringement if a device does not detect and provide an indication of the presence of multiple fingers. *Bayer AG*, 212 F.3d at 1247 ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.").

---

[1] Although the parties disagreed on whether any structure is disclosed for performing that function, the parties agreed on the plain meaning of the "providing an indication" limitation. (*See* December 18, 2006 Joint Claim Construction Statement, Exhibit A at 2.)

As noted at page 4 of Elantech's Claim Charts, the accused "indication" that is provided to the host is a data packet labeled "W." (Wolfe SJ Decl., Ex. 4.) But, that "W" packet is "provided" *only if* Synaptics' code is activated to generate and provide it. (Wolfe SJ Decl., ¶¶ 17-20.) For those implementations in which multiple-finger detection is not enabled, there can be no infringement. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) (summary judgment of noninfringement affirmed, holding that there can be no infringement without enabling the accused function in the software); *see also High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim"); *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1287, 1291 (Fed. Cir. 2000) (judgment affirmed because accused feature in the existing code was disabled).

### III.  THE TYPE 1 CODE DOES NOT INFRINGE.

Even if enabled, the Type 1 Code in the Accused Touchpads does not detect the presence of multiple fingers by looking for a "minima" between two "maxima." (Wolfe SJ Decl., ¶¶ 21-24.) In the Type 1 Code, there is no process for "scanning the touch sensor" to (a) "identify a first peak value in a finger profile obtained from scanning the touch sensor ;" (b) "identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified;" or (c) "after identifying the lowest value in the finger profile, identify a second peak value in the finger profile." (*Id.*; Claim Construction Order at 15.) There is also no process in the accused Type 1 Code for "providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima." (Wolfe SJ Decl., ¶ 23.) As explained above, the Type 1 Code does not identify specific "peak" values and "lowest" values. Consequently, there can be no infringement as a matter of law because these limitations are missing completely from and are not equivalent to operations in the accused Type 1 Code. (*Id.*., ¶¶ 23-24.) *See also Berger*, 2006 U.S. Dist. LEXIS 23085, at *17; *Moore*, 229 F.3d at 1106-07; *E-Pass Techs.*, 473 F.3d at 1220.

1  **IV.   THE TYPE 2 CODE DOES NOT INFRINGE.**

2  Even if enabled, Synaptics' Type 2 Code also does not detect the presence of multiple fingers by looking for a "minima" between two "maxima." (Wolfe SJ Decl., ¶¶ 25-32.) Instead, as described above, the Type 2 Code tests for the trace with a highest value and uses threshold comparisons to determine finger count. Thus, in the Type 2 Code, there is no process for "scanning the touch sensor" to "identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified;" or "after identifying the lowest value in the finger profile, identify a second peak value in the finger profile." (*Id.*) Because these required claim limitations are missing completely from and are not equivalent to operations in the Type 2 Code, there can be no infringement as a matter of law. (*Id.*) *See also Berger*, 2006 U.S. Dist. LEXIS 23085, at *17; *TechSearch*, 286 F.3d at 1372-73; *Moore*, 229 F.3d at 1106-07.

**CONCLUSION**

Elantech's allegations of infringement have no merit. Synaptics respectfully requests that the Court enter an Order of (1) summary judgment of noninfringement because Elantech's Infringement Contentions fail to identify any functions of the Accused Touchpads that meet the "scanning" sub-limitations (a)-(c); (2) partial summary judgment of non-infringement as to the Accused Touchpads that do not use multiple-finger detection functions; (3) partial summary judgment of noninfringement as to the Accused Touchpads using Synaptics' Type 1 Code; and (4) partial summary judgment of noninfringement as to the Accused Touchpads using Synaptics' Type 2 Code.

Dated: April 20, 2007                    MORRISON & FOERSTER LLP

                                         By:   /s/ Karl J. Kramer
                                                Karl J. Kramer

                                         Attorneys for Defendant and
                                         Counterclaimant
                                         SYNAPTICS, INC.

# APPENDIX A

1. A method for detecting the operative coupling of multiple fingers to a touch sensor involving the steps of

    scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first maxima, (c) identify a second maxima in a signal corresponding to a second finger following said minima, and

    providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima.

18. A touch sensor for detecting the operative coupling of multiple fingers comprising:

    means for scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first maxima, and (c) identify a second maxima in a signal corresponding to a second finger following said minima, and

    means for providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima.

| | |
|---|---|
| 1 | KARL J. KRAMER (CA SBN 136433) |
| | ELLEN S. REINSTEIN (CA SBN 227833) |
| 2 | ERIKA L. LABIT (CA SBN 234919) |
| | MORRISON & FOERSTER LLP |
| 3 | 755 Page Mill Road |
| | Palo Alto, California 94304-1018 |
| 4 | Telephone: (650) 813-5600 |
| | Facsimile: (650) 494-0792 |
| 5 | KKramer@mofo.com |
| 6 | Attorneys for Defendant and Counterclaimant |
| | SYNAPTICS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELANTECH DEVICES CORPORATION, a corporation existing under the laws of Taiwan, R.O.C., <br><br> Plaintiff, <br><br> v. <br><br> SYNAPTICS, INC., a Delaware corporation; AVERATEC, INC., a California corporation; and PROSTAR COMPUTER, INC., a California corporation, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Case No.   C06-01839 CRB <br><br> **[PROPOSED] ORDER GRANTING SYANPTICS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE ASSERTED CLAIMS OF THE '352 PATENT** <br><br> Date:  June 1, 2007 <br> Time:  10:00 a.m. <br> Courtroom 8, 19th Floor <br> Hon. Charles R. Breyer |

**ORDER**

Having considered Defendant Synaptics, Inc.'s Motion for Summary Judgment of Noninfringement of the Asserted Claims of U.S. Patent No. 5,825,352 (the "Motion"), and having reviewed the papers filed by the parties related to the Motion, and having heard the argument of counsel, the Court rules as follows:

IT IS HEREBY ORDERED that Defendant's Motion is GRANTED.

1. The Court hereby enters summary judgment of noninfringement of the claims of U.S. Patent No. 5,825,352 because, at a minimum, Elantech's Infringement Contentions fail to identify any functions of the accused devices that meet the "scanning" limitations (a)-(c) in the asserted claims 1 and 18.

2. The Court hereby enters partial summary judgment of noninfringement of the claims of U.S. Patent No. 5,825,352, as to all Synaptics touchpads that do not use or enable multiple-finger detection functions.

3. The Court hereby enters partial summary judgment of noninfringement of the claims of U.S. Patent No. 5,825,352, as to all Synaptics touchpads using Synaptics' Type 1 Code.

4. The Court hereby enters partial summary judgment of noninfringement of the claims of U.S. Patent No. 5,825,352, as to all Synaptics touchpads using Synaptics' Type 2 Code.

IT IS SO ORDERED.

Dated: _____, 2007

_____
The Honorable Charles R. Breyer
U.S. District Court Judge