| | |
|---|---|
| 1 | KARL J. KRAMER (CA SBN 136433) |
| | ELLEN S. REINSTEIN (CA SBN 227833) |
| 2 | ERIKA L. LABIT (CA SBN 234919) |
| | MORRISON & FOERSTER LLP |
| 3 | 755 Page Mill Road |
| | Palo Alto, California  94304-1018 |
| 4 | Telephone: (650) 813-5600 |
| | Facsimile: (650) 494-0792 |
| 5 | KKramer@mofo.com |
| 6 | Attorneys for Defendant and Counterclaimant |
| | SYNAPTICS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELANTECH DEVICES CORPORATION, a corporation existing under the laws of Taiwan, R.O.C., | Case No.   C06-01839 CRB |
| | **SYNAPTICS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE ASSERTED CLAIMS OF THE '352 PATENT** |
| Plaintiff, | |
| v. | |
| SYNAPTICS, INC., a Delaware corporation; AVERATEC, INC., a California corporation; and PROSTAR COMPUTER, INC., a California corporation, | Date:  June 29, 2007 |
| | Time:  10:00 a.m. |
| | Courtroom 8, 19th Floor |
| | Hon. Charles R. Breyer |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | |

**PUBLIC VERSION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

I.    THE TYPE 1 AND TYPE 2 CODE ALGORITHMS DO NOT INFRINGE ..................... 1

    A.    The Type I Code Cannot Infringe ................................................................. 3

        1.    There Is No Literal Infringement ................................................. 3

        2.    There Is No Infringement Under The Doctrine Of Equivalents ................. 5

    B.    The Type 2 Code Does Not Infringe ............................................................. 7

        1.    The Type 2 Code Does Not Identify A "Minima." ..................................... 7

        2.    The Type 2 Code Does Not Identify The Other Claimed Values ............... 8

        3.    Elantech Presented No Doctrine Of Equivalents Assertions ...................... 9

    C.    The "PrimaryFingerTracking" Module Does Not Infringe .................................... 9

II.    THE "CURRENT" FIRMWARE AND DRIVER CODE CANNOT INFRINGE. .......... 11

III.    ELANTECH'S INFRINGEMENT CONTENTIONS SHOULD BE STRICKEN .......... 13

CONCLUSION ............................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*AquaTex Indus., Inc. v. Techniche Solutions*,
    479 F.3d 1320 (Fed. Cir. 2007) ........................................................................................... 6

*Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*,
    2001 U.S. Dist. LEXIS 25831 (C.D. Cal. June 4, 2001) ......................................................... 11

*Atmel Corp. v. Info. Storage Devices, Inc.*,
    1998 U.S. Dist. LEXIS 17564 (N.D. Cal. Nov. 4, 1998) ......................................................... 14

*Berger v. Rossignol Ski Co., Inc.*,
    2006 U.S. Dist. LEXIS 23085 (N.D. Cal. Apr. 25, 2006) ........................................................ 14

*Biagro W. Sales, Inc. v. Grow More, Inc.*,
    423 F.3d 1296 (Fed. Cir. 2005) ........................................................................................... 7

*Bus. Objects, S.A. v. Microstrategy, Inc.*,
    381 F. Supp. 2d 1107 (N.D. Cal. 2005) ................................................................................ 5

*Chiron Corp. v. Sourcecf Inc.*,
    431 F. Supp. 2d 1019 (N.D. Cal. 2006) ................................................................................ 11

*E-Pass Techs., Inc. v. 3Com Corp.*,
    473 F.3d 1213 (Fed. Cir. 2007) ........................................................................................... 5

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
    287 F.3d 1108 (Fed. Cir. 2002) ........................................................................................... 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ............................................................................................................ 7

*Freedman Seating Co. v. Am. Seating Co.*,
    420 F.3d 1350 (Fed. Cir. 2005) ........................................................................................... 5, 11

*GTY Indus. v. Genlyte Group, Inc.*,
    1995 U.S. Dist. LEXIS 21085 (C.D. Cal. Dec. 18, 1995) ......................................................... 5

*Gen. Atomics v. Axis-Shield ASA*,
    2007 U.S. Dist. LEXIS 29779 (N.D. Cal. Apr. 11, 2007) ........................................................ 8

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ............................................................................................. 11

*LG Elecs. Inc. v. Q-Lity Computer, Inc.*,
    211 F.R.D. 360 (N.D. Cal. 2002) .......................................................................................... 14

*Marquip, Inc. v. Fosber Am., Inc.*,
    198 F.3d 1363 (Fed. Cir. 1999) ........................................................................................... 7

*Network Appliance, Inc. v. Bluearc Corp.*,
    2005 U.S. Dist. LEXIS 16733 (N.D. Cal. June 27, 2005) ........................................................ 5

*Network Commerce, Inc. v. Microsoft Corp.*,

SYNAPTICS' REPLY I/S/O MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '352 PATENT – PUBLIC VERSION
CASE NO. C06-01839 CRB
pa-1167378
ii

