1  KARL J. KRAMER (CA SBN 136433)
   ERIKA L. YAWGER (CA SBN 234919)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California 94304-1018
   Telephone: 650-813-5600
4  Facsimile: 650-494-0792
   kkramer@mofo.com
5
6  Attorneys for Defendant and Counterplaintiff
   SYNAPTICS, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  ELANTECH DEVICES CORPORATION, a          Case No.   C06-01839 CRB
    corporation existing under the laws of Taiwan,
13  R.O.C.,                                   **SYNAPTICS, INC.'S OPPOSITION
                                              TO ELANTECH DEVICES
14              Plaintiff,                     CORP.'S MOTION FOR PARTIAL
                                              SUMMARY JUDGMENT OF
15       v.                                   INFRINGEMENT**

16  SYNAPTICS, INC., a Delaware corporation;  Date: January 11, 2008
    AVERATEC, INC., a California corporation; and   Time: 10:00 a.m.
17  PROSTAR COMPUTER, INC., a California      Courtroom 8, 19th Floor
    corporation,                             Hon. Charles R. Breyer
18
                Defendants.
19

20  AND RELATED COUNTERCLAIMS

21

22

23                        **PUBLIC VERSION**

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3 INTRODUCTION .................................................................................................... 1

4 ARGUMENT ........................................................................................................... 2

5 I.  ELANTECH HAS NOT ACCUSED ANY SYNAPTICS PRODUCTS THAT
     CONTAIN THE TYPE 2 ENABLED CODE ................................................... 2

6

7 II.  ELANTECH PRESENTS NO EVIDENCE OF INFRINGEMENT .................. 3

III.  ELANTECH FAILED TO COMPARE STRUCTURES AS REQUIRED UNDER
8     35 U.S.C. §112, ¶ 6 ....................................................................................... 4

9 IV.  SYNAPTICS'S TYPE 2 ENABLED CODE CONTAINS NO OPERATION
       THAT IDENTIFIES "THE LOWEST VALUE IN THE FINGER PROFILE" ................. 6
10
       A.  Elantech's Assertion of a "Minima" Is Premised Upon an Operation that
11          Never Occurs in the Type 2 Code ....................................................... 6

12     B.  Synaptics's Type 2 Code Does Not Even Identify the Location of the
           Claimed "Minima" ............................................................................... 9
13
       C.  The Claims Literally Require an Identification of the "Lowest Value In The
14         Finger Profile that Occurs After the First Peak Value, and Before Another
           Peak Value Is Identified" ................................................................... 10
15
           1.  Elantech's Infringement Allegations Contradict Its Own Claim
16             Construction, Which This Court Adopted Verbatim ................. 10

17         2.  Under The Proper Application Of The Court's Claim Construction,
               There Is No Infringement .......................................................... 12
18
CONCLUSION ...................................................................................................... 15
19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*,
   No. C05-03117 MJJ, 2007 U.S. Dist. LEXIS 59161 (N.D. Cal. July 26, 2007) ...................... 2

*B. Braun Medical v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997) .................................................................................................. 5

*Berger v. Rossignol Ski Co., Inc.*,
   No. C 05-02523 CRB, 2006 U.S. Dist. LEXIS 23085 (N.D. Cal. Apr. 25, 2006) ................... 2

*Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*,
   130 F. Supp. 2d 1152 (C.D. Cal. 2001) ..................................................................................... 3

*Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*,
   235 U.S. 641 (1915) ................................................................................................................... 3

*EMI Group N. Am. v. Intel Corp.*,
   157 F.3d 887 (Fed. Cir. 1998) .................................................................................................. 15

*Fairchild Semiconductor Corp. v. Nintendo Co., Ltd.*,
   No. C92-1971C, 1994 U.S. Dist. LEXIS 3853 (W.D. Wash. Feb. 14, 1994) ........................... 5

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
   389 F.3d 1370 (Fed. Cir. 2004) ............................................................................................. 4, 6

*JVW Enters. v. Interact Accessories, Inc.*,
   424 F.3d 1324 (Fed. Cir. 2005) .................................................................................................. 4

*L & W, Inc. v. Shertech, Inc.*,
   471 F.3d 1311 (Fed. Cir. 2006) .................................................................................................. 3

*Laitram Corp. v. Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991) .................................................................................................. 5

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) ............................................................................................. 3, 4

*Microsoft Corp. v. AT & T Corp.*,
   127 S. Ct. 1746 (2007) ............................................................................................................... 3

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*,
   467 F.3d 1355 (Fed. Cir. 2006) .................................................................................................. 2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005), ............................................................................................... 13

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000) .................................................................................................. 3

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*,
   No. C04-04675 MHP, 2007 U.S. Dist. LEXIS 44288 (N.D. Cal. June 19, 2007) ..................... 4

*Southwall Techs. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) ............................................................................................ 15

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001) .......................................................................................... 4

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*,
  479 F. Supp. 2d 388 (S.D.N.Y. 2007) ................................................................................ 4

## STATUTES

35 U.S.C. §112, ¶6 ..................................................................................................... 1, 4, 5, 6

35 U.S.C. §271(a) ........................................................................................................... 3, 4

1

**INTRODUCTION**

2  Elantech requests partial summary judgment that the sale by Synaptics, Inc. ("Synaptics")

3  of touchpads including Type 2 "enabled" code infringes claim 18 of Elantech's U.S. Patent No.

