1  KARL J. KRAMER (CA SBN 136433)
   ERIKA L. LABIT (CA SBN 234919)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California  94304-1018
   Telephone: (650) 813-5600
4  Facsimile: (650) 494-0792
   KKramer@mofo.com
5

6  Attorneys for Defendant and Counterclaimant
   SYNAPTICS, INC.
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  ELANTECH DEVICES CORPORATION, a        Case No.    C06-01839 CRB
    corporation existing under the laws of Taiwan,
13  R.O.C.,                                 **SYNAPTICS' OPPOSITION TO
                                            ELANTECH'S MOTION FOR
14              Plaintiff and Counterdefendant,   PRELIMINARY INJUNCTION**

15         v.                               Date:  February 1, 2008
                                            Time:  10:00 a.m.
16                                          Courtroom 8, 19th Floor
    SYNAPTICS, INC., a Delaware corporation;   Hon. Charles R. Breyer
17  AVERATEC, INC., a California corporation;
    and PROSTAR COMPUTER, INC., a
18  California corporation,

19
                Defendants and Counterclaimants.
20

21  AND RELATED COUNTERCLAIMS

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

PROCEDURAL BACKGROUND..........................................................................1

ARGUMENT..........................................................................................................2

I.  A PRELIMINARY INJUNCTION IS AN EXTRAODINARY REMEDY THAT REQUIRES ELANTECH TO DEMONSTRATE BOTH LIKELY SUCCESS AND IRREPARABLE HARM ....................................................................2

II.  ELANTECH HAS FAILED TO ESTABLISH IRREPARABLE HARM ........................4

    A.  Elantech Must Make A Specific Showing Of Irreparable Harm, And Cannot Rely On The "Presumption" That Was Effectively Abolished By The Supreme Court's eBay Decision...................................................4

    B.  Elantech Has Not Shown and Cannot Show Irreparable Harm.............................5

III.  ELANTECH HAS FAILED TO ESTABLISH THAT IT IS LIKELY TO PREVAIL ON ITS CLAIM FOR INFRINGEMENT OF THE '352 PATENT................6

    A.  Elantech Is Unlikely To Defeat All Of Synaptics' Defenses To Infringement .................................................................................7

    B.  There Are Substantial Issues As To The Validity Of The '352 Patent...................7

        1.  Claim 18 of the '352 Patent is Fatally Indefinite .................................8

        2.  Claim 18 of the '352 Patent is Obvious in View of the Prior Art, Especially Under Elantech's Broad Application of this Claim.................12

            a.  The prior art discloses touch sensors detecting multiple fingers....................................................................................13

            b.  Use of maxima values to detect the presence of multiple fingers is obvious in view of the prior art ...................................14

            c.  Identifying a minima between the two maxima is obvious in view of the prior art, especially under Elantech's application of this element ...........................................................................16

            d.  The prior art discloses providing an indication of the simultaneous presence of two fingers .........................................19

        3.  Elantech Has Failed to Establish a "Clear Case" that Claim 18 is Valid in View of the Prior Art ...............................................................20

CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amazon.com, Inc. v. Barnesandnoble.com,*
239 F.3d 1343 (Fed. Cir. 2001) .......................................................................... 3, 6, 8, 16, 20

*B. Braun Med. Inc. v. Abbott Labs.,*
124 F.3d 1419 (Fed. Cir. 1997) ....................................................................................... 8, 12

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,*
296 F.3d 1106 (Fed. Cir. 2002) .............................................................................................. 9

*eBay, Inc. v. MercExchange, L.L.C.,*
126 S.Ct. 1837 (2006) ......................................................................................................... 1, 4

*Graham v. John Deere Co.,*
383 U.S. 1 (1966) ................................................................................................................. 13

*High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.,*
49 F.3d 1551 (Fed. Cir. 1995) ................................................................................................ 5

*Intel Corp. v. ULSI Sys. Tech., Inc.,*
995 F.2d 1566 (Fed. Cir. 1993) .............................................................................................. 2

*KSR International Co. v. Teleflex Inc.,*
127 S. Ct. 1727 (2007) ......................................................................................................... 13

*Maurice Mitchell Innovations, L.P. v. Intel Corp.,*
2006 U.S. Dist. LEXIS 85194 (E.D. Tex. Nov. 22, 2006) ...................................................... 9

*Med. Instrumentation and Diagnostics Corp. v. Elekta AB,*
344 F.3d 1205 (Fed. Cir. 2003) ..................................................................................... 8, 9, 12

*Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.,*
357 F.3d 1319 (Fed. Cir. 2004) .............................................................................................. 2

*Nutrition 21 v. U.S.,*
930 F.2d 867 (Fed. Cir. 1991) ............................................................................................. 6, 8

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.,*
491 F.3d 1342 (Fed. Cir. 2007) ............................................................................................ 20

*Reebok Int'l. v. J. Baker, Inc.,*
32 F.3d 1552 (Fed. Cir. 1994) ......................................................................................... 3, 4, 5

*Tiber Labs., LLC v. Hawthorn Pharms., Inc.,*
2007 U.S. Dist. LEXIS 67381 (N.D. Ga. Sept. 12, 2007) ................................................... 4, 5

*Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.,*
491 F. Supp. 2d 871 (D. Minn. 2007) ..................................................................................... 4

**TABLE OF AUTHORITIES**
(continued)

Page

*Visto Corp. v. Sproqit Techs., Inc.,*
  413 F. Supp. 2d 1073 (N.D. Cal. 2006)....................................................................3

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.,*
  842 F.2d 1275 (Fed. Cir. 1988) ...........................................................................16

**STATUTES**

35 U.S.C. § 102(b) ...................................................................................................13

35 U.S.C. § 102(e) ...................................................................................................13

35 U.S.C. § 103(a) ...................................................................................................13

35 U.S.C. § 112.................................................................................................*passim*

1

**INTRODUCTION**

2     Nearly two years after filing this suit in March 2006, Plaintiff and Counterdefendant

3   Elantech Devices Corporation ("Elantech") has belatedly moved for a preliminary injunction

4   against Defendant and Counterclaimant Synaptics, Inc. ("Synaptics").  Elantech presents no

5   justification for its extremely long delay in seeking preliminary relief — a delay that is, by itself,

6   fatal to Elantech's motion.

7     Elantech has also failed to present *any evidence* of *any* harm (let alone irreparable harm)

8   that it would suffer if a preliminary injunction is not granted.  Elantech's contention that

9   irreparable harm should be "presumed" is plainly untenable.  The Supreme Court recently

10   rejected a similar argument in *eBay, Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1840-41

11   (2006), holding that even after a *final* judgment of infringement, entry of an injunction is *not*

12   automatic; rather, the court must apply the traditional test for injunctive relief, which requires a

13   specific factual showing of irreparable harm.  Elantech has not made and cannot make any such

14   showing.

15     Moreover, Elantech also cannot establish that it is likely to prevail on its claim that U.S.

16   Patent No. 5,825,352 ("the '352 Patent") is valid and infringed.  As Synaptics demonstrated in its

17   opposition to Elantech's pending motion for partial summary judgment, Elantech's infringement

18   claim suffers from multiple defects.  In addition, there are substantial questions, which the Court

19   has not yet addressed, regarding whether the relevant claim of the patent is invalid because the

20   specification does not disclose any structure corresponding to the "means for indicating"

21   limitation, as required by 35 U.S.C. § 112, and also because the claim is obvious in view of the

22   prior art.

23     In sum, Elantech's motion should be denied because it has failed to establish irreparable

24   harm or a likelihood that it will prevail on the merits.

