Yitai Hu (SBN 248085) (yhu@akingump.com)
Sean P. DeBruine (SBN 168071) (sdebruine@akingump.com)
Ming-Tao Yang (SBN 221295)(myang@akingump.com)
Hsin-Yi Cindy Feng (SBN 215152) (cfeng@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, California 94306-2112
Telephone:    650-838-2000
Facsimile:    650-838-2001

Attorneys for Plaintiff and Counterdefendant
ELANTECH DEVICES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELANTECH DEVICES CORP., <br><br> Plaintiff, <br><br> vs. <br><br> SYNAPTICS, INC. and AVERATEC, INC, <br><br> Defendants. | Case No. 3:06-CV-01839 CRB <br><br> **ELANTECH DEVICES CORP.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: February 1, 2008 <br> Time: 10:00 a.m. <br> Courtroom 8, 19th Floor <br> Judge: Hon. Charles R. Breyer |

1    The basis of Elantech's motion for preliminary injunction is quite simple.  Any issue regarding the scope and meaning of claim 18 of the '352 patent has been resolved, and Synaptics' Type 2 products have been found to infringe.  As such, Elantech is entitled to an order that Synaptics cease this infringing activity, especially here where discovery into and a determination of damages may be years away. Permitting Synaptics to continue to harm Elantech's business and its relationships with customers and potential customers continuing by its unlawful acts does not provide Elantech with the full scope of its rights under the patent laws.  Nowhere can Synaptics find authority for the proposition that a direct competitor who has already been found to infringe a patent claim may simply grant itself a license.

Rather, than address this fact, Synaptics raises – in many instances for the second or third time – purported defenses.  First, it attempts to relitigate the infringement defenses already presented in the parties' two conflicting motions for summary judgment.  Those arguments should not be permitted, and are no more persuasive now than they were the first time.  Next it argues that there is a substantial question of validity.  First, it argues that there is no "corresponding structure" for the "providing means" element.  Again, that argument has been raised and was rejected by this Court.  It then argues that prior art fully reviewed and considered by the Patent Office raises a substantial question of validity.  The law on that point is clear – without more, there is no substantial question.

Finally, Synaptics would have this Court save it from its own litigation tactics, arguing that the "Type 2" products are not accused of infringement.  Notwithstanding Synaptics' recent attempt to revise history, it was Synaptics that characterized its products as Type 1 and Type 2, and it was Synaptics that sought the judgment of this Court with regard to the Type 2 products.  Synaptics now claims that the Type 2 products were never at issue.  To the contrary, those products are at issue, and Synaptics was placed on notice months ago that they were accused, immediately after discovery revealed those products to Elantech.  As detailed below, Synaptics' transparent and unsupported arguments provide no basis for it to avoid the outcome of a finding that it infringes a patent – it should be told to stop.

## I.  Elantech Has Shown Irreparable Harm

Synaptics mischaracterizes and overstates the effect of the *eBay* decision when it states that it "effectively abolished" the presumption of irreparable harm.  Syn. Opp. at 4.  Indeed, the Federal Circuit has previously suggested that the presumption, post-*eBay*, survives.  See Abbott Labs. v. Andrx Pharms.,

452 F.3d 1331, 1347 (Fed. Cir. 2006) ("First, as noted above, we conclude that Abbott has not established a likelihood of success on the merits.  As a result, Abbott *is no longer entitled* to a presumption of irreparable harm.") (emphasis added); see also Docusign, Inc. v. Sertifi, Inc., 468 F. Supp. 2d 1305, 1309 n. 6 (W.D. Wash. 2006) ("*Abbott*, which came after *eBay*, assumed (without deciding) that such a presumption was still appropriate in the preliminary injunction context, where a strong showing of likely infringement was made.").  After *eBay* several Courts have likewise determined that the presumption remains in force.  See e.g., Christiana Indus. v. Empire Elecs., Inc., 443 F. Supp. 2d 870, 884 (E.D. Mich. 2006) (*vacated on other grounds* 2006 WL 2375956 (E.D. Mich. Aug. 16, 2006)) ("Defendant asserts that in [eBay], the Supreme Court eliminated the presumption of irreparable harm for preliminary injunctions upon a showing of validity and infringement.  Plaintiff argues, and this Court agrees, that eBay did not invalidate the presumption."); see also Quantronix, Inc. v. Data Trak Techs., Inc., 503 F. Supp. 2d 1152, 1162 (D. Minn. 2007) (recognizing presumption of irreparable harm).  Thus, the presumption of irreparable harm survives and Elantech is entitled to that presumption.

