1  KARL J. KRAMER (CA SBN 136433)
   ERIKA L. YAWGER (CA SBN 234919)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
4  Facsimile: (650) 494-0792
   KKramer@mofo.com
5
   Attorneys for Defendant and Counterclaimant
6  SYNAPTICS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12 | ELANTECH DEVICES CORPORATION, a        | Case No.   C06-01839 CRB
   | corporation existing under the laws of Taiwan, |
13 | R.O.C.,                                 | **SYNAPTICS, INC.'S NOTICE OF
   |                                         | MOTION AND MOTION FOR
14 |                   Plaintiff,            | PARTIAL SUMMARY
   |                                         | JUDGMENT THAT USE OF
15 |                                         | ELANTECH'S PRODUCTS
   |       v.                                | MEETS THE TAPPING CLAIMS
16 |                                         | OF U.S. PATENT NOS. 6,380,931
   | SYNAPTICS, INC., a Delaware corporation; | AND 5,543,591; MEMORANDUM
17 | AVERATEC, INC., a California corporation; | OF POINTS AND AUTHORITIES
   | and PROSTAR COMPUTER, INC., a           | IN SUPPORT THEREOF**
18 | California corporation,                 |
   |                                         | Date:  February 15, 2008
19 |                   Defendants.           | Time:  10:00 a.m.
   |                                         | Courtroom 8, 19th Floor
20 |                                         | Hon. Charles R. Breyer

21

22 AND RELATED COUNTERCLAIMS

23

24

25                          **PUBLIC VERSION**

26

27

28

SYNAPTICS, INC.'S MSJ RE TAPPING CLAIMS
CASE NO. C 06-01839 CRB
pa-1224821

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ........................................................................................................... 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ...................... 1

SUMMARY OF THE ARGUMENT...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.   INTRODUCTION ........................................................................................................ 2

II.  FACTUAL BACKGROUND ...................................................................................... 2

    A.  Synaptics' Patented "Tapping" Methods ......................................................... 2

        1.  Background of the Asserted Patents ..................................................... 2

        2.  The Claims at Issue .............................................................................. 3

    B.  Elantech's Infringing Touchpad Products........................................................ 4

    C.  District Court's Claim Construction ................................................................ 5

III. ARGUMENT................................................................................................................ 6

    A.  Legal Standard ................................................................................................. 6

    B.  The Use Of Elantech's Products Meets The Preambles Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent............................ 8

    C.  The Use Of Elantech's Products Meets The Touch-Sensing Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent .................. 9

    D.  The Use Of Elantech's Products Meet The Comparison Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent ................. 10

        1.  The KTP3 Code Compares to the Claimed Reference Values ................. 10

        2.  The KTP5 Products Also Compare Time and Motion............................... 11

    E.  Elantech's Products Satisfy The Requirement Of Claims 6 And 9 Of The '591 Patent That The Length Between A First And Second Presence On The Touchpad Be Compared With A Reference Amount Of Time..................... 12

    F.  The Use Of Elantech's Products Meets The Signal Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent............................... 13

        1.  Elantech's Touchpads Initiate and Maintain a Tap Gesture Signal as Required by Claim 1 of the '931 Patent................................................ 14

        2.  Elantech's Touchpads Initiate, Terminate, and Send Signals Indicating Tap Gestures as Required by Claim 6 of the '591 Patent ........ 14

**TABLE OF CONTENTS**
(continued)

Page

3. Elantech's Touchpads Initiate and Maintain a Drag Gesture Signal as Required by Claim 9 of the '591 Patent. ............................................... 15

CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*A.B. Dick Co. v. Burroughs Corp.*,
  713 F.2d 700 (Fed. Cir. 1983) .................................................................................. 12

*AquaTex Indus., Inc. v. Techniche Solutions*,
  479 F.3d 1320 (Fed. Cir. 2007) ................................................................................ 11

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996) ................................................................................... 7

*Bai v. L & L Wings*,
  160 F.3d 1350 (Fed. Cir. 1998) ................................................................................. 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 6

*Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*,
  305 F.3d 1303 (Fed. Cir. 2002) ................................................................................ 11

*General Elec. Co. v. Nintendo Co., Ltd.*,
  179 F.3d 1350 (Fed. Cir. 1999) ................................................................................. 6

