1   KARL J. KRAMER (CA SBN 136433)
    ERIKA L. YAWGER (CA SBN 234919)
2   MORRISON & FOERSTER LLP
    755 Page Mill Road
3   Palo Alto, California  94304-1018
    Telephone: (650) 813-5600
4   Facsimile: (650) 494-0792
    KKramer@mofo.com
5
    Attorneys for Defendant and Counterclaimant
6   SYNAPTICS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12  ELANTECH DEVICES CORPORATION, a corporation existing under the laws of Taiwan, R.O.C., | Case No.   C06-01839 CRB |
| 13 | **SYNAPTICS, INC.'S NOTICE OF MOTION AND MOTION FOR** |
| 14                    Plaintiff, | **PARTIAL SUMMARY JUDGMENT THAT USE OF** |
| 15         v. | **ELANTECH'S PRODUCTS MEETS THE TAPPING CLAIMS** |
| 16 | **OF U.S. PATENT NOS. 6,380,931 AND 5,543,591; MEMORANDUM** |
| 17  SYNAPTICS, INC., a Delaware corporation; AVERATEC, INC., a California corporation; | **OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 18  and PROSTAR COMPUTER, INC., a California corporation, | |
| 19 | Date:  February 15, 2008 |
|                    Defendants. | Time:  10:00 a.m. |
| 20 | Courtroom 8, 19th Floor |
| 21 | Hon. Charles R. Breyer |
| 22  AND RELATED COUNTERCLAIMS | |

23

24

25                     **PUBLIC VERSION**

26

27

28

1

# TABLE OF CONTENTS

2

| | | | Page |
|---|---|---|---|

NOTICE OF MOTION ................................................................................................ 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ........................... 1

SUMMARY OF THE ARGUMENT ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      INTRODUCTION .......................................................................................... 2

II.     FACTUAL BACKGROUND ............................................................................ 2

      A.     Synaptics' Patented "Tapping" Methods ................................................ 2

           1.   Background of the Asserted Patents ............................................ 2

           2.   The Claims at Issue ................................................................ 3

      B.     Elantech's Infringing Touchpad Products ................................................ 4

      C.     District Court's Claim Construction ...................................................... 5

III.    ARGUMENT ................................................................................................ 6

      A.     Legal Standard ................................................................................ 6

      B.     The Use Of Elantech's Products Meets The Preambles Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent ............................... 8

      C.     The Use Of Elantech's Products Meets The Touch-Sensing Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent ............ 9

      D.     The Use Of Elantech's Products Meet The Comparison Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent ............... 10

           1.   The KTP3 Code Compares to the Claimed Reference Values ............... 10

           2.   The KTP5 Products Also Compare Time and Motion ......................... 11

      E.     Elantech's Products Satisfy The Requirement Of Claims 6 And 9 Of The '591 Patent That The Length Between A First And Second Presence On The Touchpad Be Compared With A Reference Amount Of Time ..................... 12

      F.     The Use Of Elantech's Products Meets The Signal Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent ............................... 13

           1.   Elantech's Touchpads Initiate and Maintain a Tap Gesture Signal as Required by Claim 1 of the '931 Patent ....................................... 14

           2.   Elantech's Touchpads Initiate, Terminate, and Send Signals Indicating Tap Gestures as Required by Claim 6 of the '591 Patent ........ 14

# TABLE OF CONTENTS
### (continued)

Page

3.      Elantech's Touchpads Initiate and Maintain a Drag Gesture Signal as Required by Claim 9 of the '591 Patent. .............................................. 15

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*A.B. Dick Co. v. Burroughs Corp.*,
    713 F.2d 700 (Fed. Cir. 1983)..................................................................................... 12

*AquaTex Indus., Inc. v. Techniche Solutions*,
    479 F.3d 1320 (Fed. Cir. 2007)................................................................................... 11

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
    73 F.3d 1573 (Fed. Cir. 1996)...................................................................................... 7

*Bai v. L & L Wings*,
    160 F.3d 1350 (Fed. Cir. 1998)..................................................................................... 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................................................... 6

*Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*,
    305 F.3d 1303 (Fed. Cir. 2002)................................................................................... 11

*General Elec. Co. v. Nintendo Co., Ltd.*,
    179 F.3d 1350 (Fed. Cir. 1999)..................................................................................... 6

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ........................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)....................................................................................................... 6

*Miles Labs. Inc. v. Shandon, Inc.*,
    997 F.2d 870 (Fed. Cir. 1993)..................................................................................... 12

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005)................................................................................... 13

*Phonometrics, Inc. v. N. Telecom Inc.*,
    133 F.3d 1459 (Fed. Cir. 1998)..................................................................................... 7

