Yitai Hu (SBN 248085) (yhu@akingump.com)
Sean P. DeBruine (SBN 168071) (sdebruine@akingump.com)
Hsin-Yi Cindy Feng (SBN 215152) (cfeng@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, California 94306-2112
Telephone:    650-838-2000
Facsimile:    650-838-2001

Attorneys for Plaintiff and Counterdefendant
ELANTECH DEVICES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELANTECH DEVICES CORP., a corporation existing under the laws of Taiwan, R.O.C.,<br><br>        Plaintiff,<br><br>    vs.<br><br>SYNAPTICS, INC., A Delaware corporation; AVERATEC, INC, a California corporation; and PROSTAR COMPUTER, INC., a California corporation,<br><br>        Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 3:06-CV-01839 CRB<br><br>**ELANTECH DEVICES CORP.'S OPPOSITION TO SYNAPTICS, INC.'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT THAT USE OF ELANTECH'S PRODUCTS MEETS THE TAPPING CLAIMS OF THE '931 AND '591 PATENTS AND THE ZONE CLAIMS OF THE '931, '052 AND '411 PATENTS.**<br><br>Date:       March 7, 2008<br>Time:      10:00 am<br>Judge:     Hon. Charles R. Breyer<br>Courtroom: 8, 19th Floor |

# REDACTED

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT.......................................................................................................3

    A.    LEGAL STANDARD ................................................................................3

    B.    SYNAPTICS' MOTIONS ON THEIR FACE FAIL TO ESTABLISH THE
          FACTS NECESSARY FOR THE PARTIAL SUMMARY JUDGMENT IT
          REQUESTS. .............................................................................................4

          1.    Synaptics Does Not Even Attempt to Prove that "Use of Elantech's
               Products" Necessarily Results in Practice of the Claimed Methods...........4

          2.    Synaptics' Misleading Motion is an Attempt to Avoid Its
               Burden of Proof........................................................................................6

    C.    SYNAPTICS FAILS TO SHOW THAT THE ACCUSED PRODUCTS ARE
          EVEN CAPABLE OF PERFORMING THE CLAIMED STEPS...........................7

          1.    Synaptics Fails To Show That The "Comparing Amount Of Time To A
               Reference" Limitations Are Met (First Finger Down)................................8

          2.    Synaptics Has Failed To Show That The "Comparing The Amount Of
               Motion To A Reference" Limitation Of Claim 1 Of The '931 Patent
               Is Met .......................................................................................................9

          3.    Synaptics Has Failed To Show That The Signaling Limitations Of The
               '591 and '931 Patents Are Met .................................................................10

          4.    Synaptics Has Failed To Show That The Elantech Products Are Capable
               Of Performing The "Edge Motion" Method Of The '411 Patent. .............13

III.  CONCLUSION...................................................................................................14

i

1

# TABLE OF AUTHORITIES

2

## CASES

3    *Alloc, Inc. v. United States Intern. Trade Comm.*,
         342 F.3d 1361, 1374 (Fed. Cir. 2003) ................................................................. 4

4

     *Anderson v. Liberty Lobby, Inc.*,
5         477 U.S. 242, 251-52 (1986) ........................................................................... 3

6    *Continental Can Co. USA v. Monsanto Co.*,
         948 F.2d 1264, 1265 (Fed. Cir. 1991) .............................................................. 3

7

     *DSU Medical Corp. v. JMS Co., Ltd.*,
8         471 F. 3d 1293 (Fed. Cir. 2006) ...................................................................... 6

9    *Dynacore Holdings Corp. v. U.S. Philips Corp.*,
         363 F.3d 1263, 1274 (Fed. Cir. 2004) .............................................................. 6

10   *Eastman Kodak Co. v. Image Technical Svcs, Inc.*,
         504 U.S. 451, 456 (1992) ................................................................................. 3

11

12   *Opryland USA Inc. v. Great American Music Show*,
         970 F.2d 847, 850 (Fed. Cir. 1992) .................................................................. 4

13   *Vivid Tech, Inc. v. American Science & Engineering, Inc.*,
         200 F.3d 795, 806-807
14        (Fed. Cir. 1999) ........................................................................................... 3, 4

15

## STATUTES

16   Fed. R. Civ. Pro. 56(c) ............................................................................................. 3

17   35 U.S.C. § 271(b) ................................................................................................... 6

18

19

20

21

22

23

24

25

26

27

28

ELANTECH DEVICES CORP.'S OPPOSITION TO SYNAPTICS,
INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TAPPING CLAIMS          CASE NO. 3:06-CV-01839 CRB

1    Plaintiff Elantech Devices Corp. ("Elantech") files this consolidated opposition to Synaptics

2  Inc.'s Motion for Partial Summary Judgment That Use of Elantech's Products Meets the Zone Claims of

3  U.S. Patent Nos. 6,380,931; 5,943,052 and 5,880,441 (the "Zone Motion") and Synaptics Inc.'s Motion

4  for Partial Summary Judgment That Use of Elantech's Products Meets the Tapping Claims of U.S.

