KARL J. KRAMER (CA SBN 136433)
ERIKA L. YAWGER (CA SBN 234919)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
KKramer@mofo.com

Attorneys for Defendant and Counterclaimant
SYNAPTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELANTECH DEVICES CORPORATION, a corporation existing under the laws of Taiwan, R.O.C.,<br><br>Plaintiff,<br><br>v.<br><br>SYNAPTICS, INC., a Delaware corporation; AVERATEC, INC., a California corporation; and PROSTAR COMPUTER, INC., a California corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.   C06-01839 CRB<br><br>**SYNAPTICS, INC.'S CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT THAT USE OF ELANTECH'S PRODUCT FEATURES MEET THE LIMITATIONS OF SYNAPTICS' PATENT CLAIMS**<br><br>Date: March 7, 2008<br>Time: 10:00 a.m.<br>Courtroom 8, 19th Floor<br>Hon. Charles R. Breyer |

**PUBLIC VERSION**

1

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.   ELANTECH ESSENTIALLY CONCEDES THAT ITS PRODUCT FEATURES MEET THE LIMITATIONS OF THE "ZONE PATENT" CLAIMS ............................. 2

   A.   Elantech Does Not Dispute That Use Of Its Corner Tap And Scrolling Features Meets All Of The Limitations Of Claims 5 And 6 Of The '931 Patent And Claims 14 And 18 Of The '052 Patent ............................................ 2

   B.   Elantech's Sole Argument Regarding Its Edge Motion Feature Does Not Avoid The Limitations Of The '411 Patent Claims ................................... 2

II.  ELANTECH'S TAP, DOUBLE TAP, AND DRAG FEATURES MEET THE LIMITATIONS OF THE ASSERTED "TAPPING PATENT" CLAIMS ........................ 4

   A.   Elantech Has Not Presented Evidence That Establishes A Genuine Issue Of Material Fact With Regard To Its KTP3 Product Features ................................. 4

       1.   The KTP3 "Tap" Feature Uses A Reference Amount of Motion ............... 4

       2.   Elantech's Arguments Concerning the "Signals" Used In the KTP3 "Tap," "Double Tap," and "Drag" Features All Fail As a Matter of Law ......................................................................................................... 5

           a.   Elantech Acknowledges That Its KTP3 Products "Initiate" a Tap Gesture Signal By Sending "Button Down" Data Packets, and "Maintain" a Tap Gesture Signal ('931 Pat., Claim 1) .......................................................................................... 6

           b.   Elantech Admits That Its KTP3 Code Initiates, Maintains And Terminates A Tap Gesture Signal By Sending, Retaining And Terminating "Button Down" Data Packets ('591 Pat., Claim 6) .................................................................... 7

           c.   Elantech Concedes That Its KTP3 Code Initiates a Drag Signal By Sending "Button Down" Data Packets and Maintaining That Signal for the Length of the Drag ('591 Pat., Claim 9) ........................................................................ 9

   B.   Elantech Has Not Presented Evidence That Establishes A Genuine Issue Of Material Fact With Regard To Features In Its KTP5 Code ................................ 10

       1.   Elantech's KTP5 Code Undertakes Time Comparisons As Required By All Three Asserted Claims ................................................................. 10

       2.   Elantech's KTP5 Code "Maintains" the Drag Gesture Signal As Required By Claim 9 of the '591 Patent ................................................. 12

# TABLE OF CONTENTS
(continued)

Page

III. NONE OF ELANTECH'S OTHER ARGUMENTS RAISE A GENUINE ISSUE OF MATERIAL FACT THAT DEFEATS SYNAPTICS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT .................................................................................. 13

    A. Synaptics Properly Requested Partial Summary Judgment That Use Of The Features In Elantech's KTP3 And KTP5 Products Meets The Limitations Of The Claims Of Synaptics' Patents ................................................................. 13

    B. Elantech Improperly Attempts To Introduce New Products .............................. 14

CONCLUSION .............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page

## CASES

*Andersen v. United States*,
    298 F.3d 804 (9th Cir. 2002) .................................................................................. 14

*Bell Commc'ns Research v. Vitalink Commc'ns Corp.*,
    55 F.3d 615 (Fed. Cir. 1995) .................................................................................. 14

*Fantasy Sports Props., Inc. v. Sportsline.com Inc.*,
    287 F.3d 1108 (Fed. Cir. 2002) .............................................................................. 14

*Far Out Prods., Inc. v. Oskar*,
    247 F.3d 986 (9th Cir. 2001) .................................................................................... 2

*Hasbrouck v. Texaco, Inc.*,
    879 F.2d 632 (9th Cir. 1989) ............................................................................ 13, 14

*Hillgraeve Corp. v. Symantec Corp.*,
    265 F.3d 1336 (Fed. Cir. 2001) .............................................................................. 14

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) .............................................................................. 11

