1  Yitai Hu (SBN 248085) (yhu@akingump.com)
   Sean P. DeBruine (SBN 168071) (sdebruine@akingump.com)
2  Hsin-Yi Cindy Feng (SBN 215152) (cfeng@akingump.com)
   AKIN GUMP STRAUSS HAUER & FELD LLP
3  Two Palo Alto Square
   3000 El Camino Real, Suite 400
4  Palo Alto, California 94306-2112
   Telephone:    650-838-2000
5  Facsimile:    650-838-2001

6  Attorneys for Plaintiff and Counterdefendant
   ELANTECH DEVICES CORPORATION

                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

                    SAN FRANCISCO DIVISION

| ELANTECH DEVICES CORP., | Case No. 3:06-CV-01839 CRB |
|---|---|
| Plaintiff, | **ELANTECH DEVICES CORP.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; MEMORANDUM OF POINTS AND AUTHORITES** |
| vs. | |
| SYNAPTICS, INC. and AVERATEC, INC, | |
| Defendants. | Date:      December 28, 2007<br>Time:      10:00 am<br>Judge:     Hon. Charles R. Breyer<br>Courtroom: 8, 19th Floor |

**PUBLIC VERSION**

**NOTICE OF MOTION AND MOTION**

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 28, 2007 at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8 of this Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, Plaintiff Elantech Devices Corp. ("Elantech") will and hereby does move this Court for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, that the touchpad products sold by defendant Synaptics, Inc. ("Synaptics") using its "Type 2" source code with finger counting enabled, literally infringe Claim 18 of Elantech's United States Patent No. 5,825,352 ("the '352 patent").

As its basis for this motion, as more fully set forth in the following Memorandum of Points and Authorities, Elantech states that the Court has already determined that each and every limitation of Claim 18 of the '352 patent is literally present in Synaptics touchpad products that use the "Type 2" source code with multiple finger detection enabled. Elantech therefore moves for judgment consistent with that finding.

This motion is based upon this Notice of Motion and Memorandum of Points and Authorities, the briefing and declarations submitted in support of and opposition to Synaptics' April 20, 2007 Motion for Summary Judgment of Noninfringement of the Asserted Claims of the '352 Patent and Elantech's May 25, 2007 Motion for Summary Judgment of Infringement, the Court's October 26, 2007 Memorandum and Order Re: Summary Judgment Motions in which the Court indicated it "would grant summary judgment of infringement for Accused Touchpads implementing Type 2 code and having enabled finger counting functionality," and all of the other papers and pleadings on file in this matter and on such other argument and evidence as may be presented to the Court at or prior to the hearing on this motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL AND PROCEDURAL BACKGROUND

Elantech's motion for partial summary judgment asks that judgment be entered confirming the Court's determination that Synaptics' touchpads using its current "Type 2" firmware code with multiple finger detection enabled ("Enabled Type 2 products") infringe claim 18 of this '352 patent. The Court has already determined that there are no disputed issues of fact, and that these specific products include every element of claim 18. As such, judicial economy would be served by entry of partial summary judgment.

As discussed in the Court's October 26, 2007 Memorandum and Order Re: Summary Judgment Motions ("SJ Order"), Elantech asserts that Synaptics' enabled Type 2 products infringe, *inter alia*, Claim 18 of the '352 Patent. SJ Order at 3. *See* Wolf Decl., Ex. 3 (Elantech's Preliminary Infringement Contentions). Claim 18 states as follows:

> A touch sensor for detecting the operative coupling of multiple fingers comprising:
>
> means for scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first maxima, and (c) identify a second maxima in a signal corresponding to a second finger following said maxima; and
>
> means for providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima.

May 25, 2007 DeBruine Decl., Ex. A ('352 patent) at 17:27-37.

