Yitai Hu (SBN 248085) (yhu@akingump.com)
Sean P. DeBruine (SBN 168071) (sdebruine@akingump.com)
Ming-Tao Yang (SBN 221295)(myang@akingump.com)
Hsin-Yi Cindy Feng (SBN 215152) (cfeng@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, California 94306-2112
Telephone:      650-838-2000
Facsimile:      650-838-2001

Attorneys for Plaintiff and Counterdefendant
ELANTECH DEVICES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELANTECH DEVICES CORP., <br><br>        Plaintiff, <br><br>    vs. <br><br> SYNAPTICS, INC. and AVERATEC, INC, <br><br>     Defendants. | Case No. 3:06-CV-01839 CRB <br><br> **BRIEF IN RESPONSE TO MARCH 6, 2008 ORDER RE: PARTIAL SUMMARY JUDGMENT** |

**PUBLIC VERSION**

# TABLE OF CONTENTS

I.    THE COURT'S ORDER DEMONSTRATES CONCLUSIVELY THAT SYNATPICS' MOTION SHOULD BE DENIED. ...................................................................1

    A.    Synaptics is Not Entitled to the Relief It Requests as a Matter of Law. .................1

    B.    Synaptics Failed to Show an Absence of Disputed Facts and to Clearly Establish the Elements of its Required Proof. .....................................................................3

II.   THE '411 PATENT – EDGE MOTION ...........................................................................4

III.  DOUBLE TAP ('591) AND CORNER TAP ('931)........................................................6

    A.    Comparing the amount of time ...............................................................................6

    B.    Comparing the amount of motion ...........................................................................8

    C.    Signaling limitations ...............................................................................................8

        1.    Initiating.......................................................................................................9

        2.    Maintaining.................................................................................................10

        3.    Terminating.................................................................................................11

IV.   CONCLUSION................................................................................................................12

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)....................................................3

*Balint v. Carson City*,
    180 F.3d 1047 (9th Cir. 1999) ...........................................................................................4

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) .........................................................................................2

*Hillgraeve Corp. v. Symantec Corp.*,
    265 F.3d 1336 (Fed. Cir. 2001) .........................................................................................2

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) .........................................................................................1

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996) ..........................................................................................2

### RULES

Civil L.R. 7-2(d) .................................................................................................................3

Civil L.R. 7-3(d) .................................................................................................................3

In its March 6, 2007 Order re Partial Summary Judgment Questions ("March 6 Order"), the Court seeks additional briefing to address nearly 40 individual questions or requests for further information regarding defendant Synaptics, Inc.'s two motions for partial summary judgment. In several instances the Court expressly recognizes that many of these questions arise because the evidence before the Court establishes genuine disputes on issues of fact on which Synaptics bears the burden of proof before it is entitled to any partial summary judgment. Elantech respectfully suggests that the recognition of these disputed issues of fact, and the need to seek extensive additional information relevant to nearly every claim Synaptics asserts, is conclusive proof that Synaptics has failed to make the showing required for the Court to grant summary judgment. In addition, The Court need not even reach the issue of any "tap" or "zone" operations in the accused Elantech touchpads. As a matter of law Synaptics cannot demonstrate that it is entitled to the relief it has requested.

