# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

**SEAN P. DEBRUINE**
650.838.2121/fax: 650.838.2001
sdebruine@akingump.com

March 19, 2008

**VIA MESSENGER**

Hon. Charles R. Breyer
United States District Court
   for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:  *Elantech Devices, Inc. v. Synaptics, Inc. et al.*
            Case No. CV 06-01839 CRB

Dear Judge Breyer:

      Pursuant to the Court's Order issued on Monday, March 17, 2008, I am enclosing a copy of the Court's March 13, 2008 Memorandum and Order with the parties' joint proposed redactions. The redactions appear on pages 5, 6, and 7 of the document.

      Sincerely,

      *Sean DeBruine/su*

      Sean P. DeBruine
      Counsel for Elantech Devices Corp.

cc:    Karl J. Kramer, Esq. (counsel for Synaptics, Inc., via electronic mail and hand delivery)

# FILED

MAR 1 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELANTECH DEVICES CORP., a corporation existing under the laws of Taiwan, R.O.C.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SYNAPTICS, INC., a Delaware corporation; and AVERATEC, INC., a California corporation,<br><br>　　　　　Defendants. | No. C 06-01839 CRB<br><br>**MEMORANDUM AND ORDER**<br><br>**FILED UNDER SEAL** |

Elantech Devices Corp. ("Elantech") filed suit against Synaptics, Inc. ("Synaptics") for infringement of U.S. Patent No. 5,825,352 ("the '352 patent"). Synaptics counterclaimed for infringement of U.S. Patents No. 5,880,411 ("the '411 patent"), No. 5,943,052 ("the '052 patent"), No. 5,543,592 ("the '592 patent"), and No. 6,380,931 ("the '931 patent").

Now pending before the Court are Elantech's motion for partial summary judgment and Elantech's motion for preliminary injunction. Elantech argues that Synaptics's touchpad products implementing Type 2 Code infringe Claim 18 of the '352 patent as a matter of law. Elantech's motion for preliminary injunction seeks to enjoin Synaptics from infringing the '352 patent by importing, making, using, selling, or offering to sell its touchpad products implementing Type 2 Code.

United States District Court<br>For the Northern District of California

# I.   BACKGROUND

## A.   Procedural History

The Court previously construed eight terms from the asserted patents as selected by the parties, including four terms from Elantech's '352 patent. See generally Claim Construction Order, April 6, 2007.

After the Claim Construction Order issued, Synaptics moved for summary judgment of noninfringement of the '352 patent. Elantech cross-moved for summary judgment of infringement. In its October 26, 2007 Memorandum and Order Re: Summary Judgment Motions ("October 26 Order"), the Court granted Synaptics's motion for partial summary judgment of noninfringement for those devices implementing Type 1 Code, but denied Synaptics's motion as to devices implementing Type 2 Code. The Court also denied Elantech's motion for summary judgment of infringement for all Accused Touchpads on the ground that Accused Touchpads that implement Type 1 Code do not infringe claim 18 of the '352 patent. The Court explained: "The Court would grant summary judgment of infringement for Accused Touchpads implementing Type 2 Code and having enabled finger counting functionality, but Elantech did not move for partial summary judgment; instead, its motion seeks judgment on all Accused Touchpads without distinction." October 26 Order at 15: 21-24. Elantech accordingly has now moved for summary judgment of infringement for Accused Touchpads implementing Type 2 Code.

## B.   The '352 Patent

The '352 patent, entitled "Multiple Fingers Contact Sensing Method for Emulating Mouse Buttons and Mouse Operation on a Touch Sensor Pad," discloses methods and apparatus for recognizing the presence of multiple fingers on a touchpad and emulating various mouse functions. Claim 18 is an independent claim which discloses "a touch sensor for detecting the operative coupling of multiple fingers." The claim recites two elements, a "means for scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first maxima, and © identify a second maxima in a signal corresponding to a second finger following said minima" and a "means

1  for providing an indication of the simultaneous presence of two fingers in response to

2  identification of said first and second maxima."

