IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELANTECH DEVICES CORP., a corporation existing under the laws of Taiwan, R.O.C.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SYNAPTICS, INC., a Delaware corporation; and AVERATEC, INC., a California corporation,<br><br>　　　　Defendants._____/ | No. C 06-01839 CRB<br><br>**MEMORANDUM AND ORDER**<br><br>**FILED UNDER SEAL** |

　　　Elantech Devices Corp. ("Elantech") filed suit against Synaptics, Inc. ("Synaptics") for infringement of U.S. Patent No. 5,825,352 ("the '352 patent"). Synaptics counterclaimed for infringement of U.S. Patents No. 5,880,411 ("the '411 patent"), No. 5,943,052 ("the '052 patent"), No. 5,543,592 ("the '592 patent"), and No. 6,380,931 ("the '931 patent").

　　　Now pending before the Court are Elantech's motion for partial summary judgment and Elantech's motion for preliminary injunction. Elantech argues that Synaptics's touchpad products implementing Type 2 Code infringe Claim 18 of the '352 patent as a matter of law. Elantech's motion for preliminary injunction seeks to enjoin Synaptics from infringing the '352 patent by importing, making, using, selling, or offering to sell its touchpad products implementing Type 2 Code.

## I. BACKGROUND

### A. Procedural History

The Court previously construed eight terms from the asserted patents as selected by the parties, including four terms from Elantech's '352 patent. <u>See generally</u> Claim Construction Order, April 6, 2007.

After the Claim Construction Order issued, Synaptics moved for summary judgment of noninfringement of the '352 patent. Elantech cross-moved for summary judgment of infringement. In its October 26, 2007 Memorandum and Order Re: Summary Judgment Motions ("October 26 Order"), the Court granted Synaptics's motion for partial summary judgment of noninfringement for those devices implementing Type 1 Code, but denied Synaptics's motion as to devices implementing Type 2 Code. The Court also denied Elantech's motion for summary judgment of infringement for all Accused Touchpads on the ground that Accused Touchpads that implement Type 1 Code do not infringe claim 18 of the '352 patent. The Court explained: "The Court would grant summary judgment of infringement for Accused Touchpads implementing Type 2 Code and having enabled finger counting functionality, but Elantech did not move for partial summary judgment; instead, its motion seeks judgment on all Accused Touchpads without distinction." October 26 Order at 15: 21-24. Elantech accordingly has now moved for summary judgment of infringement for Accused Touchpads implementing Type 2 Code.

### B. The '352 Patent

The '352 patent, entitled "Multiple Fingers Contact Sensing Method for Emulating Mouse Buttons and Mouse Operation on a Touch Sensor Pad," discloses methods and apparatus for recognizing the presence of multiple fingers on a touchpad and emulating various mouse functions. Claim 18 is an independent claim which discloses "a touch sensor for detecting the operative coupling of multiple fingers." The claim recites two elements, a "means for scanning the touch sensor to (a) identify a first maxima in a signal corresponding to a first finger, (b) identify a minima following the first maxima, and © identify a second maxima in a signal corresponding to a second finger following said minima" and a "means

2

1  for providing an indication of the simultaneous presence of two fingers in response to
2  identification of said first and second maxima."

## II.     MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT

In its motion for partial summary judgment, Elantech asks that judgment be entered confirming that Synaptics's touchpads using Type 2 Code with multiple finger detection enabled infringe claim 18 of its '352 patent.

### A.     Legal Standard for Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. See id. at 248-49. A fact is "material" if the fact may affect the outcome of the case. See id. at 248. "On summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant." Crown Operations International, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002) (citations omitted).

### B.     Act of Infringement in the United States

35 U.S.C. § 271(a) states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." In general, sales made outside the United States do not constitute patent infringement. See Microsoft Corp. v. AT & T Corp., 127 S. Ct. 1746, 1750 (2007).

Synaptics argues that Elantech has presented no evidence of sales of infringing product in the United States. The Court is not persuaded. In order to demonstrate that Synaptics's touchpads could infringe, Elantech engineers purchased computers with Synaptics's touchpads in the United States. October 26 Order at 10:19-22; Declaration of Teng-Yen Wu in Support of Elantech's Motion for Summary Judgment of Infringement, ¶ 3.

3

Such evidence supports an inference of sales of the infringing product in the United States. Synaptics does not offer any evidence to dispute that inference. In light of this undisputed evidence, Elantech has met its burden of establishing an act of infringement within the United States.

