**MORRISON | FOERSTER**

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA 94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

May 1, 2008

Writer's Direct Contact

650.813.4218
EYawger@mofo.com

Honorable Charles R. Breyer
U.S.D.C. - Northern District
450 Golden Gate Ave., Crtrm. 8, 19th Floor
San Francisco, CA 94102

Re:    *Elantech v. Synaptic*: Case No. C-06-CV-01839 CRB

Dear Judge Breyer:

    Pursuant to the Court's April 23, 2008 Order, please find enclosed a copy of the Court's April 16, 2008 Memorandum and Order re: Synaptics' Partial Summary Judgment Motions with the parties' proposed redactions. The redactions appear on pages 12-17, and page 19 of the document.

Respectfully submitted,


/s/Erika L. Yawger
Erika L. Yawger

**E-filing**

**FILED**

APR 1 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELANTECH DEVICES CORP., a
corporation existing under the laws of
Taiwan, R.O.C.,

        Plaintiff,

    v.

SYNAPTICS, INC., a Delaware corporation;
and AVERATEC, INC., a California
corporation,

        Defendants.

No. C 06-01839 CRB

**MEMORANDUM AND ORDER RE:
SYNAPTICS'S PARTIAL SUMMARY
JUDGMENT MOTIONS**

**FILED UNDER SEAL**

Elantech Devices Corp. ("Elantech") filed suit against Synaptics, Inc. ("Synaptics") for infringement of U.S. Patent No. 5,825,352 ("the '352 patent"). Synaptics counterclaimed for infringement of U.S. Patents No. 5,880,411 ("the '411 patent"), No. 5,943,052 ("the '052 patent"), No. 5,543,591 ("the '591 patent"), and No. 6,380,931 ("the '931 patent").

Now pending before the Court are Synaptics's two motions for partial summary judgment. Synaptics's "zone claims" motion seeks an order that the use of the corner tap, scroll, and edge motion functions in Elantech's touchpads infringe claims 5 and 6 of the '931 patent, claims 14 and 18 of the '052 patent, and claims 46 and 52 of the '411 patent. Synaptics's "tapping claims" motion seeks an order that use of the tap, double tap, and drag functions in Elantech's touchpads infringe claim 1 of the '931 patent, claim 6 of the '591 patent, and claim 9 of the '591 patent.

1  I.    **BACKGROUND**

2    Synaptics's patents claim technologies that enable users to use touchpad gestures to

3  simulate functions offered by a traditional mouse.  The patent claims are separated into two

4  groups: zone claims and tapping claims.

5    A.    **Zone Claims**

6    Synaptics's zone claims motion involves six claims from three patents pertaining to

7  three specific touchpad functions: corner tap, scroll, and edge motion.

8        1.    **Corner Tap**

9    The corner tap function is covered by two claims from the '931 patent: independent

10  claim 5 and dependent claim 6.

11    Claim 5 recites:

12  "A method for recognizing a tap gesture made on a touch-sensor pad in a touch-sensing

13  system providing X and Y position information to a host, including:

14    detecting the occurrence of a tap gesture made by a tapping object on the touch-sensor

15    pad;

16    detecting in which of at least one corner of the touch-sensor pad said tap gesture

17    occurred; and

18    sending a signal to the host indicating the occurrence of said tap gesture and in which

19    of at least one corner of said touch-sensor pad said tap gesture occurred."

20    Claim 6 recites:

21  "The method of claim 5, wherein one of the corners of the touch-sensor pad simulates a right

22  mouse button click."

23        2.    **Scroll**

24    The scroll function is covered by two claims from the '052 patent: independent claim

25  14 and dependent claim 18.

26    Claim 14 recites:

27  "A method of converting user-applied object motion on a cursor-control device into graphical

28  user interface window scrolling messages, said method comprising:

United States District Court

For the Northern District of California

1   forwarding a plurality of data packets from a cursor-control input device which

2   includes a touchpad having a scrolling zone to a data packet processor, said data

3   packets representing object motion applied by a user to the input device;

4   generating a plurality of messages in response to the user-applied object motion;

5   forwarding said messages in response to the user-applied object motion;

6   scrolling visual display data in response to said messages sent by packet processor."

7   Claim 18 recites:

8   "The method of claim 14, wherein said generating step includes assessing whether said

9   stimuli represents a motion beginning within, but moving away from said scrolling zone."

10          3.    **Edge Motion**

11          The edge motion function is covered by two claims from the '411 patent: independent

12   claim 46 and dependent claim 52.