422 F.3d 1353 (Fed. Cir. 2005) ............................................................................................. 6

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006) ........................................................................................... 12

*Panduit Corp. v. HellermannTyton Corp.*,
2005 U.S. Dist. LEXIS 5627 (N.D. Ill. Feb. 9, 2005) .......................................................... 10

*Schoell v. Regal Marine Indus., Inc.*,
247 F.3d 1202 (Fed. Cir. 2001) ............................................................................................. 5

*Sliptrack Sys., Inc. v. Steeler Metals, Inc.*,
2004 U.S. Dist. LEXIS 21569 (N.D. Cal. Oct. 12, 2004) ...................................................... 7

*Southwall Techs., Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995) ............................................................................................... 7

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.*,
175 F.3d 974 (Fed. Cir. 1999) ............................................................................................... 7

*Sw. Software, Inc. v. Harlequin Inc.*,
226 F.3d 1280 (Fed. Cir. 2000) ........................................................................................... 11

*UTStarcom, Inc., v. Starent Networks Corp.*,
2005 U.S. Dist. LEXIS 40520 (N.D. Cal. Dec. 6, 2005) ..................................................... 11

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*,
204 F.3d 1360 (Fed. Cir. 2000) ............................................................................................. 7

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
520 U.S. 17, 29 (1997) .......................................................................................................... 6

*Zelinski v. Brunswick Corp.*,
185 F.3d 1311 (Fed. Cir. 1999) ........................................................................................... 10

**INTRODUCTION**

Elantech Devices Corporation ("Elantech") fails to present any evidence that raises a genuine dispute over the material facts in this case. Instead, Elantech's opposition boils down to two issues that are fundamentally claim construction issues.

First, Elantech attempts to escape the Court's claim construction, which requires that the accused systems "*identify*" two "*peak*" and a "*lowest*" intervening "*value*[s] *in the finger profile*." Although Elantech uses the terms "maxima" and "minima" in its arguments, Elantech does not and cannot point to any place in the Type 1 or Type 2 Code where the accused Synaptics touchpads identify in the finger profile the "peak" and intervening "lowest" finger profile *values*. Under the law, these claim requirements cannot be ignored.

Second, Elantech tries to erase the claim term "*providing an indication* of the simultaneous presence of two fingers." Elantech concedes that the multi-finger counting algorithm resident in the "current" code version is disabled, but speculates that the code could be changed. This unsupported speculation ignores Dr. Wolfe's unrebutted testimony that the "current" code – the basis of the motion for summary judgment – *cannot* enable the finger counting function. To salvage its claim, Elantech tries to point to a code module responsible for tracking one finger, but nowhere shows or even suggests that such a module counts the number of fingers or provides a finger count to any device. Elantech's contention that the touch sensor need not provide an indication of multiple fingers to any device cannot be squared with the claim language, the inventors' arguments and amendments in the prosecution history, or even Elantech's own claim construction briefing. The Court should grant summary judgment of noninfringement of the '352 Patent.

**I.    THE TYPE 1 AND TYPE 2 CODE ALGORITHMS DO NOT INFRINGE.**

Under the Court's construction, the claims require that the touch sensor: (a) "identify a first peak value in a finger profile obtained from scanning the touch sensor;" (b) "identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified;" and (c) "after identifying the lowest value in the finger profile, identify a second peak value in the finger profile." The touch sensor must then perform the

SYNAPTICS' REPLY I/S/O MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '352 PATENT – PUBLIC VERSION
CASE NO. C06-01839 CRB
pa-1167378

1

1   function of "providing an indication of the [] presence of two fingers in response to
2   identification" of these required values.  (April 6, 2007 Claim Construction Order at 15.)



The claim limitations (a)-(c) require that the system identify specific finger profile values

11      As shown above, the claim limitations (a)-(c) require that specific values are
12  identified as being the "peak" or "lowest" of the values in a particular order in the finger
13  profile; in this case a peak value of "9," followed by a lowest value of "1," followed by a
14  second peak value of "8."  The claims are not met by identifying particular scan lines.  The
15  claims are also not met merely because the finger profile data contains information that one
16  could interpret as the peak or lowest values.  The claims literally require that the touch sensor
17  identify particular measured values in the finger profile itself and provide an indication of
18  simultaneous multiple fingers based upon the identification of those finger profile values.
19      Citing an earlier Synaptics patent to Miller *et al.*, the examiner stated during
20  prosecution that all finger profiles inherently include data representing "maxima" and
21  "minima" in the appropriate sequences:  "It is obvious that if two fingers were to touch the
22  Miller et al. apparatus the corresponding profile plots would illustrate exactly what the
23  applicant is claiming in 1."  (Supplemental Declaration of Karl J. Kramer, executed May 18,
24  2007 ("Kramer Supp. SJ Decl."), Ex. 1, December 5, 1997 Office Action, at 2-3.)
25      The '352 Patent applicants disputed this interpretation and amended the claims to add
26  the limitation, "providing an indication of the presence of two fingers" based upon the
27  identified finger profile values.  The prosecution history makes clear that the mere existence
28  of "maxima" and "minima" values in the finger profile is not enough.  To meet the claims,