4  5,825,352 (the "'352 Patent"). Elantech's motion fails for numerous reasons.

5  Elantech fails to point to any act of infringement. As an initial matter, Elantech's

6  summary judgment motion fails to specify any of the touchpads that are identified in Elantech's

7  Final Infringement Contentions. There is a simple reason for this failing: it is undisputed that

8  none of the touchpads that Elantech accused in its Final Infringement Contentions include the

9  Type 2 enabled code. The notebook touchpads accused of infringement in this action (the TM41

10  family) contain the Type 1 code, which this Court has already ruled does not infringe. (Docket

11  No. 172, Court's October 26, 2007 Memorandum and Order Re: Summary Judgment Motions

12  ("Summary Judgment Order"), at 15:26-28.) Moreover, Elantech fails to prove (or even present

13  evidence of) any sale by Synaptics of any allegedly infringing touchpads within the United States.

14  Elantech's motion thus fails as a matter of law on these two independent grounds.

15  Elantech also fails to meet its burden of establishing that the accused Type 2 enabled code

16  meets the limitations of the claim. Indeed, Elantech identifies no structure in the patent or in the

17  accused products alleged to meet the "means for providing" limitation, and presents no evidence

18  that any such structures are identical or equivalent, as required under 35 U.S.C. §112, ¶ 6. In

19  addition, the only accused computer function in the Type 2 code does not, in fact, "identify" the

20  required "values" in the "finger profile" as required by claim 18. For each of these independent

21  reasons, Elantech has not met its burden to prove its case for infringement.

22  At a minimum, there are substantial material issues of fact concerning whether any

23  accused touchpad contains infringing code, whether Synaptics conducts any infringing activities

24  under United States law, whether Elantech has presented any evidence of an infringing structure

25  to establish infringement of claim 18, and whether the Type 2 enabled code literally infringes the

26  claims of the '352 Patent. Elantech's motion for partial summary judgment for infringement

27  should be denied.

28

1                                    **ARGUMENT**

2    I.     **ELANTECH HAS NOT ACCUSED ANY SYNAPTICS PRODUCTS THAT**
3           **CONTAIN THE TYPE 2 ENABLED CODE**

4          In this case, Elantech only accuses Synaptics touchpad products in the TM41 series. (*See*

5    Docket No. 109, May 11, 2007 MacKenzie Declaration ("MacKenzie May 11 Decl."), Exhibit 5

6    at 1, n. 2 (Elantech's May 7, 2007 Final Infringement Contentions) ("Those families of Synaptics

7    products that Elantech contends to infringe the asserted claims include at least TM41 series or

8    family, including but not limited to TM41xx134, TM41xx156, TM41xx180, TM41xx200,

9    TM41xx220, TM41xx230, TM41xx240, TM41xx140, TM41xx301, and TM41xx221 series or

10   families."). The TM41 series products do not contain Type 2 enabled code; rather, the TM41

11   series notebook touchpad products contain the "Centroid," or Type 1 code. (Declaration of Karl

12   J. Kramer In Support of Synaptics, Inc.'s Opposition to Elantech's Motion For Partial Summary

13   Judgment of Infringement ("Kramer Decl."), Ex. A, 51:2-52:17, 54:25-59:16. *Cf* Docket No.

14   109, MacKenzie May 11 Decl. ¶¶ 25-26 and Exhibit 5, sub-exhibit C at 8-9 (descriptions of Type

15   1 "centroid" code); Docket No. 108, Elantech's Opposition to Synaptics' Motion for Summary

16   Judgment Re Non-Infringement, at 5:20-6:10 (same); Docket No. 172, Summary Judgment Order

17   at 12:7-15 (same).)

18         On October 26, 2007, this Court granted summary judgment of non-infringement for

19   Synaptics's Type 1 code. (Docket No. 172, Summary Judgment Order at 15:26-28.)

20   Consequently, the accused notebook touchpad devices (the TM41 Family) have already been

21   found to be non-infringing as a matter of law. Elantech never moved to amend its final

22   infringement contentions to accuse any product that actually contains Type 2 code.[1] Since

---

23         [1] Any attempt by Elantech to amend at this late date should be denied for lack of diligence
     and good faith. *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. C05-03117 MJJ,
24   2007 U.S. Dist. LEXIS 59161, at **5-9 (N.D. Cal. July 26, 2007) (denying leave to amend final
     infringement contentions where Plaintiff failed to meet its burden of proof that it acted with
25   diligence, and amendment would prejudice Defendants); *O2 Micro Int'l, Ltd. v. Monolithic
     Power Sys.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (denying leave to amend for lack of good faith,
26   holding, "Even accepting O2 Micro's contention that it could not know how the open lamp pin
     operated until the Moyer deposition in late February 2003 and focusing on the period after this
27   deposition, as the district court did, O2 Micro waited almost three months to serve its proposed
     amended contentions and two more weeks to formally move to amend."); *Berger v. Rossignol Ski*
28                                                                     (Footnote continues on next page.)