25

**PROCEDURAL BACKGROUND**

26     Elantech filed this lawsuit on March 10, 2006, asserting one claim against Synaptics for

27   infringement of the '352 Patent.  (Docket No. 1.)  Elantech's Complaint requested damages and a

28   permanent injunction, but did *not* request a preliminary injunction.  Elantech also did not request

1    a preliminary injunction in its June 20, 2006 Amended Complaint (Docket No. 21), or in the

2    August 4, 2006 Joint Case Management Statement (Docket No. 40)  On November 8, 2006,

3    Elantech settled its claims against one of the co-defendants, ProStar Computer, agreeing in a so-

4    called "Consent Judgment" that it would not assert infringement claims against ProStar or its

5    customers for ongoing or past sales of ProStar products including Synaptics' touchpads.  (Docket

6    No. 59.)

7        After completion of claim construction and one round of summary judgment motions, on

8    December 14, 2007 — more than 21 months after starting this lawsuit — Elantech filed a

9    preliminary injunction motion.  (Docket No. 184 ("Elantech's Preliminary Injunction Motion").)

10   Through nearly two years of litigation, Elantech has not prosecuted this case with any sense of

11   urgency.  The parties have taken only three depositions (two of experts) to date, on narrow topics

12   related to the summary judgment motions concerning infringement of the '352 Patent.  (Docket

13   No. 192, Joint Case Management Statement filed December 21, 2007, at 1:11-13.)  Significant

14   other discovery remains; for example, the inventors of the '352 Patent have not been deposed,

15   nor have any individual employees of Elantech or Synaptics been deposed.  One reason for the

16   limited discovery to date is that the parties have periodically engaged in settlement discussions

17   over the past two years.  Indeed, as Elantech has noted, the parties previously entered into an

18   informal "stand-still" to allow them to focus on settlement negotiations.  (Docket No. 198,

19   Declaration of Sean P. DeBruine ISO Elantech's Motion for Partial Summary Judgment, ¶ 15.)

20                              **ARGUMENT**

21   **I.    A PRELIMINARY INJUNCTION IS AN EXTRAODINARY REMEDY THAT
22           REQUIRES ELANTECH TO DEMONSTRATE BOTH LIKELY SUCCESS AND
         IRREPARABLE HARM.**

23       Elantech has misleadingly suggested that the standard for a preliminary injunction in a

24   patent case is quite lenient.  On the contrary, the Federal Circuit has emphasized that a

25   preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted."

26   *Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004)

27   (*quoting Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)).  Consistent

28   with this difficult standard, many of Elantech's cited cases actually *denied* a motion for

1    preliminary injunction. *See, e.g., Amazon.com, Inc. v. Barnesandnoble.com,* 239 F.3d 1343,

2    1365-1366 (Fed. Cir. 2001) (reversing grant of preliminary injunction because defendant raised

3    "substantial questions" of validity); *Reebok Int'l. v. J. Baker, Inc.*, 32 F.3d 1552, 1559 (Fed. Cir.

4    1994) (affirming denial of preliminary injunction due to insufficient showing of irreparable

5    harm); *Visto Corp. v. Sproqit Techs., Inc.*, 413 F. Supp. 2d 1073, 1076, 1085-86 (N.D. Cal. 2006)

6    (denying preliminary injunction because defendant raised "substantial questions" regarding

7    infringement).

8        The factors relevant to a preliminary injunction are: (1) likelihood of success on the

9    merits; (2) irreparable harm if a preliminary injunction is not granted; (3) the balance of

10   hardships between the parties; and (4) the public interest. *See, e.g., Amazon.com,* 239 F.3d at

11   1350.  The first two factors are particularly critical: "a movant cannot be granted a preliminary

12   injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the

13   merits and irreparable harm." *Id.* (emphasis in original).  A district court "may deny a

14   preliminary injunction based on the movant's failure to establish either of these two crucial

15   factors without making additional findings respecting the other factors." *Reebok Int'l.*, 32 F.3d at

16   1556.

17       Thus, to obtain a preliminary injunction, Elantech must demonstrate *both* that a

18   preliminary injunction is necessary to prevent irreparable harm and that there is a likelihood that

19   it will prove that the accused products infringe a valid and enforceable claim of the '352 Patent.

20   Here, Elantech cannot make either of these required showings.[1]

21

22

23

24   _____

25       [1]  Because Elantech has failed to establish either irreparable harm or likelihood of success
     on the merits, there is no need for this Court to address the "balance of hardships" or the "public

26   interest."  In any event, because Elantech has failed to establish irreparable harm, Elantech also
     cannot show that the balance of hardships tips in its favor.  Similarly, because Elantech has not

27   shown a likelihood of success, Elantech cannot establish a public interest in issuing an injunction
     on a patent that may be invalid or not infringed.

28

## II.    ELANTECH HAS FAILED TO ESTABLISH IRREPARABLE HARM.

### A.    Elantech Must Make A Specific Showing Of Irreparable Harm, And Cannot Rely On The "Presumption" That Was Effectively Abolished By The Supreme Court's eBay Decision.

A failure to establish irreparable harm is sufficient, by itself, to preclude a preliminary injunction. *See, e.g., Reebok Int'l.*, 32 F.3d at 1559. Elantech has presented *no evidence* that it would suffer irreparable harm if a preliminary injunction is not granted. Instead, Elantech has relied on an alleged rule that "[a] presumption of irreparable harm may be established by a strong showing of likelihood of success on the merits coupled with continuing infringement." (Elantech's Preliminary Injunction Motion at 4:3-4.) Although Elantech overstates the old rule, Elantech's assertion is plainly incorrect in view of the Supreme Court's recent ruling that a patentee is *not* presumptively entitled to an injunction even after a *final* judgment of infringement and validity; rather, the court must apply the traditional equitable test, which requires the patentee to demonstrate both that it has suffered an "irreparable injury," and that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay, Inc.*, 126 S.Ct. at 1839, 1841.

Although *eBay* involved a permanent injunction, its rationale applies with even more force to a preliminary injunction. As noted by one court, "*eBay*'s logic forbids courts to categorically presume irreparable harm in the preliminary-injunction context, even if a patentee has established that it will likely succeed on the merits." *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 881 (D. Minn. 2007). As noted by another court, "eBay does not leave room for a presumption of irreparable injury in patent cases, whether raised at the preliminary or permanent injunction phase." *Tiber Labs., LLC v. Hawthorn Pharms., Inc.*, 2007 U.S. Dist. LEXIS 67381, at *16 (N.D. Ga. Sept. 12, 2007). The court reasoned that because "[t]he Patent Act does not provide that special rules apply to a patent holder's request for a preliminary injunction," the patentee must have "the burden of proving irreparable injury" to be "consistent with eBay's preservation in patent cases of the traditional analysis applicable to injunctive requests." *Id.* at *16-17. The court further noted that "[m]ost district courts . . . in the wake of eBay's rejection of any specialized, categorical treatment of injunctions in patent cases,

1    have declined to apply a presumption of irreparable harm." *Id.* at *15 (citing *Torpso* and four

2    other recent decisions).[2]

3              **B.      Elantech Has Not Shown and Cannot Show Irreparable Harm.**

4              Although Elantech admittedly relies solely (and incorrectly) on the "presumption" of

5    irreparable harm, it is clear that Elantech could not establish irreparable harm even if it had

6    attempted to do so.  Elantech did not file its preliminary injunction motion until more than

7    *twenty-one months* after filing this lawsuit.  This extremely long delay refutes any allegation that

8    Elantech has an urgent need to obtain a preliminary injunction now, before the final merits

9    judgment, to prevent "irreparable harm."  As the Federal Circuit stated in reversing the grant of a

10   preliminary injunction, "[a]bsent a good explanation, not offered or found here, 17 months is a

11   substantial period of delay that militates against the issuance of a preliminary injunction by

12   demonstrating that there is no apparent urgency to the request for injunctive relief."  *High Tech*

13   *Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)

14   (citing cases involving delays of between seven and a half to fifteen months).  *See also Tiber*

15   *Labs.*, 2007 U.S. Dist. LEXIS 67381, at *22-23 (patentee's "13-month and 17-month delay in

16   bringing its two infringement actions combined with [its] apparent willingness to license the

17   '689 patent preclude a finding of irreparable harm").