Furthermore, Elantech can show and has shown irreparable harm notwithstanding the presumption.  Irreparable harm can be shown based on, among other things, continued infringement, resulting loss of profits, business opportunity and market share, and impending expiration of a patent. See Quantronix, 503 F. Supp. 2d at 1163.  In this case, Elantech has alleged all of these and has more than met its burden of showing irreparable harm.  While Synaptics asserts that there is no presumption that money damages will be inadequate, the Federal Circuit has stated that "[b]ecause the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir. 1994) (citing Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1456-1457 (Fed. Cir. 1988)).  Thus, a preliminary injunction is warranted and necessary.

Synaptics incorrectly states that delay in filing its motion for preliminary injunction "refutes any allegation that Elantech has an urgent need to obtain a preliminary injunction." Syn. Opp. at 5.  As Synaptics admits, the parties have periodically engaged in settlement discussions over the past two years. Syn. Opp. at 2.  Thus, Elantech has a "good explanation" for any delay; the Federal Circuit has stated that mere delay is not enough to warrant a finding of no irreparable harm.  See High Tech Med.

Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("While the period of delay may not have been enough, standing alone, to demonstrate the absence of irreparable harm, it did not stand alone in this case.")  In High Tech Med. Instrumentation, the Federal Circuit relied on, among other things, evidence of the plaintiff's inactivity in the market and the plaintiff's apparent willingness to grant a license in finding no irreparable harm.  In this case, Elantech is active in the market and continues to be irreparably harmed by Synaptics' continuing infringement.  Thus, Synaptics is incorrect in asserting that any delay by Elantech in bringing this motion refutes the need for a preliminary injunction.

**II.  Elantech Has Shown Likelihood Of Success**

    **A.  Elantech has shown likelihood of success on infringement**

As previously noted by Elantech in its opening brief, this Court has <u>already determined</u> that Synaptics' touchpads using its current "Type 2" firmware code with multiple finger detection enabled infringe claim 18 of the '352 patent.  Synaptics' so-called "defenses" to infringement have no effect on the Court's previous determination.  There are no disputed issues of fact on the issue of infringement.  Furthermore, Synaptics has already raised these so-called "defenses" and the issues have been fully briefed.  Elantech has addressed each of these so-called defenses in its Reply in support of its motion for partial summary judgment [Docket Entry 202 ("Elantech Reply")].

Briefly, Synaptics' argument that Elantech has not identified Type 2 Enabled products is contrary to its recognition that products including the Type 2 code are at issue in the case, and its agreement not to oppose Elantech's amended Final Infringement Contention naming those products.  <u>See</u> Elantech Reply at 7. Also, Synaptics' charge that Elantech has failed to show evidence of infringing sales or other activities in the United States lacks merit for at least the following two reasons: (1) Elantech has previously presented evidence that it purchased infringing enabled touchpads; and (2) any failure by Elantech to identify specific infringing sales is caused by Synaptics' refusal to produce sales-related documents on the alleged basis that they relate to damages and not liability.  <u>Id.</u>  Additionally, this Court has already determined that the "means for providing an indication" limitation is met.  <u>See</u> Summary Judgment Order, dated October 26, 2007 [Docket Entry 174] ("SJ Order") at 11.  Finally, this Court has

already determined that the Synaptics products identify "the lowest value in the finger profile." See SJ Order at 14. Thus, all of Synaptics' so-called "defenses" to infringement lack merit.

**III. Elantech has shown likelihood of success on validity**

Elantech has shown likelihood of success on the issue of validity. While Synaptics is correct that it must raise at least a "substantial question," it fails to recognize that this "substantial question" must establish "that it is likely to succeed in proving invalidity." Abbott Labs v. Andrx Pharms., Inc., 473 F.3d 1196, 1201 (Fed. Cir. 2007) (citing Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal, 546 U.S. 418, 419 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial."); Ashcroft v. Am. Civil Liberties Union, 542 U.S. 656, 666 (2004)). Neither of Synaptics' arguments establishes that it is likely to succeed in proving invalidity. In any case, even if Synaptics has satisfied its burden of going forward (and it has not), it cannot satisfy its ultimate burden of proof.