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ......................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................. 6

*Miles Labs. Inc. v. Shandon, Inc.*,
  997 F.2d 870 (Fed. Cir. 1993) ................................................................................. 12

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) ................................................................................ 13

*Phonometrics, Inc. v. N. Telecom Inc.*,
  133 F.3d 1459 (Fed. Cir. 1998) ................................................................................. 7

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*,
  731 F.2d 840 (Fed. Cir. 1984) ............................................................................ 11, 12

## STATUTES

Federal Rule of Civil Procedure 56(c) ............................................................................. 6

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, on February 15, 2008, at 10:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, defendant and counterclaimant Synaptics, Inc. ("Synaptics"), will and hereby does move the Court for an order granting partial summary judgment that use of Elantech Devices Corporation's ("Elantech") products meets the limitations of claim 1 of U.S. Patent No. 6,380,931 ("the '931 Patent") and claims 6 and 9 of U.S. Patent No. 5,543,591 ("the '591 Patent"). This motion is based on this Notice, the Memorandum of Points and Authorities below, the Expert Declaration of Andrew Wolfe, Ph.D. in Support of Synaptics, Inc.'s Motions for Summary Judgment, executed January 8, 2008 ("Wolfe SJ Infringement Decl."), and the prior papers filed by Synaptics in connection with the Claim Construction hearing, which are incorporated herein by reference.

## STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED

Synaptics seeks an efficient resolution of its assertion that the accused touchpad devices meet the limitations of the "tapping" methods of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent. As explained below, Synaptics seeks an order of:

(1) judgment that all of the limitations of claim 1 of the '931 Patent are satisfied literally or under the doctrine of equivalents by the use of Elantech's accused products;

(2) judgment that all of the limitations of claim 6 of the '591 Patent are satisfied literally or under the doctrine of equivalents by the use of Elantech's accused products; and

(3) judgment that all of the limitations of claim 9 of the '591 Patent are satisfied literally or under the doctrine of equivalents by the use of Elantech's accused products.

## SUMMARY OF THE ARGUMENT

Elantech's own manuals, specifications, website, and software prove that its touchpads include Synaptics' patented tap, double tap, and drag gestures. Specifically, the use of Elantech's products meets all of the limitations of Synaptics' patented method claims for implementing these gestures. These methods, as claimed by claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent, have three basic categories of steps: (1) detecting a touch; (2) ascertaining whether variables (length of presence, duration between presences, and amount of motion) are less than reference amounts; and (3) sending signals to the

computer if the variables are less than the thresholds. Since there is no genuine issue of material fact, Synaptics is entitled to summary judgment that use of Elantech's products meets the limitations of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Santa Clara-based Synaptics is the world's leading developer of touchpad technology for personal devices, such as notebook computers, and has been on the cutting edge of technology development in this area since the early 1990s. Synaptics holds many fundamental patents covering basic touchpad technology, including the '931 and '591 Patents. Synaptics' patents teach and claim methods for detecting gestures on a touchpad, including methods for detecting specific tapping, double tapping, and finger dragging gestures.

Elantech, a Taiwanese company, is a late-comer to the touchpad technology business. Elantech has offered for sale products with Synaptics' patented features and underbid Synaptics in the market. Although Elantech has been on written notice of its infringement of Synaptics' patents since at least December 2003, it has continued to produce and sell products intended to be used in a manner that infringes Synaptics' touchpad technology.

Elantech's own user's manuals, product specifications, website, and software demonstrate that use of Elantech's products meets each limitation of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent. Because there is no genuine issue of material fact as to this issue, partial summary judgment is appropriate.