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*,
    731 F.2d 840 (Fed. Cir. 1984)................................................................................ 11, 12

## STATUTES

Federal Rule of Civil Procedure 56(c) ................................................................................. 6

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, on February 15, 2008, at 10:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, defendant and counterclaimant Synaptics, Inc. ("Synaptics"), will and hereby does move the Court for an order granting partial summary judgment that use of Elantech Devices Corporation's ("Elantech") products meets the limitations of claim 1 of U.S. Patent No. 6,380,931 ("the '931 Patent") and claims 6 and 9 of U.S. Patent No. 5,543,591 ("the '591 Patent"). This motion is based on this Notice, the Memorandum of Points and Authorities below, the Expert Declaration of Andrew Wolfe, Ph.D. in Support of Synaptics, Inc.'s Motions for Summary Judgment, executed January 8, 2008 ("Wolfe SJ Infringement Decl."), and the prior papers filed by Synaptics in connection with the Claim Construction hearing, which are incorporated herein by reference.

## STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED

Synaptics seeks an efficient resolution of its assertion that the accused touchpad devices meet the limitations of the "tapping" methods of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent. As explained below, Synaptics seeks an order of:

(1) judgment that all of the limitations of claim 1 of the '931 Patent are satisfied literally or under the doctrine of equivalents by the use of Elantech's accused products;

(2) judgment that all of the limitations of claim 6 of the '591 Patent are satisfied literally or under the doctrine of equivalents by the use of Elantech's accused products; and

(3) judgment that all of the limitations of claim 9 of the '591 Patent are satisfied literally or under the doctrine of equivalents by the use of Elantech's accused products.

## SUMMARY OF THE ARGUMENT

Elantech's own manuals, specifications, website, and software prove that its touchpads include Synaptics' patented tap, double tap, and drag gestures. Specifically, the use of Elantech's products meets all of the limitations of Synaptics' patented method claims for implementing these gestures. These methods, as claimed by claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent, have three basic categories of steps: (1) detecting a touch; (2) ascertaining whether variables (length of presence, duration between presences, and amount of motion) are less than reference amounts; and (3) sending signals to the

1  computer if the variables are less than the thresholds.  Since there is no genuine issue of

2  material fact, Synaptics is entitled to summary judgment that use of Elantech's products

3  meets the limitations of claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

6  Santa Clara-based Synaptics is the world's leading developer of touchpad technology for

7  personal devices, such as notebook computers, and has been on the cutting edge of technology

8  development in this area since the early 1990s.  Synaptics holds many fundamental patents

9  covering basic touchpad technology, including the '931 and '591 Patents.  Synaptics' patents

10  teach and claim methods for detecting gestures on a touchpad, including methods for detecting

11  specific tapping, double tapping, and finger dragging gestures.

12  Elantech, a Taiwanese company, is a late-comer to the touchpad technology business.

13  Elantech has offered for sale products with Synaptics' patented features and underbid Synaptics

14  in the market.  Although Elantech has been on written notice of its infringement of Synaptics'

15  patents since at least December 2003, it has continued to produce and sell products intended to be

16  used in a manner that infringes Synaptics' touchpad technology.

17  Elantech's own user's manuals, product specifications, website, and software demonstrate

18  that use of Elantech's products meets each limitation of claim 1 of the '931 Patent and claims 6

19  and 9 of the '591 Patent.  Because there is no genuine issue of material fact as to this issue, partial

20  summary judgment is appropriate.

## II.   FACTUAL BACKGROUND

### A.    Synaptics' Patented "Tapping" Methods

#### 1.    Background of the Asserted Patents

24  As a result of problems with trackball controllers used for cursor motion in early portable

25  notebook computers, manufacturers began using small touchpad sensors that could track finger

26  motion and convert this motion into cursor motion.  (Wolfe SJ Infringement Decl. ¶ 10.)  Users

27  normally touched the sensor with their index or middle finger, resulting in difficulty clicking or

28  holding the separate buttons used to simulate clicking a traditional mouse.  (*Id.* ¶ 11.)  In

1    response, Synaptics developed a new touch sensor that recognized specific finger motions or

2    combinations of motions as "gestures" and sent appropriate information to the computer (or other

3    host) in response to each gesture to simulate corresponding button actions. (*Id.* ¶ 12.) For

4    example, the "tap," "double tap," and "drag" gestures can be used to simulate clicking, double

5    clicking, and holding down a traditional mouse button. These touchpad gestures proved easier for

6    users to perform than manipulating physical buttons, providing a distinct advantage over prior