5  Patent Nos. 6,380,931 and 5,543,591 (the "Tapping Motion").  For the reasons set out herein, those

6  motions should be denied.

7  **I.    INTRODUCTION**

8    Synaptics' request for partial summary judgment that any "use" of certain Elantech products

9  would, as a matter of law, result in the practice of every step of the methods in its asserted patent claims

10  is utterly unsubstantiated.  Synaptics asks the court to find that, in every case where the accused

11  Elantech touchpad models are used, that use results in the practice of the claimed methods.  The claimed

12  methods require specific actions by the users of those products involving only contact with the touch

13  sensor in order to duplicate particular button functions.  What Synaptics fails to discuss is that the

14  accused Elantech products include the physical buttons.  In other words, Synaptics fails to inform the

15  court the features claimed in its patents are at best optional ways to perform functions that are much

16  more commonly performed in the traditional manner – by using the mechanical buttons.

17    As such, it is far from undisputed that the "use" of the Accused Elantech products necessarily

18  means that the steps of the asserted method claims are performed.  Rather, what is undisputed is that the

19  accused products can be and are used without the claimed methods being implicated at all.  This is

20  underscored in Synaptics briefing, where it repeatedly fails to even argue that the Elantech products

21  actually practice the claimed methods, but rather that they "can be" used in the accused products.

22  Synaptics did not move for judgment that the products "can be" used to perform the claimed methods.

23  Because it does not and can not establish that it is entitled to the scope of the judgment it requests,

24  Synaptics' motions should be denied.

25    Even to the extent Synaptics has tried to establish that the accused Elantech products "can be"

26  used to practice the claimed invention, it fails.  Synaptics relies almost entirely on its expert's analysis of

27  Elantech's firmware code.  Synaptics has not taken any depositions of Elantech seeking to confirm that

28  understanding.  Yet, as demonstrated in numerous examples cited below, Dr. Wolfe misunderstands the

1

1    operation of the accused firmware.  Because Synaptics has failed to establish any basis for the broad

2    order it seeks in its motion, Elantech will not attempt to refute every instance where Mr. Wolfe's opinion

3    is incorrect.  Rather, the examples given are sufficient to show that there are disputed facts even as to

4    whether the Elantech products can be used to practice the claimed methods.

5         Nowhere in Synaptics' brief is there an indication of the importance of the distinction between

6    products that "can be" used to perform the claimed method and those that necessarily practice the

7    claims.  Here that distinction is critical.  The "Accused Instrumentalities" in this case are not the

8    Elantech touchpad products alone.  Rather, the alleged infringement requires the accused Elantech

9    products, *combined with* additional hardware and software into an end product (e.g. a personal

10   computer) and even then only when an end user in the United States uses the end system in the particular

11   manner required in the claims.  Because Elantech is only one piece of this puzzle, in order for Elantech

12   to be liable under the patent law, Synaptics must establish that it actively induced an end user to use an

13   Elantech product in a way that infringes.  Such inducement requires not only acts that directly result in

14   particular acts of direct infringement, but also in a way that the specific intent that the end user actually

15   infringe the patent.  Synaptics' motions are silent on these issues as well, for good reason.

16        Thus, without clearly informing the Court, and without accounting for all of the relevant facts,

17   Synaptics is seeking summary adjudication that the Elantech products, to the extent they are included in

18   end products imported into the United States, necessarily practice the asserted method claims.  Again,

19   the facts not addressed by Synaptics – that the Elantech products are perfectly capable of non-infringing

20   uses – dooms its motion.  In addition, any future attempt by Synaptics to obtain a determination that the

21   Elantech products could theoretically be used in any of the claimed methods should be denied.  The

22   Court should decline Synaptics' latest attempts at piecemeal litigation. Even if Synaptics could support

23   that motion, any such determination could well be rendered moot when Synaptics fails to carry it burden

24   of establishing other elements of its case, such as showing actual acts of direct infringement in the

25   United States, acts by Elantech that in fact caused any such direct infringement, or that Elantech acted

26   with the necessary specific knowledge and intent.  Because these elements require a claim by claim

27   showing, it may well be that Synaptics fails in its proof on these issues for all or some of the claims.  In

28   addition, Elantech's defenses of invalidity have not been addressed.  Those defenses may well reduce the

2

1   claims at issue substantially.  Finally, while this case has been pending, Elantech has modified its

2   products in ways that will likely affect the issues raised in Synaptics' motions.  In January, Elantech

3   timely supplemented its document production with the new firmware versions.  Those revised products

4   are not addressed in the current motions.