*Linear Tech. Corp. v. Micrel, Inc.*,
    524 F. Supp. 2d 1147 (N.D. Cal. 2005) .................................................................... 1

*Nat'l Presto Indus., Inc. v. Dazey Corp.*,
    107 F.3d 1576 (Fed. Cir. 1997) .............................................................................. 14

*Novartis Corp. v. Ben Venue Labs., Inc.*,
    271 F.3d 1043 (Fed. Cir. 2001) .............................................................................. 11

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*,
    469 F.3d 978 (Fed. Cir. 2006) .................................................................................. 2

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................ 4

*Sitrick v. Dreamworks, LLC*,
    No. 2007-1174, 2008 U.S. App. LEXIS 2251 (Fed. Cir. Feb. 1, 2008) ................. 11

## STATUTES

Fed. R. Civ. P. Rule 56 ..................................................................................................... 1

Fed. R. Civ. P. Rule 56(a) ................................................................................................ 1

Fed. R. Civ. P. Rule 56(e) ................................................................................................ 2

Fed. R. Civ. P. Rule 56, subd. (d) Adv. Comm. Note to 1946 Amendment .................... 1

## OTHER AUTHORITIES

*The IEEE Standard Dictionary of Electrical & Electronics Terms*, (6th ed. 1996) ...... 12

# INTRODUCTION

Elantech Devices Corporation ("Elantech") fails to raise a genuine issue of material fact to defeat partial summary judgment. Elantech offers *no opposition* to the evidence that Synaptics, Inc. ("Synaptics") presented establishing that use of the "corner tap" and "scrolling" features of Elantech's KTP3 and KTP5 code meets the limitations of claims 5 and 6 of the '931 Patent and claims 14 and 18 of the '052 Patent, respectively. Elantech's sole argument in opposition to Synaptics' demonstration that the patented "edge motion" feature is present in Elantech's KTP3 and KTP5 code is the unsupported conclusion that addition and subtraction of ▮ are not "calculations." That argument finds no support in the Court's claim construction, in the patent, or in common sense.

Elantech's arguments concerning its "tap," "double tap," and "drag" gestures are equally baseless. The undisputed evidence is that the code that performs these features relies upon comparisons of time and motion, as claimed, and generates signals identical to those taught in the '931 and '591 Patent specifications and described in the Court's claim construction. Indeed, Elantech's Opposition does not dispute the detailed evidentiary citations Synaptics offers but, instead, relies impermissibly upon conclusory arguments and misdirection.

Synaptics is entitled to ask the Court for partial summary judgment that the features that Elantech designed into its code meet the limitations of the asserted claims. Rule 56 authorizes summary judgment "upon all or any part" of a claim. Fed. R. Civ. P. Rule 56(a); *see also Linear Tech. Corp. v. Micrel, Inc.*, 524 F. Supp. 2d 1147, 1153 (N.D. Cal. 2005) (Rule 56(d) allows a court to grant partial summary judgment to reduce the issues for trial); Fed. R. Civ. P. Rule 56, subd. (d) Adv. Comm. Note to 1946 Amendment (same). Since Elantech's Opposition does not identify a genuine issue of material fact that would preclude partial summary judgment on each of the claims at issue, the Court should enter an order that Elantech's tap, double tap, drag, corner tap, scrolling, and edge motion features meet every limitation of the asserted claims of Synaptics' patents.

# ARGUMENT

## I. ELANTECH ESSENTIALLY CONCEDES THAT ITS PRODUCT FEATURES MEET THE LIMITATIONS OF THE "ZONE PATENT" CLAIMS

### A. Elantech Does Not Dispute That Use Of Its Corner Tap And Scrolling Features Meets All Of The Limitations Of Claims 5 And 6 Of The '931 Patent And Claims 14 And 18 Of The '052 Patent

Synaptics' moving papers establish that use of Elantech's corner tap and scrolling features satisfies all of the limitations of claims 5 and 6 of the '931 Patent and claims 14 and 18 of the '052 Patent, respectively. (Docket No. 214 (Synaptics, Inc.'s Motion For Partial Summary Judgment That Use Of Elantech's Products Meets The Zone Claims Of U.S. Patent Nos. 6,380,931; 5,943,052; And 5,880,411 ("Zone Claims MSJ")), at 10-12 (corner tap) & at 13-15 (scrolling); Docket No. 215 (Declaration Of Andrew Wolfe Ph.D. In Support Of Synaptics, Inc.'s Motions For Summary Judgment ("Wolfe SJ Infringement Decl.")) ¶¶ 83-97 (corner tap) & ¶¶ 98-108 (scrolling).) Elantech does not even attempt to dispute these facts. Because Elantech has failed to offer any opposition on these points, an order should issue that the corner tap and scrolling features in Elantech's KTP3 and KTP5 code meet the limitations of the asserted claims. Fed. R. Civ. P. 56(e); *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990 (Fed. Cir. 2006) (granting summary judgment where the non-movant "did not dispute" the movant's assertion); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (same).