In the Court's Claim Construction Order, the Court construed, *inter alia*, certain phrases found in the Claim 18, *i.e.*, (1) "scanning the touch sensor to . . ." or "means for scanning the touch sensor to . . ." (2) "scanning the touch sensor to . . . identify a first maxima in a signal corresponding to a first finger," (3) "scanning the touch sensor to . . . identify a minima following the first maxima," (4) "scanning the touch sensor to . . . identify a second maxima in a signal corresponding to a second finger following said minima." *See* Claim Construction Order, dated April 6, 2007 ("Claim Construction Order"), at 11:2-9. Specifically, the Court construed (1) the phrase "scanning the touch sensor" to mean "measuring the values generated by a touch sensor to detect operative coupling and determining the corresponding positions at which measurements are made"; (2) the phrase "identify a first maxima in a

1  signal corresponding to a first finger" to mean "identify a first peak value in a finger profile obtained
2  from scanning the touch sensor"; (3) the phrase "identify a minima following the first maxima" to mean
3  "identify the lowest value in the finger profile that occurs after the first peak value, and before the
4  another peak value is identified," and (4) the phrase "identify a second maxima in a signal
5  corresponding to a second finger following said minima" to mean "after identifying the lowest value in
6  the finger profile, identify a second peak value in the finger profile." *See* Claim Construction Order, at
7  12:22-24 and 15:1-7.
8         Synaptics's "current" or "Type 2" code includes the ████████████ file. May 25,
9  2007 MacKenzie Decl., ¶14. Within the ████████████, the
10 ████████████ routine performs an identification of a first maxima, intervening minima
11 and second maxima following the minima. MacKenzie Decl. at ¶¶16, 18, 23, 30; SJ Order at 15. In
12 particular, this routine examines the value corresponding to each trace and compares it to the value of
13 the neighboring trace. *Id*. If the value of the current trace is less than that of the next, the routine
14 assigns that trace a value of "0." *Id*. If the value of the next trace is lower than the current trace, the
15 routine assigns a value of "1." *Id*. The location of each "0" and "1" on the bit pattern correspond to the
16 position on the touchpad (*i.e.*, the trace) at which the averaged capacitance values were originally
17 measured. *Id*. When the resulting variable string (*e.g.*, the bit pattern) is analyzed, any instance of "0"
18 followed by "1" indicates a local maxima. That is, the point where the finger profile begins to decrease
19 following an increasing slope is identified by the "1" in the pattern "01." *Id*. Similarly, a "1" followed
20 by a "0" in the bit pattern indicates a minima. In other words, a location where the finger profile ceases
21 to decrease is identified by the "0" in the pattern "10." *Id*. This corresponds to the bit pattern set forth
22 in line "A" of the figure below:

3



The ▮▮▮▮ module calls the ▮▮▮▮▮▮ routine along with the ▮▮▮▮▮▮ routine. MacKenzie Decl. at ¶¶15, 20. Once the ▮▮▮▮▮▮ routine is performed, as described above in Section II.D.1.a(1), the ▮▮▮▮ module then calls the ▮▮▮▮▮▮ routine, which compares the capacitance value stored for the peak traces from the analog-to-digital converters – that is, the numeric representation of the trace value – to given two threshold values. *Id.* at ¶20. Each peak value that exceeds both threshold values is then counted as a finger, and the count is stored in a ▮▮▮▮▮▮ register. *Id.*

## II. ARGUMENT

### A. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment may be granted if there exists no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Pro. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (holding that a court must determine whether evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). The movant has the burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law. *Vivid Tech, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 806-807 (Fed. Cir. 1999); *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991).

Determining infringement (or non-infringement) involves a two-step process: The first step

requires the Court to construe the claims to ascertain their meaning and scope. The second step requires a comparison of the construed claims to the Enabled Type 2 product to determine whether the elements in the asserted claims are found in that product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).

While infringement, either literal or under the doctrine of equivalents, is a question of fact, summary judgment may nevertheless be granted "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found [in the Enabled Type 2 device]." *Bai v. L & L Wings*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Here, as discussed below, and as confirmed in the Court's summary judgment order, Synaptics' own documents demonstrate that there is no material issue of fact that Synaptics' Enabled Type 2 Products contain each element of Claim 18 of the '352 Patent. Accordingly, summary judgment of infringement of the Asserted Claims should be entered.

**B.      The Synaptics Products Literally Infringe Claim 18.**

Based on the Court's claim construction, the Enabled Type 2 Products literally infringe Claim 18. Literal infringement of a means-plus function claim element may be established if the Enabled Type 2 product performs the same function, using the same or equivalent corresponding structure as that disclosed in the patent. *See* 35 U.S.C. §112, ¶6 (means-plus function claim literally covers "the corresponding structure, material, or acts described in the specification *and equivalents thereof*") (emphasis added); *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) ("Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the Enabled Type 2 device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification."). Here, the Enabled Type 2 Products literally infringes Claim 18 because they contain the same claimed functions for the two means-plus-function elements of Claim 18, *i.e.*, "means for scanning . . ." and "means for providing an indication. . . ." and contain the same or equivalent corresponding structures. SJ Order at 10, 14-15.