## I.     THE COURT'S ORDER DEMONSTRATES CONCLUSIVELY THAT SYNAPTICS' MOTION SHOULD BE DENIED.

### A.     Synaptics is Not Entitled to the Relief It Requests as a Matter of Law.

In its motion, Synaptics asks the Court to determine, as a matter of law, that the mere "use" of the accused Elantech touchpad products necessarily results in the practice of its asserted patent claims. Motion re Tap Claims at 1; Motion re Zone Claims at 1. Given the nature of Synaptics' claims and the accused Elantech products, Synaptics is not entitled to such a finding as a matter of law. The starting point for analyzing Synaptics' motion is the patent claims themselves. All of the claims at issue in the motions are *method* claims. *See* Motion re Tapping Claims, Appx. A; Motion re Zone Claims, Appx. A; Wolfe Decl., Exs. 2 – 5. For example, asserted claim 46 of the '411 patent covers "A method of moving a cursor on a computer display screen in response to motion of an object sensed on a sensing plane . . ." *Id.*, Ex. 4 at 63:36-37. Infringement of a method claim requires that a single person or entity perform each and every one of the claimed steps in the United States. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005). Elantech's sales of the accused products alone cannot constitute infringement, whether or not they are capable of being used to perform the steps of the claimed methods. *Id.* at 1317; *see also Hillgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1342 n.2 (Fed. Cir. 2001);

1   *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996).  As such, there is no dispute that

2   Elantech does not, and cannot, directly infringe any of the asserted claims.

3        Synaptics must show some actual use of an accused Elantech touchpad that resulted in the

4   performance of every step of the asserted method claims.  *Dynacore Holdings Corp. v. U.S. Philips*

5   *Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).  In theory, one could meet this requirement of showing

6   direct infringement if the use of the accused product necessarily resulted in performance of the claimed

7   method steps.  *Id.* at 1275-76.  Absent such a showing, Synaptics must point to specific acts of actual

8   infringement.  *Id.*  Here, the evidence is uncontroverted that "use" of the Elantech touchpad products

9   does not necessarily result in the performance of each step in the asserted method claims.  In fact, it is

10  both possible and highly probable that users of the accused touchpads never practice the claimed

11  methods.  Those methods are all directed at replacing physical button inputs with gestures on the

12  touchpad.  The accused products include the physical buttons, such that the products can be used without

13  resort to the tap, double tap, corner tap, drag or edge motion features relevant to Synaptics' claims.

14  Perhaps the only fact not in dispute is that mere "use" of the accused products does not necessarily

15  "satisfy every limitation" of the accused method claims.  Synaptics' motions asking for such a summary

16  finding contrary to the undisputed evidence must be denied.

17     **B.     Synaptics Failed to Show an Absence of Disputed Facts and to Clearly Establish the**
           **Elements of its Required Proof.**

18

19        As Elantech pointed out in its opposition, Elantech does not seek summary judgment of no

20  infringement.  Rather, Elantech elicited evidence that demonstrated both that Synaptics failed to

21  establish facts on which it carries the burden of proof and genuine issues of fact material to Synaptics'

22  motion, therefore effectively rebutted Synaptics' motion.

23        The Court's March 6, 2007 Order clearly shows that there are genuine issues of disputed facts

24  that preclude summary judgment.  For example, the Order recognizes that Synaptics' argument as to

25  what constitutes the "signal" claim elements has changed completely between its opening brief and its

26  reply brief.  The Court was therefore forced to ask "what represents the 'signal' and how is it transmitted

27  in the KTP3 and KTP5 code?"  *Id.* at 5 (Question E.1.).  Similarly it was Synaptics' burden to present

28  evidence proving that Elantech's touchpads "compar[e] the amount of motion . . . to a reference

1    amount." *Id.* at 4. Yet based on Synaptics' showing, the Court is left to ask "[e]xactly where in the

2    Elantech KTP3 and KTP5 code is the amount of motion represented, where is the reference amount

3    represented and where is the comparison done?" Synaptics has clearly failed to come forward with the

4    compelling, undisputed evidence necessary for a summary judgment.

5        The Court's Order also expressly recognizes numerous genuine disputes of material facts. For

6    example, the Order recognizes that "Synaptics asserts that Elantech's touchpads using KTP5 code

7    establish a reference amount of time and compare the time the finger is on the touchpad" but that

8    "Elantech asserts that the KTP5 touchpads make no comparison." Order at 3. Because Elantech's

9    assertion is supported by the sworn testimony of two people familiar with that code, there is clearly a

10   genuine dispute as to a fact necessary to resolve Synaptics' claim of infringement. *Anderson v. Liberty*

11   *Lobby, Inc.,* 477 U.S. 242, 253, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). On this record, Synaptics'

12   motion should be denied.