3  **II.    MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT**

4      In its motion for partial summary judgment, Elantech asks that judgment be entered

5  confirming that Synaptics's touchpads using Type 2 Code with multiple finger detection

6  enabled infringe claim 18 of its '352 patent.

7      **A.    Legal Standard for Summary Judgment**

8      Summary judgment is appropriate when there is no genuine issue as to any material

9  fact and the moving party is entitled to judgment as a matter of law.  Summary judgment is

10  improper "if the evidence is such that a reasonable jury could return a verdict for the

11  nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is

12  "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the

13  non-moving party. See id. at 248-49.  A fact is "material" if the fact may affect the outcome

14  of the case. See id. at 248.  "On summary judgment, the evidence must be viewed in the light

15  most favorable to the party opposing the motion, with doubts resolved in favor of the

16  nonmovant." Crown Operations International, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375

17  (Fed. Cir. 2002) (citations omitted).

18      **B.    Act of Infringement in the United States**

19      35 U.S.C. § 271(a) states that "whoever without authority makes, uses, offers to sell,

20  or sells any patented invention, within the United States or imports into the United States any

21  patented invention during the term of the patent therefor, infringes the patent."  In general,

22  sales made outside the United States do not constitute patent infringement. See Microsoft

23  Corp. v. AT & T Corp., 127 S. Ct. 1746, 1750 (2007).

24      Synaptics argues that Elantech has presented no evidence of sales of infringing

25  product in the United States.  The Court is not persuaded.  In order to demonstrate that

26  Synaptics's touchpads could infringe, Elantech engineers purchased computers with

27  Synaptics's touchpads in the United States.  October 26 Order at 10:19-22; Declaration of

28  Teng-Yen Wu in Support of Elantech's Motion for Summary Judgment of Infringement, ¶ 3.

United States District Court
For the Northern District of California

3

1   Such evidence supports an inference of sales of the infringing product in the United States.

2   Synaptics does not offer any evidence to dispute that inference. In light of this undisputed

3   evidence, Elantech has met its burden of establishing an act of infringement within the

4   United States.

5   **C.    Synaptics Products Implementing Type 2 Code Literally Infringe Claim 18**

6          **1.    Legal Standard for Literal Infringement**

7          To determine infringement, the asserted claim must be compared to the allegedly

8   infringing method or device. <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976

9   (Fed. Cir. 1995). To establish literal infringement, every claim limitation, or claim element,

10  must be found in the accused subject matter. <u>Warner-Jenkinson Co. v. Hilton Davis</u>

11  <u>Chemical Co.</u>, 520 U.S. 17, 29, 40 (1997). Thus, establishing that the accused method or

12  device does not satisfy one claim limitation would support a finding of noninfringement. <u>Id.</u>

13  The patentee must prove infringement by a preponderance of the evidence. <u>Bayer AG v.</u>

14  <u>Elan Pharm. Research Corp.</u>, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

15         Determining infringement is a two-step process involving: 1) construing the patent

16  claims and 2) determining whether infringement occurred. <u>Markman v. Westview</u>

17  <u>Instruments, Inc.</u>, 517 U.S. 370, 384 (1996).

18         **2.    Means-Plus-Function Claims Require Comparison of Structures**

19         35 U.S.C. § 112, ¶ 6 permits "means-plus-function" claims, which allow an element in

20  a claim with a combination of elements to be expressed as a "means" that performs a recited

21  function rather than be expressed as a specific structure. However, the statute also limits

22  how the "means" may be interpreted. In order to prevent the claim from reading on an

23  unlimited number of structures, the claim must be interpreted in accordance with the statute:

24  "such claim shall be construed to cover the corresponding structure, material, or acts

25  described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. If the written

26  description of the patent fails to disclose the "corresponding structure" for the means recited

27  in the claim, the claim will be found invalid for failure "to particularly point out and

28  distinctly claim the invention." <u>In re Donaldson Co., Inc.</u>, 16 F.3d 1189, 1195 (Fed. Cir.

United States District Court
For the Northern District of California

1    1994).