### C. Synaptics Products Implementing Type 2 Code Literally Infringe Claim 18

#### 1. Legal Standard for Literal Infringement

To determine infringement, the asserted claim must be compared to the allegedly infringing method or device. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). To establish literal infringement, every claim limitation, or claim element, must be found in the accused subject matter. Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 29, 40 (1997). Thus, establishing that the accused method or device does not satisfy one claim limitation would support a finding of noninfringement. Id. The patentee must prove infringement by a preponderance of the evidence. Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1247 (Fed. Cir. 2000).

Determining infringement is a two-step process involving: 1) construing the patent claims and 2) determining whether infringement occurred. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996).

#### 2. Means-Plus-Function Claims Require Comparison of Structures

35 U.S.C. § 112, ¶ 6 permits "means-plus-function" claims, which allow an element in a claim with a combination of elements to be expressed as a "means" that performs a recited function rather than be expressed as a specific structure. However, the statute also limits how the "means" may be interpreted. In order to prevent the claim from reading on an unlimited number of structures, the claim must be interpreted in accordance with the statute: "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. If the written description of the patent fails to disclose the "corresponding structure" for the means recited in the claim, the claim will be found invalid for failure "to particularly point out and distinctly claim the invention." In re Donaldson Co., Inc., 16 F.3d 1189, 1195 (Fed. Cir.

4

1994).

In order to find literal infringement, the structure disclosed in the written description must be identical or equivalent to an identified structure in the accused device. <u>JVW Enters. v. Interact Accessories, Inc.</u>, 424 F.3d 1324, 1333 (Fed. Cir. 2005). Restated, a "structure in the accused device must perform the claimed function in substantially the same way to achieve substantially the same result as the structure in the written description." <u>Id.</u> (quoting <u>Odetics, Inc.v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1267 (Fed. Cir. 1999)).

Claim 18 of the '352 patent involves two elements written in means-plus-function form. The first element is a "<u>means for scanning</u> the touch sensor . . . ," while the second element is a "<u>means for providing an indication</u> of the simultaneous presence of two fingers in response to identification of said first and second maxima." (Emphasis added).

Synaptics argues that structures corresponding to the "means for providing an indication" have not been identified in either the written description of the patent or in the accused device.

Elantech has satisfactorily identified a structure in the written description that performs the function of "providing an indication." The written description of the '352 patent discloses the microcontroller 60 which governs the operation of the touchpad. '352 patent at 5:32-25.

Elantech has also satisfactorily identified a structure in the accused device which serves as a "means for providing an indication." As the Court previously concluded, the execution of the [REDACTED] "satisfies the 'providing an indication' claim limitation." October 26 Order at 11:12-15. Therefore, Elantech has satisfactorily identified the structures in both the written description of the '352 patent and in the accused device that correspond to both means-plus-function elements of claim 18, defeating Synaptics's indefiniteness argument.

### 3. Claim Construction

Claim 18 of the '352 patent claims "a touch sensor for detecting the operative coupling of multiple fingers" with two means-plus-function elements. The first element,

5

"means for scanning" has three sub limitations (a)-©, which were construed to mean (a) "identify a first peak value in a finger profile obtained from scanning the touch sensor," (b) "identify the lowest value in the finger profile that occurs after the first peak value, and before another peak value is identified," and © "after identifying the lowest value in the finger profile, identify a second peak value in the finger profile." Claim Construction Order at 15:1-7.

The second element, "means for providing an indication of the simultaneous presence of two fingers," was not construed in the Claim Construction Order but was defined in the October 26 Order at 6:18-7:28. The Court determined that the claim requires an "affirmative step to provide an indication of multiple fingers," but "does not require that the 'indication' of two fingers be returned to the host." Id. at 7:26-28.

### 4. Comparison of Structures for Infringement

Synaptics's touchpads implementing Type 2 Code infringe claim 18 of Elantech's '352 patent only if the accused devices include each limitation of the claim. The claim limitations at issue are the "means for scanning" element, including its sublimitations requiring identification of maxima and minima, and the "means for providing an indication" element.

"Means for Scanning"

The Court previously denied Synaptics's motion for summary judgment of noninfringement for touchpads that implement Type 2 Code because each limitation of the "means for scanning" element is found within the [REDACTED] or [REDACTED] algorithm used in the [REDACTED]. October 26 Order at 14:5-15:14. Specifically, "a [REDACTED] in this vector identifies the presence of a maximum and a [REDACTED] identifies the presence of a minimum." Id. at 14:12-13.