13          Claim 46 recites:

14   "A method for moving a cursor on a display screen in response to motion of an object sensed

15   on a sensing plane, including the steps of:

16   providing a sensing plane;

17          sensing the presence of an object on said sensing plane and generating

18          present-position signals representing the present position of said object on said

19          sensing plane;

20          sensing whether said object has moved into an outer region proximate to an outer edge

21          of said sensing plane;

22          generating first cursor motion signals for moving the cursor, said first cursor motion

23          signals for causing said cursor to move in a direction on the display screen

24          representing the difference between a previous position of said object and said present

25          position of said object reported by said present-position signals;

26          generating second cursor motion signals different from said first cursor motion signals

27          for moving said cursor if said object has moved into said outer region of said sensing

28          plane, said second cursor motion signals for causing said cursor to incrementally move

United States District Court
For the Northern District of California

3

1  on the display screen a selected distance in a fixed direction relative towards said

2  outer edge of said sensing plane to which said object is proximate; and

3  moving said cursor in accordance with said first cursor motion signals when said

4  object is not in said outer region of said sensing plane and moving said cursor in

5  accordance with said first cursor motion signals combined with said second cursor

6  motion signals when said object has moved into said outer region of said sensing

7  plane so long as said object remains in said outer region of said sensing plane."

8  Claim 52 recites:

9  "The method of claim 46 wherein the step of generating second cursor motion signals

10  comprises generating second cursor motion signals for causing said cursor to move in a fixed

11  direction relative to a corner between two abutting outer edges of said sensing plane if said

12  object is in said outer region proximate to said corner."

13  **B.    Tapping Claims**

14  Synaptics's tapping claims motion involves three claims from three patents pertaining

15  to three specific touchpad functions: corner tap, scroll, and edge motion.

16  **1.    Tap**

17  The tap function is covered by claim 1 of the '931 patent, which recites:

18  "A method for recognizing a tap gesture made on a touch-sensor pad in a touch sensing

19  system providing X and Y position information to a host, including:

20  detecting a presence of a conductive object on the touch-sensor pad;

21  comparing the amount of time said conductive object is present on said touch pad with

22  a reference amount of time;

23  comparing the amount of motion made by said conductive object while it is present on

24  said touch pad with a reference amount of motion;

25  initiating a signal to the host indicating the occurrence of said tap gesture if the

26  amount of time said conductive object is present on said touch pad is less than said

27  reference amount of time and if the amount of motion made by said conductive object

28  while it is present on said touch pad is less than said reference amount of motion; and

1    maintaining said signal for a predetermined period of time."

2        **2.    Double Tap**

3        The double tap function is covered by claim 6 of the '591 patent, which recites:

4    "A method for recognizing a tap gesture made on a touch-sensor pad in a touch sensing

5    system providing X and Y position information to a host, including:

6        detecting a first presence of a conductive object on the touch-sensor pad;

7        comparing the duration of said first presence with a first reference amount of time;

8        initiating a first signal to the host indicating the occurrence of said gesture if the

9        duration of said first presence is less than said first reference amount of time;

10        terminating said first signal if a second reference amount of time passes before a

11        second presence is detected;

12        detecting a second presence of said conductive object on the touch-sensor pad;

13        comparing the duration of said second presence with a third reference amount of time;

14        terminating said first signal if the duration of said second presence is less than said

15        third reference amount of time; and

16        sending a second signal to said host indicating said second gesture after the

17        termination of said first signal."

18        **3.    Drag**

19        The drag function is covered by claim 9 of the '591 patent, which recites:

20    "A method for recognizing a drag gesture made on a touch-sensor pad in a touch-sensing

21    system providing X and Y position information to a host, including the steps of:

22        detecting a first presence of a conductive object on the touch-sensor pad;

23        comparing the duration of said first presence with a first reference amount of time;

24        initiating a drag gesture signal to the host indicating the occurrence of a gesture if the

25        duration of said first presence is less than said first reference amount of time;

26        detecting a second presence of said conductive object on the touch-sensor pad;

27        comparing the duration between said first presence and second presence with a second

28        reference amount of time;

United States District Court<br>For the Northern District of California

1  maintaining said drag gesture signal and repeatedly sending X and Y position

2  information to said host for the duration of said second presence if the amount of time

3  between said first presence and second presence is less than said second reference

4  amount of time."

5  **II.    Claim Construction**

6      The Court previously construed eight terms from the asserted patents as selected by

7  the parties. See generally Order Re: Claim Construction ("Claim Construction Order"). The

8  Order construed several claim terms that are relevant to Synaptics's motions for partial

9  summary judgment, including "incrementally move" from the '411 patent and "initiating a

10  signal to the host indicating the occurrence of said tap gesture," "maintaining said signal for

11  a predetermined period of time," and "detecting in which of at least one corner of the touch-

12  sensor pad said tap gesture occurred" from the '931 patent. Id.

13      After careful review of the Claim Construction Order, the parties' claim construction

14  briefs, and the transcript of the claim construction hearing, the Court concludes that its

15  construction of the term "incrementally move" to mean "move in calculated increments"

16  must be reconsidered. Claim Construction Order at 7:5. Claim construction begins by

17  examining the language of the claims themselves. Interactive Gift Exp., Inc. v. Compuserve

18  Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). If the claim language is clear on its face, then the

19  rest of the intrinsic evidence is considered only for whether any deviation from the plain

20  meaning is specified. Id. Generally, a court gives the words of a claim the ordinary and

21  customary meaning that the term would have to a person of ordinary skill in the art in

22  question at the time of the invention. Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed.