SYNAPTICS' REPLY I/S/O MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '352 PATENT – PUBLIC VERSION
CASE NO. C06-01839 CRB
pa-1167378

2

the touch sensor must identified those finger profile values as "maxima" and "minima" in the correct sequence, and provide an indication of the presence of two fingers to the host *based upon* those identified values. The named inventors of the '352 Patent did not invent counting fingers on a touch sensor and reporting the count to a host. They claimed only one very specific touch sensor that would provide a signal to the host indicating the presence of multiple fingers based upon the identification of a sequence of particular values in the finger profile. Elantech's opposition glaringly omits these central aspects of the claims.

### A. The Type I Code Cannot Infringe.

#### 1. There Is No Literal Infringement.

Synaptics presented code containing the two basic algorithms for counting and reporting multiple-fingers in Synaptics' touchpads. The Type 1 Code is what Elantech calls the "centroid" code version. The Type 2 Code is the "current" firmware and driver software available from Synaptics, which Elantech calls the "bit pattern" code version.[1]



Figure 3. Synaptics "Centroid" Multifinger Detection and Counting

As is plainly observable from Exhibit C of Elantech's new Infringement Contentions, excerpted above, the Type 1 algorithm does not search for or identify the "peak" values or the "lowest" value between any "peaks." (MacKenzie Decl., Ex. 5 (Ex. C at 6); Confidential

---

[1] Elantech asserts, without any factual basis or even explanation, that "boards that include the Type 1 code will also include the Type 2 code." (Declaration of Ian Scott MacKenzie, dated May 11, 2007 ("MacKenzie Decl."), ¶ 13.) The undisputed code shows that when being "built" the boards will either include one or the other version, but not both. (Supplemental Declaration of Andrew Wolfe in Support of Synaptics' Motion for Summary Judgment of Noninfringment of the Asserted Claims of the '352 Patent, dated May 18, 2007 ("Wolfe Supp. SJ Decl."), ¶ 7.)

SYNAPTICS' REPLY I/S/O MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '352 PATENT – PUBLIC VERSION
CASE NO. C06-01839 CRB
pa-1167378

3

1  Declaration of Dr. Andrew Wolfe, executed April 20, 2007 ("Wolfe SJ Decl."), ¶¶ 21-24.)

2  As is clear from the line labeled "E" in Elantech's own depiction shown above, the algorithm

3  "identifies" whether each scan line exceeds a threshold and nowhere identifies the finger

4  profile values as required by the claims.

5  Although Elantech's expert, Dr. MacKenzie, argues that each "1" in line "E" above is

6  a "maxima" and a "0" in line "E" is a "minima" in the above depiction, those binary bits of

7  data are not the capacitance values of the scan line in the "finger profile." Moreover, as is

8  plain from the graphic above, most of the 1's *do not* even correspond to scan lines with a first

9  "peak value in the finger profile" or a second "peak value in the finger profile," and most of

10  the "0's" *do not* correspond to a scan line with "lowest value in the finger profile that occurs

11  after the first peak value." Indeed, there are "0's" for 10 of the 16 scan lines, some before

12  and some after groups of "1's." Of course, the required "peak" and "lowest" intervening

13  capacitance values can be identified by a person looking at a graph of the finger profile data,

14  but it is undisputed that the Type 1 Code does not do that.[2]

15  Elantech attempts to salvage its infringement claim by arguing that the Court

16  somehow endorsed the notion that claims permit a "plateau" of "1's" or "0's" in the output of

17  Synaptics' threshold comparison algorithm. The Court's Claim Construction Order refers to

18  a "plateau" as "where the maximum *capacitance value* appears over a range of X axis values

19  and/or Y axis values." (April 6, 2007 Order at 14:20-23 (emphasis added).) As shown in

20  Elantech's own graphic above, there is no "plateau" in the actual finger profile capacitance

21  values. The Court's Order does not help Elantech.

22  There is also no process in the accused Type 1 Code for "providing an indication of

23  the simultaneous presence of two fingers in response to identification of said first and second

---

[2] Moreover, although none of the actual values is identified in the Elantech graphic above, the functions of asserted claim limitations (a)-(c) would identify three fingers in the graph because there is a small but obvious "peak" value and two adjacent "lowest" values on the scan lines represented by the middle group of six "0's," that the Synaptics' code would not identify as a finger. Elantech's expert blithely ignores this problem by suggesting that the "values below the threshold are assumed to be zero and treated as a plateau minima." The claims require that the "minima" be identified as the "lowest" value in the finger profile between two "peak" values.