1   Elantech has not accused any touchpad product that actually contains Type 2 enabled code, its

2   motion for partial summary judgment should be denied.

3   ## II.    ELANTECH PRESENTS NO EVIDENCE OF INFRINGEMENT

4   Elantech seeks summary judgment that "the touchpad products *sold* by defendant

5   Synaptics…using its 'Type 2' source code with finger counting enabled, literally infringe Claim

6   18 of Elantech's United States Patent No. 5,825,352..." (Elantech Devices Corp.'s Notice of

7   Motion and Motion for Partial Summary Judgment of Infringement filed November 21, 2007

8   ("Elantech's Mot. For Partial SJ"), at 1:6-9) (emphasis added).  Elantech bears the burden of

9   proving an act of infringement under U.S. law.  *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311,

10  1318 (Fed. Cir. 2006).

11  To be liable for direct patent infringement pursuant to 35 U.S.C. §271(a), Synaptics must

12  "make[], use[], offer[] to sell or sell[] any patented invention[] within the United States or

13  import[] into the United States any patented invention during the term of the patent."  As a matter

14  of law, sales made outside the United States cannot constitute patent infringement.  *See Rotec*

15  *Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000); *Microsoft Corp. v. AT & T*

16  *Corp.*, 127 S. Ct. 1746, 1758 (2007) ("The presumption that United States law governs

17  domestically but does not rule the world applies with particular force in patent law."); *Dowagiac*

18  *Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915) ("The right conferred by a patent

19  under our law is confined to the United States and its Territories.").  To carry its motion, Elantech

20  must establish that the essential sales activities – negotiations, contract execution, manufacturing,

21  performance, and delivery – are performed in the U.S.[2]  None of Synaptics's activities meet these

22  standards to establish sales in the United States.

23  (Footnote continued from previous page.)

24  *Co., Inc.*, No. C 05-02523 CRB, 2006 U.S. Dist. LEXIS 23085, at *7 (N.D. Cal. Apr. 25, 2006),
    *aff'd*, 2007 U.S. App. LEXIS 984 (Fed Cir. 2007) (denying leave to amend, explaining "patent

25  rules are designed to avoid 'vexatious shuffling of positions' that could occur if the parties are
    permitted to freely modify their infringement contentions at any point in the action") (citation

26  omitted).

27  [2]  *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369,

28  1375-77 (Fed. Cir. 2005); *Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*, 130 F. Supp. 2d 1152,
    (Footnote continues on next page.)

Despite its burden under the law, Elantech presents no evidence of any sale by Synaptics of touchpads containing Type 2 enabled code that constitute an infringement of United States patent rights. *See MEMC Elec. Materials, Inc.*, 420 F.3d at 1375 (affirming grant of summary judgment of no direct infringement under 35 U.S.C. § 271(a) where plaintiff presented no evidence of sales in the United States and all essential sales activities occurred in Japan). On that ground alone, Elantech's motion must be denied as a matter of law. The Court need not reach any other issue to deny summary judgment.

### III.   ELANTECH FAILED TO COMPARE STRUCTURES AS REQUIRED UNDER 35 U.S.C. §112, ¶ 6

Claim 18 is a means-plus-function claim that by statute is more limited than other types of claims. Under 35 U.S.C. § 112, claim 18 must "be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). To meet its summary judgment burden, Elantech must prove that specific structures in the accused Synaptics Touchpads with Type 2 enabled code are identical or equivalent to the structures disclosed in the '352 Patent for performing the function of the "means" recited in the claims. *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1333 (Fed. Cir. 2005). Elantech has the burden of (1) identifying the structures in the '352 Patent that perform the required function of the claimed "means," (2) identifying the structures in the accused devices that perform the required function of the claimed "means," and (3) proving that those structures are identical or equivalent. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1332 (Fed. Cir. 2001) (no literal infringement because the plaintiff failed to point to an identical or

(Footnote continued from previous page.)

1173 (C.D. Cal. 2001) (no infringement because "all of the essential activities" – contract negotiations, execution, and performance – occurred in Hong Kong, even though the accused products were used by U.S. customers and customer orders and invoices were sent to and from New York); *see also Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 402-04 (S.D.N.Y. 2007) (granting summary judgment of non-infringement because sales were outside the U.S.); *Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*, No. C04-04675 MHP, 2007 U.S. Dist. LEXIS 44288, at **61-64 (N.D. Cal. June 19, 2007) (no infringement for U.S. "offer to sell" where infringing goods made and shipped outside U.S.)

1   equivalent function that performed the claimed "means"); *Laitram Corp. v. Rexnord, Inc.*, 939

2   F.2d 1533, 1539 (Fed. Cir. 1991) (reversing grant of summary judgment of infringement where

3   plaintiff failed to show structural equivalency under section 112(6)). Elantech has simply failed

4   to present anything to support its burden as to the claimed "means for providing an indication."