18             Elantech's own lack of urgency in prosecuting its claims further refutes any allegation

19   that there is an urgent need for a preliminary injunction.  Although this lawsuit was filed nearly

20   two years ago, only three depositions have been taken "on narrow topics."  (Docket No. 192 at

21   1:11-13.)  Moreover, in November 2006, Elantech agreed that it would not assert infringement

22   claims against co-defendant ProStar or its customers for sale of current or past ProStar products,

23   even though ProStar did not agree to cease sale of products including Synaptics touchpads or to

24   pay any money to Elantech.  (Docket No. 59.)

25             [2]  Before *eBay* abolished any presumption of irreparable harm, the presumption was
26   merely a procedural device that shifted the burden of presenting evidence (and not the burden of
     proof), which could be rebutted by contrary evidence.  *Reebok Int'l.*, 32 F.3d at 1556-58
27   (presumption of irreparable harm was rebutted).  Here, Elantech's lengthy delay and the absence
     of any proof of any damage to Elantech is sufficient to preclude a finding of irreparable harm.

28

1  Elantech has alleged vaguely that Synaptics is a "competitor," but has presented no

2  evidence that money damages would be inadequate to compensate for alleged harm caused by

3  sales that are later determined to infringe a valid claim of the '352 Patent.  For example, Elantech

4  has presented no evidence regarding the volume of allegedly infringing U.S. sales or the impact

5  of such sales on Elantech.  "[N]either the difficulty of calculating losses in market share, nor

6  speculation that such losses might occur, amount to proof of special circumstances justifying the

7  extraordinary relief of an injunction prior to trial." *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 (Fed.

8  Cir. 1991).  In addition, "there is no *presumption* that money damages will be inadequate";

9  rather, "[s]ome evidence and reasoned analysis for that inadequacy should be proferred." *Id.* at

10  872 (emphasis in original).

11  Elantech has presented no "evidence or reasoned analysis" in support of its assertion that

12  a preliminary injunction is needed to prevent irreparable harm.  Therefore, Elantech's motion

13  should be denied for failure to establish irreparable harm.  The Court need look no further before

14  rejecting Elantech's motion.

15  **III.  ELANTECH HAS FAILED TO ESTABLISH THAT IT IS LIKELY TO PREVAIL ON ITS CLAIM FOR INFRINGEMENT OF THE '352 PATENT.**

16  "[A]t the preliminary injunction stage, because of the extraordinary nature of the relief,

17  the *patentee* carries the burden of showing likelihood of success on the merits with respect to the

18  patent's validity, enforceability, and infringement." *Nutrition 21*, 930 F.2d at 869 (Fed. Cir.

19  1991) (emphasis in original).  Because the patentee bears the burden of proving likely success,

20  the defendant can defeat a preliminary injunction motion by raising a "substantial question" as to

21  either infringement or validity.  Thus, a preliminary injunction should be denied if the defendant

22  "raises a substantial question concerning either infringement or validity, *i.e.*, asserts an

23  infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit.'"

24  *Amazon.com,* 239 F.3d at 1350-51 (citations in original).

25  As discussed below, there are "substantial questions" regarding both whether claim 18 of

26  the '352 Patent is infringed and valid.  Therefore, Elantech's motion should be denied because

27  Elantech has failed to establish the required likelihood of success on the merits.

28

**A.    Elantech Is Unlikely To Defeat All Of Synaptics' Defenses To Infringement.**

Elantech's motion is based solely on its claim that Synaptics' touchpads with "Type 2" code enabled to allow multiple finger detection infringe claim 18 of the '352 Patent.  (Elantech's Preliminary Injunction Motion at 3:16-21.)  Elantech cannot establish that it will likely prevail on infringement because Synaptics has raised four substantial defenses, set forth in Synaptics' opposition to Elantech's motion for partial summary judgment, filed December 21, 2007 (Docket No. 195 ("Synaptics' Partial Summary Judgment Opposition").)

First, Elantech cannot establish that the accused products infringe claim 18 because the only products identified in Elantech's "Final Infringement Contentions" are Synaptics' "TM41" series product, which do not include the allegedly infringing "Type 2" code.  (*Id.* at 2:4 to 3:2.)

Second, Elantech has failed to meet its burden of proving that Synaptics has sold any touchpad products with Type 2 enabled code in the United States or engaged in any other arguably infringing act in the United States.  (*Id.* at 3:4 to 4:7.)

Third, Elantech has failed to prove infringement of the "means for providing an indication" limitation in the '352 Patent, because it has not identified any corresponding structure in the '352 Patent or demonstrated that the Synaptics products include an identical or equivalent structure.  (*Id.* at 4:10 to 6:8.)

Finally, Elantech has failed to prove that the Synaptics products identify "the lowest value in the finger profile," as required by this Court's prior interpretation of the "identify[ing] a minima" limitation of claim 18.  (*Id.* at 6:12 to 15:13.)

All four of these defenses raise at least a "substantial question" as to infringement. Therefore, Elantech cannot establish that it is likely to prevail on the merits.

**B.    There Are Substantial Issues As To The Validity Of The '352 Patent.**

Elantech also cannot establish the required likelihood of success because there are substantial issues as to whether the '352 Patent is valid.  Elantech has incorrectly suggested that in this motion Synaptics "bears the burden of proving invalidity or unenforceability of the asserted patents."  (Elantech's Preliminary Injunction Motion at 3:8-9.)  At the preliminary injunction stage, "the *patentee* carries the burden of showing likelihood of success on the merits

1   with respect to the patent's validity, enforceability, and infringement." *Nutrition 21*, 930 F.2d at

2   869 (emphasis in original).  To establish likely success, the patentee "must…present a clear case

3   supporting the validity of the patent." *Amazon.com,* 239 F.3d at 1359.   The defendant, in

4   contrast, can defeat a preliminary injunction motion by raising "a substantial question" as to

5   validity or enforceability.  *Id.* at 1350.

6         Here, Elantech has failed to present a "clear case" of validity.  Indeed, Elantech presented

7   no evidence or argument concerning the validity of claim 18 of the '352 Patent and submits no

8   expert testimony supporting validity.  Because Elantech failed to make any effort to meet its

9   burden with respect to validity, this Court should deny Elantech's motion for preliminary

10  injunction.  Moreover, there are at least two substantial questions of validity, each of which is

11  sufficient to require denial of Elantech's motion.

12              **1.      Claim 18 of the '352 Patent is Fatally Indefinite.**

13        The first validity problem with the '352 Patent is that the specification fails to "clearly

14  link or associate" a structure that performs the function recited in the "means for providing"

15  limitation of claim 18, as required by 35 U.S.C. § 112.  The Court has note yet addressed this

16  issue.