First, Synaptics has not established that it is likely to succeed in proving invalidity based on an indefiniteness defense. Again, however, this issue has already been presented in this matter, and decided in Elantech's favor. During claim construction, Synaptics took the same position, that there was insufficient structure identified as corresponding to the "means for providing" limitation under 35 U.S.C. § 112 ¶ 6. See Joint Claim Construction Statement [Docket Entry 63], Ex. A at 2 (item 19(b)). The Court disagreed finding that the structure identified by Elantech was sufficient. As such, Elantech does not understand Synaptics' assertion that this issue has not been decided. In addition, Synaptics' argument that claim 18 of the '352 patent at this late hour is disingenuous in light of it bringing a motion for summary judgment of non-infringement [Docket Entry 93]. At that time, Synaptics apparently thought that claim 18 was definite enough to take a position and to file a motion for summary judgment. Now in the face of the Court's determination of infringement, Synaptics has changed its tune.

One of Synaptics' faulty arguments appears to be that claim 18 is indefinite simply because the '352 patent does not specifically enumerate every piece of data that the microcontroller 60 outputs. Specifically, Synaptics complains about the following sentence: "Depending on the operation being performed at the time, the output of the microcontroller 60 is then supplied to an interface to a PC or other device, such as a PS/2 interface, an RS-232 interface, or an Apple Desktop Bus (ADB)." '352 patent at 5:52-55. Synaptics first argued that that "[t]his statement means that not all operations are to

be 'output' in that manner."  Syn. Opp. to Elantech's Opening CC Brief [Docket Entry 69] at 17:7-8.  Synaptics now argues that the '352 patent specification "does not say *which operations* will result in output, or *what* is output."  Syn. Opp. at 10 (emphasis in original).  Synaptics' arguments completely miss the mark and have no merit.  As this Court made clear in its Summary Judgment Order "[t]he 'providing an indication limitation' does not require that the 'indication' of two fingers be returned to the host."  SJ Order at 7:26-27.  Synaptics' arguments are therefore wholly irrelevant.  In fact, Synaptics is mistaken on this point.  As far as which operations result in output and what is output, the '352 patent specification plainly states that "[i]n an exemplary embodiment, the touchpad of the present invention reports to a host either the relative motion of a finger across a touchpad or changes in 'button' status."  '352 patent at 5:16-19.  One of ordinary skill in the art would surely understand these passages, taken together, to mean that when the microcontroller 60 is operating to process data to indicate movement of a finger across a touchpad or simulation of a button up or down event, the output of the microcontroller 60 is supplied to a host interface.  When the microcontroller 60 is operating to form other data, such as intermediate data, it may not send its output to the host.

A second one of Synaptics' faulty arguments is based on a mischaracterization that "Elantech has now shifted its argument to now point to the algorithm illustrated in Figure 9-2."  Syn. Opp. at 10.  Synaptics erroneously concludes that "Elantech's shifting positions … merely underscores that claim 18 is indefinite."  Syn. Opp. at 12.  As Elantech has consistently maintained, the '352 patent specification provides that microcontroller 60 receives touch sensor signals and has its output "supplied to an interface to a PC or other device."  Elantech Opening CC Brief [Docket Entry 65, at 14].  The '352 patent specification makes it clear that, "[i]n an exemplary embodiment, the operation of the system of FIG. 2 is controlled in either firmware, software or hardware.  Shown in FIG. 5 is a flow diagram showing the general operation of such software or firmware which is capable of detecting multiple fingers, and which uses the algorithm of FIG. 6, discussed hereinafter."  '352 patent at 7:1-6.  One of ordinary skill in the art would surely recognize that the software or firmware would be executed by the microcontroller 60.  The '352 patent specification further clearly provides that "[i]t will be appreciated that FIG. 8 is analogous to FIG. 5, while FIG. 9 is analogous to FIG. 6."  '352 patent at 13:65-67.  One of ordinary skill in the art would surely recognize that the algorithm of FIG. 9 would be executed by the

microcontroller 60. Thus, there is nothing inconsistent about Elantech's position that microcontroller 60, as well as any specific software or firmware algorithms executing on it, is the corresponding structure for the "means for providing" limitation.