## II.   FACTUAL BACKGROUND

### A.   Synaptics' Patented "Tapping" Methods

#### 1.   Background of the Asserted Patents

As a result of problems with trackball controllers used for cursor motion in early portable notebook computers, manufacturers began using small touchpad sensors that could track finger motion and convert this motion into cursor motion. (Wolfe SJ Infringement Decl. ¶ 10.) Users normally touched the sensor with their index or middle finger, resulting in difficulty clicking or holding the separate buttons used to simulate clicking a traditional mouse. (*Id.* ¶ 11.) In

response, Synaptics developed a new touch sensor that recognized specific finger motions or combinations of motions as "gestures" and sent appropriate information to the computer (or other host) in response to each gesture to simulate corresponding button actions. (*Id.* ¶ 12.) For example, the "tap," "double tap," and "drag" gestures can be used to simulate clicking, double clicking, and holding down a traditional mouse button. These touchpad gestures proved easier for users to perform than manipulating physical buttons, providing a distinct advantage over prior devices. (*Id.*)

Synaptics sought and secured several United States patents, including the '931 and '591 Patents, to protect its groundbreaking innovations. The '931 and '591 Patents are both part of a related family of patents dating back to 1992. (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent "Related U.S. Application Data" and Ex. 3, '591 Patent "Related U.S. Application Data".) The patents, which have overlapping specifications, are directed to "[m]ethods for recognizing gestures made by a conductive object on a touch-sensor pad." (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent, "Abstract" and Ex. 3, '591 Patent, "Abstract".)

### 2. The Claims at Issue

Claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent each claim a method for recognizing a particular gesture that can be used to simulate a specific button action of a traditional mouse. (Wolfe SJ Infringement Decl. ¶¶ 16, 19, 43, 62.) Attached as Appendix A hereto is a chart containing all of these claims. In essence, claim 1 of the '931 Patent relates to a single-tap gesture, claim 6 of the '591 Patent relates to a double-tap gesture, and claim 9 of the '591 Patent relates to a tap-and-one-half, or drag, gesture. (*Id.* ¶¶ 16-18.)

All three claimed methods begin by detecting the presence of a conductive object, such as a finger, on the touchpad and comparing the time the finger is on the touchpad with a reference amount of time for a tap. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 35:29-30, 50-57, 52:63-67, and Ex. 3, '591 Patent at 47:18-21, 48:11-14.) Claim 1 of the '931 Patent also compares the amount of motion made by the finger while on the touchpad with a reference amount of motion for a tap. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent 53:1-3.) These comparisons serve to distinguish a tap gesture from the gesture for basic cursor motion.

1  (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 34:31-34, 42-46.) If the finger is on the touchpad less than the time limit for a tap, and under claim 1, if it moves less than a reference amount of motion, the touchpad sends the basic tap signal to the computer. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 35:50-57, 53:4-10, and Ex. 3, '591 Patent 47:22-24, 48:14-16.) Absent the detection of a second finger presence within a set time period, the signal is maintained for a predetermined amount of time, resulting in a single tap gesture. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 53:11-12.) This single tap gesture can be used, for example, to simulate a single click of the mouse. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 34:31-34.)

However, a single tap gesture will not result if the touchpad detects a second finger (or other conductive object) present within a set period of time after the first touch. Instead, if the second touch is less than the reference amount of time for a tap, the basic (single) tap signal ends and is replaced by a second signal indicating a double-tap gesture. (Wolfe SJ Infringement Decl. ¶ 17; Ex. 3, '591 Patent at 34:12-22, 47:27-36.) This double-tap gesture, claimed in claim 6 of the '591 Patent, can be used, for example, to simulate a double click of the mouse. (Wolfe SJ Infringement Decl. ¶ 17; Ex. 3, '591 Patent at 31:39-40.)

On the other hand, if the second touch (detected within a set time period after the first touch) is longer than the time limit for a tap, the touchpad recognizes a drag gesture, rather than single or double tap gesture. (Wolfe SJ Infringement Decl. ¶ 18; Ex. 3, '591 Patent at 33:31-37, 48:18-22.) In such cases, the tap signal continues for the length of the second touch, sending updated information about the position of the finger on the touchpad so as to permit the user to "drag" a file or icon from one place to another on the screen. (Wolfe SJ Infringement Decl. ¶ 18; Ex. 3, '591 Patent at 48:23-27.) The drag gesture, recited in claim 9 of the '591 Patent, performs a similar function to clicking on a mouse and holding it down to drag text or an icon on the computer screen. (Wolfe SJ Infringement Decl. ¶ 18.)