7    devices. (*Id.*)

8            Synaptics sought and secured several United States patents, including the '931 and '591

9    Patents, to protect its groundbreaking innovations. The '931 and '591 Patents are both part of a

10   related family of patents dating back to 1992. (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent

11   "Related U.S. Application Data" and Ex. 3, '591 Patent "Related U.S. Application Data".) The

12   patents, which have overlapping specifications, are directed to "[m]ethods for recognizing

13   gestures made by a conductive object on a touch-sensor pad." (Wolfe SJ Infringement Decl.,

14   Ex. 2, '931 Patent, "Abstract" and Ex. 3, '591 Patent, "Abstract".)

15                     **2.      The Claims at Issue**

16           Claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent each claim a method for

17   recognizing a particular gesture that can be used to simulate a specific button action of a

18   traditional mouse. (Wolfe SJ Infringement Decl. ¶¶ 16, 19, 43, 62.) Attached as Appendix A

19   hereto is a chart containing all of these claims. In essence, claim 1 of the '931 Patent relates to a

20   single-tap gesture, claim 6 of the '591 Patent relates to a double-tap gesture, and claim 9 of the

21   '591 Patent relates to a tap-and-one-half, or drag, gesture. (*Id.* ¶¶ 16-18.)

22           All three claimed methods begin by detecting the presence of a conductive object, such as

23   a finger, on the touchpad and comparing the time the finger is on the touchpad with a reference

24   amount of time for a tap. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 35:29-30, 50-

25   57, 52:63-67, and Ex. 3, '591 Patent at 47:18-21, 48:11-14.) Claim 1 of the '931 Patent also

26   compares the amount of motion made by the finger while on the touchpad with a reference

27   amount of motion for a tap. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent 53:1-3.)

28   These comparisons serve to distinguish a tap gesture from the gesture for basic cursor motion.

1  (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 34:31-34, 42-46.) If the finger is on the

2  touchpad less than the time limit for a tap, and under claim 1, if it moves less than a reference

3  amount of motion, the touchpad sends the basic tap signal to the computer. (Wolfe SJ

4  Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 35:50-57, 53:4-10, and Ex. 3, '591 Patent 47:22-24,

5  48:14-16.) Absent the detection of a second finger presence within a set time period, the signal is

6  maintained for a predetermined amount of time, resulting in a single tap gesture. (Wolfe SJ

7  Infringement Decl. ¶ 16; Ex. 2, '931 Patent at 53:11-12.) This single tap gesture can be used, for

8  example, to simulate a single click of the mouse. (Wolfe SJ Infringement Decl. ¶ 16; Ex. 2, '931

9  Patent at 34:31-34.)

10      However, a single tap gesture will not result if the touchpad detects a second finger (or

11  other conductive object) present within a set period of time after the first touch. Instead, if the

12  second touch is less than the reference amount of time for a tap, the basic (single) tap signal ends

13  and is replaced by a second signal indicating a double-tap gesture. (Wolfe SJ Infringement Decl.

14  ¶ 17; Ex. 3, '591 Patent at 34:12-22, 47:27-36.) This double-tap gesture, claimed in claim 6 of

15  the '591 Patent, can be used, for example, to simulate a double click of the mouse. (Wolfe SJ

16  Infringement Decl. ¶ 17; Ex. 3, '591 Patent at 31:39-40.)

17      On the other hand, if the second touch (detected within a set time period after the first

18  touch) is longer than the time limit for a tap, the touchpad recognizes a drag gesture, rather than

19  single or double tap gesture. (Wolfe SJ Infringement Decl. ¶ 18; Ex. 3, '591 Patent at 33:31-37,

20  48:18-22.) In such cases, the tap signal continues for the length of the second touch, sending

21  updated information about the position of the finger on the touchpad so as to permit the user to

22  "drag" a file or icon from one place to another on the screen. (Wolfe SJ Infringement Decl. ¶ 18;

23  Ex. 3, '591 Patent at 48:23-27.) The drag gesture, recited in claim 9 of the '591 Patent, performs

24  a similar function to clicking on a mouse and holding it down to drag text or an icon on the

25  computer screen. (Wolfe SJ Infringement Decl. ¶ 18.)