5       In sum, there is no justification for putting the Court and Elantech to the burden and expense of

6   Synaptics' piecemeal litigation tactics.  Rather, all of the evidence should be gathered, and the Court

7   should be asked to resolve issues that are dispositive of some or all of the remaining claims.

8   **II.    ARGUMENT**

9       **A.    LEGAL STANDARD**

10      Pursuant to Federal Rule of Civil Procedure 56, summary judgment may be granted only if there

11  exists no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter

12  of law.  *See* Fed. R. Civ. Pro. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)

13  (holding that a court must determine whether evidence presents a sufficient disagreement to require

14  submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).  The

15  movant has the burden of coming forward with sufficient evidence to demonstrate that there is no

16  material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a

17  matter of law.  *See Vivid Tech, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 806-807

18  (Fed. Cir. 1999); *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991).

19  Moreover, in considering the evidence, the Court must accept the nonmovant's evidence as true and

20  draw all justifiable inferences from the evidence in its favor.  *See Eastman Kodak Co. v. Image Technical*

21  *Svcs, Inc.*, 504 U.S. 451, 456 (1992); *Anderson*, 477 U.S. at 255 (holding that all facts must be viewed in

22  the light most favorable to the nonmovant, and the "evidence of the non-movant is to be believed, and

23  all justifiable inferences are to be drawn in his favor"); *Opryland USA Inc. v. Great American Music*

24  *Show*, 970 F.2d 847, 850 (Fed. Cir. 1992) (same).  The non-movant does not have the burden of

25  establishing that it is entitled to judgment in its favor; it need only show that either the movant did not

26  establish that it is entitled to judgment on undisputed facts or on the non-movant's version of the facts,

27  or that there are material issues of fact which require resolution at trial.  *See Vivid Tech.*, 200 F.3d at 806-

28

3

1  807 (to defeat a motion for summary judgment, nonmovant need only present sufficient evidence to

2  show an evidentiary conflict as to a material fact in dispute or a conflict as to the inferences to be drawn

3  from the facts, even if the facts are undisputed).

4        Synaptics' motions cite repeatedly to authority to establish the requirements for direct

5  infringement or infringement under the doctrine of equivalents.  Zone Motion at 7, 11; Tapping Motion

6  at 8.  That authority is irrelevant and renders those motions misleading.  Synaptics is not moving for

7  judgment that Elantech directly infringes any of the patent claims, nor is it moving for a determination

8  of infringement under the doctrine of equivalents.  In fact, Synaptics is not and cannot argue that

9  Elantech directly infringes any of its asserted claims.  Rather, its sole available theory of liability is to

10  allege that Elantech knowingly and intentionally induces end users in the United States to infringe these

11  claims.  In order to establish vicarious liability, however, Synaptics must first establish actual direct

12  infringement, by a user of the accused products (as they are incorporated into computers by the other

13  third parties).  *See Alloc, Inc. v. United States Intern. Trade Comm.*, 342 F.3d 1361, 1374 (Fed. Civ.

14  2003).  As will be explained below, Synaptics' motion is an attempt to side-step this requirement.

**B.    SYNAPTICS' MOTIONS ON THEIR FACE FAIL TO ESTABLISH THE FACTS
NECESSARY FOR THE PARTIAL SUMMARY JUDGMENT IT REQUESTS.**

      1.    Synaptics Does Not Even Attempt to Prove that "Use of Elantech's Products"
Necessarily Results in Practice of the Claimed Methods.

18        Synaptics asks the Court to determine *as a matter of law* that any "use of Elantech's accused

19  products" meets all of the limitation of the asserted claims.  *See e.g.* Tapping Motion at 1, 19; Zone

20  Motion at 1, 16.  Yet Synaptics' description of the accused products is misleading and incomplete.  The

21  accused Elantech products can be and very often are used in a manner than can not possibly practice the

22  claimed method.  There is simply no support in Synaptics' motions for a finding that mere "use" of the

23  accused products leads to the practice of claimed methods.  Synaptics' motions must be denied in their

24  entirety.