### B. Elantech's Sole Argument Regarding Its Edge Motion Feature Does Not Avoid The Limitations Of The '411 Patent Claims

Synaptics has shown that Elantech's edge motion feature meets each limitation of claims 46 and 52 of the '411 Patent. In particular, Dr. Wolfe's Declaration, paragraph 122, shows that Elantech's edge motion feature employs calculations to generate the increment used to move the cursor at the edge of the touchpad:

> KTP3 code lines 2172-2187 (pages 197-198 of 244) . . . performs the ▮▮▮ calculations to calculate the increment for the cursor motion and . . . KTP5 code lines 1342-1364 (page 189 of 273) . . . perform the ▮▮▮▮▮▮▮▮▮▮▮ calculations

as well as several other addition calculations to calculate the increment for the cursor motion.

Elantech nowhere disputes these detailed facts. Instead, Elantech's sole opposition consists of the conclusion that the cited mathematical operations do not constitute calculated increments. This argument fails for two reasons. First, common sense dictates these operations are calculations. As an initial matter, Elantech ignores completely the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ part of the cited code operations, which indisputably are a ▮▮▮▮▮▮▮▮ (Wolfe SJ Infringement Decl. ¶ 122.) This leaves Elantech with the sole argument that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ operations indisputably performed in Elantech's code are not calculations because ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Although wrong as a matter of logic and mathematics, ▮▮▮▮▮▮▮▮▮▮▮▮ are both elements of movement. (Wolfe SJ Infringement Decl., Ex. 4, '411 Patent at 63:35-38 (noting that the cursor must "incrementally move" both "a selected distance" and a "fixed direction").) Nothing in the Court's claim construction limits the "calculations" necessary for the cursor to "move in calculated increments" to determining ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of movement.

Second, at most, the Court's claim construction does not preclude a calculated "constant" value from satisfying the claims, but simply requires that the increment is calculated by someone or something at some point. Logically, Elantech's programmers calculated a value that would impart the desired speed of movement of "the cursor toward the nearest outer edge of the touchpad." (Wolfe SJ Infringement Decl., ¶ 121.) In fact, Elantech's own materials admit that the user can adjust the cursor speed in its "Smart edges" function. (Wolfe SJ Infringement Decl., Ex. 9, Elantech KTP3 Touchpad User's Manual, dated 2004-01-09 (P/N: 700309-1701), at SYN 00004945 ("Smart Edge Speed" allows user to adjust its moving speed for smart edge function."), at SYN 00004945 Fig. 3.3.7a (showing page that allows user to adjust "Cursor Edge Speed" between "Slow" and "Fast"), at SYN 00004951 ¶ 25 ("Drag slider to adjust the speed of smart edges.").) Nothing in the express claim language "to incrementally move on the display screen a *selected distance in a fixed*

*direction* relative towards said outer edge" requires an "on-the-fly" calculation of a variable value. (Wolfe SJ Infringement Decl., Ex. 4, '411 Patent at 63:36-39 (emphasis added).) Thus, the increment of edge motion used in Elantech's KTP3 and KTP5 code is necessarily calculated in order to impart the desired speed, whether it is the default, pre-chosen speed or the user-selected speed. Elantech's argument fails as a matter of law.

## II. ELANTECH'S TAP, DOUBLE TAP, AND DRAG FEATURES MEET THE LIMITATIONS OF THE ASSERTED "TAPPING PATENT" CLAIMS

### A. Elantech Has Not Presented Evidence That Establishes A Genuine Issue Of Material Fact With Regard To Its KTP3 Product Features

#### 1. The KTP3 "Tap" Feature Uses A Reference Amount of Motion

The "tap" gesture recited in claim 1 of the '931 Patent requires "comparing the amount of motion" of an object "with a reference amount of motion." (Wolfe SJ Infringement Decl., Ex. 2, '931 Patent at 53:1-3.) Elantech admits that its touchpads compare movement on the touchpad to a threshold value, and then label this motion ███ ████████████████████████. (Opp. at 9.) Despite this admission, Elantech contends in its brief that the accused products do not compare the amount of motion to a reference amount of motion. (*Id.*) The sole basis for this surprising argument is Elantech's contention that the claims require that the value for the reference amount of motion must be expressed as changes in the X and Y coordinates of the object on the touchpad. (*Id.*) Nothing in the language of claim 1 limits the reference "amount of motion" to a quantification of changes in X/Y units; the reference "amount of motion" could just as easily refer to whether the motion is ███████████████████████████████████████████████████ ███.