1.  **The Enabled Type 2 Products Meet the "Means for Scanning . . ." Limitation**

As the Court found, The Enabled Type 2 Products perform the same claimed function for the "means for scanning . . . ." element. That finding was based on the following facts: It is undisputed that the claimed function is "scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first maxima, and (c) identify a second maxima in a signal corresponding to a second finger following said maxima." Kramer Decl., Ex. 1. Under the Court's Construction, this claimed function means "measuring the values generated by a touch sensor to detect operative coupling and determining the corresponding positions at which measurements are made" to (a) "identify a first peak value in a finger profile obtained from scanning the touch sensor", (b) "identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified" and (c) "after identifying the lowest value in the finger profile, identify a second peak value in the finger profile." April 6, 2007 Claim Construction Order, at 12:22-24, 15:1-7.

The ███████████████████████ file contains a module entitled ███████, which calls the ███████████████████████ routine. MacKenzie Decl., at ¶¶15, 22. This ███████████████████████ routine generates a bit pattern from each trace, whereby a "0" followed by "1" identifies a peak value while a "1" followed by a "0" identifies a lowest value. *Id.* SJ Order at 14. The locations of each "0" and "1" on the bit pattern correspond to the positions on the touchpad (*i.e.*, the traces) at which the averaged capacitance values were originally measured. *Id.* Hence, through the ███████████████████████ routine, the Enabled Type 2 Products measure the values generated by fingers touching the touch sensor and determine the corresponding positions of each value to identify a first peak value, a following lowest value and a second peak value. This ███████ module is included in the Enabled Type 2 Products. Hence, those Enabled Type 2 Products with boards that always call for the execution of ███████ module perform the "scanning the touch sensor . . ." function.

Moreover, the Enabled Type 2 Products here include the ***identical*** structure corresponding to the "means for scanning . . . ." The undisputed corresponding structures are comprised of the "analog multiplexor 45, capacitance measuring circuit 70, analog to digital converter 80 and microcontroller 60."

6

1  Kramer Decl., Ex. 1. These structures are all readily shown in the Enabled Type 2 Products. The
2  Enabled Type 2 Products include an integrated circuit controller called the "T1005." MacKenzie Decl.,
3  at ¶7, Ex. 2 (schematic design of the T1005), Ex. 4 (T1005 specification). This T1005 includes a
4  multiplexer, capacitance measuring circuit, analog-to-digital converter and microcontroller. MacKenzie
5  Decl., ¶¶7-8; Ex. 2 (schematic design of the T1005); Ex. 4 (T1005 specification, at SYN00099005).
6  Therefore, there can be no dispute that the Enabled Type 2 Products have the same structures
7  corresponding to the "means for scanning . . ." element. SJ Order at 14-15.

       2. <u>The Enabled Type 2 Products Literally Meet the "Means for Providing an Indication" Claim Elements</u>

    The Court has already determined that the Enabled Type 2 Products perform the same claimed function for the "means for providing an indication . . ." element. SJ Order at 10. The undisputed claimed function is the "providing an indication of the simultaneous presence of two fingers in response to identification of said first and second maxima." Kramer Decl., Ex. 1. In response to the identification of the maxima by the ███████████████ each peak value that exceeds two threshold values is then counted as a finger, and the count is stored in a ███████████████ register. MacKenzie Decl., at ¶20. This procedure has been found by the court to satisfy the "providing an indication" claim limitation. SJ Order at 11.

    Accordingly, as a matter of law, the Enabled Type 2 Products literally infringe Claim 18.

## III. CONCLUSION

    For the foregoing reasons, Elantech respectfully requests that the Court grant its motion for partial summary judgment that the Enabled Type 2 products infringe Claim 18 of the '352 patent.

Dated: November 20, 2007        AKIN GUMP STRAUSS HAUER & FELD LLP

        By:    /s/
            Sean P. DeBruine

        Attorney for Plaintiff
        ELANTECH DEVICES CORP.