13       It is not the role of the Court to weigh the evidence or determine the truth of the matter, but only

14   determine whether there is a genuine issue for trial. *Balint v. Carson City,* 180 F.3d 1047, 1054 (9th Cir.

15   1999). The Court cannot engage in credibility determinations, weighing of evidence, or drawing of

16   legitimate inferences from the facts; these functions are for the jury. *Anderson,* 477 U.S. at 255. More

17   fundamentally, it is not the province of the Court to determine what evidence is to be presented in

18   connection with motions. In fact, the local rules of this Court require that motions be supported, at the

19   time they are filed or by the time specified for a Reply, with supporting evidence. Civil L.R. 7-2(d); 7-

20   3(d). As discussed above, Synaptics has failed to come forward and set out the required compelling

21   evidence and Elantech has controverted the evidence Synaptics did supply. There is no provision in the

22   local rules for any further supplementation of the evidence. Elantech does not understand the March 6

23   Order to change this rule. The Order calls for additional briefing; it does not request or authorize any

24   further evidentiary submissions. Consistent with the Order and the Court's rules, Elantech's briefing

25   will address the Court's questions based upon the declarations currently on file. To the extent an answer

26   to the Court's questions are not available in the record, Elantech will point out that fact.

27

28

1    II.    **THE '411 PATENT – EDGE MOTION**

2         Synaptics has failed to show that there is no genuine issue of material fact with respect to alleged

3    infringement of the "edge motion" claims of the '411 patent. Synaptics' expert has cited various

4    portions of code in KTP3 and KTP5 and made conclusory and inaccurate statements about that code.

5    Synaptics has failed to show how these cited code portions support its allegations. Because there are

6    disputed facts regarding whether the cited code portions relate to calculating an increment, Synaptics'

7    motion should be denied.

8         Question B1

9         Synaptics' expert cited portions of code attempting to show that Elantech's Smart Edge function

10   operates to move in calculated increments. *See* Wolfe Decl., ¶ 121. However, as Elantech has

11   explained, the cited code portions clearly show that a ***constant*** value (one that is not calculated) is used.

12   *See* MacKenzie Decl., ¶ 24. Depending on the location of the finger (e.g., whether at the left edge or at

13   the right edge), a positive constant value or a negative constant value may be required. *See* Elantech

14   Opposition at 13. The cited code portions also relate to a "ones-complement" and "increment addition"

15   operations used in generating the negative constant value. *See* MacKenzie Decl., ¶ 24. These operations

16   are not used to determine the direction of motion, because the direction of motion is already determined

17   based on the location of the finger (e.g., whether at the left edge or at the right edge). Synaptics also

18   vaguely refers to "several other addition calculations" without explaining what those calculations are or

19   how they might relate to calculating an increment. *See* Wolfe Decl., ¶ 122.

20        Simply put, the KTP3 and KTP5 touchpads do not calculate any increment for edge motion.

21   Instead, they use pre-selected constant values. Synaptics attempts to argue that the Court's claim

22   construction "does not preclude a calculated 'constant' value from satisfying the claims, but simply

23   requires that the increment is calculated by someone or something at some point." *See* Synaptics Reply

24   at 3. This argument is circular and flawed in that it presupposes that a constant is calculated.

25        Question B2

26        The ███████ routine can determine on which edge of the touchpad the finger is located.

27

28

<u>Question B3</u>

The current factual record does not provide an answer to the Court's question regarding how the user is able to change the cursor edge speed. Although Synaptics asserts that Elantech's Smart Edge function allows the user to adjust the cursor speed, this assertion does not prove that the cursor moves in calculated increments or that a constant is not simply chosen from one of multiple options. Choosing a particular constant value is not equivalent to calculating an increment.