2        In order to find literal infringement, the structure disclosed in the written description

3    must be identical or equivalent to an identified structure in the accused device. JVW Enters.

4    v. Interact Accessories, Inc., 424 F.3d 1324, 1333 (Fed. Cir. 2005). Restated, a "structure in

5    the accused device must perform the claimed function in substantially the same way to

6    achieve substantially the same result as the structure in the written description." Id. (quoting

7    Odetics, Inc.v. Storage Tech. Corp., 185 F.3d 1259, 1267 (Fed. Cir. 1999)).

8        Claim 18 of the '352 patent involves two elements written in means-plus-function

9    form. The first element is a "means for scanning the touch sensor . . . ," while the second

10   element is a "means for providing an indication of the simultaneous presence of two fingers

11   in response to identification of said first and second maxima." (Emphasis added).

12       Synaptics argues that structures corresponding to the "means for providing an

13   indication" have not been identified in either the written description of the patent or in the

14   accused device.

15       Elantech has satisfactorily identified a structure in the written description that

16   performs the function of "providing an indication." The written description of the '352

17   patent discloses the microcontroller 60 which governs the operation of the touchpad. '352

18   patent at 5:32-25.

19       Elantech has also satisfactorily identified a structure in the accused device which

20   serves as a "means for providing an indication." As the Court previously concluded, the

21   execution of the ▮▮▮▮▮▮▮▮▮▮"satisfies the 'providing an indication' claim limitation."

22   October 26 Order at 11:12-15. Therefore, Elantech has satisfactorily identified the structures

23   in both the written description of the '352 patent and in the accused device that correspond to

24   both means-plus-function elements of claim 18, defeating Synaptics's indefiniteness

25   argument.

26       **3.    Claim Construction**

27       Claim 18 of the '352 patent claims "a touch sensor for detecting the operative

28   coupling of multiple fingers" with two means-plus-function elements. The first element,

1  "means for scanning" has three sub limitations (a)-©, which were construed to mean (a)

2  "identify a first peak value in a finger profile obtained from scanning the touch sensor," (b)

3  "identify the lowest value in the finger profile that occurs after the first peak value, and

4  before another peak value is identified," and © "after identifying the lowest value in the

5  finger profile, identify a second peak value in the finger profile."  Claim Construction Order

6  at 15:1-7.

7        The second element, "means for providing an indication of the simultaneous presence

8  of two fingers," was not construed in the Claim Construction Order but was defined in the

9  October 26 Order at 6:18-7:28. The Court determined that the claim requires an "affirmative

10  step to provide an indication of multiple fingers," but "does not require that the 'indication'

11  of two fingers be returned to the host." Id. at 7:26-28.

12              **4.    Comparison of Structures for Infringement**

13        Synaptics's touchpads implementing Type 2 Code infringe claim 18 of Elantech's

14  '352 patent only if the accused devices include each limitation of the claim.  The claim

15  limitations at issue are the "means for scanning" element, including its sublimitations

16  requiring identification of maxima and minima, and the "means for providing an indication"

17  element.

18  "Means for Scanning"

19        The Court previously denied Synaptics's motion for summary judgment of

20  noninfringement for touchpads that implement Type 2 Code because each limitation of the

21  "means for scanning" element is found within the ██████████ or ██████████ algorithm used

22  in the ██████████████████████ October 26 Order at 14:5-15:14. Specifically, "a ████

23  ██████ in this vector identifies the presence of a maximum and a ████████identifies the

24  presence of a minimum." Id. at 14:12-13.

25        Synaptics's assertion that Type 2 Code does not perform a necessary "analysis" of the

26  bit array to identify the presence of a minima has previously been considered and refuted by

27  the Court. Id. at 14:22-25 (holding that the "asserted claims do not require an 'analysis' or

28  'indication' of the minima or lowest value; the claims only require that the minima or lowest

1 | value is 'identified,' and Type 2 Code identifies a minimum or lowest value at the ███

2 | ████████

3       Synaptics also argues that Type 2 Code does not identify the location of the minima

4 | nor identify specific minima and therefore cannot infringe. This argument is based on

5 | additional claim limitations that the Court previously considered and rejected. The Court

6 | declined to read into the term "minima" any additional position information. Claim

7 | Construction Order at 14:1-23. This argument must again be rejected.