Synaptics's assertion that Type 2 Code does not perform a necessary "analysis" of the bit array to identify the presence of a minima has previously been considered and refuted by the Court. Id. at 14:22-25 (holding that the "asserted claims do not require an 'analysis' or 'indication' of the minima or lowest value; the claims only require that the minima or lowest

6

value is 'identified,' and Type 2 Code identifies a minimum or lowest value at the [REDACTED].

Synaptics also argues that Type 2 Code does not identify the location of the minima nor identify specific minima and therefore cannot infringe. This argument is based on additional claim limitations that the Court previously considered and rejected. The Court declined to read into the term "minima" any additional position information. Claim Construction Order at 14:1-23. This argument must again be rejected.

In summary, Elantech has established as a matter of law that the sublimitations of the "means for scanning" element are met by Synaptics's touchpads implementing Type 2 Code.

"Means for Providing an Indication"

The "means for providing an indication" element requires an "affirmative step to provide an indication of multiple fingers," but "does not require that the 'indication' of two fingers be returned to the host." October 26 Order at 7:26-28. As discussed supra, Elantech has satisfied its burden of identifying corresponding structures in the written description and in the accused device for this means-plus-function element.

As there is no genuine issue as to any material fact that each element of claim 18 of the '352 patent is found within Synaptics's touchpads implementing Type 2 Code, Elantech's motion for partial summary judgment of infringement for these devices is granted.

### III. MOTION FOR PRELIMINARY INJUNCTION

Elantech seeks to enjoin Synaptics from infringing the '352 patent by importing, making, using, selling, or offering to sell its touchpads implementing Type 2 Code.

Preliminary injunctions are "issued to protect the patent owner's rights during the time of the law suit." 7-20 Donald S. Chisum, Chisum on Patents § 20.04 (2007). District courts have discretion under 35 U.S.C. § 283 to grant or deny preliminary injunctions. Amazon.com, Inc. v. Barnesandnoble.com, 239 F.3d 1343, 1350 (Fed. Cir. 2001). In deciding whether to grant a preliminary injunction, district courts should consider the same equitable factors that apply in other areas of the law. Abbott Labs. v. Andrx Pharmaceuticals, Inc., 452 F.3d 1331, 1334 (Fed. Cir. 2006). The moving party must

7

establish its right to a preliminary injunction in light of these four factors: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." Amazon.com, 239 F.3d at 1350 (citing Reebok International Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed. Cir. 1994)). Of these four factors, the first two are the most important; a movant cannot be granted a preliminary injunction without findings by the district court that the movant carried its burden in establishing a reasonable likelihood of success on the merits and irreparable harm. Reebok International, 32 F.3d at 1556 (citing Hybritech, Inc. v. Abbott Labs., 849 F.2d 1446, 1451, 1456 (Fed. Cir. 1988)).

### A.    Likelihood of Success

The first equitable factor, a reasonable likelihood of success, requires a showing of validity and infringement. Id. at 1555 (citing Hybritech, 849 F.2d at 1451). An accused infringer may successfully challenge a motion for preliminary injunction by raising a "substantial question" concerning validity, enforceability, or infringement. Abbott Labs., 452 F.3d at 1335 n.2. However, no "substantial question" is raised if the patent holder can show that the proffered defense "lacks substantial merit." Id.

#### 1.    Validity

In the context of a preliminary injunction motion, "[t]he showing of a substantial question as to invalidity . . . requires less proof than the clear and convincing showing necessary to establish invalidity itself." Id. On the other hand, "a patentee need not establish the validity of a patent beyond question" but must "present a clear case supporting the validity of the patent in suit." Id.

Synaptics challenges the validity of the '352 patent on the grounds of indefiniteness and obviousness.

##### a.    Indefiniteness

Synaptics's first attempt to raise a "substantial question" of validity challenges claim 18 of the '352 patent on the grounds of indefiniteness. This argument is essentially identical to the previous issue involving infringement of means-plus-function claims. As the Court

8

1  discussed, neither means-plus-function element of the claim is fatally indefinite because
2  sufficient structures have been identified in both the written description and in the accused
3  device. See supra ¶. 4-5.