23  Cir. 2005) (en banc). Where there are several common meanings, the patent disclosure

24  "serves to point away from the improper meanings and toward the proper meanings."

25  Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1300 (Fed. Cir. 2003).

26  When the ordinary meaning of claim language is "readily apparent even to lay judges," claim

27  construction involves the "application of the widely accepted meaning of commonly

28  understood words" and "general purpose dictionaries may be helpful." Phillips, 415 F.3d at

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  1314. While claims should be interpreted in light of the specifications, it is error to import a

2  limitation from the specification into the claim. Liebel-Flarsheim Co. v. Medrad, Inc., 358

3  F.3d 898, 905 (Fed. Cir. 2004). Courts should not deviate from the ordinary and accustomed

4  meaning of a claim term unless the specification expresses "manifest exclusion or restriction,

5  representing a clear disavowal of claim scope." Teleflex, Inc. v. Ficosa N. Am. Corp., 299

6  F.3d 1313, 1325 (Fed. Cir. 1988).

7          "Incrementally move," or "to move in increments," is a term whose meaning is

8  apparent to lay judges. Therefore a general purpose dictionary is helpful in determining the

9  ordinary and customary meaning of the term "increment." See Phillips, 415 F.3d at 1314.

10  Webster's Third New International Dictionary offers: "an increasing or growth in bulk,

11  quantity, number, or value," "something that is gained or added," "one of a series of regular

12  consecutive additions of like or proportional size or value," "one of a series of minute

13  additions," "a positive or negative change in the value of one or more of a set of variables."

14  Webster's Third New International Dictionary 1146 (2002). The definition "one of a series

15  of regular consecutive additions of like or proportional size or value" provides the meaning

16  most consistent with its use in the patent specification; the cursor moves in a series of regular

17  consecutive additions on the computer screen, rather than in one single movement. See On

18  Demand Machine Corp. v. Ingram Industries, Inc., 442 F.3d 1331, 1338 (Fed. Cir. 2006)

19  (holding that "multiple dictionary definitions . . . should be construed in a manner which is

20  consistent with their use in the intrinsic record"); '411 patent at 27:43-46 ("Typically, the

21  host computer takes $(\Delta X, \Delta Y)$ events and moves the cursor by the indicated amount in each

22  axis, thus reconstructing the finger position on the screen as the successive $\Delta X$ and $\Delta Y$

23  values are accumulated"). The patent specification discloses that additional increments are

24  added in both the X and Y directions when a finger is in the outer zone. '411 patent at 29:1-

25  9. These additional increments enable the cursor to continue to travel in a stepwise fashion

26  along a vector from the center of the pad to the finger position while the finger is in the outer

27  zone. Id.

28

1   The previous claim construction of "move in calculated increments" focused on a
2   portion of the specification that described several equations and an algorithm used to
3   calculate the increments along with other possible methods for calculating the increment. Id.
4   at 31:1-38. That construction is erroneous because the ordinary meaning of "increment" does
5   not require a calculation. The previous construction imported the "calculated" limitation
6   from the specification without a clear statement in the specification that the scope of the
7   claim should be limited; instead the construction should have focused on the nature of the
8   motion of the cursor. Thus, "incrementally move" shall be construed as "move in a series of
9   regular consecutive additions of like or proportional size or value."

10  **III.   LEGAL STANDARD**

11  Summary judgment is proper in patent infringement actions when the pleadings,
12  discovery and affidavits show that there is "no genuine issue as to any material fact and that
13  the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Federal
14  Rule of Civil Procedure 56(d)(1) also allows a court to grant partial summary judgment to
15  determine what material facts are genuinely not at issue, even if summary adjudication of an
16  entire claim is not warranted. Fed. R. Civ. P. 56(d)(1). Material facts are those which may
17  affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
18  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury
19  to return a verdict for the nonmoving party. Id.

20  The party moving for summary judgment bears the burden of identifying those
21  portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine
22  issue of material fact. Celotex v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving
23  party bears the burden of proof on an issue, it must submit evidence sufficient to establish
24  that no reasonable jury could find against it on that issue at trial. Linear Technology Corp. v.
25  Micrel, Inc., 524 F. Supp. 2d 1147, 1153 (N.D. Cal. 2005) (citing Frank's Casing Crew &
26  Rental Tools, Inc. v. Weatherford International, Inc., 389 F.3d 1370, 1376 (Fed. Cir. 2004);
27  Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001)).

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Once the moving party meets its initial burden, the nonmoving party must go beyond

2    the pleadings and by its own affidavits or discovery, "set forth specific facts showing that

3    there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not

4    defeat a moving party's allegations. Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d

5    957, 960 (9th Cir. 1994). Inferences drawn from the facts must be viewed in the light most

6    favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496

7    (1991). Furthermore, the court may not make credibility determinations. Anderson, 477 U.S.