1  maxima." (Wolfe SJ Decl., ¶ 23.)  The Type 1 Code does not identify specific "peak" values

2  and "lowest" values.  Consequently, there can be no infringement as a matter of law because

3  these limitations are missing completely from the accused Type 1 Code.  (*Id.*, ¶¶ 23-24.)  *See*

4  *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1220 (Fed. Cir. 2007).

**2.     There Is No Infringement Under The Doctrine Of Equivalents.**

There are at least four independent reasons that the Type I Code algorithm cannot infringe under the doctrine of equivalents.  First, the required claim limitations are not just slight variants of the functions in the Type 1 Code; they are completely absent in the code.  There is simply no identification of the relevant "peak" and "lowest" finger profile values, and no indication provided to a host based upon such values.  *See Network Appliance, Inc. v. Bluearc Corp.*, 2005 U.S. Dist. LEXIS 16733, at \*\*39-40 (N.D. Cal. June 27, 2005) (no infringement under the doctrine of equivalents where structure disclosed in patent is wholly absent from accused product); *Bus. Objects, S.A. v. Microstrategy, Inc.*, 381 F. Supp. 2d 1107, 1111 (N.D. Cal. 2005).

Second, Elantech fails to meet its burden of proving that the differences between the claimed functions and the functions in the Type 1 Code are "insubstantially different."  *See, e.g.*, *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001); *GTY Indus. v. Genlyte Group, Inc.*, 1995 U.S. Dist. LEXIS 21085, at \*\*14-15 (C.D. Cal. Dec. 18, 1995).  Elantech's expert's only "equivalents" analysis, stated in MacKenzie Decl. ¶ 28, is a rote incantation of the "function-way-result" test that impermissibly focuses on the claim as a whole and, indeed, does not even correctly identify the salient words of the claim:

> The function of the Type 1 code is identical to the claim limitation. It examines the figure [**sic**] profile to determine the presence of a first finger. The way it does so is also the same, namely examining the values on each trace. The result is also identical – the identification of a value that accurately represents the presence of a finger. As such, the 'Type 1' code is at most only an insubstantial variation from the claimed 'scanning' steps.

This perfunctory recitation impermissibly compares the accused devices to the claim as a whole, rather than analyzing individually each of the limitations at issue.  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) ("the all limitations

1   rule requires that equivalence be assessed on a limitation-by-limitation basis, as opposed to
2   from the perspective of the invention as a whole") (citing *Warner-Jenkinson Co., Inc. v.
3   Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)).  Moreover, Dr. MacKenzie gives such a
4   high-level gloss on the "function-way-result" that the three separate prongs are conflated into
5   the same baseless generalization: the claims cover examining the finger profile to find one
6   finger.[3]  To the contrary, the claims only recite one particular algorithm, of many available,
7   for detecting and providing a signal to the host indicating the presence of *two fingers*.

8       Elantech does not rebut Synaptics' proof that the Type 1 Code algorithm is
9   substantially different than the claimed method.  The '352 Patent emphasizes that "[t]he *only
10  requirement* is that, in the profile of finger-induced capacitances, the profile of the newly
11  placed finger exhibits a zero value or a local minimum on each side of its peak value, in at
12  least one of the X or Y directions, so that it may be distinguished from the other finger(s) in
13  contact with the touchpad." (Wolfe SJ Decl., Ex. 2, '352 Patent, col. 11, lines 49-55
14  (emphasis added).)  The patent explains that the key "result" of the claimed invention is "to
15  ensure that a legitimate valley and two legitimate peaks have been detected, to avoid
16  artifacts." (*Id*., col. 10, lines 60-63.)  Elantech now seeks to ignore the import of these
17  claimed features and the results they are supposed to achieve.  Although Dr. MacKenzie
18  makes light of Synaptics' methods of avoiding "artifacts," he nowhere disputes that the
19  claimed features and the results of those claimed features *as emphasized in the patent* are not
20  important or even relevant to the Type 1 Code algorithm.  (Wolfe SJ Decl., ¶ 24.)

21      Third, to preserve the patentability of the '352 Patent claims over the prior art, the
22  named inventors made a narrowing amendment that requires "providing an indication" of
23  two fingers based upon the identified finger profile values.  (Declaration of Karl J. Kramer,

---

[3] Dr. MacKenzie's Declaration, ¶ 28, describes the "function" of the claim as a whole as "examin[ing] the finger profile to determine the presence of a first finger;" the "way" the claim functions as "examining the value[] on each trace;" and, the "result" of the claim as "the identification of a value that accurately represents the presence of a finger."  All of these assertions simply restate the asserted function of "examin[ing] the finger profile to determine the presence of a first finger."  This generalized analysis is deficient as a matter of law.  *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007); *Network Commerce, Inc. v. Microsoft Corp*., 422 F.3d 1353, 1363 (Fed. Cir. 2005).