5          First, Elantech does not cite to any structure in the '352 Patent that is a "means for

6   providing an indication." (Elantech's Mot. For Partial SJ at 7.) Elantech fails to do so because

7   there is no structure in the patent that is specifically mentioned as performing the claimed

8   function. (*See* Docket No. 69, Synaptics, Inc.'s Opposition to Elantech's Claim Construction

9   Brief Concerning the '352 Patent at 13-14.) On that failing alone, Elantech's motion for

10  summary judgment must be rejected. *See B. Braun Medical v. Abbott Labs.*, 124 F.3d 1419, 1425

11  (Fed. Cir. 1997) (holding that the patent holder's "duty to link or associate structure to function is

12  the *quid pro quo* for the convenience of employing § 112, P 6.").

13         Second, although Elantech contends for its infringement claim that the information

14  residing in "███████████████████████████" is the indication that is "provided"

15  (Elantech's Mot. For Partial SJ at 7:13-16),[3] Elantech has not identified any structure in the

16  accused devices that is a "means for providing an indication." (*Id.*) On this ground alone,

17  Elantech's motion for summary judgment must be denied. *See Fairchild Semiconductor Corp. v.*

18  *Nintendo Co., Ltd.*, No. C92-1971C, 1994 U.S. Dist. LEXIS 3853, at **16-17 (W.D. Wash. Feb.

19  14, 1994) (finding no literal infringement where Plaintiff "fail[ed] to provide any evidence that

20  the *structure* of the SNES power interlock mechanism is identical or equivalent to Fairchild's

21  specified 'locking means' structure").

22         [3] Elantech erroneously cites page 11 of the Court's October 26, 2007 Summary Judgment
    Order to support this contention. There is nothing on page 11 of the Court's order that finds that
23  data sitting in the cited register meets this limitation. Moreover, the cited expert testimony
    (Docket 109, MacKenzie May 11 Decl. ¶ 20), does not mention that register, or state that the data
24  sitting in the referenced register meets the "providing an indication" function required by the
    claims. Rather than affirmatively ruling for Elantech on that point, the Court found, on page 11
25  of its Order, that Synaptics had failed to show "that the code does not practice the 'providing an
    indication' limitation of claims 1 and 18." (Docket No. 172, Summary Judgment Order at 11:22-
26  24.) Although the Court suggested that the "████████" routine is "capable" when enabled and
    operating to provide an indication outside the module containing that routine—"██████████████
27  ████████████████" –it did not specify what routine function is "providing an indication" as
    required by the claim. (*See* Docket No. 172, Summary Judgment Order at 7:3-28)

28

1    Finally, Elantech offers no evidence comparing structures in the patent specification with

2    structures in the touchpads now asserted to infringe. (Elantech's Mot. For Partial SJ at 7.)

3    Because Elantech failed to present evidence to support these three separate aspects of its required

4    proof of infringing structures under 35 U.S.C. Section 112, Paragraph 6, summary judgment

5    should be denied. *See, e.g., Frank's Casing Crew & Rental Tools, Inc.*, 389 F.3d at 1379

6    (granting summary judgment of noninfringement despite its finding that the functions were

7    identical because the structures were not equivalent). Based upon Elantech's failure of proof on

8    these issues, the Court need not reach any other issue to deny summary judgment.

9    **IV.    SYNAPTICS'S TYPE 2 ENABLED CODE CONTAINS NO OPERATION
      THAT IDENTIFIES "THE LOWEST VALUE IN THE FINGER PROFILE"**

10

11    **A.    Elantech's Assertion of a "Minima" Is Premised Upon an Operation
              that Never Occurs in the Type 2 Code.**

12    There is at least a material issue of fact concerning whether a specific operation in the

13    ███████████████ routine of the Type 2 Code literally does "'identify the lowest value in the

14    finger profile that occurs after the first peak value, and before another peak value is identified.'"

15    (Docket No. 91, Court's April 6, 2007 Claim Construction Order at 15:2-5.) The *entire function*

16    of the specific computer code routine at issue is succinctly summarized in the May 11, 2007

17    MacKenzie Declaration ¶ 18 at 6:1-4, submitted by Elantech:

18

19    

20

21    There is no evidence that any specific routine in the Type 2 code identifies, by examining,

22    scanning, or otherwise analyzing, anything about the bits that are stored as a result of the trace-

23    by-trace comparison.[4]

24    _____

25    [4] Instead, ███████████████████████████████████████████

26    ███████████████ (Docket No. 101, Confidential Declaration of Dr. Andrew Wolfe in Support of
      Synaptics' Motion for Summary Judgment of Non-Infringement of the Asserted Claims of the

27    '352 Patent, executed April 20, 2007, ("Wolfe SJ Decl."), ¶ 27.)