17        Paragraph 6 of 35 U.S.C. § 112 states that a limitation "expressed as a means or step for

18  performing a specified function without the recital of structure" shall be construed "to cover the

19  corresponding structure…described in the specification and equivalents thereof."  The Federal

20  Circuit has held that "structure disclosed in the specification is 'corresponding' structure only if

21  the specification or prosecution history *clearly links or associates* that structure with the claimed

22  function." *Med. Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed.

23  Cir. 2003) (emphasis added), *quoting B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424

24  (Fed. Cir. 1997).  "Clearly linking" structure with the claimed function is the "price" or "quid

25  pro quo" that the patentee must pay for the "convenience" of expressing a limitation as a means

26  to perform a function, without reciting in the claim "all possible structures that could be used as

27  means in the claimed apparatus." *Med. Instrumentation and Diagnostics Corp.*, 344 F.3d at

28  1211.  If the specification fails to "clearly link or associate structure" with the function, "the

1    patentee has not paid that price but is rather attempting to claim in functional terms unbounded

2    by any reference to structure in the specification," which is "impermissible under the statute."

3    *Id.*

4        The Federal Circuit has strictly applied this requirement.  To qualify as "corresponding"

5    structure, it is not sufficient that the specification identifies a structure that is *capable* of

6    performing the claimed function; rather, "the specification must *clearly associate* the structure

7    with performance of the function."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d

8    1106, 1113 (Fed. Cir. 2002) (emphasis added).  Without such a clear association, the means-

9    plus-function claim is indefinite and hence invalid under Section 112, paragraph 2, which

10   requires the patentee to "particularly point[] out and distinctly claim[]" the invention.  35 U.S.C.

11   § 112; *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 2006 U.S. Dist. LEXIS 85194, at **13-

12   15 (E.D. Tex. Nov. 22, 2006).

13       Here, claim 18 of the '352 Patent recites a "means for providing an indication of the

14   simultaneous presence of two fingers in response to identification of said first and second

15   maxima."  However, there is at least a "substantial question" as to whether the specification of

16   the '352 Patent "clearly links or associates" a corresponding structure with performance of this

17   function.  Dr. Andrew Wolfe, an electrical engineer with expertise in touch-sensitive systems,

18   has opined that the specification does *not* identify a structure that is described as performing this

19   function.  (Declaration of Dr. Andrew Wolfe In Support of Synaptics' Opposition to Elantech's

20   Motion for Preliminary Injunction ("Wolfe Preliminary Injunction Decl."), filed herewith, ¶¶ 11-

21   28; and Docket No. 72, Declaration of Andrew Wolfe Ph.D Regarding Construction of the '352

22   Patent Claims ("Wolfe Claim Construction Decl."), filed February 12, 2007,  ¶ 46.)  Dr. Wolfe's

23   opinion is entitled to substantial weight, because whether the specification clearly identifies

24   corresponding structure is "undertaken from the perspective of a person of ordinary skill in the

25   art."  *Cardiac Pacemakers,* 296 F.3d at 1113.

26       Elantech initially asserted that the '352 Patent identifies microcontroller 60 as associated

27   with the function of "providing an indication of the simultaneous presence of two fingers,"

28   because the specification states that the microcontroller's output is, in some cases, "supplied to

1  an interface to a PC or other device." (Docket No. 65, Elantech's Claim Construction Brief, at

2  14:13-15.) More recently, however, Elantech has shifted its argument to now point to the

3  algorithm illustrated in Figure 9-2, and in particular, to Step 980 of that algorithm.[3] (Docket

4  No. 197, Elantech's Reply ISO Partial Summary Judgment Motion, at 5:6-9; and Docket

5  No. 126, Elantech's Summary Judgment Motion, at 12:11 to 13:14.) Neither of Elantech's

6  efforts to patch this problem is availing.

7      The specification does not "clearly link" microcontroller 60 to the function of "providing

8  an indication." The only statement in the specification about the "output" of microcontroller 60

9  is as follows: "*Depending on the operation being performed at the particular time*, the output of

10  microcontroller 60 is then supplied to an interface to a PC or other device. . . ." (Wolfe

11  Preliminary Injunction Decl., Ex. 2, '352 Patent at 5:52-55 (emphasis added).) This statement is

12  extremely vague as to the content and purpose of "the output," as well as the nature of "the

13  operation being performed at the particular time." Nothing in this statement "clearly links" this

14  output with the function of "providing an indication of the simultaneous presence of two fingers

15  in response to identification of said first and second maxima." This sentence indicates that

16  *certain* information may be output from the microcontroller — "[d]epending on the operation

17  being performed at the particular time" — but does not say *which operations* will result in

18  output, or *what* is output. (Wolfe Preliminary Injunction Decl., ¶¶ 13, 18; and Wolfe Claim

19  Construction Decl., at ¶ 46.)

20      Elantech has relied on the statement in the specification that "microcontroller 60 operates

21  to form, among other things, a finger profile for one or more fingers, X-Y cursor data, and

22  control signals." (Docket No. 126 ("Elantech's Summary Judgment Motion"), at 12:26-27,

23  *citing* '352 Patent, at 5:49-51.) However, forming "a finger profile" and "X-Y cursor data" are

24  _____

25      [3] It should be noted that this Court did *not* address whether the '352 Patent "clearly links
   or associates" microcontroller 60 (or anything else) with the function of "providing an indication"
26  in its Claim Construction Order (Docket No. 91), or its Summary Judgment Order (Docket
   No. 172). Further, the parties' prior arguments were in the context of claim construction and
27  infringement, not invalidity. Thus, the issue of whether claim 18 is invalid due to indefiniteness
   has not previously been presented to this Court for decision, nor has this Court ruled on this issue.

28

1    not associated with the function of "providing an indication" of the presence of multiple fingers.

2    "Control signals" are also not clearly linked to this function.  The specification does not identify

3    what control signals are included.  Moreover, a report of the number of fingers on the touchpad

4    would not be a considered a control signal.  (Wolfe Preliminary Injunction Decl., ¶¶ 20-23.)

5            Elantech's alternative argument, which relies upon the flow chart in Figure 9-2 of the

6    patent, also fails.  (Elantech's Summary Judgment Motion at 12:27 to 13:2, *citing* '352 Patent,

7    Figure 9-2, Step 980; *see* '352 Patent, 15:26-29.)  The "algorithm" shown in Figure 9-2 is limited

8    to *determining* that two fingers are present, by comparing certain data (Step 305) and then

9    storing the results of that comparison in the internal memory of that module of the algorithm

10   (Step 975 or 980).  Neither the flowchart nor the specification state that information about the

11   number of fingers is "provided" to an interface to a PC or to some other device.  Rather, the

12   specification describes an algorithm that *determines* whether two fingers are present, but then

13   fails to describe how or even whether this determination is output to anywhere else.  Indeed, the

14   flowchart simply ends with only the determination of the number of fingers.  (Wolfe Preliminary

15   Injunction Decl., ¶¶ 24-26.)

16           At most, Step 980 in Figure 9-2 discloses that the *determination* that two fingers are

17   present is stored in the internal memory of the module of the algorithm that makes this

18   determination.  This does not constitute an "affirmative step to provide an indication of multiple

19   fingers," as required by the Court's prior ruling.  (*See* Docket No. 172, Summary Judgment

20   Order, at 7:27-28.)[4]

21

22   _____

23           [4]  The plain language meaning of "providing an indication" is that this indication is
     provided *by* a first structure *to* a second structure, which necessarily requires that the first
24   structure (whether an algorithm or a microcontroller) *output* the indication to *another* device.
     This plain language reading is reinforced by the specification of the '352 Patent, which makes
25   clear that the purpose of the invention is to identify and evaluate finger movements, and then to
     "report" information about these movements to programs running on the host computer.  (Wolfe
26   Preliminary Injunction Decl., ¶¶ 15-17, 27; and Ex. 2, '352 Patent, 15:55 to 16:5; 1:13-15; 2:56 to
     3:65.)  The specification defines "report" as "transmitting information to an application process
27   executing on a host, such that the cursor is moved or a function is performed."  (Wolfe
     Preliminary Injunction Decl., Ex. 2, '352 Patent, 7:26-29.)