Synaptics incorrectly argues that neither the microcontroller 60 nor the algorithm of Figure 9-2 is the corresponding structure, and that these elements only "might be capable" of performing the recited function. As noted, the '352 patent specification clearly discloses that "[i]n an exemplary embodiment, the touchpad of the present invention reports to a host either the relative motion of a finger across a touchpad or changes in 'button' status." '352 patent at 5:16-19. Additionally, the '352 patent specification clearly discloses that

> [i]n particular, the ability of the previously described methodology to recognize multiple fingers allows the first finger to serve, essentially, as the "point" finger, while additional fingers serve as the "click" finger(s). Combinations of the first, second, and perhaps additional fingers can then enable numerous conventional functions to be performed based on the mapping of a variety of sequences of taps or finger movements to a set of conventional pointing device functions, where the pointing device could be a touchpad, mouse, trackball, joystick, or stylus, for example. It will be apparent to those skilled in the art, given the foregoing description, that the present invention can detect, for example, relative movement of the first finger, together with a tap of the second or more fingers at some point, followed either by removal of both fingers, further movement of the first finger, or further movement of both fingers. Such sequences can, essentially, be viewed as a series of scans in which one or more fingers were found to be either present or absent in any given scan, with motion, or lack thereof, of the finger or fingers across the touch sensor interspersed between changes in the number of fingers in contact with the touchpad. The specific sequence can then be analyzed to determine whether only a cursor movement is involved or whether a control function is intended. If a control function is intended, the specific control function can then be identified.

'352 patent at 11:56-12:14. Taken in conjunction with the fact that the touchpad reports to the host finger movements and simulated button events and the fact that the microcontroller 60 outputs these data to the host, one of ordinary skill in the art would surely recognize that not only is microcontroller 60 (and its associated software or firmware executing on it, including the algorithm of Figure 9-2) capable of performing the recited function but that it actually performs it. The microcontroller 60 operates to form various data, including an indication of the presence of multiple fingers, and this indication is manifested by data corresponding to finger movement and simulated button events.

ELANTECH'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION      6      CASE NO. 3:06-CV-01839 CRB

Second, Synaptics has not established that it likely to succeed in proving invalidity based on an obviousness defense. The biggest problem with Synaptics' so-called "defense" is that it relies on references, namely the Synaptics '978 patent and the IBM '332 patent, whose disclosures were before the Examiner and which were fully considered during prosecution of the '352 patent. Synaptics appears to contend that because the *claims* of the '978 patent were not before the Examiner, the disclosure was somehow not effectively before the Examiner. That argument is irrelevant, because the *claims* of the '978 patent are not prior art; rather they were added during a continuation application filed well after the '352 patent issued. Even so, this argument is belied by Synaptics' own statements that "[t]he first element of claim 18 of the '352 Patent is disclosed … by numerous references in the specification to detection of multiple fingers on a touchpad." Syn. Opp. at 14. Thus, as Synaptics fully recognizes, the relevant disclosures, necessary to support the claims of the '978 Patent, were before the Examiner. Synaptics also contends that "the record suggests that the Examiner may not have fully realized the significance of the disclosures in the lengthy, 49-page specification." Syn. Opp. at 21. However, Synaptics offers no evidence from the record to support this contention. The simple fact remains that the same disclosure as that of the '978 patent, in the form of the '591 patent, as well as the disclosure of the '332 patent, were before the Examiner and were fully considered. Thus, Elantech's so-called "defense" is not likely to succeed.

In sum, neither of Synaptics' arguments is likely to succeed in proving invalidity. As a result, Synaptics has not raised a "substantial question" as to validity. Furthermore, since patents are presumed to be valid, Elantech has made a clear showing of validity.

/ / /

## IV. CONCLUSION

For the foregoing reasons, Elantech respectfully requests that the Court grants its motion for a preliminary injunction.

Dated: January 18, 2008

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/
    Sean P. DeBruine

Attorneys for Plaintiff
ELANTECH DEVICES CORP.