### B.   Elantech's Infringing Touchpad Products

Elantech was established in September 2003. (Declaration of Karl J. Kramer in Support of Synaptics Motions for Summary Judgment ("Kramer SJ Decl."), Ex. A,

Elantech's Objs. and Responses to 1st Set of Rogs, 2:20-22 and 4:13-14.) Elantech, in its own materials, admits that its products use tap gestures which are claimed in Synaptics' patents. For example, its Touchpad Manual and website emphasize the ability of Elantech's touchpads to recognize the single tap gesture, noting that "[t]apping function is default enabled" and that this is the "same as the left button of [the] mouse." (*See* Wolfe SJ Infringement Decl., Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004951; Ex. 12, Elantech, "Brief Summary of Capacitive TouchPad," at SYN 00004999.) Similarly, Elantech's marketing materials note that "[d]ouble tapping by one finger can 'execute' or 'open' a file or root." (Wolfe SJ Infringement Decl., Ex. 6 at 1.) Finally, its TouchPad Manual instructs users to use a drag gesture, noting that its "Tap and Drag Lock" feature "defines the duration for 'dragging' activities." (Wolfe SJ Infringement Decl., Ex. 9, Elantech KTP3 TouchPad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004945-46.)

Elantech's products use one of two types of software—KTP3 code and KTP5 code—to carry out Synaptics' patented tap gestures. (Wolfe SJ Infringement Decl. ¶¶ 13-14.) The minor differences between the KTP3 and KTP5 code are not material for purposes of this motion. As explained in detail in Dr. Wolfe's Declaration, Elantech's products containing either KTP3 or KTP5 code satisfy all of the claim limitations of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent. (*Id.* ¶¶ 19-76.)

### C.   District Court's Claim Construction

On April 6, 2007, the Court issued its Claim Construction Order, interpreting several disputed terms in the various patents at issue. Notably, the Court rejected all of Elantech's proposed constructions for terms in Synaptics' patents. (*See* Docket No. 91 ("Claim Constr. Order") at 6, 8-10.) Of relevance to the present motion, the Court construed the related terms "initiating a signal to the host indicating the occurrence of said tap gesture" and "maintaining said signal for a predetermined period of time" in the '931 Patent. (*Id.* at 7.) Elantech sought to construe the word "signal" in these terms narrowly to mean "the high state of an output that has a high and low state." (*See* Docket No. 73 (" Elantech's Opp. Claim Constr. Br.")

at 8.) Thus, it sought to limit the "initiating" term to outputting such a high state, where this high state represented a tap gesture on the touchpad, and sought to limit the "maintaining" term to "continuously outputting the high state of the signal only for a predetermined time period (*i.e.*, changing the signal state from high to low at the end of the predetermined time period)." (*See* Claim Constr. Order at 8.)

The Court rejected that narrow and artificial construction of the word "signal" and the related claim terms. Instead, it agreed with Synaptics that a signal in this context was a "transmission of a set of data to a computer, or other device that can take as input the output of a touch-sensor pad." (*Id.* at 9.) Thus, the Court construed the "initiating" term to mean "initiating the transmission of a set of data to a computer, or other device that can take as input the output of a touch-sensor pad, that indicates that a tap gesture has occurred on the touch-sensor pad" and the "maintaining" term to mean "to continue, retain, or repeat the signal for a period of time that was determined before." (*Id.*)

## III.    ARGUMENT

### A.    Legal Standard

Summary judgment is an integral part of fair and efficient administration of justice. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "the pleadings, the discovery and disclosures materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." While infringement is a question of fact, patent infringement actions may be decided on summary judgment if there are no genuine disputes regarding the material facts. *General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353 (Fed. Cir. 1999). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, summary judgment is appropriate "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

1  "An infringement analysis entails two steps. The first step is determining the meaning and
2  scope of the patent claims asserted to be infringed. The second step is comparing the properly
3  construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*,
4  52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) (citations omitted).