26      **B.    Elantech's Infringing Touchpad Products**

27      Elantech was established in September 2003. (Declaration of Karl J. Kramer in

28  Support of Synaptics Motions for Summary Judgment ("Kramer SJ Decl."), Ex. A,

1  Elantech's Objs. and Responses to 1st Set of Rogs, 2:20-22 and 4:13-14.) Elantech, in its

2  own materials, admits that its products use tap gestures which are claimed in Synaptics'

3  patents. For example, its Touchpad Manual and website emphasize the ability of Elantech's

4  touchpads to recognize the single tap gesture, noting that "[t]apping function is default

5  enabled" and that this is the "same as the left button of [the] mouse." (*See* Wolfe SJ

6  Infringement Decl., Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09 (P/N:

7  700309-1701), at SYN 00004951; Ex. 12, Elantech, "Brief Summary of Capacitive

8  TouchPad," at SYN 00004999.) Similarly, Elantech's marketing materials note that

9  "[d]ouble tapping by one finger can 'execute' or 'open' a file or root." (Wolfe SJ

10  Infringement Decl., Ex. 6 at 1.) Finally, its TouchPad Manual instructs users to use a drag

11  gesture, noting that its "Tap and Drag Lock" feature "defines the duration for 'dragging'

12  activities." (Wolfe SJ Infringement Decl., Ex. 9, Elantech KTP3 TouchPad Manual, dated

13  2004-01-09 (P/N: 700309-1701), at SYN 00004945-46.)

14        Elantech's products use one of two types of software—KTP3 code and KTP5 code—

15  to carry out Synaptics' patented tap gestures. (Wolfe SJ Infringement Decl. ¶¶ 13-14.) The

16  minor differences between the KTP3 and KTP5 code are not material for purposes of this

17  motion. As explained in detail in Dr. Wolfe's Declaration, Elantech's products containing

18  either KTP3 or KTP5 code satisfy all of the claim limitations of claim 1 of the '931 Patent

19  and claims 6 and 9 of the '591 Patent. (*Id.* ¶¶ 19-76.)

20      **C.**    **District Court's Claim Construction**

21        On April 6, 2007, the Court issued its Claim Construction Order, interpreting several

22  disputed terms in the various patents at issue. Notably, the Court rejected all of Elantech's

23  proposed constructions for terms in Synaptics' patents. (*See* Docket No. 91 ("Claim Constr.

24  Order") at 6, 8-10.) Of relevance to the present motion, the Court construed the related terms

25  "initiating a signal to the host indicating the occurrence of said tap gesture" and "maintaining

26  said signal for a predetermined period of time" in the '931 Patent. (*Id.* at 7.) Elantech sought

27  to construe the word "signal" in these terms narrowly to mean "the high state of an output

28  that has a high and low state." (*See* Docket No. 73 (" Elantech's Opp. Claim Constr. Br.")

at 8.) Thus, it sought to limit the "initiating" term to outputting such a high state, where this high state represented a tap gesture on the touchpad, and sought to limit the "maintaining" term to "continuously outputting the high state of the signal only for a predetermined time period (*i.e.*, changing the signal state from high to low at the end of the predetermined time period)." (*See* Claim Constr. Order at 8.)

The Court rejected that narrow and artificial construction of the word "signal" and the related claim terms. Instead, it agreed with Synaptics that a signal in this context was a "transmission of a set of data to a computer, or other device that can take as input the output of a touch-sensor pad." (*Id.* at 9.) Thus, the Court construed the "initiating" term to mean "initiating the transmission of a set of data to a computer, or other device that can take as input the output of a touch-sensor pad, that indicates that a tap gesture has occurred on the touch-sensor pad" and the "maintaining" term to mean "to continue, retain, or repeat the signal for a period of time that was determined before." (*Id.*)

## III.    ARGUMENT

### A.    Legal Standard

Summary judgment is an integral part of fair and efficient administration of justice. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "the pleadings, the discovery and disclosures materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." While infringement is a question of fact, patent infringement actions may be decided on summary judgment if there are no genuine disputes regarding the material facts. *General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353 (Fed. Cir. 1999). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, summary judgment is appropriate "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

1    "An infringement analysis entails two steps. The first step is determining the meaning and

2    scope of the patent claims asserted to be infringed. The second step is comparing the properly

3    construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*,

4    52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) (citations omitted).

5        In his declaration filed in support of Synaptics' Motions for Summary Judgment, Dr.

6    Andrew Wolfe provides a detailed claim-by-claim, limitation-by-limitation explanation of how

7    use of Elantech's accused products satisfies each and every limitation of claim 1 of the '931

8    Patent and claims 6 and 9 of the '591 Patent. (Wolfe SJ Infringement Decl. ¶¶ 19-76, 83-129.)

9    Synaptics does not repeat every detail of Dr. Wolfe's analysis here because Elantech is not

10   expected to dispute that it meets nearly all of the claim limitations. Because in operation the tap,

11   double tap, and drag gestures in the Elantech code are highly interrelated, the presentation below