25        As Synaptics explains, its asserted patents claim ***methods*** of using a touchpad input device such

26  that *when the user* of a touchpad invokes a particular sequence of contacts with the touch sensor, the

27  number, duration, amount of motion and/or location of the contacts result in specific signals that can be

28  used to indicate a conventional button click. Thus, two quick taps on the touch sensor can be interpreted

4

as a double click of the mechanical buttons. Tapping Motion at 3. Movement restricted to within a particular area of the touchpad can be used to scroll information on the display, substituting for the user moving the cursor to a location on the screen and holding down the right mouse button (or invoking the scrolling wheel on a mouse with such a feature). Zone Motion at 3; '411 patent at 1:8-45.

Elantech's accused touchpads provide an touchpad input device that is an alternative to a computer "mouse." Like a mouse, the touchpads are capable of providing information that a computer can use to control the movement of a cursor on the screen. Also like a mouse, they include mechanical buttons that can provide an indication to the host computer that some action is intended. Under the conventions used in the Windows operating system a single click of the left mouse button may indicate that a button or icon indicated by the cursor is to be selected or activated. A double click of the left mouse button while the cursor is over an icon may open the indicated file or application program. Holding the left mouse button down may allow an object to be dragged, or moved about the display. Similarly, the right button may provide other functions, such as a context-dependent menu. Thus, in typical operation, a user of an Elantech touchpad that has been incorporated into a host computer will use a finger on the touchpad to control the movement of the cursor, while other fingers (or the same finger lifted from the surface) will engage the desired mechanical button.

The presence of these buttons dooms Synaptics' motion as drafted. Synaptics claims that the "use," and by implication each and every "use," of the Elantech devices will practice the steps of the claimed method. That is simply not true. As discussed above, Elantech's products are designed so that they can be used without invoking the features that would implicate the asserted method claims. Thus, "use" of the accused products does not satisfy every element of those claims, and Synaptics' motion must be denied. The partial judgment Synaptics requests is not even supported by Synaptics' own brief. Repeatedly, for nearly every limitation of the asserted claims, Synaptics brief does not even argue that "the use of Elantech's accused devices" satisfies that limitation. Rather, it can only conclude that the accused devices "can be used" to perform the claimed step. *See, e.g.* Zone Motion at 11 (Elantech's products "*can* detect" whether a tap is in a corner), 12 ("*Can* Simulate the Right Mouse Button) and 14 ("*can* detect user-applied motion"); Tapping Motion at 5 ("*can* 'execute'"). Synaptics did not move for a finding that the devices "can be used" in the claimed method. Rather, it moved for a blanket finding

5

1   that *any* "use" of the devices necessarily practices the claimed method steps. Synaptics' motions on

2   their face fail to show that they are entitled to the partial summary judgment it seeks. Rather, the

3   Elantech devices can be, and in most if not all instances are, "used" in a manner that does not implicate

4   Synaptics' patents at all. As such, the Court simply can not grant Synaptics' motion that mere "use" of

5   the accused products practices the steps of the asserted method claims.

6           2.    Synaptics' Misleading Motion is an Attempt to Avoid Its Burden of Proof.

7           In this case, the distinction between a product that practices a method whenever it is used, as

8   opposed to a product that may, but does not always, practice the method is significant. Synaptics does

9   not and can not allege that Elantech is a direct infringer of the patents. Although it never actually

10  informs the Court, it can only claim indirect infringement, namely that Elantech has induced others to

11  infringe. 35 U.S.C. § 271(b). In order to demonstrate indirect infringement, Synaptics has the burden

12  of proving, *inter alia*, acts of direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363

13  F.3d 1263, 1274 (Fed. Cir. 2004).[1] In other words, Synaptics must show, *inter alia*, that there are end

14  users of computers including Elantech's accused touchpads who have actually used each of the tap

15  gesture or zone features.

16          In order to make the required showing of direct infringement, Synaptics must show either: a) that

17  use of the Elantech touchpads incorporated into host systems *necessarily* performs the claimed steps; or

18  b) *specific instances* of direct infringement. *Id.* at 1275-76. For example, the plaintiff in *Dynacore*

19  alleged that the sale of products that included the capability of connecting to IEEE 1394 standard

20  networks induced the infringement of its patent. Summary judgment of non-infringement was upheld

21  because compliance with that standard did not necessarily infringe the patent. "Mere sale of a product

22  capable of substantial noninfringing uses does not constitute indirect infringement." *Id.* At 1275. In

23  addition, the patentee in *Dynacore* failed to point to any specific instance where the accused products

24  were used in an infringing manner. *Id.* At 1276.