Faced with a lack of claim language to support its argument, Elantech relies upon the descriptive statement in the patent that a tap gesture "involv[es] little or no X or Y finger motion." (Wolfe Infringement SJ Decl., Ex. 2, '931 Patent at 34:31-34.) As an initial matter, this language cannot limit the claim, since it at most describes aspects of an embodiment of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (cautioning against "reading limitations from the specification into the claim," particularly

when those limitations "describe[] very specific embodiments of the invention."). Moreover, this language does not imply a requirement that the reference amount must be stated in X/Y units, but merely that the reference value should reflect "little or no X or Y finger motion." Any number of methods could be used to quantify the "little or no X or Y finger motion," including X/Y units, capacitive fluctuations, or ███████████████████ ███████████████████ Nothing in the language of claim 1 requires the use of a particular type of "reference" value for the claimed comparison step. Elantech's effort to narrow the literal language of the claim should be rejected as a matter of law.

        **2.    Elantech's Arguments Concerning the "Signals" Used In the KTP3 "Tap," "Double Tap," and "Drag" Features All Fail As a Matter of Law**

While Elantech makes a series of related arguments about the various "signal" terms in the asserted tapping claims, there is no genuine factual dispute between the parties regarding how Elantech's products signal the claimed gestures. Elantech acknowledges that "[a] tap gesture involves the transmission of a data packet containing 'button down' followed immediately by the transmission of a data packet containing 'button up.'" (Opp. at 12-13.) Dr. Wolfe similarly testified that Elantech's tap gesture signal involved both "button down" and "button up" data. (Wolfe SJ Infringement Decl., ¶ 41 (noting that "the button down signal indicat[es] a tap gesture"), ¶ 52 (noting that when "the software terminates the tap gesture signal[, it] result[s] in a 'button up' condition").)

Instead of identifying a factual dispute, Elantech merely rehashes the same claim construction position it lost when the Court issued its Claim Construction Order nearly a year ago. Elantech argues now that its touchpads only "send one-time data packets containing 'button down' and 'button up,'" which, according to Elantech, are not "signals" within the meaning of the claims. (Opp. at 10.) During claim construction, Elantech made a similar argument in response to Synaptics' position that the claimed signals could include those initiated, terminated, maintained, and sent as mouse-type "packets." In disputing that such data packet signals meet the claims, Elantech argued then that "[i]n fact, no such 'packet' embodiments are disclosed or suggested in the '931/'591 patents." (Docket No. 73

1  ("Elantech Claim Constr. Br."), at 10.) However, the Court's Claim Construction Order
2  rejected Elantech's restrictive definition of the "signal" claim limitations, concluding that
3  "[t]he word 'signal' is used broadly throughout" Synaptics' patents and includes "the
4  transmission of a set of data to a computer . . . that indicates that a tap gesture has occurred."
5  (Docket No. 91 ("Claim Constr. Order"), at 8 & 9.) In fact, the specifications of the '931 and
6  '591 Patents clearly disclose that "button down" and "button up" data packets are an example
7  of the gesture signals within the meaning of the asserted claims. (Wolfe SJ Infringement
8  Decl., Ex. 2, '931 Patent at 37:33-34 ("When a tap is recognized, the virtual mouse button is
9  depressed."); Ex. 3, '591 Patent at 33:21-23 (same); Ex. 2, '931 Patent at 43:12-15 ("[O]ne or
10 more extra packets indicating a release of the virtual buttons can be inserted into the regular
11 packet stream."); Ex. 3, '591 Patent at 37:6-9 (same).)

Elantech has admitted that its touchpads transmit a *set of data* to a computer indicating a tap gesture—namely, the "button down" data packet and the "button up" data packet—and this clearly constitutes a tap gesture signal within the meaning of the '931 and '591 Patents and the Court's claim construction.

### a. Elantech Acknowledges That Its KTP3 Products "Initiate" a Tap Gesture Signal By Sending "Button Down" Data Packets, and "Maintain" a Tap Gesture Signal ('931 Pat., Claim 1)

Elantech argues that its touchpads do not "initiate" and "maintain" a "signal to the host indicating the occurrence of [a] tap gesture," as required by claim 1 of the '931 Patent. (Opp. at 10-11.) Since the combination of the "button down" and "button up" data packets constitutes a tap gesture signal under the Court's construction, and the "button down" data packet is the first step of this combination, the "button down" clearly "initiates" the tap gesture signal within the meaning of claim 1.[1] (Wolfe SJ Infringement Decl. ¶ 41 (stating that "the button down signal indicat[es] a tap gesture").)

---

[1] Elantech falsely characterizes Dr. Wolfe's Declaration as stating that the "████" value is the signal communicated to the host. (Opp. at 10.) Dr. Wolfe actually stated that the KTP3 and KTP5 code first internally generate a variable ████ "indicating a tap gesture, which information is, in turn, communicated to the host." (Wolfe SJ Infringement Decl. ¶ 38.) In the next sentence,

(Footnote continues on following page.)