<u>Question B4</u>

The current factual record does not provide an answer to the Court's questions regarding the variable ███████████  The global constant ████████████ is not involved in allowing the user to change the cursor edge speed in either KTP3 or KTP5 code and Synaptics has never explained how declaration of this constant has anything to do with calculating an increment. ████████████ is declared as a global constant (i.e., its value is constant and does not change). *See* MacKenzie Decl., ¶ 24.

## III.   <u>DOUBLE TAP ('591) AND CORNER TAP ('931)</u>

### A.   **Comparing the amount of time**

Synaptics has failed to show that there is no genuine issue of material fact with respect to alleged infringement of claim 1 of the '931 patent and claims 6 and 9 of the '591 patent, in particular with regard to the comparison of the length of time that a finger is on the touchpad with a reference amount of time. Specifically, claim 1 of the '931 patent requires "comparing amount of time said conductive object is present on said touch pad with a reference amount of time." Claim 6 of the '591 patent requires "comparing the duration of said first presence with a first reference amount of time," and "comparing the duration of said second presence with a third reference amount of time." Claim 9 of the '591 patent requires "comparing the duration of said first presence with a first reference amount of time," and "comparing the duration between said first presence and second presence with a second reference amount of time," Synaptics' expert has cited various portions of code in KTP3 and KTP5 and made conclusory and inaccurate statements about that code. Synaptics has failed to show how these cited code portions support its allegations. Because there are disputed facts regarding whether the cited code portions relate to comparing an amount of time, Synaptics' motion should be denied.

Question C1

Synaptics' expert cited portions of code attempting to show that the "comparing the amount of time" is satisfied. *See* Wolfe Decl., ¶¶ 27-31, 49, 56, 67. Specifically, Synaptics expert identified a variable ███████████ as evidence that a reference amount of time is compared to the time that a finger is on the touchpad. *See* Wolfe Decl., ¶ 30. As Elantech has explained, the variable ████████████ is not used for any time comparison. *See* Lee Decl., ¶ 5; MacKenzie Decl., ¶¶ 9, 11.

Question C2

The current factual record does not provide an answer to the Court's question regarding which variable in the KTP3 code represents the amount of time that a finger is on the touchpad, where the reference amount of time is and where in the code the comparison is done. In addition, these questions are largely moot because the KTP3 touchpad does not meet other limitations recited in claim 1 of the '931 patent and claims 6 and 9 of the '591 patent. In particular, the KTP3 code does not make the required comparison of motion as explained below.

The Court's question appears to presuppose that a comparison is performed in the Elantech touchpads between a measured amount of the time and a reference amount of time. In fact, there is no measurement or comparison of the amount of time that a finger is on the touchpad in the KTP5 code. *See* MacKenzie Decl., ¶ 11.

Question C3

The variable ████████████ is used in procedures that recognize tap gestures, double tap gestures, and drag gestures. As explained above for Question C1, the variable ██████████ is not used for any time comparison. *See* Lee Decl., ¶ 5; MacKenzie Decl., ¶¶ 9, 11.

Question C4

The current factual record does not provide an answer to the Court's question regarding which variable in the KTP3 code represents the duration of each presence, the reference amount of times and the procedure where the duration is compared. These issues are largely moot however, because the KTP3 touchpad does not meet other limitations recited in claim 6 of the '591 patent as discussed below.

1    This question again appears to presuppose that a comparison is performed in the Elantech

2    touchpad between the duration of the first presence with a reference amount of time and between the

3    duration of the second presence with another reference amount of time. As explained above for

4    Question C1, there is no measurement or comparison of the amount of time that a finger is on the

5    touchpad in the KTP5 code. *See* MacKenzie Decl., ¶¶ 11, 15.

6    Question C5

7    The current factual record does not provide an answer to the Court's question regarding which

8    variable in the KTP3 code represents the duration of each presence, the reference amount of times and

9    the procedure where the duration is compared. Again, these issues are largely moot because the KTP3

10    touchpad does not meet other limitations recited in claim 9 of the '591 patent as discussed below.