8       In summary, Elantech has established as a matter of law that the sublimitations of the

9 | "means for scanning" element are met by Synaptics's touchpads implementing Type 2 Code.

10 | "Means for Providing an Indication"

11       The "means for providing an indication" element requires an "affirmative step to

12 | provide an indication of multiple fingers," but "does not require that the 'indication' of two

13 | fingers be returned to the host." October 26 Order at 7:26-28. As discussed supra, Elantech

14 | has satisfied its burden of identifying corresponding structures in the written description and

15 | in the accused device for this means-plus-function element.

16       As there is no genuine issue as to any material fact that each element of claim 18 of

17 | the '352 patent is found within Synaptics's touchpads implementing Type 2 Code, Elantech's

18 | motion for partial summary judgment of infringement for these devices is granted.

19 | **III.    MOTION FOR PRELIMINARY INJUNCTION**

20       Elantech seeks to enjoin Synaptics from infringing the '352 patent by importing,

21 | making, using, selling, or offering to sell its touchpads implementing Type 2 Code.

22       Preliminary injunctions are "issued to protect the patent owner's rights during the time

23 | of the law suit." 7-20 Donald S. Chisum, Chisum on Patents § 20.04 (2007). District courts

24 | have discretion under 35 U.S.C. § 283 to grant or deny preliminary injunctions.

25 | Amazon.com, Inc. v. Barnesandnoble.com, 239 F.3d 1343, 1350 (Fed. Cir. 2001). In

26 | deciding whether to grant a preliminary injunction, district courts should consider the same

27 | equitable factors that apply in other areas of the law. Abbott Labs. v. Andrx

28 | Pharmaceuticals, Inc., 452 F.3d 1331, 1334 (Fed. Cir. 2006). The moving party must

United States District Court
For the Northern District of California

1    establish its right to a preliminary injunction in light of these four factors: "(1) a reasonable
2    likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) a
3    balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the
4    public interest." Amazon.com, 239 F.3d at 1350 (citing Reebok International Ltd. v. J.
5    Baker, Inc., 32 F.3d 1552, 1555 (Fed. Cir. 1994)).  Of these four factors, the first two are the
6    most important; a movant cannot be granted a preliminary injunction without findings by the
7    district court that the movant carried its burden in establishing a reasonable likelihood of
8    success on the merits and irreparable harm.  Reebok International, 32 F.3d at 1556 (citing
9    Hybritech, Inc. v. Abbott Labs., 849 F.2d 1446, 1451, 1456 (Fed. Cir. 1988)).

10          **A.    Likelihood of Success**

11          The first equitable factor, a reasonable likelihood of success, requires a showing of
12   validity and infringement. Id. at 1555 (citing Hybritech, 849 F.2d at 1451).  An accused
13   infringer may successfully challenge a motion for preliminary injunction by raising a
14   "substantial question" concerning validity, enforceability, or infringement. Abbott Labs.,
15   452 F.3d at 1335 n.2.  However, no "substantial question" is raised if the patent holder can
16   show that the proffered defense "lacks substantial merit." Id.

17          **1.    Validity**

18          In the context of a preliminary injunction motion, "[t]he showing of a substantial
19   question as to invalidity . . . requires less proof than the clear and convincing showing
20   necessary to establish invalidity itself." Id.  On the other hand, "a patentee need not establish
21   the validity of a patent beyond question" but must "present a clear case supporting the
22   validity of the patent in suit." Id.

23          Synaptics challenges the validity of the '352 patent on the grounds of indefiniteness
24   and obviousness.

25          **a.    Indefiniteness**

26          Synaptics's first attempt to raise a "substantial question" of validity challenges claim
27   18 of the '352 patent on the grounds of indefiniteness.  This argument is essentially identical
28   to the previous issue involving infringement of means-plus-function claims.  As the Court

8

1  discussed, neither means-plus-function element of the claim is fatally indefinite because

2  sufficient structures have been identified in both the written description and in the accused

3  device. See supra ¶. 4-5.