### b. Obviousness

Next, Synaptics seeks to raise a "substantial question" of validity on the grounds of obviousness. The Court's analysis of obviousness begins with 35 U.S.C. § 103(a), which forbids the issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." In an invalidity challenge against an issued patent, the Court begins its analysis with 35 U.S.C. § 282, which states that "an issued patent is presumed valid." KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727, 1737 (2007). However, even issued patents may be challenged for obviousness using the framework described in John Deere, which describes the relevant factors of: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of skill in the pertinent art. Id. at 1729-30 (citing Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966)).

In KSR International, the Supreme Court further elucidated the analysis necessary to determine "whether a patent claiming the combination of elements of prior art is obvious." KSR International, 127 S. Ct. at 1740. The Court recognized that "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." Id. at 1741. Nonetheless, a "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." Id. at 1739. The Court rejected the Federal Circuit's TSM (teaching-suggestion-motivation) test in favor of "an expansive and flexible approach," holding: "[i]n determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under

9

1  § 103." Id. at 1739, 1741-42. Therefore, a court should look at the "interrelated teachings of
2  multiple patents; the effects of demands known to the design community or present in the
3  marketplace and the background knowledge possessed by a person having ordinary skill in
4  the art, all in order to determine whether there was an apparent reason to combine the known
5  elements in the fashion claimed by the patent at issue." Id. at 1740-41. However, "this
6  analysis should be made explicit;" "mere conclusory statements" are insufficient to support
7  the legal conclusion of obviousness, instead "there must be some articulated reasoning with
8  some rational underpinning." Id. at 1741 (citing In re Kahn, 441 F.3d 977, 988 (Fed. Cir.
9  2006)).

10  Synaptics argues that claim 18 of the '352 patent is obvious because prior art discloses
11  each element of the claim, specifically "touch sensors detecting multiple fingers," "use of
12  maxima values," "identifying a minima," and "providing an indication of the simultaneous
13  presence of two fingers." Synaptics relies on two patents as prior art: U.S. Patent No.
14  7,109,978 B2, assigned to Synaptics ("the '978 patent") and U.S. Patent No. 4,686,332,
15  assigned to IBM ("the '332 patent").

16  Synaptics's obviousness challenge does not raise a "substantial question" on several
17  independent grounds. First, this Court must determine whether Synaptics's proferred patents
18  can be considered prior art, and whether they were considered by the Examiner. Elantech's
19  '352 patent dates back to its February 28, 1996 filing date. Synaptics asserts that the '978
20  patent, though filed on March 26, 2004, obtains the benefit of an earlier priority date under
21  35 U.S.C. § 120 because it is part of a series of continuation and continuation-in-part
22  applications dating back to U.S. Patent No. 5,543,591, filed on October 7, 1994. '978 patent
23  at 1:5-22. However, claims in a continuing application or series of continuing applications
24  must be fully supported by the disclosure of the parent application in order to be entitled to
25  the filing date of the parent. See Lockwood v. American Airlines, Inc., 107 F.3d 1565, 1572
26  (Fed. Cir. 1997). Therefore, to the extent that the claims of '978 patent are not supported by
27  the disclosure of the '591 patent, they would not be entitled to the earlier filing date and
28  cannot be considered prior art against the '352 patent. Alternatively, the claims of the '978

10

patent that are supported by the disclosure of the '591 patent and obtain the benefit of the earlier filing date receive the same analysis as the '332 patent: both the '591 and '332 patents are referenced as prior art in the '352 patent and have been considered by the Examiner. '352 patent at [56]. Synaptics faces a heavier burden in establishing invalidity using these patents: "[w]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job . . . ." Polaroid Corp. v. Eastman Kodak Co., 789 F.2d 1556, 1560 (Fed. Cir. 1986) (citing American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

In its attempt to overcome the Examiner's determination of nonobviousness, Synaptics argues both that the Examiner "may not have fully realized the significance of the disclosures" of the '591 patent and that prior art was "mischaracterized . . . in an attempt to overcome rejections during prosecution." After considering Synaptics's arguments, this Court concludes that Synaptics has not overcome the heavy burden of overcoming the deference due to the Examiner; Synaptics does not sufficiently explain exactly how the Examiner erred in issuing the patent. Thus, Synaptics's obviousness challenge in reliance of previously considered prior art does not have the "substantial merit" necessary to defeat Elantech's preliminary injunction motion.