8    at 249.

9    Patent infringement is a two step process of construing the patent's claims and then

10   applying that construction to the accused process or product to determine infringement.

11   Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). The

12   first step, claim construction, is a question of law. Cybor Corp. v. FAS Techs., Inc., 138 F.3d

13   1448, 1454 (Fed. Cir. 1998) (en banc). The second step, determination of infringement,

14   whether literal or under the doctrine of equivalents, is a question of fact. Bai v. L & &

15   Wings, Inc., 160 F.3d 1350, 1353-54 (Fed. Cir. 1998). In determining whether summary

16   judgment resolving the issue of literal infringement is proper, the court must decide whether

17   a "reasonable jury could find that every limitation recited in the properly construed claim

18   either is or is not found in the accused device." Id. Under the doctrine of equivalents, a

19   product or process that does not literally infringe each element of a patent claim may still

20   infringe if each and every limitation of the claim is literally or equivalently present in the

21   accused product or process. Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S.

22   17, 40 (1997). An element of an accused product or process infringes under the doctrine of

23   equivalents if the accused component performs substantially the same function as the claimed

24   limitation in substantially the same way to achieve substantially the same result. Ethicon

25   Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998).

26   A district court should approach a summary judgment motion on the factual issue of

27   patent infringement with great care. Amhil Enterprises Ltd. v. Wawa, Inc., 81 F.3d 1554,

28   1557 (Fed. Cir. 1996). However, summary judgment may be properly decided as a matter of

1   law when "no genuine issue of material fact exists and no expert testimony is required to

2   explain the nature of the patented invention or the accused product or to assist in their

3   comparison." Id. at 1557-58.  If expert testimony is required to resolve the summary

4   judgment motion, conflicting expert testimony can create a genuine issue of material fact,

5   compelling the court to deny the motion.  See Ethyl Corp. v. Borden, Inc., 427 F.2d 206, 210

6   (3d Cir. 1970) (Courts may not resolve "disputed and relevant factual issues on conflicting

7   affidavits of qualified experts."); Air Turbine Technology, Inc. v. Atlas Copco AB, 295 F.

8   Supp. 2d 1334 (S.D. Fla. 2003) (denying summary judgment because each party's experts'

9   conflicting testimony created a genuine issue of material fact as to infringement).  On the

10  other hand, summary judgment may be granted if an expert's "unsupported conclusion on the

11  ultimate issue of patent infringement is insufficient to raise a genuine issue of material fact."

12  Arthur A. Collins, Inc. v. Northern Telecom Ltd., 216 F.3d 1042, 1048 (Fed. Cir. 2000).  An

13  expert's affidavit submitted in opposition to a motion for summary judgment rises above an

14  "unsupported conclusion" by "set[ting] forth specific facts showing that there is a genuine

15  issue for trial." Fed. R. Civ. P. 56(e).

16  **IV.    DISCUSSION**

17          **A.    Scope of Synaptics's Motions for Partial Summary Judgment**

18          Synaptics's briefs circumscribe the scope of its motions for partial summary judgment.

19  The scope of Synaptics's motions is narrower than a determination of Elantech's liability for

20  direct infringement or inducement of infringement.  The two motions seek only the

21  determination that use of the corner, tap, edge motion, tapping, double tapping, and drag

22  functions of Elantech's products meet the limitations of the corresponding claims of

23  Synaptics's patents.  Elantech's arguments addressing the issues of direct infringement,

24  indirect infringement, and inducement of infringement are therefore beyond the scope of the

25  present motions.

26          Elantech's touchpads use two different versions of software code, KTP3 and KTP5.

27  The differences in the code will be discussed when relevant to the infringement allegations.

28          **B.    Zone Claims**

United States District Court
For the Northern District of California

### 1. Corner Tap

Synaptics's zone claims motion sets forth evidence sufficient to establish that a reasonable jury would have to find that each and every limitation recited in the corner tap claims, claim 5 and 6 of the '931 patent is found in the accused device. Elantech does not contend that any of the limitations of Synaptics's corner tap claims are not met by its touchpads. Because Elantech does not set forth specific facts showing that there is a genuine issue for trial, Synaptics's partial summary judgment motion concerning the corner tap claims is granted.

### 2. Scroll

Likewise, Elantech does not contest Synaptics's assertion that each and every claim limitation of Synaptics's scroll claims, claim 14 and claim 18 of the '052 patent, is satisfied by Elantech's touchpads. Therefore Synaptics's partial summary judgment motion concerning the scroll claims is also granted.