1   executed April 20, 2007 ("Kramer SJ Decl."), ¶ 6.)  *See, e.g.*, *Biagro W. Sales, Inc. v. Grow*
2   *More, Inc.*, 423 F.3d 1296, 1305 (Fed. Cir. 2005) (equivalents surrendered due to amendment
3   to overcome an obviousness rejection).  Under these facts, Elantech carries the burden of
4   showing that it was unforeseeable that an indication of multiple fingers would be provided
5   based on data other than the claimed finger profile values.  *Festo Corp. v. Shoketsu Kinzoku*
6   *Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002) (patentee bears the burden of proving that
7   equivalent was not surrendered); *Sliptrack Sys., Inc. v. Steeler Metals, Inc.*, 2004 U.S. Dist.
8   LEXIS 21569, at **27-28 (N.D. Cal. Oct. 12, 2004).  Elantech made no such showing and,
9   consequently, is estopped to assert the doctrine of equivalents.

10          Fourth, Elantech has failed to meet its burden of proving that its asserted range of
11  equivalents would have been more than an obvious or trivial variation from the known art.
12  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1580 (Fed. Cir. 1995);
13  *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983-84 (Fed. Cir. 1999).  Given the
14  repeated and emphatic rejection of broad claims during prosecution, and Synaptics' own
15  prior art patent that truly claims that broad scope (Kramer SJ Decl., ¶ 7), Elantech should not
16  be permitted to stretch its claims under the doctrine of equivalents to cover the Type 1 Code.
17  On that ground alone, summary judgment should be entered.  *See Ultra-Tex Surfaces, Inc. v.*
18  *Hill Bros. Chem. Co.*, 204 F.3d 1360, 1366-67 (Fed. Cir. 2000) (patentee failed to show
19  scope of equivalents would have been valid in light of prior art); *Marquip, Inc. v. Fosber*
20  *Am., Inc.*, 198 F.3d 1363, 1365-68 (Fed. Cir. 1999) (same ruling on summary judgment).

21          **B.     The Type 2 Code Does Not Infringe.**
22                  **1.     The Type 2 Code Does Not Identify A "Minima."**
23          Elantech ignores the claim limitation "identify the lowest value in the finger profile
24  that occurs after the first peak value, and before another peak value is identified."
25  (MacKenzie Decl., ¶ 19.)  Elantech presents no evidence that the Type 2 Code does anything
26  to "identify the lowest value in the finger profile that occurs after the first peak value, and
27  before another peak value is identified."  Dr. Wolfe's explanation of the Type 2 Code on this
28  point is unrebutted.  At best, Dr. MacKenzie suggests that "the existence" of a "10" pattern in

1  the bit matrix shown in the Elantech depiction below would "indicate" a "minima" if
2  analyzed. (*Id.* at page 7, lines 2-5.) Although a person looking at the bits could discern the
3  "10" pattern, there is no evidence whatsoever that the Type 2 Code actually performs any
4  such analysis or that any indication is provided about the "10" bit pattern. As is clear from
5  Elantech's own graphic depiction (MacKenzie Decl., Ex. 5 (Ex. C at 2)), reproduced below,
6  the "10" pattern in line A is immediately deleted from the bit pattern so that when the bit
7  pattern in line D is later analyzed to count fingers, there is no information available to be
8  analyzed relating to a "lowest value" in the finger profile. Because this limitation is
9  completely missing, there can be no infringement as a matter of law. *Gen. Atomics v. Axis-*
10 *Shield ASA*, 2007 U.S. Dist. LEXIS 29779, at **14-15 (N.D. Cal. Apr. 11, 2007).



Figure 1. Synaptics "BitPattern" Multifinger Detection

### 2. The Type 2 Code Does Not Identify The Other Claimed Values.

Elantech presents no evidence that the Type 2 Code identifies finger profile values as "maxima." The best Dr. MacKenzie could say is that the value of every trace is analyzed and compared with its neighboring traces. However, that is true of *every* trace value in the finger profile, each of which is treated the same ("read out" of storage and compared). The Type 2 Code does not specially identify one particular trace capacitance value as a "maxima." (Wolfe SJ Decl., ¶ 27.) Dr. MacKenzie does not rebut that point.

Moreover, Dr. MacKenzie concedes that the final bit pattern, as shown above in line D for example, includes a "1" for every scan line with a "peak." As is indisputable from

SYNAPTICS' REPLY I/S/O MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '352 PATENT – PUBLIC VERSION
CASE NO. C06-01839 CRB
pa-1167378

8

1  Elantech's own diagram above, a "1" in line D does not constitute a finger profile
2  capacitance value. When activated, the Type 2 algorithm counts the number of "1's" in the
3  bit array, and stores the result in the ▮▮▮▮▮▮▮▮▮▮▮▮ register to be later
4  sent to the host as an indication of finger count if the finger count algorithm and "W" value
5  command is activated in the firmware and driver. To the extent that any finger count
6  indication is provided to the host, it is based only upon a "1" bit defining a scan line with a
7  "peak" and not a finger-profile capacitance value. (Wolfe SJ Decl., ¶ 27.)