28

1    Synaptics's expert, Dr. Wolfe, has provided sworn testimony that this precise computer

2    routine (comparing the finger profile value of one trace with its neighbor and reporting a "0" or

3    "1" as a result of that comparison) does not, *without further examining, scanning, or analysis,*

4    "identify the lowest value in the finger profile that occurs after the first peak value, and before

5    another peak value is identified." (Docket No. 101, Wolfe SJ Decl. ¶¶ 27, 31.)  This is so because

6    this routine in the code does not distinguish in any way between any "0" or "1" that is reported

7    and certainly does not distinguish between any pattern of "0's" or "1's" that are reported in any

8    sequence.

9    Elantech's expert, Dr. MacKenzie, has never disputed Dr. Wolfe's testimony on that

10   point.  Indeed, Dr. MacKenzie does not suggest that the actual function of the accused computer

11   routine – a mere comparison of neighboring traces – could, *without further examining, scanning,*

12   *or analysis,* be an identification of a "minima."  To the contrary, the express premise of Dr.

13   MacKenzie's argument is that *if* the resulting output of the actual comparison routine is

14   "analyzed" one could identify a "10" pattern that would "indicate" a minima exists:



19   (Docket No. 109, MacKenzie May 11 Decl. ¶ 18 at 6:1-8 (emphasis supplied); *see also* Elantech's

20   Mot. For Partial SJ at 3:17-21.)  Thus, Dr. MacKenzie and Elantech concede that any alleged

21   identification of a "minima" would require an additional step of analyzing the resulting data to

22   look for a specific pattern, a "1" and a "0" appearing next to each other in the array of data.  This

23   additional step would be needed to identify the alleged "minima" pattern of "10" precisely

24   because, as Dr. MacKenzie concedes at lines 1-4 of page 6 of his May 11, 2007 Declaration, the

25   actual routine in the Synaptics Type 2 Code only does a comparison of traces, one at a time, and

26   reports a "1" or a "0" for each trace.

27   Elantech's reliance upon Dr. MacKenzie's assertion that *"when the resulting variable*

28   *string is analyzed"* one can see an indication of a "10" pattern is fundamentally flawed because

SYNAPTICS OPPOSITION TO PARTIAL MSJ OF INFRINGEMENT
CASE NO. C06-01839-CRB                                                                                    7
pa-1216602

1  **that analysis never happens in any operation of the accused Type 2 Code.**  Synaptics has

2  offered the sworn testimony of Dr. Wolfe who, after exhaustively reviewing the Synaptics Type 2

3  Code, declared that there is no routine in the accused code that actually scans, reviews, or

4  analyzes the cited bits to identify "the lowest value in the finger profile that occurs after the first

5  peak value, and before another peak value is identified." (Docket No. 101, Wolfe SJ Decl. ¶¶ 27,

6  31.)  That evidence alone is sufficient to at least raise an issue of fact that needs to be resolved by

7  the jury.  That is especially true in this case because Elantech's own expert, Dr. MacKenzie,

8  conceded that there is <u>no evidence</u> that the Type 2 code ever identifies the "10" pattern alleged to

9  be the "minima." (Docket No. 150, Ex. B to Declaration of Erika L. Labit in Support of

10  Synaptics' Brief in Opposition to Elantech's Motion for Summary Judgment for Infringement

11  ("June 15, 2007 Labit Decl."), at 42:9-21 (MacKenzie Dep.).)

12           The Court's Summary Judgment Order, at page 14, discusses whether any "analysis" is

13  required for the "identification" step.  There is no dispute that once an actual "minima" is

14  specifically and literally identified by some computer routine, the claimed "identify" step does

15  not require further analysis.  However, it is also undisputed that the finger profile data must be

16  examined, scanned, or further analyzed to "identify" the required "minima" as distinguished from

17  the other values in the finger profile.  This is precisely what Elantech has confused.  Dr.

18  MacKenzie concedes, and it is true, that the bit array in the ████████████ would have to

19  be analyzed *before* one could identify a specific "10" pattern that Elantech alleges is the

20  "minima." However, there is no operation in the Type 2 Code that "identifies a minimum or

21  lowest value at the '10' transition." (Docket No. 172, Summary Judgment Order at 14:22-25.)

22  Because that "transition" is not identified, located, or otherwise discovered by any operation in

23  the Type 2 Code, there is no operation in the Type 2 Code that will "'identify the lowest value in

24  the finger profile that occurs after the first peak value, and before another peak value is

25  identified'" and summary judgment should be denied.

26

27

28

**B.    Synaptics's Type 2 Code Does Not Even Identify the Location of the Claimed "Minima."**

Elantech's infringement contention also fails because the "10" pattern cannot be the claimed "minima." Elantech's new claim construction position, echoed in the Court's ruling that denied Elantech's prior motion for summary judgment, is that the "identify" limitations are "satisfied by methodology that scans the finger profile to identify traces that contain the peak and lowest values." (Document No. 172, Summary Judgment Order at 6:15-17.) However, even under this new view of the claim limitations, the "minima" limitation is not met.