28

1    Thus, Elantech's position boils down to the argument that because microcontroller 60 or

2  the algorithm in Figure 9-2 might be *capable* of performing the recited function, the

3  microcontroller and/or the algorithm should be deemed to be the structure that corresponds to

4  this function.  However, the Federal Circuit has repeatedly rejected the argument that the ability

5  to perform a function is sufficient, by itself.  *Medical Instrumentation and Diagnostics Corp.*,

6  344 F.3d at 1211-12, 1219 (Even though many widely available computer programs were

7  capable of implementing the claimed function, the Federal Circuit found no clear linkage of such

8  "structure" to the claimed function.); *B. Braun Medical Inc.*, 124 F.3d at 1424-25 (no clear

9  linkage for function of holding a disc firmly against another structure).

10   Here, too, the specification of the '352 Patent does not clearly link the function of

11  "providing an indication" of the presence of two fingers with microcontroller 60 or any other

12  specific structure.  Indeed, Elantech's shifting positions on what is the alleged corresponding

13  structure merely underscores that claim 18 is indefinite.  As the Federal Circuit has emphasized:

14  "The public should not be required to guess as to the structure for which the patentee enjoys the

15  right to exclude.  The public instead is entitled to know precisely what kind of structure the

16  patentee has selected for the claimed functions, when claims are written according to section

17  112, paragraph 6."  *Medical Instrumentation and Diagnostics Corp.*, 344 F.3d at 1220.  Because

18  the '352 Patent fails to "clearly link" a specific structure with the precise function recited in the

19  claim, there is at least a substantial question as to whether the claim 18 of the '352 Patent is

20  invalid.

21    **2.    Claim 18 of the '352 Patent is Obvious in View of the Prior Art,
      Especially Under Elantech's Broad Application of this Claim.**

22
       A second validity problem with claim 18 of the '352 Patent is that it is obvious in view of

23
   the prior art, especially under the broad application of the claim that Elantech urges in support of

24
   its infringement allegations.

25
       A patent claim is invalid as obvious if "the differences between the subject matter sought

26
   to be patented and the prior art are such that the subject matter as a whole sought to be patented

27
   and the prior art are such that the subject matter as a whole would have been obvious at the time

28

1   the invention was made to a person having ordinary skill in the art to which said subject matter

2   pertains." 35 U.S.C. § 103(a). Factors relevant to whether an invention is obvious include (1)

3   the scope and content of the prior art; (2) the differences between the prior art and the claims at

4   issue; and (3) the level of ordinary skill in the pertinent art.[5] *KSR International Co. v. Teleflex*

5   *Inc.*, 127 S. Ct. 1727, 1734 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

6       As Dr. Wolfe explains in his declaration and accompanying Invalidity Chart, claim 18

7   would have been obvious to one of ordinary skill in view of the prior art when the '352 Patent

8   application was filed in January 1996. (Wolfe Preliminary Injunction Decl., ¶¶ 29-50 and Ex. 3.)

9   Dr. Wolfe relies on two prior art patents: US Patent No. 7,109,978 B2, which is assigned to

10  Synaptics ("the Synaptics '978 Patent"), and U.S. Patent No. 4,686,332, which is assigned to

11  IBM (the "IBM '332 Patent"). (Wolfe Preliminary Injunction Decl. Exs. 4 and 5.)[6] The key

12  points of Dr. Wolfe's analysis of obviousness are summarized below.

13      **a.    The prior art discloses touch sensors detecting multiple fingers.**

14      The first paragraph of claim 18 of the '352 Patent recites "[a] touch sensor for detecting

15  the operative coupling of multiple fingers." (Wolfe Preliminary Injunction Decl. Ex. 2, '352

16  Patent, 17:27-28.) The '352 Patent incorrectly suggests that the prior art did not disclose this

17  basic concept, characterizing prior art capacitive touch sensing devices as follows: "Typical of

18  each of these prior art devices is that each of them sense any contact as that of *only one finger at a*

19  *time*." (*Id.* at 1:27-42 (emphasis added).)

20      Contrary to the assertions in the patent, the prior art *did* disclose the basic concept of using

21  a capacitive touch sensor device to detect the presence of multiple fingers. In particular, Claim 1

22  ─────────────────────

23      [5] Certain "secondary" considerations may also be relevant, such as commercial success of
    the invention and meeting a long-felt need. However, Elantech has presented no evidence of

24  secondary considerations that would support a finding that Claim 18 is non-obvious, and
    Synaptics is not aware of any such evidence. Moreover, the evidence presented by Synaptics
    herein is more than adequate to raise a substantial question of validity.

25      [6] The Synaptics '978 Patent constitutes prior art under 35 U.S.C. § 102(e), because it is

26  based on an earlier related application filed on October 7, 1994, whose specification included all
    relevant disclosures. (*See* Wolfe Preliminary Injunction Decl., ¶ 31.) The IBM '332 Patent

27  constitutes prior art under 35 U.S.C. § 102(b), because it issued in August 1987, more than *eight
    years before* the January 4, 1996, priority date of the '352 Patent.

28

1    of the Synaptics '978 Patent broadly claims a method of detecting "the simultaneous presence of

2    at least two user input objects" on a touchpad, as follows:

3         1.       A method of processing a user input received on a capacitive touch
                   sensor pad including a matrix of X and Y conductors, the method
4                  comprising the steps of:

5                  *developing capacitance profiles* in one of an X direction and a Y
                   direction from said matrix of X and Y conductors, said capacitance
6                  profiles identifying a simultaneous presence of at least two user input
                   objects on such capacitive touch sensor pad;
7
                   *examining* said capacitance profiles *to determine* an occurrence of a
8                  single gesture resulting from *the simultaneous presence of at least two
                   user input objects*; and
9
                   *indicating the occurrence* of said single gesture resulting from *said
10                 simultaneous presence of the at least two user input objects*.

11

12   (Wolfe Preliminary Injunction Decl. Ex. 4, Synaptics '978 Patent, Claim 1 (emphasis added); *see
     also* Claims 4 and 10 (related device claims).)
13

14         Thus, the Synaptics '978 Patent claims a method of detecting the "simultaneous presence"

15   of at least two fingers (or other "user input objects") on a touchpad that involves (1) *developing* a

16   "capacitance profile" of a finger or other user input objects based on "X" and "Y" capacitance

17   data; (2) *examining* the capacitance profiles *to determine* the "simultaneous presence" of at least

18   two fingers or other objects; and (3) *indicating* the occurrence of such "simultaneous presence" of

19   at least two fingers or other objects.  This patent is very broad, in that it covers *any* method of

20   determining and then indicating the simultaneous presence of two fingers by "examining" finger

21   profile data from a capacitive touchpad, regardless of the specific implementation.  Thus, the first

22   element of claim 18 of the '352 Patent is disclosed by the claims of the Synaptics' '978 Patent, as

23   well as by numerous references in the specification to detection of multiple fingers on a touchpad.