In his declaration filed in support of Synaptics' Motions for Summary Judgment, Dr. Andrew Wolfe provides a detailed claim-by-claim, limitation-by-limitation explanation of how use of Elantech's accused products satisfies each and every limitation of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent. (Wolfe SJ Infringement Decl. ¶¶ 19-76, 83-129.) Synaptics does not repeat every detail of Dr. Wolfe's analysis here because Elantech is not expected to dispute that it meets nearly all of the claim limitations. Because in operation the tap, double tap, and drag gestures in the Elantech code are highly interrelated, the presentation below tracks the functional steps that are overlapping in both the various claims at issue and the Elantech KTP3 and KTP5 software. The Court's Claim Construction Order resolved the legal aspects of the key defenses that Elantech raised and, since Elantech's own user manuals, product specifications, website, and software establish that all of the limitations of the asserted claims are factually satisfied, there is no triable issue of material fact. In this situation, where the legal issue of claim construction has been resolved and there is no dispute as to how the accused product works, summary judgment resolving the application of this legal standard to the undisputed facts is appropriate. *See Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998) (noting that if the district court's claim construction was correct, then summary judgment was proper because "Phonometrics does not dispute the structure and operation of the accused devices"); *see also Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996) ("Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over [claim construction], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment.").

### B. The Use Of Elantech's Products Meets The Preambles Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.

The preambles to claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent claim methods for recognizing tap, double tap, and drag gestures, respectively. (Wolfe SJ Infringement Decl. ¶¶ 21, 45, 63; Ex. 6; Ex. 2, '931 Patent at 52:60; Ex. 3, '591 Patent at 47:14, 48:7.) As discussed in Section II.B., *supra*, Elantech's products recognize each of these gestures. (Wolfe SJ Infringement Decl. ¶¶ 15-18, 24, 47, 65; Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004951 ("Tapping function is default enabled."); Ex. 6 ("Double tapping by one finger can 'execute' or 'open' a file or root."); Ex. 9, Elantech KTP3 TouchPad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004945-46 ("'Tap and Drag Lock', this option defines the duration for 'dragging' activities. . . . The 'dragging' activity is also can be [sic] released after tapping on the touchpad when 'Tap to release' is selected.").) For example, the figure below, from Elantech's own marketing materials, shows its touchpad's drag gesture feature. (Wolfe SJ Infringement Decl., Ex. 6, "Elantech Notebook PC Touchpad".)



The preambles of all three claims also require the provision of "a touch-sensor pad in a touch-sensing system providing X and Y information to a host." (Wolfe SJ Infringement Decl. ¶¶ 21, 45, 63; Ex. 2, '931 Patent at 52:60-62; Ex. 3, '591 Patent at 47:15-16, 48:7-9.) Elantech's accused products provide a touch-sensor pad and a touch-sensing system. (Wolfe SJ Infringement Decl. ¶¶ 22, 46, 64; Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-

01-09 (P/N: 700309-1701), at SYN 00004932 ("ELANTECH touchpad is a smooth and sensitive pointing device and can detect the position of a finger over a touch-sensitive area.").) Moreover, Elantech's products provide information regarding the X and Y (*i.e.*, horizontal and vertical) position of a finger (or other object) on the touchpad to a computer or other host. (Wolfe SJ Infringement Decl. ¶¶ 23, 46, 64; Ex. 10, Elantech Product Specification, Model 810507-0703, "Elantech Touchpad for handheld Device Application, dated 2005-05-13, at SYN 00004833 ("Touchpad can sends [sic] the information, including X-Y position information . . . to host through UART interface. . . . Touchpad can send the information, including X-Y position information . . . to host through SPI interface.").)

### C. The Use Of Elantech's Products Meets The Touch-Sensing Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.

Claim 1 of the '931 Patent and claims 5 and 6 of the '591 Patent require the detection of a "conductive object" (*e.g.*, finger) on the touchpad.[1] (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 52:63-64; Ex. 3, '591 Patent at 47:18-19, 28-29, 48:10-11, 18-19.)

Elantech's own materials note that its touchpads "detect the position of a finger over a touch-sensitive area." (Wolfe SJ Infringement Decl. ¶¶ 25-26, 48, 55, 66, 70; Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004932; Ex. 15, Elantech Product Specification, Model 800406-16XX, dated 2005-01-27, at SYN 00004796 (Touchpad devices detect the position of a finger over a touch-sensitive area."); Ex. 12, Elantech, "Brief Summary of Capacitive TouchPad," at SYN 00004998; *see also* Kramer SJ Decl. Ex. A, http://www.elantech.com.tw/003/pro.aspx (last visited January 10, 2008) ("When finger touch the TouchPad, it changes the capacitance of the TouchPad . . . [and] the controller IC on the TouchPad will detect such change and calculate the change into coordinate.").)