12   tracks the functional steps that are overlapping in both the various claims at issue and the

13   Elantech KTP3 and KTP5 software. The Court's Claim Construction Order resolved the legal

14   aspects of the key defenses that Elantech raised and, since Elantech's own user manuals, product

15   specifications, website, and software establish that all of the limitations of the asserted claims are

16   factually satisfied, there is no triable issue of material fact. In this situation, where the legal issue

17   of claim construction has been resolved and there is no dispute as to how the accused product

18   works, summary judgment resolving the application of this legal standard to the undisputed facts

19   is appropriate. *See Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998)

20   (noting that if the district court's claim construction was correct, then summary judgment was

21   proper because "Phonometrics does not dispute the structure and operation of the accused

22   devices"); *see also Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir.

23   1996) ("Where, as here, the parties do not dispute any relevant facts regarding the accused

24   product but disagree over [claim construction], the question of literal infringement collapses to

25   one of claim construction and is thus amenable to summary judgment.").

26

27

28

**B.    The Use Of Elantech's Products Meets The Preambles Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.**

The preambles to claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent claim methods for recognizing tap, double tap, and drag gestures, respectively. (Wolfe SJ Infringement Decl. ¶¶ 21, 45, 63; Ex. 6; Ex. 2, '931 Patent at 52:60; Ex. 3, '591 Patent at 47:14, 48:7.) As discussed in Section II.B., *supra*, Elantech's products recognize each of these gestures. (Wolfe SJ Infringement Decl. ¶¶ 15-18, 24, 47, 65; Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004951 ("Tapping function is default enabled."); Ex. 6 ("Double tapping by one finger can 'execute' or 'open' a file or root."); Ex. 9, Elantech KTP3 TouchPad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004945-46 ("'Tap and Drag Lock', this option defines the duration for 'dragging' activities. . . . The 'dragging' activity is also can be [sic] released after tapping on the touchpad when 'Tap to release' is selected.").) For example, the figure below, from Elantech's own marketing materials, shows its touchpad's drag gesture feature. (Wolfe SJ Infringement Decl., Ex. 6, "Elantech Notebook PC Touchpad".)



The preambles of all three claims also require the provision of "a touch-sensor pad in a touch-sensing system providing X and Y information to a host." (Wolfe SJ Infringement Decl. ¶¶ 21, 45, 63; Ex. 2, '931 Patent at 52:60-62; Ex. 3, '591 Patent at 47:15-16, 48:7-9.) Elantech's accused products provide a touch-sensor pad and a touch-sensing system. (Wolfe SJ Infringement Decl. ¶¶ 22, 46, 64; Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-

01-09 (P/N: 700309-1701), at SYN 00004932 ("ELANTECH touchpad is a smooth and sensitive pointing device and can detect the position of a finger over a touch-sensitive area.").) Moreover, Elantech's products provide information regarding the X and Y (*i.e.*, horizontal and vertical) position of a finger (or other object) on the touchpad to a computer or other host. (Wolfe SJ Infringement Decl. ¶¶ 23, 46, 64; Ex. 10, Elantech Product Specification, Model 810507-0703, "Elantech Touchpad for handheld Device Application, dated 2005-05-13, at SYN 00004833 ("Touchpad can sends [sic] the information, including X-Y position information . . . to host through UART interface. . . . Touchpad can send the information, including X-Y position information . . . to host through SPI interface.").)

### C.    The Use Of Elantech's Products Meets The Touch-Sensing Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.

Claim 1 of the '931 Patent and claims 5 and 6 of the '591 Patent require the detection of a "conductive object" (*e.g.*, finger) on the touchpad.[1] (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 52:63-64; Ex. 3, '591 Patent at 47:18-19, 28-29, 48:10-11, 18-19.)

Elantech's own materials note that its touchpads "detect the position of a finger over a touch-sensitive area." (Wolfe SJ Infringement Decl. ¶¶ 25-26, 48, 55, 66, 70; Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004932; Ex. 15, Elantech Product Specification, Model 800406-16XX, dated 2005-01-27, at SYN 00004796 (Touchpad devices detect the position of a finger over a touch-sensitive area."); Ex. 12, Elantech, "Brief Summary of Capacitive TouchPad," at SYN 00004998; *see also* Kramer SJ Decl. Ex. A, http://www.elantech.com.tw/003/pro.aspx (last visited January 10, 2008) ("When finger touch the TouchPad, it changes the capacitance of the TouchPad . . . [and] the controller IC on the TouchPad will detect such change and calculate the change into coordinate.").)

---

[1]    Claims 6 and 9 each require the detection of both a "first presence" and a "second presence" on the touchpad. (*See* Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 47:18-19, 28-29, 48:10-11, 18-19.)