25

26

27          [1] Proof of inducement also requires acts that aid or abet the direct infringer taken with the
    specific intent that those acts will lead to infringement of the asserted patent. *Id.*; *see also DSU Medical
28  Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006) (holding that inducement to infringe requires
    specific intent that third party's actions actually infringe the patent).

1   Synaptics' present motions are nothing more than a misleading attempt to end-run around this

2   element of its required proof. Synaptics seeks a blanket determination that "use" of the accused

3   products necessarily results in infringement. Yet even taken on their face, Synaptics' motions at best

4   establish that those products might be capable of being used in the claimed methods. (And, as will be

5   shown below, there are significant problems with Synaptics' proof even as to the capability of those

6   products to be used in the claimed manner.) Synaptics not doubt intends to use such a partial summary

7   judgment to argue that direct infringement can be assumed, and to seek damages for every Elantech

8   product that finds its way into the U.S. Such an outcome is utterly unwarranted. Because Synaptics has

9   not and can not show that "use of Elantech's accused products" necessarily leads to the performance of

10  any of the claimed methods, both of its motions for partial summary judgment asking for such a finding

11  must be denied.

12      **C.    SYNAPTICS FAILS TO SHOW THAT THE ACCUSED PRODUCTS ARE EVEN
               CAPABLE OF PERFORMING THE CLAIMED STEPS.**

13

14      As discussed above, the undisputed facts demonstrate that use of the Elantech touchpads does

15  not necessarily satisfy every element of the asserted method claims. Rather, use of those products may

16  not implicate those claimed methods at all. Without more Synaptics' two motions seeking summary

17  judgment contrary to that undisputed fact must be denied. Nevertheless, even to the extent Synaptics

18  tries to argue that the Elantech products can be used in the claimed methods, it fails to make the

19  necessary showing. Synaptics' alleged proof consists entirely of the opinions of its expert witness. As

20  will be shown below by way of example, Dr. Wolfe's understanding of the accused products is largely

21  incorrect, and fails to establish that these products can be used to practice the patent claims. Because

22  Synaptics' motions are deficient on their face, and because Elantech is under no obligation to prove that

23  it is entitled to judgment in its favor, Elantech will not here attempt to refute every point raised by

24  Synaptics.

25      1.    Synaptics Fails To Show That The "Comparing Amount Of Time To A Reference"
             Limitations Are Met (First Finger Down)

26      Claim 1 of the '931 Patent requires the step of "comparing the amount of time said conductive

27  object is present on said touch pad with a reference amount of time" as part of recognizing that a tap

28

7

1  gesture has occurred.  Tapping Motion, Appx. A.  Claims 6 and 9 of the '591 Patent have similar

2  requirements of comparing the amount of time of a first presence.  *Id.*

3       That required step is not performed in systems including the accused products.  Elantech's KTP5

4  touchpads do not determine whether an object's contact with the touchpad (e.g., a finger touch)

5  constitutes a movement or a tap by measuring how long the contact lasts. (MacKenzie Decl. ¶ 8.)  In

6  other words, the KTP5 code makes no comparison between the reference amount of time and the time an

7  object is on the touchpad for determining if it is a tap or move.  *Id.*  Instead, if the object's <u>motion</u>

8  exceeds a reference amount, then the contact is determined to be a move.  *Id.*  A variable

9  [            ], internal to the KTP5 firmware, is used for measuring this motion.

10       Synaptics' expert, Dr. Wolfe erroneously identifies a variable [         ] as

11  evidence that a reference amount of time is compared to the time that a finger is on the touchpad. (Wolfe

12  Decl. ¶ 30)  Dr. Wolfe asserts that this variable is increased and the KTP5 code "compare[s] this elapsed

13  time against a reference amount."  However, this variable is not used for any time comparison.

14  (MacKenzie Decl. ¶ 11.)  In fact, the KTP5 touchpads do not make any comparison of a reference

15  amount of time to the amount of time an object is present on the touchpad for the purpose of

16  determining whether a tap gesture has occurred.  *Id.*

17       Thus, Synaptics has failed to show that these limitations are satisfied at least for the older KTP5

18  touchpads.