1    Elantech's touchpad features also undisputedly "maintain" the tap gesture signal,
2  which the Court construed to mean "to continue, retain, or repeat the signal for a period of
3  time that was determined before." (Claim Constr. Order at 9.) Once the transmission of a set
4  of data representing the tap gesture is "initiated" by sending the "button down" data packet,
5  the transmission of this set is "continue[d], retain[ed], or repeat[ed] . . . for a predetermined
6  period of time." Dr. Wolfe's undisputed testimony is that "the button down signal indicating
7  a tap gesture is maintained for ▓▓▓ . . . ." (Wolfe SJ Infringement Decl., ¶ 41.) Having
8  failed to define narrowly the "maintaining" term during claim construction, Elantech seeks a
9  second bite at the apple in its Opposition. As this Court has already concluded, "[t]here is no
10 evidence to support Elantech's construction that a signal is 'maintained' only by
11 continuously outputting the signal," and thus there is no dispute that Elantech's touchpad
12 features "maintain" the tap gesture signal within the meaning of claim 1. (Claim Constr.
13 Order at 9.)

          **b.  Elantech Admits That Its KTP3 Code Initiates, Maintains And Terminates A Tap Gesture Signal By Sending, Retaining And Terminating "Button Down" Data Packets ('591 Pat., Claim 6)**

16   Elantech's argument that its products do not "initiate" a tap gesture signal within the
17 meaning of claim 6 of the '591 Patent fails for the same reasons as for claim 1 of the '931
18 Patent. Additionally, Elantech raises a host of cursory, trivial arguments about claim 6 of the
19 '591 Patent, none of which raises a genuine issue of fact.
20   First, Elantech argues that its products do not employ a step of "terminating said first
21 signal to the host if a second reference amount of time passes before a second presence is
22 detected" within the meaning of claim 6. Elantech mistakenly assumes that because Dr.
23 Wolfe identified the "button up" data packet as terminating the tap gesture signal, the "button

---

(Footnote continued from previous page)

Dr. Wolfe explains that the signal sent to the host is a "button" signal: "Elantech's own materials . . . show that the Elantech touchpad sends a set of data to the computer noting the occurrence of the tap gesture. For example, Elantech's own website has noted that its touchpad has a 'Function' of '[No.] 1 Finger (Left Button),' and that '[i]t's [the] same as the left button of mouse.'" *Id.*

SYNAPTICS, INC.'S CONSOLIDATED REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT   7
CASE NO. C 06-01839 CRB
sd-409155

down" data packet must constitute the tap gesture signal. (Opp. at 11.) While Dr. Wolfe's Declaration clearly states that the "button down" data packet is part of the tap gesture signal, it never suggests that the tap gesture signal is *limited* to this data packet. (Wolfe SJ Infringement Decl., ¶ 41.) Elantech's argument simply ignores the Court's claim construction and assumes that the tap gesture signal must be limited to one transmission of data. In fact, the Court construed the term "signal" to mean "the transmission of a *set* of data." (Claim Constr. Order at 9 (emphasis added).) Since, as discussed above, the combination of the "button down" and "button up" data packets constitutes a tap gesture signal within the Court's claim construction, the "button up" data packet, as the last step in this combination, operates to "terminat[e] said first [tap gesture] signal" within the meaning of claim 6 of the '591 Patent. (Wolfe SJ. Infringement Decl., ¶ 52; Ex. 3, '591 Patent, Claim 6.)

Similarly, Elantech takes issue with Dr. Wolfe's statement that Elantech's touchpads "will terminate the first button down signal—*i.e.*, the single tap signal" in response to a second touch within a reference amount of time, arguing that its touchpads do not use a "button down signal" but instead send "button down" and "button up" data packets. (Opp. at 12.) As described above, the "button down" data packet initiates a tap gesture signal which is then terminated by the "button up" data packet. Thus, Synaptics' description of this operation as a "button down signal" or a "tap gesture signal initiated by a button down data packet" is merely a matter of semantics, not substance.

Next, Elantech misconstrues Dr. Wolfe as suggesting that *mere detection* of a second presence before a reference amount of time distinguishes a double tap from a drag, but never explains how this affects the issue of whether Elantech's products satisfy all of the limitations of the asserted claims. (Opp. at 12.) In any event, Dr. Wolfe explicitly states that *termination* of the first (single tap) signal in response to the detection of a second touch before a reference amount of time, not the *mere detection* itself, is what distinguishes a double tap from a drag. (Wolfe SJ Infringement Decl., ¶ 57.) In fact, Elantech's Opposition correctly paraphrases this statement only a sentence before it proceeds to misconstrue it.

(Opp. at 12.) As described by Dr. Wolfe, and not contested by Elantech, Elantech's drag feature "continue[s]," rather than terminates, the first (single tap) signal in response to a second touch within a reference amount of time. (Wolfe SJ Infringement Decl., ¶ 72.)