11    This question also appears to presuppose that a comparison is performed in the Elantech

12    touchpad between the duration of the first presence with a reference amount of time and a comparison

13    between the first presence and second presence with another reference amount of time. As explained

14    above for Question C1, there is no measurement or comparison of the amount of time that a finger is on

15    the touchpad in the KTP 5 code. *See* MacKenzie Decl., ¶¶ 11, 19.

16    **B.    Comparing the amount of motion**

17    Synaptics has failed to show that there is no genuine issue of material fact with respect to alleged

18    infringement of the Claim 1 of the '931 patent, in particular with regard to the "comparing the amount of

19    motion" limitation. Synaptics' expert has cited various portions of code in KTP3 and KTP5 and made

20    conclusory and inaccurate statements about that code. Synaptics has failed to show how these cited

21    code portions support its allegations. Because there are disputed facts regarding whether the cited code

22    portions relate to comparing an amount of motion, Synaptics' motion should be denied.

23    Questions D1-D2

24    Synaptics' expert cited portions of code attempting to show that the "comparing the amount of

25    motion" is satisfied. *See* Wolfe Decl., ¶¶ 32-35. As Elantech has explained, both KTP3 and KTP5

26    touchpads measure changes in the output of an analog-to-digital converter (ADC). *See* MacKenzie

27    Decl., ¶ 10. The output of the ADC is an indication of the capacitance. *Id.* When a finger moves, the

28    capacitances on the individual traces change. *Id.* When a finger moves quickly, the change in

1  capacitance is more pronounced. *Id.* Thus, according to changes of the ADC output, the firmware

2  determines whether a movement is a fast movement or not, and the variables ████████ and

3  ████████ are set accordingly. *Id.* Synaptics now argues that "the reference value should reflect

4  'little or no X or Y finger motion'" and that "[A]ny number of methods could be used to quantify the

5  'little or no X or Y finger motion,' including X/Y units, capacitive fluctuations, or speed of finger

6  movement." *See* Synaptics Reply at 5. However, Synaptics is still incorrect.

7      The changes in capacitance as reflected by the output of the ADC do not <u>quantify</u> motion to be

8  compared to a reference <u>amount</u> of motion. Instead, the changes in capacitance only indicate whether

9  motion was "fast" or not (i.e., they do not indicate how much motion). *See* MacKenzie Decl., ¶ 10.

10     **C.    Signaling limitations**

11     Synaptics has failed to show that there is no genuine issue of material fact with respect to alleged

12  infringement of the Claim 1 of the '931 patent and Claims 6 and 9 of the '591 patent, in particular with

13  regard to the "signal" limitations. Because there are disputed facts regarding whether the evidence on

14  record establishes that the signals are "initiat[ed]", "maintain[ed]", and "terminat[ed]", Synaptics'

15  motion should be denied.

16         **1.    Initiating**

17     Question E1

18     With respect to the "initiating a signal to the host" limitation of Claim 1 of the '931 patent and

19  Claim 6 of the '591 patent, Synaptics has failed to articulate specifically what represents the "signal"

20  that is initiated. According to Synaptics, these claims "require that a signal be sent from the touchpad to

21  the host indicating that the gesture in question occurred." *See* Synaptics Tapping Motion at 13. For a

22  tap gesture, Synaptics has argued that "the 'button down' signal indicat[es] a tap gesture." *See* Wolfe

23  Decl., ¶ 41. In other words, the "button down" signal indicates that a tap gesture occurred, and the

24  "button down" signal thus constitutes a tap gesture signal. However, Synaptics has also argued that "the

25  combination of the 'button down' and 'button up' data packets constitutes a tap gesture signal" and that

26  "the 'button down' clearly 'initiates' the tap gesture signal." *See* Synaptics Reply at 6. It is unclear

27  whether Synaptics contends that a tap gesture signal is a simply a "button down" or whether it is the

28  combination of "button down" and "button up." Synaptics cannot have it both ways.