4                          **b.    Obviousness**

5         Next, Synaptics seeks to raise a "substantial question" of validity on the grounds of

6  obviousness. The Court's analysis of obviousness begins with 35 U.S.C. § 103(a), which

7  forbids the issuance of a patent when "the differences between the subject matter sought to

8  be patented and the prior art are such that the subject matter as a whole would have been

9  obvious at the time the invention was made to a person having ordinary skill in the art to

10  which said subject matter pertains." In an invalidity challenge against an issued patent, the

11  Court begins its analysis with 35 U.S.C. § 282, which states that "an issued patent is

12  presumed valid." KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727, 1737 (2007).

13  However, even issued patents may be challenged for obviousness using the framework

14  described in John Deere, which describes the relevant factors of: (1) the scope and content of

15  the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level

16  of skill in the pertinent art. Id. at 1729-30 (citing Graham v. John Deere Co. of Kansas City,

17  383 U.S. 1, 17-18 (1966)).

18         In KSR International, the Supreme Court further elucidated the analysis necessary to

19  determine "whether a patent claiming the combination of elements of prior art is obvious."

20  KSR International, 127 S. Ct. at 1740. The Court recognized that "a patent composed of

21  several elements is not proved obvious merely by demonstrating that each of its elements

22  was, independently, known in the prior art." Id. at 1741. Nonetheless, a "combination of

23  familiar elements according to known methods is likely to be obvious when it does no more

24  than yield predictable results."  Id. at 1739. The Court rejected the Federal Circuit's TSM

25  (teaching-suggestion-motivation) test in favor of "an expansive and flexible approach,"

26  holding: "[i]n determining whether the subject matter of a patent claim is obvious, neither the

27  particular motivation nor the avowed purpose of the patentee controls. What matters is the

28  objective reach of the claim. If the claim extends to what is obvious, it is invalid under

United States District Court
For the Northern District of California

§ 103." Id. at 1739, 1741-42. Therefore, a court should look at the "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." Id. at 1740-41. However, "this analysis should be made explicit;" "mere conclusory statements" are insufficient to support the legal conclusion of obviousness, instead "there must be some articulated reasoning with some rational underpinning." Id. at 1741 (citing In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006)).

Synaptics argues that claim 18 of the '352 patent is obvious because prior art discloses each element of the claim, specifically "touch sensors detecting multiple fingers," "use of maxima values," "identifying a minima," and "providing an indication of the simultaneous presence of two fingers." Synaptics relies on two patents as prior art: U.S. Patent No. 7,109,978 B2, assigned to Synaptics ("the '978 patent") and U.S. Patent No. 4,686,332, assigned to IBM ("the '332 patent").

Synaptics's obviousness challenge does not raise a "substantial question" on several independent grounds. First, this Court must determine whether Synaptics's preferred patents can be considered prior art, and whether they were considered by the Examiner. Elantech's '352 patent dates back to its February 28, 1996 filing date. Synaptics asserts that the '978 patent, though filed on March 26, 2004, obtains the benefit of an earlier priority date under 35 U.S.C. § 120 because it is part of a series of continuation and continuation-in-part applications dating back to U.S. Patent No. 5,543,591, filed on October 7, 1994. '978 patent at 1:5-22. However, claims in a continuing application or series of continuing applications must be fully supported by the disclosure of the parent application in order to be entitled to the filing date of the parent. See Lockwood v. American Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997). Therefore, to the extent that the claims of '978 patent are not supported by the disclosure of the '591 patent, they would not be entitled to the earlier filing date and cannot be considered prior art against the '352 patent. Alternatively, the claims of the '978

1  patent that are supported by the disclosure of the '591 patent and obtain the benefit of the

2  earlier filing date receive the same analysis as the '332 patent: both the '591 and '332 patents

3  are referenced as prior art in the '352 patent and have been considered by the Examiner.