Second, Synaptics fails to cite prior art that involves "identifying a minima." Synaptics states that both the '978 patent and '332 patent disclose devices that generate data from which it is possible to determine both the location and value of a minima. However, Synaptics fails to specifically identify where in these patents the minima is identified; instead, Synaptics merely concludes that "this data is sufficient to enable both the location and the value of a minima following the first maxima to be determined."

Lastly, even if "identifying a minima" and every other element of the claim was disclosed (separately) by prior art, Synaptics also fails to provide "articulated reasoning with some rational underpinning" from which the Court could determine that it was obvious to combine each of these elements in a single invention. Instead, Synaptics merely points to

11

1  each individual element of the claim and argues that each element is individually obvious in
2  light of prior art. Thus Synaptics's proffered obviousness defense lacks substantial merit by
3  failing to present an adequate rationale by which a person of ordinary skill in the art would
4  combine the elements that are allegedly present in the prior art to form claim 18. See KSR
5  International, 127 S. Ct. at 1741.

6  In summary, Synaptics's obviousness defense fails to raise a substantial question of
7  invalidity. Elantech has presented a clear case supporting the validity of claim 18 of the '352
8  patent.

### 3. Infringement

10 In addition to validity, Elantech also must demonstrate that there is no substantial
11 question as to whether Synaptics has infringed claim 18. Because the Court grants
12 Elantech's motion for partial summary judgment of infringement of claim 18 of the '352
13 patent, Elantech has sufficiently shown a likelihood of success for its preliminary injunction
14 motion.

### B.  Irreparable Harm

16 The second equitable factor in a motion for preliminary injunction is a showing of
17 irreparable harm if the injunction does not issue. This factor is closely related to the first
18 factor in patent infringement suits: "a strong showing of likelihood of success on the merits
19 coupled with continuing infringement raises a presumption of irreparable harm to the
20 patentee." Reebok International, 32 F.3d at 1556; see Abbott Labs., 452 F.3d at 1347. This
21 presumption in patent infringement suits arises because "the principal value of a patent is its
22 statutory right to exclude," therefore, "the nature of the patent grant weighs against holding
23 that monetary damages will always suffice to make the patentee whole." Reebok
24 International, 32 F.3d at 1557 (citing Hybritech, 849 F.2d at 1457).

25 However, the presumption of irreparable harm is rebuttable: an alleged infringer may
26 disprove irreparable harm by producing evidence that the patentee would not be harmed if
27 the preliminary injunction does not issue. Id. In certain cases, a period of delay prior to
28 seeking a preliminary injunction in a patent infringement suit "may be so significant, in the

district court's discretion, as to preclude a determination of irreparable harm." Hybritech, 849 F.2d at 1457. But "a showing of delay does not preclude, as a matter of law, a determination of irreparable harm," instead "a period of delay is but one circumstance that the district court must consider in the context of the totality of the circumstances." Id. The Federal Circuit has also stated that "[a]bsent a good explanation, . . . 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995).

The presumption of irreparable harm may also be rebutted by showing that money damages are an adequate remedy if a preliminary injunction is not granted. In the context of patent infringement cases, "the nature of the patent grant . . . weighs against holding that monetary damages will always suffice to make the patentee whole, for the principal value of a patent is its statutory right to exclude." H.H. Robertson Co. v. United Steel Deck, Inc., 820 F.2d 384, 390 (Fed. Cir. 1987), overruled on other grounds by Markman v. Westview Instruments, Inc., 52 F.3d 967, 977 (Fed. Cir. 1995). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." Id. Preliminary injunctions are thus warranted to deny potential infringers the "opportunity to practice an invention during the notoriously lengthy course of patent litigation." Id. However, "there is no presumption that money damages will be inadequate in connection with a motion for an injunction pendente lite." Nutrition 21 v. U.S., 930 F.2d 867, 872 (Fed. Cir. 1991). Instead, "[s]ome evidence and reasoned analysis for that inadequacy should be proffered," such as the few remaining years of patent life. Id. (citing H.H. Robertson, 820 F.2d at 390).

Lastly, even if a finding of irreparable harm is not rebutted, district courts are not automatically required to grant injunction relief; instead "the decision whether to grant or deny injunction relief rests within the equitable discretion of the district courts," to be "exercised consistent with traditional principles of equity." eBay Inc. v. MercExchange,

L.L.C., 126 S.Ct. 1837, 1841 (2006).