### 3. Edge Motion

Elantech opposes Synaptics's infringement contentions concerning the edge motion claims, claim 46 and claim 52 of the '411 patent, on one ground: that Elantech's touchpads do not meet the next to last limitation of claim 46, requiring the generation of second cursor motions that cause the cursor to incrementally move on the display screen a selected distance in a fixed direction towards the outer edge of the sensing plane. Though the parties relied on the previous claim construction of "move in calculated increments" and not "move in a series of regular consecutive additions of like or proportional size or value" in their briefs, the Court determines there is no genuine issue of material fact as to infringement of this claim limitation. The parties dispute whether the increment is "calculated" or "constant," but do not dispute the nature of the motion. Declaration of Andrew Wolfe Ph.D. in Support of Synaptics, Inc.'s Motions for Summary Judgment ("Wolfe Decl.") ¶ 120-22; Declaration of Ian Scott MacKenzie, Ph.D. ("MacKenzie Decl.") ¶ 22. Because a reasonable jury would have to find that the cursor moves in a series of regular consecutive additions, whether the additions are constant or calculated, this claim limitation is met by Elantech's touchpads.

11

1    Therefore Synaptics's partial summary judgment motion concerning the edge motion claims,

2    claims 46 and 52 of the '411 patent, is granted.

3    **B.    Tapping Claims**

4    **1.    Tap**

5    Elantech opposes Synaptics's motion for partial summary judgment as to claim 1 of

6    the '931 patent on the grounds that there are genuine issues of fact as to whether four

7    limitations of claim 1 are met by Elantech's touchpads: "comparing the amount of time,"

8    "comparing the amount of motion," "initiating a signal," and "maintaining said signal."

9    Comparing the amount of time

10   Synaptics asserts that in the KTP3 code, the comparing the amount of time limitation

11   is met by ███████████ which represents the amount of time the finger is on the

12   touchpad, and ███████████ which represents the reference amount of time. Wolfe

13   Decl., ¶ 29. In the KTP5 code, the limitation is met by ███████████ which represents

14   the amount of time, and a reference amount of time of ██. Id. at ¶ 30. Synaptics's expert

15   also states that this portion of the KTP5 code is "somewhat intertwined with the code that

16   detects motion." Id. Synaptics argues that the time comparison limitation is met literally or

17   under the doctrine of equivalents. Id.

18   Elantech does not contest Synaptics's assertions regarding KTP3 code but does

19   dispute Elantech's contentions about KTP5 code, stating that ███████████ "is not used

20   for any time comparison" and "KTP5 touchpads do not make any comparison of a reference

21   amount of time." Elantech Devices Corp.'s Opposition to Synaptics, Inc.'s Motions for

22   Partial Summary Judgment That Use of Elantech's Products Meets the Tapping Claims of the

23   '931 and '591 Patents and the Zone Claims of the '931, '052 and '411 Patents ("Elantech's

24   Opposition") at 8:23-9:1; MacKenzie Decl., ¶ 11. Elantech's expert's declaration about the

25   ███████████ variable in KTP5 skirts the boundary between creating a genuine issue of

26   material fact and being an "unsupported conclusion" that fails to point out "specific facts

27   showing that there is a genuine issue for trial." See Collins, 216 F.3d at 1048; Fed. R. Civ. P.

28   56(e). Though the Court recognizes the inherent difficulties of proving a negative in this

United States District Court
For the Northern District of California

situation, Elantech must go beyond a mere denial Synaptics's infringement allegations and set forth specific facts showing that there is a genuine issue for trial. For example, Elantech could describe the real function of the variable in the code, or state that the variable was used in previous versions of code but is purely vestigial in the current code. When given the opportunity to do so in supplemental briefing, Elantech again failed to support its conclusion with specific facts beyond its assertion that the variable "is not used for any time comparison." Brief in Response to March 6, 2008 Order at 6:20-22. With regards to KTP3 code, the comparing the amount of time limitation is met because Elantech has not opposed Synaptics's contentions. With regards to the KTP5 code, the comparing the amount of time limitation is satisfied because Elantech's opposition is nothing more than an unsupported conclusion that is insufficient to raise a genuine issue of material fact.

Comparing the amount of motion

Synaptics's expert identifies two variables present in both KTP3 and KTP5 code representing finger motion, ████████, and ████████, which are compared to the reference amounts ████████ and ████████ in order to satisfy the comparing the amount of motion limitation. Wolfe Decl., ¶¶ 34-35. Elantech argues that this claim limitation is not met because ████████ ████████████████████████████████████████ ████████████████████████████████████████

Elantech's re-characterization is insufficient to create a genuine issue of material fact as to this claim limitation, either through literal infringement or the doctrine of equivalents. This Court finds that any reasonable jury would conclude that determining "whether the ████████ is simply the same as determining how much motion has occurred; when the motion is ████ motion has occurred. In addition, determining whether the ████████ serves substantially the same function as comparing the amount of motion, performed in substantially the same way, to achieve substantially the same result. Determining whether ████████ performs the comparison function in substantially the same way: a variable is compared to a reference value, just as in the claim

13

*United States District Court*
*For the Northern District of California*

1    limitation, and the same result is achieved. Therefore there is no genuine issue of material

2    fact as to whether Elantech's touchpads meet this claim limitation.

3    Initiating a signal

4         Under the Court's claim construction, "initiating a signal to the host indicating the

5    occurrence of said tap gesture" means "initiating the transmission of a set of data to a

6    computer, or other device that can take as input the output of a touch-sensor pad, that

7    indicates that a tap gesture has occurred on the touch-sensor pad." Claim Construction Order

8    at 7:14-9:15. Furthermore, this Court rejected a construction where "signal" can only

9    represent a high state and a low state. Id.

10        Synaptics asserts that this claim limitation is met in Elantech's KTP3 and KTP5

11   touchpads when "the presence on the touchpad has qualified as a 'tap' gesture, both the

12   KTP3 and KTP5 code versions will generate a signal (for example, ███████) indicating a tap

13   gesture, which information is, in turn, communicated to the host." Wolfe Decl., ¶ 38.[1]

14   However, Elantech's expert asserts that ██████ "is not a signal" but is "the name of an

15   internal variable . . . and it is not sent to the host to indicate that a tap gesture has occurred."

16   MacKenzie Decl., ¶ 10.

17        Elantech's expert declaration properly sets forth specific facts showing that there is a

18   genuine issue for trial. In this situation, expert testimony is required to explain the nature of

19   the patented invention and the accused product, and to assist in their comparison – on its

20   own, this Court is unable to discern whether this claim limitation is satisfied. Because

21   Elantech supports its conclusion that this claim limitation is not met with specific facts,

22   namely that ██████ is an internal variable that it is not sent to the host, a genuine issue of

23   material fact exists as to whether this claim limitation is met and partial summary judgment is

24

25        [1] In its reply brief, Synaptics changes its infringement allegations and contends that the
     signal to be initiated is "the '███████ data packet and the '███████ data packet" rather
26   than ██████ Synaptics, Inc.'s Consolidated Reply Brief in Support of Motions for Partial
     Summary Summary Judgment That Use of Elantech's Product Features Meet the Limitations of
27   Synaptics' Patent Claims ("Synaptics's Reply") at 5:9-6:15. This new infringement allegation
     is unsupported by expert testimony. Because Elantech has not had a chance to respond to this
28   infringement allegation, this Court's summary judgment analysis is limited to allegations
     propounded in Synaptics's initial brief.

United States District Court
For the Northern District of California

1  inappropriate.

2  <u>Maintaining said signal</u>

3      "Maintaining said signal for a predetermined period of time" was construed to mean

4  "to continue, retain, or repeat the signal for a period of time that was determined before."

5  Claim Construction Order at 7:14-9:15. The Court rejected a construction that required

6  "continuously outputting the signal." <u>Id.</u>

7      In its infringement allegations, Synaptics asserts that in both KTP3 and KTP5 code,

8  the button down signal indicating a tap gesture is maintained for a default value of █████

9  Wolfe Decl., ¶ 41. To the extent this Court understands Elantech's arguments, Elantech

10  argues that the button down signal cannot be the "said signal" that was previously "initiated"

11  because a button down signal does not signify that a tap gesture has occurred. Elantech's

12  Opposition at 10:14-11:11. The language "said signal" requires that the signal maintained in

13  this claim limitation be the same signal that was initiated in the previous claim limitation.

14  However, Synaptics has not proved that the ██████ signal alleged to be initiated in the

15  previous claim limitation is the same signal as the button down signal that is maintained in

16  this claim limitation. Therefore Synaptics fails to submit evidence sufficient to compel a

17  reasonable jury to find that this claim limitation is met.

18      In summary, this Court concludes that a reasonable jury could find that not every

19  limitation of claim 1 of the '931 patent is found in Elantech's KTP3 or KTP5 touchpads.

20  Therefore Synaptics's motion for partial summary judgment concerning the tap claim is

21  denied.

22      **2.    Double Tap**

23      Elantech opposes Synaptics's motion for partial summary judgment as to claim 6 of

24  the '591 patent on the grounds that there are genuine issues of fact as to whether five

25  limitations of the claim are met: "comparing the duration," "initiating a first signal,"

26  "terminating said first signal if a second reference amount of time passes," "comparing the

27  duration of said second presence," and "terminating said first signal if the duration of said

28  second presence is less than said third reference amount of time."

United States District Court
For the Northern District of California

15

United States District Court
For the Northern District of California

1    <u>Comparing the duration</u>

2        Synaptics asserts that use of the double tap feature in Elantech's touchpads meets the

3    "comparing the duration of said first presence with a first reference amount of time"

4    limitation by citing the same variables cited for the similar "comparing the amount of time"

5    limitation of claim 1 of the '931 patent. Wolfe Decl., ¶ 49. Again, Elantech does not oppose

6    Synaptics's allegations as to KTP3 code but for the KTP5 code argues that the variable is

7    "not used for any time limitation" and the KTP5 touchpads "do not make any comparison of

8    a reference amount of time." MacKenzie Decl., ¶ 15. As discussed previously, Elantech's

9    KTP5 assertion is a bare conclusion unsupported by specific facts. Therefore there is no

10   genuine issue of material fact as to whether this claim limitation is met in either KTP3 or

11   KTP5 code.

12   <u>Initiating a first signal</u>

13       Synaptics references the same infringement allegations used in claim 1 of the '931

14   patent to assert that the equivalent "initiating a first signal" claim limitation in claim 6 of the

15   '591 patent is met. Wolfe Decl., ¶ 50. Elantech states that the variable cited by Synaptics,

16   ████████ is "not a signal and is not sent to the host," and that only a button down and button up

17   data packet is outputted. MacKenzie Decl., ¶ 16. Again, conflicting expert testimony

18   sufficiently supported with specific facts creates a genuine issue of material fact as to

19   whether this claim limitation is met. Therefore partial summary judgment as to this claim

20   limitation is inappropriate.

21   <u>Terminating said first signal if a second reference amount of time passes</u>

22       Synaptics asserts that the "terminating said first signal" limitation is met when the

23   software terminates the tap gesture "resulting in a 'button up' condition and merely a single

24   tap gesture." Wolfe Decl., ¶ 52. In both the KTP3 and KTP5 code, Synaptics alleges that if

25   the touch time, represented by ████████████, exceeds a reference amount of time stored in

26   ██████████, the software "terminate[s] the button press signal." Wolfe Decl., ¶¶ 53-54.

27   Synaptics again fails to present evidence sufficient to compel a reasonable jury to return a

28   verdict in its favor. The inconsistent allegations of the "initiated" and "terminated" signals

1  violates the plain language of the claim limitation which requires "said first signal" to be

2  terminated. Therefore Synaptics's motion for partial summary judgment as to this limitation

3  is denied.

4  Comparing the duration of said second presence

5      Synaptics asserts that the second "comparing the duration" limitation of the claim is

6  met with the exact same allegations it used for claim 1 of the '931 patent and the earlier

7  "comparing the duration" limitation of claim 6 of the '591 patent. Wolfe Decl., ¶ 56.

8  Elantech's opposition repeats its earlier arguments.[2] MacKenzie Decl., ¶ 15. As previously

9  resolved, the KTP3 allegation is unopposed and Elantech's assertion regarding KTP5 code is

10  a bare conclusion unsupported by specific facts. Therefore there is no genuine issue of

11  material fact as to whether this claim limitation is met for either KTP3 or KTP5 code.

12  Terminating said first signal if the duration of said second presence is less than said third

13  reference amount of time

14      Synaptics alleges that the second "terminating" limitation of the double tap claim is

15  met in a similar fashion as the first "terminating" limitation, but with a "different timing

16  test." Wolfe Decl., ¶ 57. Synaptics describes that both KTP3 and KTP5 code "terminate the

17  first button down signal – i.e., the single tap signal – and replace it with a second button

18  down signal – i.e., the double tap signal" if "a second touch happens before the first tap

19  signal ends and has a duration less than the third reference time period. Wolfe Decl., ¶ 58.

20  Again, the term "said first signal" requires that the signal that was previously initiated be

21  terminated and Synaptics's signal allegations of ▬▬▬ and "the first button down signal" are

22  inconsistent. Therefore Synaptics does not meet its burden as to this claim limitation and

23  partial summary judgment is inappropriate.

24      In summary, this Court concludes that a reasonable jury could find that not every

25  limitation of claim 6 of the '591 patent is found in Elantech's KTP3 or KTP5 touchpads.

26

27      [2] Elantech's expert only refers to the previous claim limitation "comparing the duration
   of said first presence" and not the later "comparing the duration of said second presence" claim
28  limitation. This Court will assume that Elantech's arguments apply equally to both claim
   limitations.

1  Therefore Synaptics's motion for partial summary judgment concerning the double tap claim

2  is denied.

3      **3.    Drag**

4      Elantech opposes Synaptics's motion for partial summary judgment as to claim 9 of

5  the '591 patent on the grounds that there are genuine issues of fact as to whether four

6  limitations of claim 1 are met: "comparing the duration of said first presence," "initiating a

7  drag gesture signal," "comparing the duration between said first presence and second

8  presence," and "maintaining said drag gesture signal."

9  <u>Comparing the duration of said first presence</u>

10     Synaptics asserts that use of the drag feature in Elantech's touchpads meets the

11  "comparing the duration of said first presence" limitation by citing the same variables cited

12  in the previous tapping claims. Wolfe Decl., ¶ 67. Elantech relies on its same arguments

13  concerning KTP5 code. MacKenzie Decl., ¶ 19. As discussed previously, Elantech's KTP5

14  assertion is a bare conclusion unsupported by specific facts. Therefore there is no genuine

15  issue of material fact as to whether this claim limitation is met for either KTP3 or KTP5

16  code.

17  <u>Initiating a drag gesture signal</u>

18     Synaptics alleges that the "initiating a drag gesture signal" limitation is met when the

19  drag gesture signal, represented by a "tap initiation signal . . . followed by motion signals" is

20  initiated with a "tap initial signal, <u>i.e.</u> a 'button-down' signal." Wolfe Decl., ¶ 68. Elantech

21  opposes Synaptics's allegations by stating that Synaptics's expert is incorrect because

22  Elantech's touchpads do not send a button down and button up data packets to commence a

23  drag gesture. MacKenzie Decl., ¶ 68. Elantech misinterprets Synaptics's infringement

24  allegations by relying on Synaptics's expert's discussion of the '591 patent where the tap

25  gesture signal is the signal that is initiated to commence the tap gesture, instead of relying on

26  Synaptics's discussion of Elantech's touchpads. In the previous sentence, Synaptics had

27  stated that the drag gesture is initiated with a button down signal. The court finds that

28  Synaptics's evidence is sufficient to compel a reasonable jury to find that this claim

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  limitation is met in Elantech's products. Because Elantech's counterargument concerns the

2  button down and button up data packets, rather than just a button down signal, Synaptics's

3  infringement allegation is essentially unopposed. Therefore there is no genuine issue of

4  material fact and partial summary judgment is granted as to this claim limitation.

5  <u>Comparing the duration between said first presence and second presence</u>

6       Synaptics and Elantech both rely on their previous arguments for the second

7  "comparing the duration" limitation of claim 9 of the '591 patent. Wolfe Decl., ¶ 72;

8  MacKenzie Decl., ¶ 19. Thus, there is no genuine issue of material fact as to whether this

9  claim limitation is met in either KTP3 or KTP5 code.

10 <u>Maintaining said drag gesture signal</u>

11       As construed in reference to another claim, "maintaining" means "to continue, retain,

12 or repeat for a period of time." Claim Construction Order at 7:14-9:15. The Court rejected a

13 construction that required "continuously outputting the signal." <u>Id.</u>

14       Synaptics offers evidence that if the second finger presence occurs before the

15 ████████ counter ends, the "'button down' signal continues until after the touch is

16 removed." Wolfe Decl., ¶ 74. While this signal is continued, Synaptics points to where in

17 the KTP3 and KTP5 software the touchpads send X and Y position information to effectuate

18 the drag. Wolfe Decl., ¶ 75. Elantech responds that Synaptics's expert is erroneous because

19 the variable ████████ is not used in the KTP5 code. MacKenzie Decl., ¶ 21.

20 Elantech's opposition does not address Synaptics's evidence. Elantech does not argue that

21 the button down signal is not maintained, or that X and Y information is not sent while the

22 drag gesture is maintained, but only argues that the cited variable is not used in KTP5 code.

23 However, Synaptics's allegations do not assert that ████████ is a variable in KTP5

24 code, only that ████████ is a counter in both KTP3 and KTP5 code. Wolfe Decl., ¶ 74.

25 Also, ████████ is mentioned in the comments to the KTP5 code, so the Court finds

26 that Synaptics's infringement allegation to be sufficiently specific. Because Elantech's

27 counterarguments do not oppose Synaptics's description of how the code functions, there is

28 no genuine issue of material fact as to this claim limitation and partial summary judgment is

1    appropriate.

2          In summary, after evaluating Elantech's counterarguments as to the four contested

3    claim limitations, the Court finds that Elantech fails to raise a genuine issue of material fact

4    that use of Elantech's touchpads satisfy each and every limitation of claim 9 of the '591

5    patent. Therefore partial summary judgment as to the drag claim is granted.

6    **V.    CONCLUSION**

7          Synaptics's motion for partial summary judgment that use of the corner tap feature of

8    Elantech's touchpads infringes claims 5 and 6 of Synaptics's '931 patent is granted.

9    Synaptics's motion for partial summary judgment that use of the scroll zone feature of

10   Elantech's touchpads infringes claims 14 and 18 of Synaptics's '052 patent is granted.

11   Synaptics's motion for partial summary judgment that use of the edge motion feature of

12   Elantech's touchpads infringes claims 46 and 52 of Synaptics's '411 patent is granted.

13         Synaptics's motion for partial summary judgment that use of the tap feature of

14   Elantech's touchpads infringes claim 1 of Synaptics's '931 patent is denied.    Synaptics's

15   motion for partial summary judgment that use of the double tap feature of Elantech's

16   touchpads infringes claim 6 of Synaptics's '591 patent is denied.    Synaptics's motion for

17   partial summary judgment that use of the drag feature of Elantech's touchpads infringes

18   claim 9 of Synaptics's '591 patent is granted.

19         The parties are directed to appear for a further case management conference at 8:30

20   a.m. on _May 9, 2008 at 8:30 a.m._

21

22   **IT IS SO ORDERED.**

23

24   Dated: April 16, 2008

25                                           CHARLES R. BREYER

26                                           UNITED STATES DISTRICT JUDGE

27

28

United States District Court
For the Northern District of California