### 3. Elantech Presented No Doctrine Of Equivalents Assertions.

Although Dr. MacKenzie presented a rote incantation of the "function-way-result" test for the Type 1 Code, he made no such effort for the Type 2 Code. (*Compare* MacKenzie Decl., ¶ 28 and ¶¶ 15-24.) Elantech's Opposition, at page 13, mentions the doctrine of equivalents when trying to deflect the '352 Patent statements that prove that the underlying purpose for the specific claimed method was to avoid artifacts (Wolfe SJ Decl., ¶ 13 and Ex. 2, '352 Patent, col. 10, lines 60-63.) However, Elantech makes no affirmative doctrine of equivalents assertion concerning the Type 2 Code.[4] Synaptics' evidence of noninfringement under the doctrine of equivalents (Wolfe SJ Decl., ¶ 32), is unrebutted. Furthermore, the doctrine of equivalents would not apply to the Type 2 Code for the same reasons that it does not apply to the Type 1 Code, as set forth above.

### C. The "PrimaryFingerTracking" Module Does Not Infringe.

In an effort to save its claims with respect to the Type 2 Code, Elantech points to a different part of the code that does not count fingers, but rather eliminates all data inconsistent with the location of one finger, the "primary finger." As an initial matter, Dr. MacKenzie's unsupported and unexplained assertion that the Type 1 Code contains the PrimaryFingerTracking[5] module is plainly contrary to the undisputed operations of the

---

[4] Elantech asserts (Opp. at 13), without any supporting citation, that it "is simply untrue" that the Type 2 Code does not identify "minima." However, the sentences that follow that unsupported assertion are directed to the "maxima" limitation, not the "minima" limitation.

[5] Elantech and Dr. MacKenzie refer to a "TrackPrimaryFinger" module. There is no such module in the Type 2 Code. (Wolfe Supp. SJ Decl., ¶ 3.)

1  Synaptics code. (Wolfe Supp. SJ Decl., ¶ 4.) Such unsupported assertions that are contrary
2  to the undisputed facts cannot create a genuine issue of fact. *Zelinski v. Brunswick Corp.*,
3  185 F.3d 1311, 1317 (Fed. Cir. 1999) (conclusory statement by expert failed to raise a
4  genuine issue for trial); *Panduit Corp. v. HellermannTyton Corp.*, 2005 U.S. Dist. LEXIS
5  5627, at **18-20 (N.D. Ill. Feb. 9, 2005) (same).

6        Elantech is correct that the PrimaryFingerTracking module in the Type 2 Code
7  performs some of the same steps as the Type 2 finger-counting algorithm, with two critical
8  distinctions. The PrimaryFingerTracking module does not count the number of "1" values in
9  the bit array or store any result in the ▬▬▬▬▬▬▬▬▬▬ register. (Wolfe
10 Supp. SJ Decl., ¶ 6.) Dr. MacKenzie's Declaration never states that a finger count value is
11 generated or provided in connection with the PrimaryFingerTracking module. (MacKenzie
12 Decl., ¶ 23.) At best, Dr. MacKenzie suggests that there is a bit matrix with "1" values, like
13 those found in line D in the Elantech "Figure 1" above. However, it is undisputed that the
14 entire point of the PrimaryFingerTracking module, when activated, is to find a single "1" in
15 the bit matrix that is consistent with the latest reported location of one primary finger on the
16 touchpad. (Wolfe Supp. SJ Decl., ¶ 6.)

17       Thus, in addition to never identifying any "minima" or "maxima" finger profile
18 values, the PrimaryFingerTracking module does not actually count fingers or provide any
19 indication of the presence of multiple fingers on the touch sensor. (Wolfe Supp. SJ Decl.,
20 ¶ 6.) The claims require that the accused devices determine and provide an indication to the
21 host that two fingers are present simultaneously on the touch sensor based upon the specific
22 detected finger profile values. These limitations are literally required by the claims, and were
23 the only reason the Patent Office granted the claims once they were added by amendment.
24 (Kramer Supp. SJ Decl., Ex. 1, ¶¶ 2-3.) As Elantech admitted in its claim construction
25 briefing, "providing an indication" is "[t]he function of detecting the simultaneous presence
26 of two fingers and reporting that presence to the host . . . ." (Elantech Devices Corp.'s Reply
27 Claim Construction Brief For U.S. Patent No. 5,825,352, filed February 21, 2007, pp. 12-13.)
28 Elantech cannot now be permitted to avoid these critical limitations in the claims.

## II. THE "CURRENT" CODE IS DISABLED AND CANNOT INFRINGE.

Elantech also attempts to shift the burden of proof for infringement onto Synaptics. Under the law, even on summary judgment, the burden of proof rests with Elantech. *UTStarcom, Inc., v. Starent Networks Corp.*, 2005 U.S. Dist. LEXIS 40520, at **4-5, 24 (N.D. Cal. Dec. 6, 2005). To defeat summary judgment, Elantech must point to evidence that each and every limitation is met by the accused infringing products; not that it could be met or might be met, but that it *is* met. *Freedman*, 420 F.3d at 1358; *Chiron Corp. v. Sourcecf Inc.*, 431 F. Supp. 2d 1019, 1031 (N.D. Cal. 2006).

Synaptics presented evidence that its "current" version of code does not use a finger counting algorithm and or provide any indication of the presence of multiple fingers on the touch sensor. (Wolfe SJ Decl., ¶¶ 18-20.) Synaptics requests summary judgment that the "current" version of the code as implemented does not infringe. In paragraph 24 of his Declaration, Dr. MacKenzie concedes that for the Type 2 Code, the finger-counting algorithm must "be set to report the presence of two fingers to the host computer, if the host computer sends a command to the touchpad enabling that output." As Dr. Wolfe showed, the "current" version of code is specifically designed so that the firmware and driver software cannot be set to enable those functions. (Wolfe SJ Decl., ¶¶ 19-20.) Elantech nowhere disputes that fact, but instead speculates that customers may somehow change the code to enable such functions. There is no evidence of that, and Synaptics' request for partial summary judgment is limited to the "current" version of code as implemented.[6]

Elantech's reliance on *Hilgraeve* and *Fantasy Sports* is misplaced. Recently, the Federal Circuit flatly rejected Elantech's characterization of *Hilgraeve*, explaining that

---

[6] *See, e.g.*, *Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1287, 1291 (Fed. Cir. 2000) (no infringement where accused feature was not enabled); *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, 2001 U.S. Dist. LEXIS 25831, at **23-24 (C.D. Cal. June 4, 2001) (holding device not reasonably capable of an infringing use where, *inter alia*, plaintiff failed to present any evidence of customers' actual use of defendant's product in infringing manner); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995) (no likelihood of success on infringement where, *inter alia*, plaintiff failed to offer any evidence that customers had altered the device so that it might infringe).

1  "*Hilgraeve* did not suggest that a device would directly infringe a product claim simply
2  because the device could be modified to render it infringing." *Ormco Corp. v. Align Tech.,*
3  *Inc.*, 463 F.3d 1299, 1307 (Fed. Cir. 2006). Consistent with Synaptics' position, the Court in
4  *Fantasy Sports* held that "in order to infringe the '603 patent, the code underlying an accused
5  fantasy football game must be written in such a way as to enable a user of that software to
6  utilize the function of awarding bonus points for unusual plays such as out-of-position
7  scoring, *without having to modify that code.*" *Fantasy Sports Props., Inc. v. Sportsline.com,*
8  *Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) (emphasis added). These cases do not support
9  Elantech's argument that potential infringement is enough to avoid summary judgment.

   Moreover, Dr. MacKenzie's unsupported speculation about how customers could
modify the code is contrary to the facts of record. ██████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████  (Wolfe Supp. SJ Decl., ¶ 8.)

   Synaptics requests that the Court rule that the disabled functions in the Type 2 Code –
the "current" version of Synaptics Touchpad product – cannot infringe the asserted claims.
Elantech does not dispute that if so disabled, there can be no infringement. Elantech does not
dispute that, as currently constituted, the Type 2 Code does not enable the finger-counting
algorithms present in the code. Elantech's effort to introduce confusion should be ignored.
The facts relating to the disabled finger-counting functions in the Type 2 Code are
undisputed. The Court should enter summary judgment of noninfringement as to those
devices implementing the Type 2 Code as presented to the Court.

**III.  ELANTECH'S INFRINGEMENT CONTENTIONS SHOULD BE STRICKEN.**

   Elantech does not dispute that the parties exchanged relevant computer code last
September and October, well in advance of the claim construction process. Elantech also
does not dispute that the parties agreed that "good-faith" supplementation of preliminary
contentions was necessary prior to the claim construction briefing. Elantech does not dispute

1  that it amended its invalidity contentions prior to the claim construction briefing because, in
2  good faith, the parties agreed to provide updated disclosures prior to briefing claim
3  construction.  Elantech does not dispute that prior to claim construction briefing, Synaptics
4  amended its infringement contentions with detailed citations to Elantech's code.  Elantech's
5  sole opposition argument is that it was entitled to withhold its infringement contentions
6  despite the agreement to amend because the Patent Local Rules afford an absolute right to
7  amendment after the claim construction ruling issues.  That argument cannot be reconciled
8  with the letter of or policy behind the Patent Local Rules.  All of Elantech's new contentions,
9  including the entirety of the MacKenzie Declaration, should be stricken from the record.

10  Contrary to Elantech's assertions, Patent Local Rule 3-6(a) does not give Elantech a
11  "right" to amend its infringement contentions following claim construction "if the
12  amendment is made necessary by technical documents produced by the defendant." (Elantech
13  Opp. 10:4-5).  Rule 3-6(a) requires that the party have a "good faith" belief that documents
14  produced pursuant to Patent Local Rule 3-4 require amendment.  As an initial matter,
15  Elantech does not dispute that the "mutual exchange of exemplary code" was by agreement
16  of the parties and contemplated separately from any statutory disclosures made pursuant to
17  the Patent Local Rules.  (*See* Elantech SJ Opp. at 3:17-19.)

18  Furthermore, under simple rules of fairness, Elantech should be precluded from now
19  arguing that it can amend its contentions in "good faith."  Elantech acknowledged that the
20  parties needed to supplement in good faith the Patent Local Rule disclosures prior to the
21  claim construction process based upon then-current information.  Before claim construction,
22  Elantech took the position, purportedly in good faith, that no such amendments were
23  necessary for its infringement contentions and chose only to amend its validity contentions.
24  Elantech also accepted Synaptics' detailed amended infringement contentions.  Rather than
25  being in made in "good faith," Elantech's new amended infringement contentions are plainly
26  presented in a cynical, calculated lack of good faith.  Elantech coldly calculated that it could
27  pretend to exchange all relevant amendments prior to claim construction and then reveal its
28  true infringement contentions after the claim construction order issued.

1    Having acknowledged that the parties needed to amend in good faith prior to claim
2    construction and having accepted Synaptics' amended information, Elantech should not now
3    be permitted to amend its contentions. The prejudice from this bad faith conduct is self-
4    evident. Synaptics drafted its claim construction arguments based upon Elantech's
5    preliminary infringement contentions. *See, e.g.*, *Berger v. Rossignol Ski Co., Inc.*, 2006 U.S.
6    Dist. LEXIS 23085, at *12 (N.D. Cal. Apr. 25, 2006) (denying plaintiffs' motion for leave to
7    amend preliminary infringement contentions where, *inter alia*, defendants would be
8    prejudiced due to reliance on the contentions). Because Elantech hid its true positions,
9    Elantech is now shifting the debate to new claim terms ("identify" and "providing an
10   indication"), which the parties never presented to the Court on claim construction.

11   The Patent Local Rules are designed specifically to avoid such sand-bagging tactics.
12   They require parties to "crystallize their theories of the case early in the litigation and to
13   adhere to those theories once they have been disclosed" to prevent a "'shifting sands'
14   approach to claim construction." *LG Elecs. Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360,
15   367 (N.D. Cal. 2002) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, 1998 U.S. Dist.
16   LEXIS 17564, at *7 (N.D. Cal. Nov. 4, 1998)); *Berger*, 2006 U.S. Dist. LEXIS 23085, at *7
17   ("patent rules are designed to avoid 'vexatious shuffling of positions' that could occur if the
18   parties are permitted to freely modify their infringement contentions at any point in the
19   action") (citation omitted). Elantech's "Final Infringement Contentions" and the MacKenzie
20   Declaration espousing those new contentions should be stricken from the record.[7]

---

[7] There is no merit to Elantech's vague "discovery" complaints. The parties agreed to exchange exemplary code and over the past seven months Elantech was given a full opportunity to ask for and review any other code it wished. *See, e.g.*, September 26, 2006 Stipulated Amended Protective Order, at 3.3.1 [Docket Document 55]. If Elantech had any questions about the operation of Synaptics' code or the application of the code to the accused products, it had seven months to resolve them. Elantech did not do that. Furthermore, Elantech does not now suggest that it has grounds under Rule 56(f) to suspend the summary judgment motion for further discovery. In addition, Dr. MacKenzie's suggestion that no software driver code was produced (MacKenzie Decl., ¶ 24), is inexplicable. That Code was produced in October 2006, and is attached as Exhibit 5 to and discussed in paragraph 20 of Dr. Wolfe's Summary Judgment Declaration, executed April 20, 2007.

## CONCLUSION

Elantech's allegations of infringement have no merit. Synaptics respectfully requests that the Court enter an Order of (1) summary judgment of noninfringement because Elantech should be held to its original Infringement Contentions, which fail to identify any functions of the Accused Touchpads that meet the "scanning" sub-limitations (a)-(c); (2) partial summary judgment of noninfringement as to the Accused Touchpads that do not count and report multiple-fingers on the touch sensor; (3) partial summary judgment of noninfringement as to the Accused Touchpads using Synaptics' Type 1 Code; and (4) partial summary judgment of noninfringement as to the Accused Touchpads using Synaptics' Type 2 Code.

Dated: May 18, 2007

MORRISON & FOERSTER LLP

By: /s/ Karl J. Kramer

Attorneys for Defendant and Counterclaimant
SYNAPTICS, INC.

SYNAPTICS' REPLY I/S/O MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '352 PATENT
CASE NO. C06-01839 CRB
pa-1167378

15