There is no evidence in the record that the ███████████ routine "scans" the bit array to identify which trace "location" corresponds to the "lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified." It is undisputed that there is no search for or report made of any "10" pattern in the bit array in the ████████████ routine. (Docket No. 101, Wolfe SJ Decl. ¶¶ 27, 31; Docket No. 150, Ex. B to June 15, 2007 Labit Decl. at 42:9-21 (MacKenzie Dep.).) Moreover, the existence of one "10" pattern in that bit array would not identify which particular trace corresponds to the lowest value without some further routine that would determine which of the two possible traces corresponding to the "10" pattern is the lowest value in the finger profile between two peaks. Although a program could be written to do that function, or a human being could do that function, it is undisputed that no such function is written into or performed anywhere by the Synaptics Type 2 enabled code. (Docket No. 101, Wolfe SJ Decl. ¶¶ 27, 31.)

In addition, many finger profiles will contain *multiple* "10" patterns. This is shown, for example, in Elantech's own finger profile examples. (*See, e.g.*, MacKenzie May 11 Decl., Exhibit 5, sub-exhibit C at 9 (Figure 3 shows multiple local "minima" that are lower than neighboring traces).) This can be seen graphically in an example, shown below, of a finger profile much like those in Elantech's own infringement allegations. It is undisputed that the Type 2 enabled code takes no action to identify or distinguish one "10" pattern from any other "10" pattern in the bit array. Consequently, there is no operation that identifies the specific "minima" at issue in this case, namely, the lowest value in the finger profile between two peaks.



In sum, there is evidence before this Court that this limitation is not met, even under Elantech's new view of the claims. At a minimum, even applying Elantech's new claim construction of "minima," there is a material issue of fact as to whether the cited step in the ██████████ routine itself actually identifies the specific trace or location of the "lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified."

C.     **The Claims Literally Require an Identification of the *"Lowest Value In The Finger Profile* that Occurs After the First Peak Value, and Before Another Peak Value Is Identified."**

1.     **Elantech's Infringement Allegations Contradict Its Own Claim Construction, Which This Court Adopted Verbatim.**

At the heart of Elantech's infringement allegation is the assertion that a set of bits stored in memory could be analyzed to identify "the location" of a "minima" reading on the touchpad. As Dr. MacKenzie enunciates this theory: "Similarly, a '1' followed by a '0' in the bit pattern indicates a minima – *e.g., a location* where the finger profile ceases to decrease is identified by the '0' in the pattern '10.'" (Docket No. 109, MacKenzie May 11 Decl. ¶ 18 at 6:1-8 (emphasis supplied).) Similarly, when the Court denied Elantech's motion for summary judgment, it suggested that the "identify" limitations are "satisfied by methodology that scans the finger profile to identify traces that contain the peak and lowest values." (Docket No. 172, Summary Judgment Order at 6:15-17.)

Although the accused Type 2 enabled code does not identify a trace on the touchpad that corresponds to "the lowest value in the finger profile" between two peaks, such an identification would be insufficient to meet the claim limitations. The problem with reading the "identify . . . value in the finger profile" limitations as being met by the identification of a "location" of a trace on the touchpad is that Elantech's claim construction, which the Court adopted verbatim, was premised upon the assertion that "location" on the touchpad is irrelevant to these limitations. The literal construction adopted by the Court and the parties' claim construction arguments exclude "location" as a sufficient measure of whether the limitations are met.

As this Court previously noted, Synaptics's claim construction position was that identification of the "maxima" and "minima" requires identification of *both* the finger profile value and the particular trace location that contained the value: "Synaptics asserts that a 'maxima' or 'minima' represents not only the capacitance measured at that one trace, but also the particular position on the touch sensor where that maximum or minimum level of capacitance was detected across the finger profile." (Docket No. 91, Court's April 6, 2007 Claim Construction Order at 14:4-7.) On the other hand, as the Court recounted in its October 26, 2007 Summary Judgment Order, Elantech's proposed construction emphatically excluded identification of any "location" of any trace: "Elantech asserts that a 'maxima' or 'minima' represents only the maximum or minimum capacitance value measured across a finger profile; a 'maxima' or 'minima' does not refer in any way to the particular position[s] on the touch sensor where the maximum or minimum capacitance values appear." (*Id.* at 14:1-4) Thus, Elantech proposed a construction of the "minima" limitation that requires identification of a finger profile value and not the location, or trace, corresponding to any particular finger profile value. Elantech proposed to define the "minima" limitation as requiring that the accused program routine must: "identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified." (*Id.* at 13:17-19.)

The Court rejected Synaptics's assertion that trace location is relevant to the identification step and adopted, *verbatim*, Elantech's claim construction, which excludes the trace location from the identification step as irrelevant. (*Id.* at 15:2-5.) Consequently, under this Court's prior claim

1  construction ruling, the "location" of a particular trace is insufficient as a matter of law to meet

2  the "identify . . . profile value" limitations.  Indeed, Elantech's assertion that the "minima" is

3  identified by "*a location* where the finger profile ceases to decrease is identified by the '0' in the

4  pattern '10'" (Docket No. 109, MacKenzie May 11 Decl. ¶ 18 at 6:1-8), directly contradicts

5  Elantech's claim construction position that this limitation "does not refer in any way to the

6  particular position[s] on the touch sensor where the maximum or minimum capacitance values

7  appear." (Docket No. 91, Court's April 6, 2007 Claim Construction Order at 14:1-4)  In short,

8  Elantech's infringement contention cannot be squared with the construction that Elantech offered

9  and that this Court adopted verbatim in the Court's April 6, 2007 Claim Construction Order.

10  Elantech's allegations are insufficient to prove infringement under the proper application of this

11  Court's claim construction ruling.

12

13  **2.  Under The Proper Application Of The Court's Claim Construction, There Is No Infringement.**

14       The claims at issue all literally recite the step of "scanning the touch sensor to (a) identify

15  a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first

16  maxima, (c) identify a second maxima in a signal corresponding to a second finger following said

17  minima." (Docket No. 91, Court's April 6, 2007 Claim Construction Order at 11:14-18)  The

18  Court construed the "scanning the touch sensor" claim terms to require:  "measuring the *values*

19  *generated by a touch sensor* to detect operative coupling and determining the corresponding

20  positions at which measurements are made." (*Id.* at 12:22-24 (emphasis supplied).)

21       The Court also construed the sub-elements (a)-(c) of the "scanning the touch sensor"

22  limitation as requiring the identification of specific values in "a finger profile obtained from

23  scanning the touch sensor." (*Id.* at 15:1-2.)  This is consistent with the language in the claim that

24  states that "scanning the touch sensor" results in "a signal corresponding to a first finger" and "a

25  signal corresponding to a second finger."  It is undisputed that the finger "signal" in the "finger

26  profile" reflects the magnitude of "values generated by the touch sensor" of the "operative

27  coupling" of the finger to the touch sensor. (Docket No. 72, Feb. 12, 2007 Declaration of

28  Andrew Wolfe Ph.D. Re: Construction of the '352 Patent Claims, ¶ 25; Docket No. 101, Wolfe

1    SJ Decl. ¶¶ 13, 22, 26, figures on pages 9 and 11, and Exhibit 2 ('352 Patent, Figures 3 and 4).)

2    Indeed, the finger profile consists only of those values "obtained from scanning the touch sensor."

3        The Court's April 6, 2007 claim construction literally requires an identification of the

4    "lowest value in the finger profile" between two "peak" values. Thus, to meet the claims, the

5    accused Type 2 code must take a step that actually finds the value in the finger profile that is the

6    lowest between two peaks. This is consistent with the only teaching in the patent with respect to

7    what it means to "identify" the required finger profile values. (Docket No. 101, Wolfe SJ Decl.,

8    Ex. 2 ('352 Patent, 8:64-66 ("Xpeak" and "Xvalley" finger profile values are identified by

9    specific variables in the program), and Figure 9-2 (finger profile values are used to determine

10   presence of two fingers).) *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005)

11   (en banc), *cert. denied*, 126 S. Ct. 1332 (2006) (finding it "entirely appropriate for a court...to

12   rely heavily on the written description for guidance as to the meaning of the claims" because

13   patent claims must "'conform to the invention as set forth in the remainder of the specification

14   and the terms and phrases used in the claims must find clear support or antecedent basis in the

15   description so that the meaning of the terms in the claims may be ascertainable by reference to the

16   description.' 37 C.F.R. § 1.75(d)(1).")

17       It is undisputed that there is no routine in the Type 2 enabled code that specifically and

18   literally identifies the lowest "value in the finger profile" between two peaks. Indeed, Elantech's

19   expert, Dr. MacKenzie, does not allege that the specific "value in the finger profile" is identified,

20   but rather merely asserts that a "10" pattern in a bit array would indicate to someone reading it

21   where to look for the trace that could then be examined to determine that value. (Docket No. 109,

22   MacKenzie May 11 Decl. ¶ 18 at 6:1-8.) Identifying a location where a person would look to

23   make an identification of a value is not literally an identification of that value, especially where,

24   as here, there is no evidence that the accused computer program takes any steps to make the

25   required identification of the "value in the finger profile" itself.[5]

26       [5] Indeed, as shown in the Figure on page 10 above, identification of the "location" of
     various "10" patterns in the accused bit array is insufficient to "identify" the lowest value in the
27   finger profile between two peaks as required by the Court's construction. As described in the
     '352 Patent specification, finding the lowest "value" between two peaks in the "finger profile" is
28                                                                    (Footnote continues on next page.)

1      The Court previously expressed concern that requiring an identification of a specific

2  "value in the finger profile" would somehow "allow a party to escape literal infringement by

3  transforming the measured capacitance values (e.g. trivially multiplying the finger profile values

4  by two) before identifying minima and maxima, because the identification steps would not use the

5  literally measured capacitance values." (Docket No. 172, Summary Judgment Order at 6:9-12.)

6  Synaptics does not assert that the "finger profile" data has to be literally the raw data from the

7  capacitance values measured by a touch sensor. (*See* Docket No. 101, Wolfe SJ Decl., ¶¶ 26-27

8  and associated figure (showing accumulated, smoothed and filtered measurement data as the

9  "finger profile").) However, there is no dispute that the literal claim terms require that the "finger

10  profile" values, *once compiled*, must *reflect* the magnitude of the measurements "obtained from

11  the touch sensor." (Docket No. 91, Court's April 6, 2007 Claim Construction Order at 15; *see*

12  *also* Docket No. 101, Wolfe SJ Decl. ¶¶ 13, 22, 26, figures on pages 9 and 11, and Exhibit 2

13  ('352 Patent, Figures 3 and 4); Docket No. 150, Ex. B to June 15, 2007 Labit Decl. at 9:13-25.)

14  Synaptics does not argue that multiplying the measured capacitance values by two or any other

15  number avoids infringement. Synaptics simply argues that once the finger profile values are

16  generated – and there is no dispute in this case about what the "finger profile values" are in the

17  accused products – there is no routine in the Type 2 enabled code that finds the "lowest value"

18  between two peaks in the finger profile.

19      There should be no concern that holding literally to the Court's prior claim construction is

20  unfair in the least. Under the Court's claim construction, infringement requires that a routine in

21  the accused code actually has an operation that specifically does "'identify the lowest value in the

22  finger profile that occurs after the first peak value, and before another peak value is identified.'"

23  No such routine exists in the Type 2 enabled code.

24

25  (Footnote continued from previous page.)

26  the key piece of information necessary to verify that two fingers are present on the touchpad. (Docket No. 101, Wolfe SJ Decl., Ex. 2 ('352 Patent, 8:64-66 ("Xpeak" and "Xvalley" finger profile values are identified by specific variables in the program), 10:52-65, and Figure 9-2

27  (finger profile "minima" value used to determine presence of two fingers).)

28

1    Moreover, Elantech has an available remedy provided by law for any "trivial" changes

2    made to the "finger profile" data to avoid the literal reading of the claims: the Doctrine of

3    Equivalents. The Doctrine of Equivalents is designed specifically to capture such insubstantial

4    changes, and the Court should not construe the claims to capture trivial changes under the guise

5    of a literal infringement analysis. *Southwall Techs. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.

6    Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found

7    in an accused product, *exactly*.") (emphasis added); *EMI Group N. Am. v. Intel Corp.*, 157 F.3d

8    887, 896 (Fed. Cir. 1998) (It is the doctrine of equivalents that applies when an accused infringer

9    makes "insubstantial changes that avoid the literal scope of the claims.") (citing *Warner-*

10   *Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)). In this case, Elantech has

11   presented no argument in support of a doctrine of equivalents claim and the Court should not

12   stretch the literal meaning of its prior construction to remedy Elantech's failure to raise a doctrine

13   of equivalents argument.

14                                    **CONCLUSION**

15    Elantech's summary judgment motion fails on at least four independent grounds. None of

16   the products at issue in Elantech's motion are accused of infringement in Elantech's Final

17   Infringement Contentions, which were filed nearly 8 months ago and were never amended.

18   Elantech fails to present any evidence of infringing acts in the United States. Elantech fails to

19   present any of the three elements required to establish the presence of the claimed "means for

20   providing." Finally, Elantech's infringement allegations are incorrect and fail under the Court's

21   original claim construction and the facts. Elantech's motion for partial summary judgment of

22   infringement should be denied.

23

24   Dated: December 21, 2007          KARL J. KRAMER
                                       ERIKA L. YAWGER
25                                     MORRISON & FOERSTER LLP

26                                     By:    s/Karl J. Kramer
                                              Karl J. Kramer
27
                                       Attorneys for Defendant and
28                                     Counterplaintiff SYNAPTICS, INC.

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                           SAN FRANCISCO DIVISION

11

12   ELANTECH DEVICES CORPORATION, a            Case No.    C06-01839 CRB
     corporation existing under the laws of Taiwan,
13   R.O.C.,                                    **[PROPOSED] ORDER DENYING
                                                ELANTECH'S MOTION FOR
14                    Plaintiff,                PARTIAL SUMMARY JUDGMENT
                                                OF INFRINGEMENT**
15        v.
                                                Date:  January 11, 2008
16   SYNAPTICS, INC., a Delaware corporation;   Time:  10:00 a.m.
     AVERATEC, INC., a California corporation; and  Courtroom 8, 19th Floor
17   PROSTAR COMPUTER, INC., a California       Hon. Charles R. Breyer
     corporation,
18
                      Defendants.
19

20   AND RELATED COUNTERCLAIMS

21

22

23

24

25

26

27

28

1         This matter comes before the Court on or about January 11, 2008.  Having considered

2    Synaptics, Inc.'s Brief in Opposition to Elantech's Partial Motion for Summary Judgment of

3    Infringement (the "Motion"), reviewed the papers filed by the parties related to the Motion, and

4    heard the argument of counsel, the Court rules as follows:

5         IT IS HEREBY ORDERED that Plaintiff's Motion is DENIED.

6    Dated: _____

7

8                          By: _____

9                              UNITED STATES DISTRICT COURT JUDGE
                          HONORABLE CHARLES R. BREYER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28