24   (Wolfe Preliminary Injunction Decl., ¶ 37; Ex. 3, Item 18.1; and Ex. 4, '978 Patent, Abstract,

25   5:31-33, 5:57-61, 7:17-20, 47:3-9.)

26                        **b.       Use of maxima values to detect the presence of multiple
                                    fingers is obvious in view of the prior art.**

27         The next limitation of claim 18 of the '352 Patent is directed to "means for scanning" the

28   touch sensor to identify two maxima corresponding to two fingers, as well as a minima between

1    the two maxima.  As Dr. Wolfe explains, the prior art made it obvious to one of ordinary skill in

2    the art to use maxima values to identify the presence of two fingers.  (Wolfe Preliminary

3    Injunction Decl., ¶¶ 38-40.)  As noted above, the Synaptics '978 Patent generally covers any

4    method of detecting multiple fingers using data from a capacitive touchpad.  The '978 Patent also

5    discloses that prior art in 1994 taught that a maxima capacitance value identifies the presence of a

6    finger, citing to the IBM '332 Patent, which it describes as follows:

> As a finger detection system, its X/Y sensor matrix is used to locate
> the two matrix wires carrying *the maximum signal*.  With a coding
> scheme these two wires *uniquely determine the location of the finger
> position* to the resolution of the wire stepping.

10   (Wolfe Preliminary Injunction Decl., Ex. 4, Synaptics '978 Patent, 2:64 to 3:1 (emphasis

11   added).)  This description of the IBM '332 Patent is consistent with its specification, which

12   states:

> The control processor 100 identifies the unique pair of the 112
> vertical X conductors XI and XI+1 having *the highest capacitance*
> and that is attributed as *the horizontal position of the finger touch*.
> Correspondingly, the unique pair of the 112 horizontal Y conductors
> YJ and YJ+1 having *the highest capacitance values* are identified and
> those are attributed as *the vertical location for the finger touch*. This
> information is output by the control processor 100 through the I/O
> controller 106 to the I/O bus 108.

18   (Wolfe Preliminary Injunction Decl., Ex. 5, IBM '332 Patent, at 14:2-11 (emphasis added).)

19          The specification of the '978 Patent further teaches that the "shape of the sensor trace

20   profile" can be used to recognize two-finger gestures.  (Wolfe Preliminary Injunction Decl.,

21   Exh. 4, Synaptics '978 Patent, 47:7-9.)  The two "peaks" or maxima are the most prominent

22   features of the sensor trace profile of two fingers.  (Wolfe Preliminary Injunction Decl., ¶ 40.)  In

23   view of these disclosures, it would have been obvious to one of ordinary skill in the art to detect

24   two fingers by identifying two maxima capacitance values, each of which corresponds to the

25   location of a finger.  (*Id.*, ¶¶ 39-40.)

1

   c.    **Identifying a minima between the two maxima is
         obvious in view of the prior art, especially under
         Elantech's application of this element.**

2

3      In addition to referring to two maxima, the second paragraph of claim 18 states that the

4   "means for scanning the touch sensor" also "identify[ies] a minima following the first maxima."

5   In its Claim Construction Order, this Court interpreted this limitation as meaning, "identify the

6   lowest value in the finger profile that occurs after the first peak value, and before another peak

7   value is identified." (Docket No. 91 ("Claim Construction Order"), at 15:2-5.)

8      The limitations in a claim must, of course, be applied in the same manner for the purpose

9   of both infringement and validity. *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275,

10  1279 (Fed. Cir. 1988); *Amazon.com,* 239 F.3d at 1351. Synaptics' position is that its "Type 2"

11  code does not infringe claim 18 because it does not "identify the lowest value in the finger

12  profile." If, however, "identify the lowest value in the finger profile" were applied in a manner

13  that is broad enough to encompass the Type 2 code, then Synaptics contends that claim 18 is

14  obvious and hence invalid in view of the prior art. In other words, under a consistent claim

15  construction, claim 18 is either not infringed or not valid. Because of this relationship between

16  infringement and validity, a brief review of the parties' arguments on infringement is needed to

17  understand Synaptics' invalidity defense.

18     Synaptics contends that "Type 2" code does not "identify the lowest value in the finger

19  profile" because it does not include any step that identifies either the value or the location of the

20  lowest value in the finger profile generated from trace values from the capacitive touch sensor.

21  Instead, as illustrated by Figure 1 below, the finger profile trace data is processed to generate a

22  series of "0's" and "1's," which indicate whether the finger profile is increasing ("0") or

23  decreasing ("1") at each location, compared to the following value. This "increasing/decreasing"

24  data is then processed further, resulting in a series of "0's" with two "1's" denoting the presence

25  of two maxima. (*See* Wolfe Preliminary Injunction Decl., ¶ 41-42 and Table 1.)

26

27

28

| | TR 1 | TR 2 | TR 3 | TR 4 | TR 5 | TR 6 | TR 7 | TR 8 |
|---|---|---|---|---|---|---|---|---|
| Finger Profile Values | 13 | 17 | 26 | 18 | 14 | 28 | 30 | 22 |
| Increasing/Decreasing Data | 0 | 0 | 1 | 1 | 0 | 1 | 1 | - |
| Peak Present | 0 | 0 | **1** | 0 | 0 | 0 | **1** | 0 |

**Figure 1: Type 2 Code Processes Finger Profile Values to Identify the Presence of Maxima, But Does Not Identify Minima Values or Trace Locations.**

As illustrated by Figure 1, at best the Type 2 code identifies the *location* of two maxima, which are indicated by the two "1's" at the memory locations that could be associated with trace 3 and trace 7. Type 2 code does not identify the *value* of the two maxima (26 and 30), nor does it identify either the value ("14") or the location ("TR 5") of the minima between the maxima.

Elantech has argued that Type 2 code identifies "the value of the minima," because the *location* of the minima between the two maxima can be determined by analyzing the relationship between consecutive elements in the "increasing/decreasing" data to find a place where that data indicates decreasing values ("1") followed immediately by an increasing value ("0"). (Docket No. 197, Elantech's Reply In Support of Partial Summary Judgment Motion, filed December 28, 2007, at 6:1-6; and Docket No. 161, Elantech's Reply In Support of Summary Judgment Motion, filed June 22, 2007, at 4:4-22.) Synaptics believes that this argument should be rejected because (a) the Type 2 code does not *actually* analyze the increasing/decreasing data to identify a "1" followed by a "0"; (b) even if this analysis were performed, it would merely identify the *location* of a minima (TR 5), and not its *value* (14); and (c) if there are two or more minima between two maxima, it would be impossible to determine the minima with the "lowest value," as required by this Court's claim construction. (*See* Wolfe Preliminary Injunction Decl., ¶ 44.)

If Elantech's infringement argument were accepted, however, this would effectively rewrite the claim term "identify a minima" to mean "generate data from which the location (but not the value) of a minima in the finger profile between the two maxima could be determined, after further analysis of that data." Synaptics believes that this would be inconsistent with this Court's prior construction of this limitation as meaning, "*identify the lowest value* in the finger

1  profile that occurs after the first peak value, and before another peak value is identified." (Claim

2  Construction Order at 15:2-5 (emphasis added).)  However, applying this limitation in the manner

3  proposed by Elantech renders this limitation obvious in view of prior art that also "generates data

4  from which the location of a minima could be determined, after further analysis."

5       As discussed above, the combination of the Synaptics '978 Patent and the IBM '332

6  Patent makes it obvious to use maximum capacitance values to detect the simultaneous presence

7  of two fingers on a touchpad.  These prior art references also "identify a minima following the

8  first maxima," if this is applied as meaning, "generate data from which the location of a minima

9  can be determined, after further analysis."  Both the Synaptics '978 Patent and the IBM '332

10  Patent disclose devices that generate finger profile data, similar to the data in Figure 1 above.

11  (Wolfe Preliminary Injunction Decl., ¶ 45-46.)  This data is sufficient to enable both the location

12  and the value of a minima following the first maxima to be determined, by comparing the data to

13  identify a value that is lower than both the preceding and following values.  (*Id.*)

14       Elantech could argue that merely generating finger profile data does not "identify the

15  minima," because further analysis of this data is required to determine the location and value of

16  the minima.  However, if "identify a minima" were applied as meaning, "conduct all steps

17  required to identify a minima, without any further analysis," then Synaptics' Type 2 code does

18  not "identify the minima" because the "increasing/decreasing" data generated by this code is not

19  sufficient to "identify" the location of a minima, without further analysis.  The further analysis

20  required to "identify a minima" from this "increasing/decreasing" data is no different in nature

21  than the analysis required to identify the minima from the finger profiles generated by the prior

22  art devices.  In both cases, an algorithm must be performed that involves the steps of examining

23  and comparing consecutive elements of the data between the two maxima to identify relationships

24  between elements that meet certain conditions.  (Wolfe Preliminary Injunction Decl., ¶ 47.)

25       In sum, if "identify a minima" is applied as covering a device that generates data from

26  which a minima could be identified after further analysis (as urged by Elantech), then this

27  limitation is disclosed by the prior art.  On the other hand, if this limitation were applied as

28  requiring the device to perform all steps required to identify the minima (as proposed by

Synaptics), then Synaptics' Type 2 code does not infringe this limitation. Therefore, Elantech cannot establish that it will likely prevail on *both* infringement and validity.[7]

### d.    The prior art discloses providing an indication of the simultaneous presence of two fingers.

The final limitation of claim 18 of the '352 Patent is a "means for providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima." As discussed above, this limitation is indefinite because the '352 Patent does not "clearly link or associate" any specific structure with the function of "providing an indication," as required by 35 U.S.C. § 112 and Federal Circuit precedent. Because this limitation is indefinite, claim 18 is invalid, and it is impossible to determine the precise scope of this limitation.

Assuming, however, that this limitation refers to a structure that reports the simultaneous presence of two fingers to the host computer or other device, then this limitation is disclosed by the prior art. Claims 1 and 10 of the '978 Patent are directed to a method and device that "indicate[s] the occurrence of a gesture" resulting from the simultaneous presence of two fingers. (Wolfe Preliminary Injunction Decl., Ex. 4, '978 Patent, Claims 1, 10.) The '978 Patent teaches that information about finger gestures may be provided to the "host," meaning a stand-alone computer or other device, and describes the structures that implement this function in the specification and figures. (*See* Wolfe Preliminary Injunction Decl., ¶ 49-50 and Ex. 4, '978 Patent, 7:43-46, 9:59-67, 34:21-56, 47:21-40, 49:45-55, Fig. 1 (Item 20), Fig. 14 (Item 286).)

In sum, there is a substantial question about whether claim 18 would have been obvious to one of ordinary skill in the art in view of the Synaptics' '978 Patent and the IBM '332 Patent.

---

[7] This limitation would also have been obvious even if all steps required to identify a minima must be performed. As Dr. Wolfe notes, the '978 Patent teaches that the "shape of the sensor trace profile" can be used to recognize two finger gestures. Because the minima is the most prominent feature of this shape other than the two maxima, identifying a minima between the maxima would have been an obvious part of detecting two fingers, especially since measuring the depth of a minima between two maxima was a well-known way to distinguish two distinct events in a signal from mere "noise." (Wolfe Preliminary Injunction Decl., ¶ 48.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    Elantech Has Failed to Establish a "Clear Case" that Claim 18 is Valid in View of the Prior Art.

As noted above, Elantech bears the burden of presenting a "clear case" supporting the validity of claim 18 of the '352 Patent in view of the prior art. *Amazon.com,* 239 F.3d at 1359. Such a case might be supported, for example, by evidence that the patent had "successfully withstood previous validity challenges in other proceedings," or that there was "a long period of industry acquiescence in the patent's validity." *Id.*

Elantech has presented no evidence that the '352 Patent has withstood prior validity challenges or has been generally accepted as valid by the industry. Instead, Elantech contends that it will likely prevail on invalidity because "[t]he only evidence that Synaptics has come forward with on the issue of validity is Synaptics' own patent, this disclosure of which was before the Examiner and fully considered." (Elantech's Preliminary Injunction Motion at 3.)

Elantech's assertion that Synaptics has "come forward" with only one patent is incorrect. Synaptics has identified six different patents (including the Synaptics '978 Patent and the IBM '332 Patent) and thirty-seven different publications as relevant prior art. Of course, Synaptics does contend that the Synaptics '978 Patent is particularly significant, for the reasons discussed above. However, Elantech's assertion that the disclosure of this patent was "before the Examiner and fully considered" is misleading in several respects.[8]

First, the Synaptics '978 Patent was not, itself, before the Examiner during the prosecution of the '352 Patent. Indeed, the '978 Patent did not even issue until after the '352 Patent, although the '978 Patent dates back to an application filed on October 7, 1994, and thus has an earlier priority date. Elantech's assertion appears to be based on the disclosure of a related Synaptics patent, US Patent No. 5,543,591 ("the Synaptics' 591 Patent"), which contains a substantially similar specification to that of the '978 Patent. (Declaration of Karl J. Kramer in

---

[8]  Further, even if the Examiner had fully considered the '978 Patent, Elantech could still not establish that it will likely prevail on validity. Proving invalidity based on prior art considered by the Patent Office is more difficult, but not impossible. Even in the difficult context of an appeal of a jury verdict of non-obviousness, the Federal Circuit has invalidated patents as obvious based on prior art that the Patent Office had considered. *See.e.g., Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1366-67 (Fed. Cir. 2007).

1   Opposition to Elantech's Motion for Preliminary Injunction ("Kramer Opp. Decl."), Ex. 1,

2   Synaptics' '591 Patent.)  However, although this specification was before the Examiner, the

3   claims of the '978 Patent were not.  This is significant because upon thorough review of the

4   specification the Patent Office decided that the disclosures in Synaptics' patent specification

5   entitled Synaptics to claim broadly the use of capacitance profile data from a touch pad sensor to

6   detect the simultaneous presence of two fingers.  The claims of the earlier issued '591 Patent, in

7   contrast, focused on other types of gestures.

8       Second, although the Synaptics '591 Patent was cited by the Examiner, the record

9   suggests that the Examiner may not have fully realized the significance of the disclosures in the

10  lengthy, 49-page specification.  As noted above, the '591 Patent is directed to certain specific

11  gestures and does not broadly *claim* the basic concept of examining capacitance profile data to

12  detect multiple fingers.

13      Moreover, Elantech's predecessor-in-interest, the applicants to the '352 Patent,

14  mischaracterized the prior art in an attempt to overcome rejections during prosecution.  With

15  respect to one prior art Synaptics patent, U.S. Patent No. 5,648,642 to Robert Miller and Stephen

16  Bisset ("the Miller/Bisset '642 Patent"), the '352 Patent applicants falsely asserted that "Miller

17  nowhere suggests detecting two fingers."  (Kramer Opp. Decl., Ex. 3, April 6, 1998 Amendment,

18  at 3 (ETD 0000379).)  In fact, the Miller/Bisset '642 Patent states that the invention "can detect

19  if *one or more points* are being touched," and describes an embodiment that "allows an operator

20  to use *multiple fingers*" by inputting x, y coordinate data into a neural net processor to develop a

21  "full X/Y dimension picture of what it is sensing."  (Kramer Opp. Decl., Ex. 2,  Miller/Bisset

22  '642 Patent, 2:5-9, 2:52-63 (emphasis added).)

23      Elantech's predecessor then asserted that Synaptics, the assignee of the Miller/Bisset '642

24  Patent, has also been issued the '591 Patent, which "teaches away" from the method of detecting

25  multiple fingers claimed by the '352 Patent.  Elantech's predecessor characterized the '591

26  Patent as follows:

27      A disadvantage of the system of the '591 patent, as described in
        column 31, lines 43-48, is that *it is "impossible to tell…while the*
28      *finger is still down" if two fingers are present*.  Rather, the

1    determination of the presence of two fingers is achievable from the
2    rapid movement of the centroid (zig-zag) when a finger is lifted or
     placed down.

3    (Kramer Opp. Decl., Ex. 3, April 6, 1998 Amendment, at 4 (ETD 0000380) (emphasis added).)

4        In fact, the quoted portion of the Synaptics '591 Patent has nothing to do with multiple

5    finger detection.  Rather, the cited portion of the specification relates to detection of a "*tap*"

6    gesture (up-and-down motion) by a *single* finger.  The full text of the passage that was

7    misleadingly quoted by Elantech's predecessor states:

8        Because it is impossible to tell whether a finger stroke *will be a*
9        *valid tap* (as opposed to a cursor motion) while the finger is still
         down, the device of the presently preferred embodiment does not
10       report a button click until the finger is lifted.  This delay is not
         generally noticeable to the user since taps by definition are very
11       brief strokes.

12   (Kramer Opp. Decl., Ex. 1, Synaptics' '591 Patent, 31:43-48 (emphasis added).)

13       Further, although the Synaptics '591 Patent discloses one specific embodiment that uses

14   thresholds to compare the presence of one and two fingers on the touchpad, it also discloses that

15   the presence of two fingers can be detected through other methods, such as processing X, Y, Z

16   capacitance data "to produce additional information, such as *the width or shape of the sensor*

17   *trace profile*, which would aid in the accurate recognition of this gesture."  (*Id.* at 39:57-63

18   (emphasis added).)  The '591 Patent further discloses that one prior art method of detecting a

19   finger is to identify the maximum capacitance value, as taught by the IBM '332 Patent.  (*Id.* at

20   2:54-60.)  These disclosures make it obvious to implement multiple finger detection by

21   examining the capacitance profile data to identify two maxima corresponding to two fingers.

22       Finally, during prosecution, Elantech's predecessor argued that the claims of the '352

23   Patent could be distinguished over the prior art because the prior art only allegedly taught

24   detection of two fingers if the two fingers are not present at the same time on the touchpad.

25   (Kramer Opp. Decl., Ex. 3 (April 6, 1998 Amendment, at 4 (The claimed invention "allows the

26   detection of two fingers being present even if they are both placed down at the same time.  Such

27   a method is not shown or suggested by either of the Synaptics patents. . . .").)  Although this

28   characterization of the prior art Synaptics disclosure was untrue, it does not distinguish the prior

1    art from what is claimed in the '352 Patent. As Elantech's own expert, Dr. MacKenzie, now

2    concedes, the '352 Patent claims do not exclude embodiments that detect two fingers even if one

3    of the fingers is tapping or the placement of the fingers is not precisely coincident. (Kramer

4    Opp. Decl., Ex. 4, MacKenzie Dep. 67:24-70:13.) Thus, the argument that the named inventors

5    of the '352 Patent used to overcome the prior art does not, in fact, distinguish the claims of the

6    '352 Patent at all.

7         The mischaracterizations of the Synaptics '591 Patent and the Miller/Bisset '642 Patent

8    by Elantech's predecessor were particularly egregious, as one of the named inventors of the '352

9    Patent, Stephen Bisset, was a former Synaptics employee and a co-inventor (when still at

10   Synaptics) of the Miller/Bisset '642 Patent. Mr. Bisset knew or should have known that the

11   arguments made to distinguish these prior art patents were false. Thus, the prosecution history of

12   the '352 Patent not only fails to establish a "clear case" that the patent is valid, it also raises a

13   substantial question as to whether the applicants' misleading statements about the prior art

14   constitute inequitable conduct that renders the patent unenforceable.[9]

15        In sum, it is questionable whether the Examiner of Elantech's '352 Patent fully realized

16   the significance of the specification of the Synaptics '591 Patent, given that that earlier issued

17   patent did not then broadly claim detection of multiple fingers and that Elantech's predecessors

18   mischaracterized the prior art. As is evident from the later issuance of the broad '978 Patent to

19   Synaptics based upon those earlier disclosures, Synaptics first invented multiple finger detection

20   using finger profiles and it would have been obvious based upon the available prior art to do

21   what Elantech now asserts is covered by its later patent.

22        Here, Synaptics does not bear the burden of proving invalidity by clear and convincing

23   evidence; rather, it is Elantech who bears the burden of establishing a "clear case" of validity.

24   Elantech has made no effort to meet and cannot meet this burden. There is a substantial question

25   of whether claim 18 of the '352 Patent is obvious in view of the prior art.

26   _____

27        [9] Synaptics does not currently have sufficient information to evaluate the defense of
     inequitable conduct, because it has not taken the depositions of the inventors or of the prosecuting
     attorney. Synaptics reserves the right to assert this defense after taking further discovery.

28

1

**CONCLUSION**

2      Elantech has presented no excuse for its long delay in moving for a preliminary

3   injunction, nor has it met its burden of establishing irreparable harm.  Elantech has also not met

4   its burden of demonstrating that it will likely prevail on infringement and validity.  Therefore,

5   Elantech's preliminary injunction motion should be denied.

6

7   Dated: January 11, 2008                     MORRISON & FOERSTER LLP

8

9                                          By:   /s/ Karl J. Kramer
                                                Karl J. Kramer
10                                              Email:  KKramer@mofo.com

11                                         Attorneys for Defendant and
                                           Counterclaimant
12                                         SYNAPTICS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12

ELANTECH DEVICES CORPORATION, a
corporation existing under the laws of Taiwan,

13

R.O.C.,

14

Plaintiff,

15

v.

16

SYNAPTICS, INC., a Delaware corporation;
AVERATEC, INC., a California corporation; and

17

PROSTAR COMPUTER, INC., a California
corporation,

18

19

Defendants.

20

AND RELATED COUNTERCLAIMS

21

22

23

24

25

26

27

28

Case No.    C06-01839 CRB

**[PROPOSED] ORDER DENYING
ELANTECH'S MOTION FOR
PRELIMINARY INJUNCTION**

Date:  February 1, 2008
Time:  10:00 a.m.
Courtroom 8, 19th Floor
Hon. Charles R. Breyer

1      This matter comes before the Court on or about February 1, 2008.  Having considered

2  Synaptics, Inc.'s Brief in Opposition to Elantech Devices Corp.'s Motion for Preliminary

3  Injunction (the "Motion"), reviewed the papers filed by the parties related to the Motion, and

4  heard the argument of counsel, the Court rules as follows:

5      IT IS HEREBY ORDERED that Plaintiff's Motion is DENIED.

6  Dated: _____

7

8                                    By:  _____

9                                         UNITED STATES DISTRICT COURT JUDGE
                                          HONORABLE CHARLES R. BREYER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28