---

[1] Claims 6 and 9 each require the detection of both a "first presence" and a "second presence" on the touchpad. (*See* Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 47:18-19, 28-29, 48:10-11, 18-19.)

### D. The Use Of Elantech's Products Meet The Comparison Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.

#### 1. The KTP3 Code Compares to the Claimed Reference Values.

Claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent each require a comparison of the length of time that the finger (or other conductive object) is on the touchpad with a reference amount of time for a tap.[2] (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 52:65-67; Ex. 3, '591 Patent at 47:20-21, 30-31, 48:12-13.) Claim 6 of the '591 Patent requires two such "tap" events.

Elantech's KTP3 products compare the length of the finger presence against a predetermined reference amount of time to determine whether the presence is a tap gesture. (Wolfe SJ Infringement Decl. ¶¶ 27-29, 49, 56, 67.) Specifically, Elantech's software repeatedly scans for the presence of a finger (or other object) on the touchpad. (*Id.* ¶¶ 25-26.) █████████████████████████████████████████████

Claim 1 of the '931 Patent also requires a comparison between the amount of motion of the finger (or other conductive object) on the touchpad and a reference amount of motion for a tap. (Wolfe SJ Infringement Decl. ¶ 32, Ex. 2, '931 Patent at 53:1-3.) Claims 6 and 9 of the '591 Patent require no such comparison of motion. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[2] Claim 6 compares both the length of a "first presence" on the touchpad and the length of a "second presence" on the touchpad with a reference amount of time. (Wolfe SJ Infringement Decl. Ex. 3, '591 Patent at 47:20-21, 30-31.)

SYNAPTICS, INC.'S MSJ RE TAPPING CLAIMS
CASE NO. C 06-01839 CRB
pa-1224821

10

### 2. The KTP5 Products Also Compare Time and Motion.

The KTP5 code, like the KTP3 code, compares the duration and motion of the finger presence with reference amounts of time and motion. (Wolfe SJ Infringement Decl. ¶¶ 27-28, 30, 32-35.) ▮▮▮ Thus, for the same reasons that apply to the KTP3 code, the KTP5 code literally satisfies the time and motion comparison limitations of claim 1 of the '931 Patent and the time comparison limitations of claims 6 and 9 of the '591 Patent.

Although the claims do not require that the reference amount of time is always a fixed or predetermined amount, even if the claims had such a requirement, the KTP5 code would satisfy the time comparison limitations under the doctrine of equivalents. "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

Any differences between the time comparison steps of Elantech's KTP5 touchpads and the time comparison limitations of the asserted claims are insubstantial. (Wolfe SJ Infringement Decl. ¶ 31.) ▮▮▮ *See Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1317 (Fed. Cir. 2002) (noting that the mere combination of two claim elements into a single step does not result in claim vitiation preventing application of the doctrine of equivalents). Indeed, Elantech's KTP5 products simply add an additional step—▮▮▮—to the methods claimed in claims 6 and 9 of the '591 Patent. *See Radio Steel & Mfg. Co. v. MTD Prods.,*

*Inc.*, 731 F.2d 840, 848 (Fed. Cir. 1984) (noting in the context of the doctrine of equivalents that "an accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent" (quoting *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983))); *see also Miles Labs. Inc. v. Shandon, Inc.*, 997 F.2d 870, 877 (Fed. Cir. 1993) ("Infringement under the doctrine [of equivalents] does not vanish merely because the accused device performs functions in addition to those performed by the claimed device.").

Moreover, Elantech's KTP5 products perform substantially the same function, in substantially the same way, to achieve substantially the same result as the time comparison limitations of the asserted claims. The function of Elantech's KTP5 time comparison, like the functions of the comparison limitations of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent, is to compare the amount of time that the touchpad is touched with a reference value. (Wolfe SJ Infringement Decl. ¶ 31.) The way that both Elantech's KTP5 comparisons and the patented comparisons carry out this function is by accumulating a count of the elapsed time and comparing that count to a reference value. (*Id.*) The result of both of these comparisons is a decision as to whether or not a tap has occurred. (*Id.*) Thus, Elantech's KTP5 touchpads satisfy the time limitations of the asserted patents both literally and under the doctrine of equivalents.

### E. Elantech's Products Satisfy The Requirement Of Claims 6 And 9 Of The '591 Patent That The Length Between A First And Second Presence On The Touchpad Be Compared With A Reference Amount Of Time.

In addition to comparing the length of time that a finger (or other conductive object) is on the touchpad, claims 6 and 9 of the '591 Patent require a comparison between the length of time that passes between a first and second presence of a finger (or other conductive object) on the touchpad and a reference amount of time for a double tap and drag gesture, respectively. (Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 47:26-27, 48:20-22.) Elantech's products compare the interval between sensing a first and a second presence on the touchpad with a reference amount of time. (Wolfe SJ Infringement Decl.¶¶ 51-54, 71-72.) Specifically, Elantech's software determines whether the second presence occurred

before the end of "█████" time to determine whether it can qualify as a double tap or drag gesture. (*Id.*)

### F. The Use Of Elantech's Products Meets The Signal Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.

Claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent require that a signal be sent from the touchpad to the host indicating that the gesture in question occurred. (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 53:4-10; Ex. 3, '591 Patent at 47:22-24, 35-36, 48:14-16, 23-27.) As discussed in Section II.C., *supra*, the Court's Claim Construction Order rejected Elantech's limited definition of the word signal and instead indicated that a signal simply means "the transmission of a set of data to a computer" indicating that a particular gesture occurred.[3] (*See* Claim Constr. Order at 9.)

Elantech's own materials and software show that the computer is capable of responding in a specific manner based on the nature of the gesture on the touchpad. (*See, e.g.*, Wolfe SJ Infringement Decl., Ex. 12, at SYN 00004999) (noting that a "1 finger" tap is the "same as the left button of mouse"); Elantech KTP3 Touchpad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004945-46 ("The dragging activity is also can be [sic] released after tapping on the touchpad when 'Tap to release' is selected.").) Since specific gestures on Elantech's touchpad result in various actions by the computer, it necessarily is transmitting data to the computer indicating the occurrence of a specific gesture. (Wolfe SJ Infringement Decl. ¶¶ 36-38.)

---

[3] While the Court construed the signal terms of the '931 Patent, it noted that the same claim term should be construed consistently in the claims. (Claim Constr. Order at 8.) The same reasoning would apply to the construction of the word signal in claims 6 and 9 of the '591 Patent, since the '931 and '591 Patents are part of the same family of patents and have the same specification disclosure relating to the tapping gestures. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because NTP's patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.").

### 1. Elantech's Touchpads Initiate and Maintain a Tap Gesture Signal as Required by Claim 1 of the '931 Patent.

Claim 1 of the '931 Patent requires that the accused method "initiat[e] a signal to the host indicating the occurrence of said tap gesture" if the amount of time and motion of the finger on the touchpad is less than the threshold requirements for a tap gesture. (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 53:4-10.) Elantech's accused products "initiat[e] the transmission of a set of data to a computer, or other device that can take as input the output of a touch-sensor pad, that indicates that a tap gesture has occurred on the touch-sensor pad," as required under the Court's Claim Construction Order. (Wolfe SJ Infringement Decl. ¶¶ 36-38.; *see also* Claim Constr. Order at 9.) ███████████████████████████████████████████████████████████████████ (Wolfe SJ Infringement Decl. ¶ 41.)

Claim 1 also requires that the accused method "maintain[] said signal for a predetermined period of time." (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 53:11-12.) Elantech's accused products "continue, retain, or repeat the signal for a period of time that was determined before," as required by the Court's claim construction order. (Wolfe SJ Infringement Decl. ¶ 39-41.) Specifically, the "button down" signal, which indicates a tap gesture, is continued for ██ ms. (*Id.*)

### 2. Elantech's Touchpads Initiate, Terminate, and Send Signals Indicating Tap Gestures as Required by Claim 6 of the '591 Patent.

Like claim 1 of the '931 Patent, claim 6 of the '591 Patent requires the "initiat[ion] [of] a first signal to the host" indicating that a tap gesture has occurred if the length of the finger presence is less than the reference time for a tap. As discussed in Section III.F.1, *supra*, Elantech's products meet this limitation. (Wolfe SJ Infringement Decl. ¶ 50.) Claim 6 further requires the termination of this tap signal if a reference amount of time passes without the detection of a second finger presence. (Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 47:26-27.) Elantech's accused products terminate the tap signal if ██ ms passes without a second presence being detected. (Wolfe SJ Infringement Decl. ¶¶ 51-54.)

1   Claim 6 of the '591 Patent additionally requires the termination of the first tap signal
2   if a second finger presence is detected within a set amount of time after the first finger
3   presence and if the length of this presence is less than the time limit for a tap. (Wolfe SJ
4   Infringement Decl. Ex. 3, '591 Patent at 47:32-34.) In place of this first tap signal, a second
5   signal is sent to the computer (or other host device). (Wolfe SJ Infringement Decl. ¶ 57,
6   Ex. 3 '591 Patent at 47:35-36.)

7   Elantech's products use this second set of signals. (Wolfe SJ Infringement Decl.
8   ¶¶ 57-60.) Under Elantech's software, if a second finger presence occurs before the end of
9   "████████" (i.e., ███ ms) and the length of this presence is less than the limit for a tap,
10  the first button down signal is terminated and a second button down signal is then sent to the
11  computer. (Id.) This second signal simulates a double click of the mouse. (Id. ¶ 59.)

### 3. Elantech's Touchpads Initiate and Maintain a Drag Gesture Signal as Required by Claim 9 of the '591 Patent.

14  Claim 9 of the '591 Patent requires that the accused method "initiat[e] a drag gesture
15  signal to the host" if the duration of a first finger presence is less than a reference amount of
16  time. (Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 48:15-17.) As discussed in
17  Section III.F.1, supra, Elantech's touchpads initiate a signal to the computer indicating a
18  single tap gesture if the length of the finger presence is less than the time limit for a tap.
19  Elantech's own materials describe its drag function as a "Tap and Drag Lock" feature.
20  (Wolfe SJ Infringement Decl., Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09
21  (P/N: 700309-1701), at SYN 00004951.) Moreover, a tap is a necessary precondition for
22  Elantech's drag, and the initiation of a tap signal constitutes the initiation of a drag gesture
23  signal for purposes of claim 9 of the '591 Patent. (Wolfe SJ Infringement Decl. ¶¶ 68-69.)
24  This is the same signaling method set forth in the '591 Patent. (Id. and Ex. 3.)

25  Claim 9 further requires that this drag gesture signal be "maintain[ed]" after the
26  second finger presence is detected on the touchpad if the amount of time between the first
27  and second finger presences is less than a reference amount of time. (Wolfe SJ Infringement
28  Decl., Ex. 3, '591 Patent at 48:23-27.) The claim also requires the repeated sending of X and

1  Y (*i.e.*, horizontal and vertical) position information for the duration of the second finger
2  presence. (*Id.*)
3        In Elantech's software, the "button down" signal initiated by the first finger presence
4  on the touchpad continues for the length of the second finger presence if this second finger
5  presence occurs before the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Wolfe SJ Infringement Decl.
6  ¶¶ 73-74.) Moreover, when this happens and the touchpad is in "drag" state, X and Y
7  position information is sent to the host to carry out the drag. (*Id.* ¶ 75.) Consequently, all of
8  the limitations of claim 9 of the '591 Patent are also met. (Wolfe SJ Infringement Decl.
9  ¶ 76.)

## CONCLUSION

11        For the reasons described above, there is no genuine issue of material fact that use of
12  Elantech's accused touchpads satisfies each and every limitation of claim 1 of the '931 Patent
13  and claims 5 and 6 of the '591. Thus, Synaptics is entitled to partial summary judgment as a
14  matter of law that the use of Elantech's products meets the limitations of these claims.

16  Dated: January 11, 2008                MORRISON & FOERSTER LLP

18                                                    By:  s/ Karl J. Kramer
                                                        Karl J. Kramer
                                                        KKramer@mofo.com

                                                        Attorneys for Defendant and
                                                        Counterclaimant
                                                        SYNAPTICS, INC.