**D.    The Use Of Elantech's Products Meet The Comparison Limitations Of Claim 1 Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.**

**1.    The KTP3 Code Compares to the Claimed Reference Values.**

Claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent each require a comparison of the length of time that the finger (or other conductive object) is on the touchpad with a reference amount of time for a tap.[2] (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 52:65-67; Ex. 3, '591 Patent at 47:20-21, 30-31, 48:12-13.) Claim 6 of the '591 Patent requires two such "tap" events.

Elantech's KTP3 products compare the length of the finger presence against a predetermined reference amount of time to determine whether the presence is a tap gesture. (Wolfe SJ Infringement Decl. ¶¶ 27-29, 49, 56, 67.) Specifically, Elantech's software repeatedly scans for the presence of a finger (or other object) on the touchpad. (*Id.* ¶¶ 25-26.)

Claim 1 of the '931 Patent also requires a comparison between the amount of motion of the finger (or other conductive object) on the touchpad and a reference amount of motion for a tap. (Wolfe SJ Infringement Decl. ¶ 32, Ex. 2, '931 Patent at 53:1-3.) Claims 6 and 9 of the '591 Patent require no such comparison of motion.

---

[2]  Claim 6 compares both the length of a "first presence" on the touchpad and the length of a "second presence" on the touchpad with a reference amount of time. (Wolfe SJ Infringement Decl. Ex. 3, '591 Patent at 47:20-21, 30-31.)

## 2. The KTP5 Products Also Compare Time and Motion.

The KTP5 code, like the KTP3 code, compares the duration and motion of the finger presence with reference amounts of time and motion. (Wolfe SJ Infringement Decl. ¶¶ 27-28, 30, 32-35.) ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████ Thus, for the same reasons that apply to the KTP3 code, the KTP5 code literally satisfies the time and motion comparison limitations of claim 1 of the '931 Patent and the time comparison limitations of claims 6 and 9 of the '591 Patent.

Although the claims do not require that the reference amount of time is always a fixed or predetermined amount, even if the claims had such a requirement, the KTP5 code would satisfy the time comparison limitations under the doctrine of equivalents. "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

Any differences between the time comparison steps of Elantech's KTP5 touchpads and the time comparison limitations of the asserted claims are insubstantial. (Wolfe SJ Infringement Decl. ¶ 31.) ████████████████████████████████ ███████████████████████████ *See Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1317 (Fed. Cir. 2002) (noting that the mere combination of two claim elements into a single step does not result in claim vitiation preventing application of the doctrine of equivalents). Indeed, Elantech's KTP5 products simply add an additional step— ████████████████████████████████████████████████—to the methods claimed in claims 6 and 9 of the '591 Patent. *See Radio Steel & Mfg. Co. v. MTD Prods.*,

1    *Inc.*, 731 F.2d 840, 848 (Fed. Cir. 1984) (noting in the context of the doctrine of equivalents

2    that "an accused device cannot escape infringement by merely adding features, if it otherwise

3    has adopted the basic features of the patent" (quoting *A.B. Dick Co. v. Burroughs Corp.*, 713

4    F.2d 700, 703 (Fed. Cir. 1983))); *see also Miles Labs. Inc. v. Shandon, Inc.*, 997 F.2d 870,

5    877 (Fed. Cir. 1993) ("Infringement under the doctrine [of equivalents] does not vanish

6    merely because the accused device performs functions in addition to those performed by the

7    claimed device.").

8           Moreover, Elantech's KTP5 products perform substantially the same function, in

9    substantially the same way, to achieve substantially the same result as the time comparison

10   limitations of the asserted claims.  The function of Elantech's KTP5 time comparison, like

11   the functions of the comparison limitations of claim 1 of the '931 Patent and claims 6 and 9

12   of the '591 Patent, is to compare the amount of time that the touchpad is touched with a

13   reference value.  (Wolfe SJ Infringement Decl. ¶ 31.)  The way that both Elantech's KTP5

14   comparisons and the patented comparisons carry out this function is by accumulating a count

15   of the elapsed time and comparing that count to a reference value.  (*Id.*)  The result of both of

16   these comparisons is a decision as to whether or not a tap has occurred.  (*Id.*)  Thus,

17   Elantech's KTP5 touchpads satisfy the time limitations of the asserted patents both literally

18   and under the doctrine of equivalents.

19   **E.    Elantech's Products Satisfy The Requirement Of Claims 6 And 9 Of The**
           **'591 Patent That The Length Between A First And Second Presence On The**
20         **Touchpad Be Compared With A Reference Amount Of Time.**

21          In addition to comparing the length of time that a finger (or other conductive object)

22   is on the touchpad, claims 6 and 9 of the '591 Patent require a comparison between the length

23   of time that passes between a first and second presence of a finger (or other conductive

24   object) on the touchpad and a reference amount of time for a double tap and drag gesture,

25   respectively.  (Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 47:26-27, 48:20-22.)

26   Elantech's products compare the interval between sensing a first and a second presence on

27   the touchpad with a reference amount of time.  (Wolfe SJ Infringement Decl.¶¶ 51-54, 71-

28   72.)  Specifically, Elantech's software determines whether the second presence occurred

SYNAPTICS, INC.'S MSJ RE TAPPING CLAIMS                                                          12
CASE NO. C 06-01839 CRB
pa-1224821

1    before the end of " ███████ " time to determine whether it can qualify as a double tap or

2    drag gesture. (*Id.*)

3    **F.    The Use Of Elantech's Products Meets The Signal Limitations Of Claim 1**
**Of The '931 Patent And Claims 6 And 9 Of The '591 Patent.**

4

5    Claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent require that a signal

6    be sent from the touchpad to the host indicating that the gesture in question occurred. (Wolfe

7    SJ Infringement Decl., Ex. 2, '931 Patent at 53:4-10; Ex. 3, '591 Patent at 47:22-24, 35-36,

8    48:14-16, 23-27.) As discussed in Section II.C., *supra*, the Court's Claim Construction

9    Order rejected Elantech's limited definition of the word signal and instead indicated that a

10    signal simply means "the transmission of a set of data to a computer" indicating that a

11    particular gesture occurred.[3] (*See* Claim Constr. Order at 9.)

12    Elantech's own materials and software show that the computer is capable of

13    responding in a specific manner based on the nature of the gesture on the touchpad. (*See,*

14    *e.g.*, Wolfe SJ Infringement Decl., Ex. 12, at SYN 00004999) (noting that a "1 finger" tap is

15    the "same as the left button of mouse"); Elantech KTP3 Touchpad Manual, dated 2004-01-09

16    (P/N: 700309-1701), at SYN 00004945-46 ("The dragging activity is also can be [sic]

17    released after tapping on the touchpad when 'Tap to release' is selected.").) Since specific

18    gestures on Elantech's touchpad result in various actions by the computer, it necessarily is

19    transmitting data to the computer indicating the occurrence of a specific gesture. (Wolfe SJ

20    Infringement Decl. ¶¶ 36-38.)

21

22

23    ───────────────

[3]  While the Court construed the signal terms of the '931 Patent, it noted that the same
24    claim term should be construed consistently in the claims. (Claim Constr. Order at 8.) The same
reasoning would apply to the construction of the word signal in claims 6 and 9 of the '591 Patent,
25    since the '931 and '591 Patents are part of the same family of patents and have the same
specification disclosure relating to the tapping gestures. *See NTP, Inc. v. Research in Motion,*
26    *Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because NTP's patents all derive from the same
parent application and share many common terms, we must interpret the claims consistently
27    across all asserted patents.").

28

SYNAPTICS, INC.'S MSJ RE TAPPING CLAIMS                                                13
CASE NO. C 06-01839 CRB
pa-1224821

1.  **Elantech's Touchpads Initiate and Maintain a Tap Gesture Signal as Required by Claim 1 of the '931 Patent.**

Claim 1 of the '931 Patent requires that the accused method "initiat[e] a signal to the host indicating the occurrence of said tap gesture" if the amount of time and motion of the finger on the touchpad is less than the threshold requirements for a tap gesture. (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 53:4-10.) Elantech's accused products "initiat[e] the transmission of a set of data to a computer, or other device that can take as input the output of a touch-sensor pad, that indicates that a tap gesture has occurred on the touch-sensor pad," as required under the Court's Claim Construction Order. (Wolfe SJ Infringement Decl. ¶¶ 36-38.; *see also* Claim Constr. Order at 9.) █████████████

███████████████████████████████████

███████████████████ (Wolfe SJ Infringement Decl. ¶ 41.)

Claim 1 also requires that the accused method "maintain[] said signal for a predetermined period of time." (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 53:11-12.) Elantech's accused products "continue, retain, or repeat the signal for a period of time that was determined before," as required by the Court's claim construction order. (Wolfe SJ Infringement Decl. ¶ 39-41.) Specifically, the "button down" signal, which indicates a tap gesture, is continued for ██ ms. (*Id.*)

2.  **Elantech's Touchpads Initiate, Terminate, and Send Signals Indicating Tap Gestures as Required by Claim 6 of the '591 Patent.**

Like claim 1 of the '931 Patent, claim 6 of the '591 Patent requires the "initiat[ion] [of] a first signal to the host" indicating that a tap gesture has occurred if the length of the finger presence is less than the reference time for a tap. As discussed in Section III.F.1, *supra*, Elantech's products meet this limitation. (Wolfe SJ Infringement Decl. ¶ 50.) Claim 6 further requires the termination of this tap signal if a reference amount of time passes without the detection of a second finger presence. (Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 47:26-27.) Elantech's accused products terminate the tap signal if ██ ms passes without a second presence being detected. (Wolfe SJ Infringement Decl. ¶¶ 51-54.)

1    Claim 6 of the '591 Patent additionally requires the termination of the first tap signal

2  if a second finger presence is detected within a set amount of time after the first finger

3  presence and if the length of this presence is less than the time limit for a tap. (Wolfe SJ

4  Infringement Decl. Ex. 3, '591 Patent at 47:32-34.) In place of this first tap signal, a second

5  signal is sent to the computer (or other host device). (Wolfe SJ Infringement Decl. ¶ 57,

6  Ex. 3 '591 Patent at 47:35-36.)

7    Elantech's products use this second set of signals. (Wolfe SJ Infringement Decl.

8  ¶¶ 57-60.) Under Elantech's software, if a second finger presence occurs before the end of

9  " █████ " (*i.e.,* █ ms) and the length of this presence is less than the limit for a tap,

10  the first button down signal is terminated and a second button down signal is then sent to the

11  computer. (*Id.*) This second signal simulates a double click of the mouse. (*Id.* ¶ 59.)

### 3.    Elantech's Touchpads Initiate and Maintain a Drag Gesture Signal as Required by Claim 9 of the '591 Patent.

14    Claim 9 of the '591 Patent requires that the accused method "initiat[e] a drag gesture

15  signal to the host" if the duration of a first finger presence is less than a reference amount of

16  time. (Wolfe SJ Infringement Decl., Ex. 3, '591 Patent at 48:15-17.) As discussed in

17  Section III.F.1, *supra*, Elantech's touchpads initiate a signal to the computer indicating a

18  single tap gesture if the length of the finger presence is less than the time limit for a tap.

19  Elantech's own materials describe its drag function as a "Tap and Drag Lock" feature.

20  (Wolfe SJ Infringement Decl., Ex. 9, Elantech KTP3 Touchpad Manual, dated 2004-01-09

21  (P/N: 700309-1701), at SYN 00004951.) Moreover, a tap is a necessary precondition for

22  Elantech's drag, and the initiation of a tap signal constitutes the initiation of a drag gesture

23  signal for purposes of claim 9 of the '591 Patent. (Wolfe SJ Infringement Decl. ¶¶ 68-69.)

24  This is the same signaling method set forth in the '591 Patent. (*Id.* and Ex. 3.)

25    Claim 9 further requires that this drag gesture signal be "maintain[ed]" after the

26  second finger presence is detected on the touchpad if the amount of time between the first

27  and second finger presences is less than a reference amount of time. (Wolfe SJ Infringement

28  Decl., Ex. 3, '591 Patent at 48:23-27.) The claim also requires the repeated sending of X and

1  Y (*i.e.*, horizontal and vertical) position information for the duration of the second finger

2  presence. (*Id.*)

3      In Elantech's software, the "button down" signal initiated by the first finger presence

4  on the touchpad continues for the length of the second finger presence if this second finger

5  presence occurs before the ███████████████. (Wolfe SJ Infringement Decl.

6  ¶¶ 73-74.) Moreover, when this happens and the touchpad is in "drag" state, X and Y

7  position information is sent to the host to carry out the drag. (*Id.* ¶ 75.) Consequently, all of

8  the limitations of claim 9 of the '591 Patent are also met. (Wolfe SJ Infringement Decl.

9  ¶ 76.)

10                          **CONCLUSION**

11      For the reasons described above, there is no genuine issue of material fact that use of

12  Elantech's accused touchpads satisfies each and every limitation of claim 1 of the '931 Patent

13  and claims 5 and 6 of the '591. Thus, Synaptics is entitled to partial summary judgment as a

14  matter of law that the use of Elantech's products meets the limitations of these claims.

15

16  Dated: January 11, 2008                MORRISON & FOERSTER LLP

17

18                                    By:   s/ Karl J. Kramer
                                          Karl J. Kramer
19                                         KKramer@mofo.com

20                                        Attorneys for Defendant and
                                          Counterclaimant
21                                        SYNAPTICS, INC.

22

23

24

25

26

27

28