19            a)     KTP5 touchpads do not compare the duration of a first presence with a

20                   reference amount of time to determine whether a first gesture has occurred as required by Claim 6 of the '591 Patent

21       As with the '931 patent, claim 5 of the '591 patent also requires the step of comparing the length

22  of time an object is on the touchpad to a reference time as part of detecting a double tap.  Tapping

23  Motion, Appx. A. As discussed above, Dr. Wolfe erroneously identifies a variable

24  [         ] as evidence that a reference amount of time is compared to the time that a finger

25  is on the touchpad. (Wolfe Decl. ¶ 30)  Dr. Wolfe asserts that this variable is increased and the KTP5

26  code "compare[s] this elapsed time against a reference amount."  However, this variable is not used for

27  any time comparison.  In fact, the KTP5 touchpads do not make any comparison of a reference amount

28

of time to the amount of time an object is present on the touchpad for the purpose of determining whether a tap gesture has occurred. (MacKenzie Decl. ¶¶ 11, 15.)

        b)    KTP5 touchpads do not compare the duration of a first presence with a reference amount of time to determine whether a drag gesture occurred as required by Claim 9 of the '591 Patent

Again, for KTP5 touchpads, Dr. Wolfe erroneously identifies a variable [         ] as evidence that a reference amount of time is compared to the time that a finger is on the touchpad. (Wolfe Decl. ¶ 30) Dr. Wolfe asserts that this variable is increased and the KTP5 code "compare[s] this elapsed time against a reference amount." However, this variable is not used for any time comparison. (MacKenzie Decl. ¶¶ 11, 19) In fact, the KTP5 touchpads do not make any comparison of a reference amount of time to the amount of time an object is present on the touchpad for the purpose of determining whether a tap gesture has occurred. *Id.*

    2.    <u>Synaptics Has Failed To Show That The "Comparing The Amount Of Motion To A Reference" Limitation Of Claim 1 Of The '931 Patent Is Met</u>

Claim 1 of the '931 Patent requires "comparing the amount of motion made by said conductive object while it is present on said touch pad with a reference amount of motion" as part of recognizing that a tap gesture has occurred. As the patents make clear, amount of motion refers to changes in the X and Y coordinates of the object for the touchpad. '591 patent at 31:32-35. ( tap gesture involves "little or no X or Y finger motion"). *See also* '931 at 34:31-33. For both KTP3 and KTP5 touchpads, there is an analog-to-digital converter (ADC) which outputs a signal indicating the capacitance. When the object moves on the pad, the capacitance increases and decreases. When the object makes rapid movement on the pad, the change in the capacitance is bigger than that associated with a slow movement. (MacKenzie Decl. ¶ 10) Thus, according to the changes of the ADC output, [       ] Variables [        ] and [       ] are set accordingly. *Id.* Thus, the KTP3 and KTP5 codes compare the changes of the capacitance of the ADC outputs to a threshold capacitance [        ] Accordingly, the older Elantech KTP3 and KTP5 touchpads are not capable of performing the methods claimed in the '931 patent..

9

3.    Synaptics Has Failed To Show That The Signaling Limitations Of The '591 and '931 Patents Are Met

Claim 1 of the '931 Patent and claims 6 and 9 of the '591 Patent require that various signals be sent from the touchpad to the host indicating that particular gestures have occurred. *See* '931 Patent at 53:4-10; '591 Patent at 47:22-24, 35-36, 48:1 4-16, 23-27. The Court's Claim Construction Order indicated, for example, that "initiating a signal to the host indicating the occurrence of said tap gesture" means "initiating the transmission of a set of data to the computer, or other device that can take as input the output of a touch-sensor pad, that indicates that a tap gesture has occurred on the touch-sensor pad." *See* Claim Construction Order at 9. Elantech touchpads send one-time data packets containing "button down" and "button up", similar to the way that a mouse reports button clicks. *See* MacKenzie Decl., ¶ 7. As demonstrated below, Synaptics has failed to show that Elantech's touchpads "initiate", "maintain", and "terminate" signals as required by these claims.

a)    Synaptics has failed to show that Elantech's touchpads initiate and maintain a tap gesture signal as required by Claim 1 of the '931 Patent

Synaptics claims that the Elantech products initiate a tap gesture signal to the host. However, that allegation is based upon a misunderstanding of the operation of those products. Synaptics's claim is based on Dr. Wolfe's opinion that "[       ]" is the required signal. Tapping Mot. at 14. That reliance is misplaced. Dr. Wolfe erroneously identifies [       ] as evidence of a signal indicating a tap gesture, generated by the Elantech KTP3 and KTP5 firmware code, and communicated to the host. (Wolfe Decl. ¶ 38) Tap_B is not a signal. It the name of an internal variable in the Elantech touchpad firmware and is not sent to the host to indicate that a tap gesture has occurred. (MacKenzie Decl. ¶ 13) An Elantech touchpad only outputs a data packet containing "button down" and a data packet containing "button up", similar to the way a mouse reports a mouse button click. *Id.*, Lee Decl., ¶ 4.

Synaptics' allegation that a signal is "maintained" is likewise unsupported. Dr. Wolfe erroneously identifies the definition of a variable [       ] and its assigned value of [    ] as evidence of "maintaining said signal." (MacKenzie Decl. ¶ 14) However, this variable pertains to a timing requirement of the sensed finger contact on the touchpad. It is not an outputted signal, nor is it equivalent to any output signal from the touchpad indicating the occurrence of a tap gesture. *Id.* Also, Wolfe's assertion that "the button-down signal is maintained until time [              ] is equal to

10

1  [               ]" (Wolfe Decl. ¶ 41) is unsubstantiated. Nowhere in the cited portions of code is

2  there any reference to this "button-down signal." *Id.* Also, whatever "button-down signal" Dr. Wolfe

3  has identified cannot be the "said signal" that is "initiat[ed] to the host" to indicate that a tap gesture has

4  occurred and later "maintain[ed] for a predetermined period of time" because a "button-down signal" by

5  itself cannot signify that a tap gesture has occurred. This is because a tap gesture requires a data packet

6  containing "button down" followed by a data packet containing "button up." The unidentified "button-

7  down signal" to which Dr. Wolfe refers could at most signify that a finger contacted the touchpad

8  surface. Furthermore, Dr. Wolfe is incorrect that the variable [          ] is used in the KTP5

9  code. In fact, this variable is not used in the KTP5 code.

10      Thus, Synaptics has failed to show that Elantech's touchpads initiate and maintain a tap gesture

11  signal as required by Claim 1 of the '931 Patent.

12              b)    Synaptics has failed to show that Elantech's touchpads initiate and
                      terminate first and second signals as required by Claim 6 of the '591
13                    patent

14      As with the '931 patent, Synaptics fails to show that the Elantech products are capable of

15  practicing the asserted claims of the '591 patent. For example, claim 1 of the '591 patent requires the

16  step of "initiating a first signal to the host." (Wolfe Decl. ¶ 50, referring to ¶¶ 36-38). Dr. Wolfe also

17  relies on [   ] as meeting this requirement. However, as previously noted, [    ] is not a signal and

18  is not sent to the host to indicate that a tap gesture has occurred. An Elantech touchpad only outputs a

19  data packet containing "button down" followed by a data packet containing "button up", similar to the

20  way a mouse reports a mouse button click. (MacKenzie Decl. ¶ 16)

21      Dr. Wolfe also is incorrect in his conclusion that the Elantech products are capable of

22  "terminating said first signal to the host if a second reference amount of time passes before a second

23  presence is detected." (*See,* Wolfe Decl. ¶¶ 51-54). Dr. Wolfe asserts that if a second touch is not

24  detected within a predetermined amount of time, the Elantech firmware "terminates the tap gesture

25  signal resulting in a 'button up' condition and merely a single tap gesture." (Wolfe Decl. ¶ 52) This

26  would imply that a "button down" signal is the "said first signal." According to Claim 6, this "said first

27  signal" must indicate that a tap gesture has occurred. However, Dr. Wolfe asserts that terminating the

28  tap gesture signal "result[s] in … a single tap gesture." Thus Dr. Wolfe's assertions are logically

11

1  inconsistent. If a tap gesture signal indicates that a tap gesture has occurred, then terminating that signal

2  should not "result" in a tap gesture. An Elantech touchpad does not "terminate" a "button down" signal.

3  It only sends a data packet containing "button down." It is nonsensical to say that this "terminates the

4  tap gesture signal" because the data packet containing "button up" has not yet been transmitted.

5  (MacKenzie Decl. ¶ 17) Finally, Dr. Wolfe is incorrect that the variable $\Big[$      $\Big]$ is used in

6  the KTP5 code. In fact, this variable is not used in the KTP5 code. *Id.*

7      Also, Synaptics' claim that the accused products are capable of "terminating said first signal to

8  the host if the duration of said second presence is less than said third reference amount of time" is not

9  supported by the facts. (*See,* Wolfe Decl. ¶¶ 57-58.) Synaptics argues that terminating the single tap

10  gesture signal if a second touch is detected within a reference time period "is how a double tap is

11  signaled as opposed to a drag gesture." (Wolfe Decl. ¶ 57.) This statement is inaccurate, because a drag

12  gesture also requires a second touch within a reference amount of time. (See '591 Patent Claim 9, Wolfe

13  Decl. ¶ 70). Dr. Wolfe also asserts that if a second touch occurs before the first tap signal ends and has a

14  duration less than the third reference time period, then Elantech's firmware "will terminate the first

15  button down signal – i.e., the single tap signal – and replace it with a second button down signal – i.e.,

16  the double tap signal." (Wolfe Decl. ¶ 58) As noted, an Elantech touchpad does not "terminate" a

17  "button down" signal. (MacKenzie Decl. ¶ 18.)

18      Finally, Synaptics incorrectly argues that the "second signal simulates a double click of the

19  mouse. Tapping Mot. at 15. This is simply false, since a double click is reported by a pair of data

20  packets containing "button down" and "button up." (Wolfe Decl. ¶ 7).

21      Thus, Synaptics has failed to show that Elantech's touchpads are capable of initiating and

22  terminating first and second signals as required by Claim 6 of the '591 Patent.

23          c)    Synaptics has failed to show that Elantech's touchpads initiate and
               maintain a drag gesture signal as required by Claim 9 of the '591 Patent

24      Dr. Wolfe erroneously concludes that "initiating a drag gesture signal to the host" as required by

25  claim 9 of the '591 Patent, is satisfied. (Wolfe Decl. ¶¶ 68-69) Dr. Wolfe asserts that "a tap gesture

26  signal sent to the host is the signal that is 'initiated' to commence the 'drag gesture.'" (Wolfe Decl. ¶

27  68) This is wrong. A tap gesture involves the transmission of a data packet containing "button down"

28

12

1  followed immediately by the transmission of a data packet containing "button up." (MacKenzie Decl. ¶

2  20) Elantech's touchpads do not send such a pair of data packets (i.e., report a tap gesture) to commence

3  a drag gesture. *Id.*

4       Also with regard to Claim 9 of the '591 Patent, Dr. Wolfe erroneously concludes that

5  "maintaining said drag gesture signal" is satisfied. Dr. Wolfe asserts that if the second touch occurs

6  before the predetermined time, "the 'button down' signal continues for the length of the second touch,

7  resulting in a drag gesture." (Wolfe Decl. ¶ 74) Again, Dr. Wolfe cites the declaration of a variable

8  [          ] as evidence, but Dr. Wolfe is incorrect that the variable [          ] is used

9  in the KTP5 code. (MacKenzie Decl. ¶ 21) In fact, this variable is not used in the KTP5 code. *Id.*

10      Synaptics has therefore failed to show that Elantech's touchpads initiate and maintain a drag

11  gesture signal as required by Claim 9 of the '591 Patent.

12           4.     Synaptics Has Failed To Show That The Elantech Products Are Capable Of
                    Performing The "Edge Motion" Method Of The '411 Patent.

13      With regard to Claim 46 of the '411 Patent, Dr. Wolfe erroneously concludes that "said second

14  cursor motion signals for causing said cursor to incrementally move" is satisfied. (Wolfe Decl. ¶¶ 120-

15  122) Dr. Wolfe erroneously asserts that "Elantech's Smart Edge function moves in calculated

16  increments." (Wolfe Decl. ¶¶ 121-122) The cited code portions (KTP3 Code line 1560, KTP5 Code line

17  1580) clearly show that a constant value is used -- in fact they declare the global constant

18  [                              ] (MacKenzie Decl. ¶ 24) Dr. Wolfe also asserts that the KTP3 and

19  KTP5 code "[

20          ]" (Wolfe Decl. ¶ 122) but this is inaccurate. *Id.* The "calculations" cited are not used to

21  "calculate the increment." *Id.* They are simply used [

22

23

24  ] *Id.*

25

26

27

28

ELANTECH DEVICES CORP.'S OPPOSITION TO SYNAPTICS,
INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE TAPPING CLAIMS          CASE NO. 3:06-CV-01839 CRB

1

III.    **CONCLUSION**

2          For the reasons stated above, the Court must deny Synaptics' motion for partial summary

3   judgment on claim 1 of the '931 patent and claims 6 and 9 of the '591 patent and its motion for partial

4   summary judgment on claims 5 and 6 of the '931 patent, claims 14 and 18 of the '052 patent, and claims

5   46 and 52 of the '411 patent.  In particular, Synaptics relies on the inaccurate testimony of its expert

6   witness to establish the operation of the accused products and, more importantly, the undisputed facts

7   show that mere "use" of the accused products does <u>not</u> meet every limitation of the asserted patent

8   claims.

9   Dated:  February 15, 2008                Respectfully submitted,

10                                            AKIN GUMP STRAUSS HAUER & FELD LLP

11
                                             By: _____/s/_____
12                                                       Sean P. DeBruine

13                                           Attorneys for Plaintiff
                                             ELANTECH DEVICES CORP.
14
    6201340
15

16

17

18

19

20

21

22

23

24

25

26

27

28

14