Finally, Elantech takes issue with Synaptics' statement that the "second signal simulates a double click of the mouse," arguing that "a double click is reported by a pair of data packets containing 'button down' and 'button up.'" (Opp. at 12.) Again, Elantech does not explain how this argument creates an issue of fact as to whether all of the asserted limitations are satisfied by its touchpad features. Nonetheless, the transmission of the first set of "button down" and "button up" data packets constitutes the basic tap gesture signal. Thus, it is the transmission of the second set of "button down" and "button up" data packets, a "second signal" within the meaning of the Court's claim construction and the '591 Patent, that instructs the host to double click, rather than single click, the virtual mouse button. (Wolfe SJ Infringement Decl., ¶¶ 58, 60.)

    c. **Elantech Concedes That Its KTP3 Code Initiates a Drag Signal By Sending "Button Down" Data Packets and Maintaining That Signal for the Length of the Drag ('591 Pat., Claim 9)**

Claim 9 of the '591 Patent requires the "initiat[ion] [of] a drag gesture signal," and Dr. Wolfe testified that, as taught in the patent, "[s]ince a tap is . . . a necessary part of Elantech's drag gesture, the *initiation* of a tap gesture signal constitutes the initiation of a drag gesture signal for purposes of claim 9." (Wolfe SJ Infringement Decl., ¶¶ 68-69 (emphasis added); Ex. 3, '591 Patent at 48:15-16.) Elantech attempts to generate an issue of fact by misconstruing Dr. Wolfe's testimony as suggesting that the full tap gesture signal (*i.e.*, "button down" and "button up" data packets) is required to initiate the drag gesture signal in Elantech's touchpads. But Dr. Wolfe clearly stated that "a tap gesture signal sent to the host is *the signal that is 'initiated'* to commence the 'drag gesture.'" (Wolfe SJ Infringement Decl., ¶ 68 (emphasis added).) Since, as described above, a tap gesture signal is "initiated" in Elantech's products through the transmission of a "button down" data packet, the transmission of a "button down" data packet also "initiat[es] a drag gesture signal" within the meaning of claim 9. (*Id.* ("A tap initiation signal, *i.e.* a 'button down' signal, followed by

motion signals is the drag gesture signal.").) Elantech does not dispute that its products commence a drag gesture by sending a "button down" data packet. (Opp. at 13.)

### B. Elantech Has Not Presented Evidence That Establishes A Genuine Issue Of Material Fact With Regard To Features In Its KTP5 Code

Elantech makes the same arguments for its KTP5 code products as it did for its KTP3 code products, and those arguments fail for the reasons described above. In fact, its assertion that its KTP5 code products do not satisfy the motion comparison limitation of claim 1 of the '931 Patent is particularly frivolous, as Elantech's own Opposition and supporting declarations explicitly state that in the KTP5 code "if the object's motion exceeds a reference amount, then the contact is determined to be a move." (Opp. at 8; Declaration of Ian Scott MacKenzie, Ph.D. ("MacKenzie Decl."), ¶ 9 (same); Declaration of Jia-Yih Lee ("Lee Decl."), ¶ 5 (same).) Elantech makes two additional arguments specific to the KTP5 code regarding the tap, double tap, and drag features, both of which fail as a matter of law.

#### 1. Elantech's KTP5 Code Undertakes Time Comparisons As Required By All Three Asserted Claims

Elantech attempts to avoid summary judgment on the tapping claims by relying on the MacKenzie Declaration's conclusory assertion that "the KTP5 code makes no comparison between a reference amount of time and the time an object is on the touchpad." (MacKenzie Decl. ¶ 9.) The MacKenzie Declaration only mentions this argument briefly in passing and does not point to any portions of the KTP5 code itself to support this statement.

By contrast, Dr. Wolfe showed that unless a motion limit is exceeded, the KTP5 code ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ sample period. (Wolfe SJ Infringement Decl., ¶ 30.) This elapsed time, as measured by the ▬▬▬▬▬▬▬ or similar counter, is compared against a reference amount (i.e., ▬ units of time), and if the threshold is exceeded, the KTP5 code indicates that it is not a tap. (Id.) The MacKenzie Declaration identifies no flaws in Dr. Wolfe's explanation and offers only the bare conclusion that "the KTP5 code

makes no comparison between a reference amount of time and the time an object is on the touchpad."[2] (MacKenzie Decl., ¶ 9.)

Dr. MacKenzie's "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment." *Sitrick v. Dreamworks, LLC*, No. 2007-1174, 2008 U.S. App. LEXIS 2251, at *16 (Fed. Cir. Feb. 1, 2008) (affirming summary judgment of invalidity where the patentee's evidence was merely conclusory and did not rebut the accused infringer's prima facie showing); *see also Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (affirming summary judgment where non-movant failed to provide "foundation" for expert's conclusions). As the Federal Circuit explained, "[a] party does not manufacture more than a merely colorable dispute simply by submitting an expert declaration asserting that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005) (affirming summary judgment of infringement). Thus, Elantech was obligated to provide the factual basis for Dr. MacKenzie's conclusory assertion that the KTP5 code does not make the time comparison described by Dr. Wolfe. Since Elantech has failed to do so, and has not disputed Dr. Wolfe's detailed explanation of the KTP5 code, summary judgment that this limitation is literally present in the accused touchpads is proper.

Moreover, Dr. Wolfe's Declaration explained that even if the time comparison limitations are not literally satisfied, Elantech's KTP5 code products satisfy these limitations under the doctrine of equivalents. (Wolfe SJ Infringement Decl., ¶ 31.) Since Elantech has

---

[2] Dr. Wolfe and Elantech agree that "if the object's <u>motion</u> exceeds a reference amount, then the contact is determined to be a move." (Opp. at 8.) As Dr. Wolfe explained, if "a motion limit has been exceeded," the KTP5 code will not register a tap. (Wolfe SJ Infringement Decl., ¶ 30.) However, Elantech fails to address what happens when this motion limit is not exceeded. By contrast, Dr. Wolfe explained, and Elantech has not contested beyond conclusory assertions, that if the motion limit is not exceeded, Elantech's KTP5 touchpads measure the amount of time of the touch to determine if it is a tap or cursor motion. (*Id.*)

1  not even attempted to dispute the evidence under the doctrine of equivalents, partial summary
2  judgment should be entered.

         **2.     Elantech's KTP5 Code "Maintains" the Drag Gesture Signal As Required By Claim 9 of the '591 Patent**

Elantech's effort to raise a factual issue with regard to the "maintaining said drag gesture signal" limitation of claim 9 of the '591 Patent is purely a semantic game. Elantech argues that the assembly language variable ▓▓▓▓ is not used in its KTP5 code. This is technically correct as the assembly code actually uses the variable name ▓▓▓▓ (Wolfe SJ Infringement Decl., Ex. 8, lines 1181-93 (page 140 of 273); Supplemental Declaration Of Andrew Wolfe Ph.D. In Support Of Synaptics, Inc.'s Motions For Summary Judgment ("Wolfe SJ Infringement Suppl. Decl."), concurrently filed herewith, ¶ 3.) However, it is utterly meaningless for purposes of these Motions. The relevant paragraph of Dr. Wolfe's Declaration never mentions ▓▓▓▓ as a variable, but instead refers generally to "the ▓▓▓▓ counter," which is consistent with the variable name ▓▓▓▓. (Wolfe SJ Infringement Decl., ¶ 74.) In any event, it is clear from Elantech's code that these two variables are equivalent, as the term ▓▓▓▓ is used to describe this variable in the comments to the KTP5 code. (Wolfe SJ Infringement Decl., Ex. 8, lines 1152-58 (page 140 of 273); Wolfe SJ Infringement Suppl. Decl., ¶ 3.) A software comment is "[i]nformation embedded within a computer program . . . that provides clarification to human readers but does not affect machine interpretation." *The IEEE Standard Dictionary of Electrical & Electronics Terms*, pg. 179 (6th ed. 1996). Thus, Dr. Wolfe's reference to Elantech's own nomenclature for this feature is sufficiently clear to describe the time variable operation that is carried out precisely as Dr. Wolfe described in the lines of assembly code that Dr. Wolfe cites. Indeed, Elantech does not and cannot dispute that by either name (▓▓▓▓), the drag gesture signal in the KTP5 code is maintained for a period of time as expressly described in Dr. Wolfe's Declaration.

### III. NONE OF ELANTECH'S OTHER ARGUMENTS RAISE A GENUINE ISSUE OF MATERIAL FACT THAT DEFEATS SYNAPTICS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

#### A. Synaptics Properly Requested Partial Summary Judgment That Use Of The Features In Elantech's KTP3 And KTP5 Products Meets The Limitations Of The Claims Of Synaptics' Patents

To divert attention from its failure to identify a genuine issue of material fact to oppose Synaptics' Motions, Elantech seeks to recharacterize Synaptics' Motions as seeking a judgment as a matter of law that "any" use of Elantech's products would "necessarily practice the asserted method claims." (Opp. at 1-2, 7.) According to Elantech, since its devices include buttons that can optionally be used instead of the touchpad gestures, its devices do not "necessarily" meet the asserted claim limitations. (Opp. at 1.)

Synaptics' Motions never assert that "any" use of Elantech's products "necessarily" meets the limitations of the asserted claims. Instead, Synaptics' Motions focus on the assertions that Elantech's "touchpads include Synaptics' patented tap, double tap, and drag gestures" and "are designed to detect and signal the occurrence of corner tap, scroll, and edge motion gestures, as claimed in the '931, '052, and '411 Patents."[3] (Docket No. 213 (Synaptics, Inc.'s Motion For Partial Summary Judgment That Use Of Elantech's Products Meets The Tapping Claims Of U.S. Patent Nos. 6,380,931 And 5,543,591 ("Tapping Claims MSJ") at 1; Zone Claims MSJ at 1.) The court must focus on the substance of Synaptics' Motions, not on isolated nomenclature in the motion papers. *See Hasbrouck v. Texaco, Inc.*,

---

[3] *See, e.g.*, Tapping Claims MSJ at 2 ("Elantech has offered for sale products with Synaptics' patented *features*.") (emphasis added), at 5 ("Elantech, in its own materials, admits that its products use *tap gestures* which are claimed in Synaptics' patents.") (emphasis added), at 7 (noting that the Motions address "the tap, double tap, and drag gestures in the Elantech code"), at 8 ("Elantech's products recognize each of these gestures [tap, double tap, and drag]."), at 13 ("[S]pecific gestures on Elantech's touchpad result in various actions by the computer."). *See, e.g.*, Zone Claims MSJ at 1-2 ("There is no genuine issue of material fact about the operation of the Elantech KTP3 and KTP5 code that achieves these claimed functions."), at 2 ("Elantech has offered for sale products with Synaptics' patented *features*.") (emphasis added), at 5 ("Elantech highlights its use of the *touchpad zone functions*, each of which is covered by Synaptics' patents.") (emphasis added), at 18 ("Elantech's Smart Edges (or Virtual Edge) function meets all of the limitations of claim 46 of the '411 Patent.").

879 F.2d 632, 635 (9th Cir. 1989); *see also Andersen v. United States*, 298 F.3d 804, 807 (9th Cir. 2002); *Nat'l Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1581 (Fed. Cir. 1997) (the substance rather than "the title and introduction" determine the scope of relief sought).

In the context of the Motions, Synaptics seeks partial summary judgment that use of Elantech's tap, double tap, drag, corner tap, scroll, and edge motion touchpad features meets all of the limitations of the asserted claims. Thus, it is completely irrelevant whether "any" or "all" uses of Elantech's products would "necessarily" infringe the patents. In fact, whether "any" or "all" uses of Elantech's products infringe the patents is doubly irrelevant since "an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes." *Bell Commc'ns Research v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995).[4] Moreover, given the intentionally limited nature of the Partial Summary Judgment Motions, there was no reason for Synaptics to address other issues potentially related to direct infringement and inducement. Elantech's arguments are diversionary tactics that have nothing to do with the present Motions.

### B. Elantech Improperly Attempts To Introduce New Products

In addition to mischaracterizing the Motions, Elantech attempts to divert attention from the accused products by pointing to "new" products. In four lines of its Opposition and one paragraph of the accompanying Declaration of Jia-Yih Lee ("Lee Decl."), Elantech seeks to interject new products for consideration, without explaining the relevance of these

---

[4] Without any legal support, Elantech also argues against a finding of infringement of the asserted method claims because "[t]he accused Elantech products can be and very often are used in a manner that can not [sic] possibly practice the claimed method." (Opp. at 4:20-28.) As Elantech well knows, and has argued in the past (*see, e.g.*, Docket No. 126 (Elantech's Mot. For Summary Judgment for Infringement [of the '352 Patent], at 14:19-27)), "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation." *Hillgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) (reversing finding of noninfringement of patent method claims); *see also Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). Here, there is no dispute that Elantech has designed its products and provides instructions that easily permit consumer purchasers of computers in the United States to activate the claimed features in Elantech's touchpads.

products. (Opp. at 3:1-4; Lee Decl. ¶ 8.) Elantech goes so far as to suggest that Synaptics was somehow remiss for failing to address these new products in the current Motions, despite the fact that Elantech first disclosed these products *after* Synaptics filed its Motions. (Opp. at 3.) As discussed in detail in Synaptics' Motion to Strike, filed herewith, references to these new products are irrelevant because the referenced products were never accused of infringement in Synaptics' final infringement contentions and Synaptics has not sought to amend its contentions to include these products.

## CONCLUSION

Synaptics' Motions for Partial Summary Judgment establish a prima facie case that use of Elantech's tap, double tap, drag, corner tap, scroll, and edge motion touchpad features meets every limitation of the asserted claims of the '931, '591, '052, and '411 Patents. For the reasons stated above, Elantech's Opposition fails to carry its burden to identify specific, genuine issues of material fact that would preclude partial summary judgment for each of the asserted claims. Partial summary judgment should be entered in favor of Synaptics that the accused features in Elantech's touchpads meet the limitations of the asserted claims.

Dated: February 22, 2008              MORRISON & FOERSTER LLP


                                      By:   s/Karl J. Kramer
                                            Karl J. Kramer
                                            Email: KKramer@mofo.com

                                      Attorneys for Defendant and
                                      Counterclaimant
                                      SYNAPTICS, INC.