1   As Elantech has explained, ███████ is a variable that is internal to the KTP3 and KTP5

2   firmware. It is never initiated or sent to the host to indicate a tap gesture. *See* MacKenzie Decl., ¶ 13.

3   Instead, for a tap gesture, the KTP3 and KTP5 touchpads send a "button down" followed by a "button

4   up." *See* MacKenzie Decl., ¶ 13. For a double tap, the KTP3 and KTP5 touchpads send "button

5   down", "button up," "button down" and "button up." *See* Elantech's Opposition at 12.

6       Question E2

7       With respect to the "initiating a signal to the host" limitation of Claim 9 of the '591 patent,

8   Synaptics has argued that "[S]ince a tap is a necessary part of Elantech's drag gesture, the initiation of a

9   tap signal constitutes the initiation of a drag gesture signal." *See* Wolfe Decl., ¶ 69. Synaptics has also

10  argued that "[t]he transmission of a 'button down' data packet also 'initiat[es] a drag gesture signal.'"

11  *See* Synaptics' Reply at 9. Synaptics is playing word games. Claim 9 of the '591 patent requires

12  "initiating a drag gesture signal" and "maintaining said drag gesture signal and repeatedly sending X and

13  Y position information." *See* '591 patent at 48:15-25. In other words, the claim requires maintaining

14  the entire drag gesture signal – not just the initiation of the drag gesture signal – and additionally

15  repeatedly sending X and Y position information. Thus, the X and Y position information cannot be part

16  of "said drag gesture signal." Accordingly, a "button down" must be "said drag gesture signal." But a

17  "button down" by itself cannot indicate the occurrence of a drag gesture, because Synaptics has also

18  indicated that "the 'button down' signal indicat[es] a tap gesture." *See* Wolfe Decl., ¶ 41.

19          2.    Maintaining

20      Question F1

21      With respect to the "maintaining said signal" limitation of Claim 1 of the '931 patent, Synaptics

22  has failed to show that a tap gesture signal is "maintained." Claim 1 of the '931 patent requires

23  "initiating a signal to the host indicating the occurrence of tap gesture" and "maintaining said signal."

24  See '931 patent at 53:4-12. In other words, the claim requires maintaining the entire tap gesture signal –

25  not just the initiation of the tap gesture signal.

26      Synaptics has argued that "the button down signal indicating a tap gesture is maintained for 200

27  ms as indicated by ███████████ *See* Wolfe Decl., ¶ 41. However, Synaptics has also argued that

28  "the combination of the 'button down' and 'button up' data packets constitutes a tap gesture signal"

1   Synaptics Reply at 6. It is unclear whether Synaptics contends that a tap gesture signal is a simply a

2   "button down" or whether it is the combination of "button down" and "button up." Thus, it is unclear

3   whether Claim 1 of the '931 patent requires "maintaining" a "button down" or the combination of

4   "button down" and "button up." Synaptics cannot have it both ways.

5           As Elantech has explained, KTP3 and KTP5 touchpads indicate a tap gesture by sending a

6   "button down" followed by "button up." *See* MacKenzie Decl., ¶ 13. The "button down" packet is a not

7   a signal that is "maintained" for 200ms. Neither is the combination of "button down" and "button up" a

8   signal that is maintained. There is no "said signal" that is maintained. Because the data packets are one-

9   time packets, it is nonsensical to characterize the transmission of data packets as "terminating" or

10  "maintaining" signals. *See* MacKenzie Decl., ¶ 7.

11          Question F2 (also A2 and A3)

12          The KTP5 code was derived in part from the KTP3 code. Therefore, there are some (vestigal)

13  variables declared in the KTP5 code which are not used in the KTP5 code. There are some functional

14  differences between the KTP3 and KTP5 code. Both versions were sold concurrently.

15          Question F3

16          The Court's question appears to presuppose that there is a drag gesture signal that is

17  "maintained" by the KTP3 and KTP5 code. In fact there is no signal that is "maintained." Because the

18  data packets are one-time packets, it is nonsensical to characterize the transmission of data packets as

19  "terminating" or "maintaining" signals. *See* MacKenzie Decl., ¶ 7. Claim 9 of the '591 patent requires

20  "initiating a drag gesture signal" and "maintaining said drag gesture signal and repeatedly sending X and

21  Y position information." *See* '591 patent at 48:15-25. In other words, the claim requires maintaining

22  the entire drag gesture signal – not just the initiation of the drag gesture signal – and additionally

23  repeatedly sending X and Y position information. Thus, the X and Y position information cannot be part

24  of "said drag gesture signal." This leaves only a "button down" to be the "said drag gesture signal" but

25  Synaptics has failed to show how this can be. Indeed, Synaptics has argued that a "button down" merely

26  "initiat[es] a drag gesture signal." *See* Synaptics Reply at 9. To add further confusion, Synaptics has

27  also argued that "the 'button down' signal indicat[es] a tap gesture." *See* Wolfe Decl., ¶ 41.

28

3.    Terminating

Question G1

With respect to the "terminating said signal" limitation of Claim 6 of the '591 patent, Synaptics has failed to show that any signals are "terminated." In fact, it is unclear what the meaning of term "terminating" is. Synaptics has argued that "[i]f a second touch is not detected within a predetermined period of time after the first tap gesture … the software terminates the tap gesture signal resulting in a 'button up' condition and merely a single tap gesture." *See* Wolfe Decl., ¶ 52. Here, Synaptics appears to use the word "terminates" to mean "to discontinue." This interpretation is consistent with the statement that "Elantech's TouchPad software will continue the 'button down' command if it detects a second touch before the ████████ time." *See* Wolfe Decl., ¶ 72. However, Synaptics has also argued that "[t]he 'button up' data packet, as the last step in this combination, operates to 'terminat[e] said first [tap gesture] signal.'" *See* Synaptics Reply at 8. Here, Synaptics is using the same action – sending a single data packet – to satisfy all of the initiating, maintaining and terminating limitations.

Question G2

The Court's question appears to presuppose that there is a signal that is "terminated" in KTP3 and KTP5 code. In fact, there is no signal that is "terminated" in KTP3 and KTP5 code. As Elantech has explained, the KTP3 and KTP5 touchpads merely send a "button down" data packet" followed by a "button up" for a single tap gesture. *See* MacKenzie Decl., ¶ 13. Because the data packets are one-time packets, it is nonsensical to characterize the transmission of data packets as "terminating" or "maintaining" signals. *See* MacKenzie Decl., ¶ 7.

Question G3

The Court's question appears to presuppose that there is a signal that is "terminated" in KTP3 and KTP5 code. In fact, there is no signal that is "terminated" in KTP3 and KTP5 code. As Elantech has explained, the KTP3 and KTP5 touchpads merely send a "button down" data packet" followed by a "button up", "button down" and "button up" for a double tap gesture. *See* Elantech's Opposition at 12. Because the data packets are one-time packets, it is nonsensical to characterize the transmission of data packets as "terminating" or "maintaining" signals. *See* MacKenzie Decl., ¶ 7.

1

## IV.    CONCLUSION

As Elantech demonstrated in its Opposition to Synaptics' motions, and as graphically demonstrated in the Court's March 6 Order, Synaptics has utterly failed to make the clear and unambiguous showing necessary for summary judgment.  Regardless of any new explanations Synaptics may offer now, its motions must be denied.


Dated:  March 14, 2008                    Respectfully submitted,

                                          AKIN GUMP STRAUSS HAUER & FELD LLP


                                          By:      /s/ Sean P. DeBruine
                                                        Sean P. DeBruine

                                          Attorneys for Plaintiff
                                          ELANTECH DEVICES CORP.

6215282