4  '352 patent at [56].  Synaptics faces a heavier burden in establishing invalidity using these

5  patents: "[w]hen no prior art other than that which was considered by the PTO examiner is

6  relied on by the attacker, he has the added burden of overcoming the deference that is due to

7  a qualified government agency presumed to have done its job . . . ."  Polaroid Corp. v.

8  Eastman Kodak Co., 789 F.2d 1556, 1560 (Fed. Cir. 1986) (citing American Hoist & Derrick

9  Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

10         In its attempt to overcome the Examiner's determination of nonobviousness, Synaptics

11  argues both that the Examiner "may not have fully realized the significance of the

12  disclosures" of the '591 patent and that prior art was "mischaracterized . . . in an attempt to

13  overcome rejections during prosecution."  After considering Synaptics's arguments, this

14  Court concludes that Synaptics has not overcome the heavy burden of overcoming the

15  deference due to the Examiner; Synaptics does not sufficiently explain exactly how the

16  Examiner erred in issuing the patent.  Thus, Synaptics's obviousness challenge in reliance of

17  previously considered prior art does not have the "substantial merit" necessary to defeat

18  Elantech's preliminary injunction motion.

19         Second, Synaptics fails to cite prior art that involves "identifying a minima."

20  Synaptics states that both the '978 patent and '332 patent disclose devices that generate data

21  from which it is possible to determine both the location and value of a minima.  However,

22  Synaptics fails to specifically identify where in these patents the minima is identified;

23  instead, Synaptics merely concludes that "this data is sufficient to enable both the location

24  and the value of a minima following the first maxima to be determined."

25         Lastly, even if "identifying a minima" and every other element of the claim was

26  disclosed (separately) by prior art, Synaptics also fails to provide "articulated reasoning with

27  some rational underpinning" from which the Court could determine that it was obvious to

28  combine each of these elements in a single invention.  Instead, Synaptics merely points to

1  each individual element of the claim and argues that each element is individually obvious in

2  light of prior art. Thus Synaptics's proffered obviousness defense lacks substantial merit by

3  failing to present an adequate rationale by which a person of ordinary skill in the art would

4  combine the elements that are allegedly present in the prior art to form claim 18. <u>See</u> <u>KSR</u>

5  <u>International</u>, 127 S. Ct. at 1741.

6      In summary, Synaptics's obviousness defense fails to raise a substantial question of

7  invalidity. Elantech has presented a clear case supporting the validity of claim 18 of the '352

8  patent.

9          **3.     Infringement**

10     In addition to validity, Elantech also must demonstrate that there is no substantial

11  question as to whether Synaptics has infringed claim 18. Because the Court grants

12  Elantech's motion for partial summary judgment of infringement of claim 18 of the '352

13  patent, Elantech has sufficiently shown a likelihood of success for its preliminary injunction

14  motion.

15      **B.     Irreparable Harm**

16     The second equitable factor in a motion for preliminary injunction is a showing of

17  irreparable harm if the injunction does not issue. This factor is closely related to the first

18  factor in patent infringement suits: "a strong showing of likelihood of success on the merits

19  coupled with continuing infringement raises a presumption of irreparable harm to the

20  patentee." <u>Reebok International</u>, 32 F.3d at 1556; <u>see</u> <u>Abbott Labs.</u>, 452 F.3d at 1347. This

21  presumption in patent infringement suits arises because "the principal value of a patent is its

22  statutory right to exclude," therefore, "the nature of the patent grant weighs against holding

23  that monetary damages will always suffice to make the patentee whole." <u>Reebok</u>

24  <u>International</u>, 32 F.3d at 1557 (<u>citing</u> <u>Hybritech</u>, 849 F.2d at 1457).

25     However, the presumption of irreparable harm is rebuttable: an alleged infringer may

26  disprove irreparable harm by producing evidence that the patentee would not be harmed if

27  the preliminary injunction does not issue. <u>Id.</u> In certain cases, a period of delay prior to

28  seeking a preliminary injunction in a patent infringement suit "may be so significant, in the

United States District Court
For the Northern District of California

1    district court's discretion, as to preclude a determination of irreparable harm." <u>Hybritech</u>,

2    849 F.2d at 1457. But "a showing of delay does not preclude, as a matter of law, a

3    determination of irreparable harm," instead "a period of delay is but one circumstance that

4    the district court must consider in the context of the totality of the circumstances." <u>Id</u>. The

5    Federal Circuit has also stated that "[a]bsent a good explanation, . . . 17 months is a

6    substantial period of delay that militates against the issuance of a preliminary injunction by

7    demonstrating that there is no apparent urgency to the request for injunctive relief." <u>High

8    Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.</u>, 49 F.3d 1551, 1557 (Fed. Cir.

9    1995).

10          The presumption of irreparable harm may also be rebutted by showing that money

11    damages are an adequate remedy if a preliminary injunction is not granted. In the context of

12    patent infringement cases, "the nature of the patent grant . . . weighs against holding that

13    monetary damages will always suffice to make the patentee whole, for the principal value of

14    a patent is its statutory right to exclude." <u>H.H. Robertson Co. v. United Steel Deck, Inc.</u>, 820

15    F.2d 384, 390 (Fed. Cir. 1987), <u>overruled on other grounds by</u> <u>Markman v. Westview

16    Instruments, Inc.</u>, 52 F.3d 967, 977 (Fed. Cir. 1995). "This presumption derives in part from

17    the finite term of the patent grant, for patent expiration is not suspended during litigation, and

18    the passage of time can work irremediable harm." <u>Id.</u> Preliminary injunctions are thus

19    warranted to deny potential infringers the "opportunity to practice an invention during the

20    notoriously lengthy course of patent litigation." <u>Id.</u> However, "there is no <u>presumption</u> that

21    money damages will be inadequate in connection with a motion for an injunction pendente

22    lite." <u>Nutrition 21 v. U.S.</u>, 930 F.2d 867, 872 (Fed. Cir. 1991). Instead, "[s]ome evidence

23    and reasoned analysis for that inadequacy should be proffered," such as the few remaining

24    years of patent life. <u>Id.</u> (citing <u>H.H. Robertson</u>, 820 F.2d at 390).

25          Lastly, even if a finding of irreparable harm is not rebutted, district courts are not

26    automatically required to grant injunction relief; instead "the decision whether to grant or

27    deny injunction relief rests within the equitable discretion of the district courts," to be

28    "exercised consistent with traditional principles of equity." <u>eBay Inc. v. MercExchange,</u>

United States District Court
For the Northern District of California

13

United States District Court
For the Northern District of California

1  L.L.C., 126 S.Ct. 1837, 1841 (2006).

2       Elantech is entitled to a presumption of irreparable harm because it has made a strong

3  showing of likelihood of success: indeed, the Court concludes that Elantech has proven

4  infringement as a matter of law and Synaptics has failed to raise a substantial question of

5  validity.  See Reebok, 32 F.3d at 1556-57.  Synaptics attempts to rebut this presumption on

6  two grounds: that Elantech has unreasonably delayed in filing its preliminary injunction

7  motion, and that money damages would be adequate.  The Court finds that in the

8  circumstances of this case, neither argument rebuts the presumption.

9       First, Synaptics correctly asserts that delay is "one factor to be considered by a district

10  court in its analysis of irreparable harm."  Nutrition 21, 930 F.2d at 871.  Synaptics points to

11  a 21-month delay since the lawsuit was filed on March 10, 2006 in order to prove that

12  Elantech has not been irreparably harmed.  However, according to Synaptics, "the parties

13  have periodically engaged in settlement discussions over the past two years."  Syn. Opp. at 2.

14  Settlement discussions have been recognized as a "good explanation" for the delay in seeking

15  a preliminary injunction.  See High Tech Medical Instrumention, 49 F.3d at 1557; see also

16  Russell William, Ltd. v. ABC Display and Supply, Inc., No. 88-CV-265, 1989 WL 23947, at

17  *2 (E.D.N.Y. 1989) ("In certain instances, courts have excused delays where the parties were

18  attempting to negotiate a settlement, [or] where the defendant has led the plaintiff to believe

19  that it would cease the infringing conduct.").  Moreover, Synaptics is unable to cite any case

20  in which a preliminary injunction has been denied *after* summary judgment has entered

21  against the party challenging the preliminary injunctive relief.

22       Synaptics also overemphasizes the statement in Nutrition 21 that there is no

23  presumption that money damages will be inadequate.  In Nutrition 21, the Federal Circuit

24  explained that normally as long as "[s]ome evidence and reasoned analysis for that

25  inadequacy . . . [is] proffered," a district court may grant a preliminary injunction, but in that

26  case the appellate court overturned the injunction because "an adequate supporting record"

27  had not been made.  Nutrition 21, 930 F.2d at 871.  Elantech's patent will expire in 2016, 20

28  years from its filing date.  The '352 patent grant has less than half of its term remaining.

14

1   This Court also anticipates continuing and protracted litigation; final judgment, and thus
2   permanent injunctive relief, cannot be entered until the Court resolves Synaptics's
3   counterclaims against Elantech.  Delaying an injunction until the litigation is concluded
4   would irreparably harm Elantech by depriving Elantech of part of its patent grant.  In
5   addition, because Elantech and Synaptics both sell touchpads, Elantech's lost market share
6   may be difficult to calculate and compensate with money damages. Finally, at oral argument,
7   Synaptics claimed that it is no longer manufacturing touchpads with Type 2 Code so there is
8   no need for an injunction.  The short answer is that there is no evidence in the record to
9   support Synpatics's statement.

10      Considering the totality of the circumstances, the Court finds that Elantech will suffer
11  irreparable harm if the preliminary injunction does not issue.

12      **D.    Balance of Hardships**

13      The Court finds that the balance of hardships favors Elantech; indeed Synaptics does
14  not even address this factor. Synaptics, as the larger company with multiple touchpad
15  products, would not be forced out of business or even out of the touchpad market if the
16  preliminary injunction is granted. But if the preliminary injunction is not granted Elantech's
17  patent could lose its value over the course of litigation.  Therefore the balance of hardships
18  favors Elantech.

19      **E.    Public Interest**

20      As stated in Abbott Labs., the "public is best served by enforcing patents that are
21  likely valid and infringed." Abbott Labs., 452 F.3d at 1348.  Given Elantech's likelihood of
22  success on the merits of validity and infringement, this factor tips in Elantech's favor.
23  Synaptics presents no argument on its behalf as to this factor.

24      In summary, considering each of the equitable factors for a preliminary injunction, the
25  Court finds that on balance the factors favor Elantech, especially in its proof of likelihood of
26  success and irreparable harm. Therefore the Court acts within its discretion and grants
27  Elantech's motion for preliminary injunction enjoining the continuing infringement of its
28  '352 patent by Synaptics's touchpads implementing Type 2 Code.

15

1

## VI.  CONCLUSION

2          Elantech's motion for partial summary judgment of infringement of claim 18 of the

3  '352 patent by Synaptic's touchpads implementing Type 2 Code is GRANTED.  Elantech's

4  motion for preliminary injunction to enjoin Synaptics from infringing the '352 patent by

5  importing, making, using, selling, or offering to sell its touchpad products implementing

6  Type 2 Code is also GRANTED.

7          **IT IS SO ORDERED.**

8

9  Dated: March _13_, 2008

                                        CHARLES R. BREYER
                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


ELANTECH DEVICES CORPORATION et al,

                Plaintiff,

v.

SYNAPTICS, INC. et al,

                Defendant.

_____/

Case Number: CV06-01839 CRB

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 13, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Damir Cefo
Cohen & Gresser LLP
100 Park Avenue
23rd Floor
New York, NY 10017

Erika Lin Yawger/Karl J. Kramer M
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, CA 94304

Sean DeBruine
Akin Gump Strauss Hauer & Feld LLP
2 Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306

Dated: March 13, 2008

                              Richard W. Wieking, Clerk
                              By: Barbara Espinoza, Deputy Clerk