Elantech is entitled to a presumption of irreparable harm because it has made a strong showing of likelihood of success: indeed, the Court concludes that Elantech has proven infringement as a matter of law and Synaptics has failed to raise a substantial question of validity. See Reebok, 32 F.3d at 1556-57. Synaptics attempts to rebut this presumption on two grounds: that Elantech has unreasonably delayed in filing its preliminary injunction motion, and that money damages would be adequate. The Court finds that in the circumstances of this case, neither argument rebuts the presumption.

First, Synaptics correctly asserts that delay is "one factor to be considered by a district court in its analysis of irreparable harm." Nutrition 21, 930 F.2d at 871. Synaptics points to a 21-month delay since the lawsuit was filed on March 10, 2006 in order to prove that Elantech has not been irreparably harmed. However, according to Synaptics, "the parties have periodically engaged in settlement discussions over the past two years." Syn. Opp. at 2. Settlement discussions have been recognized as a "good explanation" for the delay in seeking a preliminary injunction. See High Tech Medical Instrumention, 49 F.3d at 1557; see also Russell William, Ltd. v. ABC Display and Supply, Inc., No. 88-CV-265, 1989 WL 23947, at *2 (E.D.N.Y. 1989) ("In certain instances, courts have excused delays where the parties were attempting to negotiate a settlement, [or] where the defendant has led the plaintiff to believe that it would cease the infringing conduct."). Moreover, Synaptics is unable to cite any case in which a preliminary injunction has been denied *after* summary judgment has entered against the party challenging the preliminary injunctive relief.

Synaptics also overemphasizes the statement in Nutrition 21 that there is no presumption that money damages will be inadequate. In Nutrition 21, the Federal Circuit explained that normally as long as "[s]ome evidence and reasoned analysis for that inadequacy . . . [is] proffered," a district court may grant a preliminary injunction, but in that case the appellate court overturned the injunction because "an adequate supporting record" had not been made. Nutrition 21, 930 F.2d at 871. Elantech's patent will expire in 2016, 20 years from its filing date. The '352 patent grant has less than half of its term remaining. This

1  Court also anticipates continuing and protracted litigation; final judgment, and thus
2  permanent injunctive relief, cannot be entered until the Court resolves Synaptics's
3  counterclaims against Elantech.  Delaying an injunction until the litigation is concluded
4  would irreparably harm Elantech by depriving Elantech of part of its patent grant.  In
5  addition, because Elantech and Synaptics both sell touchpads, Elantech's lost market share
6  may be difficult to calculate and compensate with money damages. Finally, at oral argument,
7  Synaptics claimed that it is no longer manufacturing touchpads with Type 2 Code so there is
8  no need for an injunction.  The short answer is that there is no evidence in the record to
9  support Synpatics's statement.

10  Considering the totality of the circumstances, the Court finds that Elantech will suffer
11  irreparable harm if the preliminary injunction does not issue.

### D.   Balance of Hardships

13  The Court finds that the balance of hardships favors Elantech; indeed Synaptics does
14  not even address this factor.  Synaptics, as the larger company with multiple touchpad
15  products, would not be forced out of business or even out of the touchpad market if the
16  preliminary injunction is granted.  But if the preliminary injunction is not granted Elantech's
17  patent could lose its value over the course of litigation.  Therefore the balance of hardships
18  favors Elantech.

### E.   Public Interest

20  As stated in Abbott Labs., the "public is best served by enforcing patents that are
21  likely valid and infringed."  Abbott Labs., 452 F.3d at 1348.  Given Elantech's likelihood of
22  success on the merits of validity and infringement, this factor tips in Elantech's favor.
23  Synaptics presents no argument on its behalf as to this factor.

24  In summary, considering each of the equitable factors for a preliminary injunction, the
25  Court finds that on balance the factors favor Elantech, especially in its proof of likelihood of
26  success and irreparable harm.  Therefore the Court acts within its discretion and grants
27  Elantech's motion for preliminary injunction enjoining the continuing infringement of its
28  '352 patent by Synaptics's touchpads implementing Type 2 Code.

15

## VI. CONCLUSION

Elantech's motion for partial summary judgment of infringement of claim 18 of the '352 patent by Synaptic's touchpads implementing Type 2 Code is GRANTED. Elantech's motion for preliminary injunction to enjoin Synaptics from infringing the '352 patent by importing, making, using, selling, or offering to sell its touchpad products implementing Type 2 Code is also GRANTED.

**IT IS SO ORDERED.**

Dated: March 13, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE