1   Yitai Hu (SBN 248085) (yhu@akingump.com)
    Sean P. DeBruine (SBN 168071) (sdebruine@akingump.com)
2   S.H. Michael Kim (SBN 203491) (mkim@akingump.com)
    AKIN GUMP STRAUSS HAUER & FELD LLP
3   3000 El Camino Real, Suite 400
    Palo Alto, California  94306
4   Telephone:      650-838-2000
    Facsimile:      650-838-2001
5

6   Attorneys for Plaintiff and Counterdefendant
    ELANTECH DEVICES CORPORATION
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  ELANTECH DEVICES CORP.,            )  Case No. 5:06-CV-01839 PVT
                                       )
13          Plaintiff,                 )  **ELANTECH'S <u>CORRECTED</u> OPPOSITION
                                       )  TO SYNAPTICS MOTION FOR A
14      vs.                            )  PRELIMINARY INJUNCTION**
                                       )
15  SYNAPTICS, INC and                 )
    AVERATEC, INC.,                    )  **Date:**        June 24, 2008
16                                     )  **Time:**        2:00 p.m.
            Defendants.                )  **Judge:**       Patricia V. Trumbull
17                                     )  **Court:**       5, 4th Floor
    _____)

18

19

20

21

22

23

24

25

26

27

28

## Table of Contents

I.    INTRODUCTION ................................................................................... 1

II.   ARGUMENT ........................................................................................ 2

    A.    Synaptics Has Not Meet Its Burden To Establish Entitlement to The Drastic and Extraordinary Remedy of A Preliminary Injunction. .......................... 2

    B.    Synaptics Is Not Likely To Succeed In Proving That Elantech Infringes Or Induces Anyone Else to Infringe. ....................................... 3

        1.    Synaptics' Reliance On The Court's April 16 Order Is Misplaced. ............ 3

        2.    There is No Evidence that the Method Claims have been Infringed by Anyone ....................................................... 4

        3.    There Are Substantial Questions as to the Validity of each Asserted Patent. ............................................................. 8

            a)    The "Corner Tap" Feature Was Known Nearly 10 Years Before the '931 Patent ...................................... 8

            b)    The '052 Patent Claims are Anticipated by the Stratos Patent .................................................... 10

            c)    Synaptics Was Far From the First to Invent the "Edge Motion" Feature of the '411 Patent ...................... 11

            d)    Synaptics Was Not the First to Invent the "Drag" Feature of the '591 patent ...................................... 13

    C.    Synaptics Has Not Shown Irreparable Harm Will Occur Absent An Injunction. .......................................................... 15

    D.    The Balance of Hardships Favors Denial of the Injunction. ................................. 16

    E.    The Public Interest Favors Denying The Injunction Because the Patents Are Likely Invalid and Enforcement Would Harm Competition and thus Consumers. ............................................ 17

III.  CONCLUSION ................................................................................... 18

1

## Table of Authorities
### CASES

*Abbott Labs. v. Andrx Pharma, Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)...............................17

*Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) ........................2, 3

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004)......................4

*eBay v. MercExchange*, *L.L.C.,* 126 S.Ct. 1837(2006) .................................................................3

*Erico Int'l. Corp. v. Vutec Corp.*, 516 F.3d 1350 (Fed. Cir. 2008)..........................................2, 3

*Genentech, Inc. v. Novo Nordisk*, *A/S* 108 F.3d 1361 (Fed. Cir. 1997), 522 U.S. 963 (1997) ..2, 8

*Golden Blount, Inc., v. Robert H. Peterson Co.*, 365 F.3d 1054 (Fed. Cir. 2004).......................4

*H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384 (Fed. Cir. 1987) ...........................2

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,* 49 F.3d 1551 (Fed Cir.
     1995) ......................................................................................................................................16

*Hillgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336 (Fed. Cir. 2001) ..........................................4

*IMX Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203 (D. Del. 2007) ..........................................16

*Intel Corp. v. VLSI Sys. Tech., Inc.*, 995 F.2d 1566 (Fed. Cir. 1993).............................................2

*National Steel Car Ltd. v. Canadian Pacific Railway, Ltd.* 357 F.3d 1319 (Fed. Cir. 2004) ... 2, 8

*Nestier Corp., v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576 (Fed. Cir. 1984) ...............17

*New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878 (Fed. Cir. 1992).........2, 8

*NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005)........................................4

*Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DE, 2006 WL 2385139 at *4 (E.D. Tex.,
     Aug. 16, 2006) .......................................................................................................................16

*Praxair, Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440, 443-444(D. Del. 2007) .................................15

*Reebok Int'l. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994).................................................2

*Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266 (Fed. Cir. 1985)...................................................6

*Sandisk Corp. v. Lexar Media, Inc.*, 91 F. Supp.2d 1327 (N.D. Cal., 2000)................................5

*Sundance Inc., v. DeMonte Fabricating Ltd.*, No. 02-73543, 2007 WL 3053662 at *2 ( E.D.
     Mich. Oct. 19, 2007) .............................................................................................................15

*T.J. Smith & Nephew Ltd. v. Consol. Med. Equip Co., Inc.*, 821 F.2d 646 (Fed. Cir. 1987).......16

*VNUS Medical Techs. v. Diomed Holdings, Inc.*, 2007 WL 2900532 at *1 (Oct. 2, 2007, N.D.
     Cal.)...........................................................................................................................................5

*Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563 (Fed. Cir. 1996)............................................................4

1

**STATUTES**

2  35 U.S.C. § 102(e) ........................................................................................................ 12

3  35 U.S.C. § 103 ............................................................................................................ 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Synaptics' motion should be denied.  Synaptic asks the court to preliminarily enjoin Elantech from (1) directly infringing its patents and (2) from inducing infringement of its patents. Because the patents are methods patents, to obtain a preliminary injunction against Elantech for direct infringement, Synaptics must, *inter alia*, present evidence that it is likely to succeed in proving that Elantech practices the claimed methods in the United States.  Yet Synaptics has presented no such evidence.  To obtain a preliminary injunction against Elantech for inducing infringement, Synaptics must, *inter alia*, present evidence that it is likely to succeed in proving specific acts of direct infringement, i.e., that someone is actually practicing the claimed methods in the United States, that Elantech took affirmative actions resulting in the practicing of the methods in the United States and that Elantech knew that these affirmative acts would result in infringement with the intent that the patent would be infringed, and took affirmative acts with the specific intent to cause someone in the United States to infringe the patent.  Again Synaptics has presented no such evidence.

The crux of its motion is the mistaken belief that the Court has already determined that Elantech is infringing the patents  This is clearly not the case.  "The scope of Synaptics' motion is narrower than a determination of Elantech's liability for direct infringement or inducement of infringement."  (April 16, 2008 Memorandum and Order page 10 Order, Docket No. 307).  At most the court found certain software modules include code that, if incorporated in a product, and if enabled, could be used to perform some of the claimed methods.

Applying the proper test for determining whether an injunction should be granted, no injunction should issue.  Synaptics has failed to make the requisite showing of likelihood of success on actual rather than hypothetical infringement.  Elantech also raises substantial questions of validity as to each of the asserted claims.  The balancing of the hardships favors Elantech and the public interest is served when competition is left unrestrained where the asserted patents are likely invalid.

The motion should be denied.

1    **II.    ARGUMENT**

2        **A.    Synaptics Has Not Meet Its Burden To Establish Entitlement to The Drastic
3             and Extraordinary Remedy of A Preliminary Injunction.**

4        The burden to show entitlement to a preliminary injunction is always on the moving

5    party. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388 (Fed. Cir. 1987); *Reebok

6    *Int'l. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994) (affirming denial of preliminary

7    injunction).  A preliminary injunction is a "drastic and extraordinary remedy that is not to be

8    routinely granted."  *Intel Corp. v. VLSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *see

9    *also National Steel Car Ltd. v. Canadian Pacific Railway, Ltd.* 357 F.3d 1319, 1324 (Fed. Cir.

10   2004).  According to well-established principles of equity, the party seeking an injunction must

11   demonstrate all four preliminary injunction factors before a court may grant an injunction.  It

12   must demonstrate: (1) likelihood of success on the merits; (2) irreparable harm if the injunction

13   is not granted; (3) the balance of  hardships between the plaintiff and defendant supports an

14   injunction; and (4) that the public interest would not be disserved by a permanent injunction.

15   *See, e.g.*, *Erico Int'l. Corp. v. Vutec Corp.*, 516 F.3d 1350, 1354 (Fed. Cir. 2008) Even an

16   exceptionally weighty showing on the other three factors cannot overcome failure to demonstrate

17   likelihood of success on the merits.  *National Steel Car Ltd.*, 357 F.3d at 1325.

18       To show likelihood of success on the merits, a patent owner must establish that, in light

19   of the presumptions and burdens that will inhere at trial on the merits, (1) the accused infringer

20   likely infringes the patent and (2) the claims of the patent will likely withstand the accused

21   infringer's challenges to validity.  *Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343,

22   1350 (Fed. Cir. 2001) (vacating injunction).  It is also appropriate, when the patentee failed to

23   make sufficient showing of likelihood of success, to deny a motion for preliminary injunction

24   where the evidence presented in support of invalidity raises a substantial question.  *New England

25   *Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed. Cir. 1992);  *Genentech, Inc. v.

26   *Novo Nordisk, A/S* 108 F.3d 1361, 1364 (Fed. Cir. 1997), *cert. denied*, 522 U.S. 963 (1997) (if

27   accused infringer raises a substantial question concerning validity, enforceability or

28   infringement, the preliminary injunction should not issue); *Amazon.com v. Barnesandnoble.com,*

*Inc.*, 239 F.3d at 1350-1351 (same).  "Given the time constraints within which an accused infringer must usually respond with evidence to a motion for preliminary injunction… a fully comprehensive presentation of its defenses cannot reasonably be required."  *New England Braiding,* 970 F.2d at 883 (defenses need not be "entirely fleshed out" to show that patentee is not likely to succeed in rebutting them); *See also Erico Int'l. Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008) (vacating preliminary injunction where evidence of obviousness cast enough doubt on validity to negate likelihood of success).  As explained below, Synaptics falls far short of satisfying the four factor test,[1] and thus it would be error to grant the drastic and extraordinary remedy of a preliminary injunction.

> **B.      Synaptics Is Not Likely To Succeed In Proving That Elantech Infringes Or Induces Anyone Else to Infringe.**

>> **1.      Synaptics' Reliance On The Court's April 16 Order Is Misplaced.**

As noted, Synaptic has the burden to demonstrate likelihood of success on the merits.  *See eBay v. MercExchange*, *L.L.C.,* 126 S.Ct. 1837 (2006).  In other words, Synaptics must show that Elantech is itself performing the claimed methods in the United States or that someone other than Elantech is performing the methods in the United States and those alleged infringers infringed as a result of Elantech's affirmative acts permitting and encouraging that infringement, and Elantech undertook those acts with the specific intent to cause infringement of a valid claim.  In an effort to meet its burden, Synaptics relies on a mischaracterization of the Court's partial summary judgment order.  The Court has not found that Elantech infringes or induces infringement of any of the Synaptics patents, and Synaptics provided no proof of any such infringement in this motion or its motion for partial summary judgment.  *See* April 16, 2008 Order at 10.

At most, all Synaptics has argued in its moving papers is that Elantech's touchpads are imported, sold, offered for sale, or by implication generally used in the United States.  However, Synaptics bears the burden of proving much more than simply that the accused Elantech touchpads are imported, sold, offered for sale, or used in the United States.  Motion at 7.  Rather, Synaptics

---

[1] Synaptics' position that the Court set some lower standard for granting a preliminary injunction and that some lower standard is "law of the case" lacks merit.  First, this Court must follow the test stated by the Federal Circuit.  Second, Judge Breyer properly applied that standard in granting Elantech's motion for preliminary injunction.

1   must show specific instances in which admittedly optional features of those touchpads are *actually*

2   *used* either by Elantech or by a non-party in the United States in the particular way required by the

3   patent claims.  After nearly two years of discovery, Synaptics is still unable to find any such

4   evidence.  Because Synaptics has failed to even address the fundamental issue of infringement, it is

5   not entitled to an injunction.

         **2.      There is No Evidence that the Method Claims have been Infringed by
                   Anyone**

7           All of the claims at issue in this motion are method claims.  For example, asserted claim 46

8   of the '411 patent covers "A method of moving a cursor on a display screen in response to motion

9   of an object sensed on a sensing plane . . ."  Wolfe Decl., Ex. 4 at 63:36-37.  Infringement of a

10  method claim requires that a single person or entity perform each and every one of the claimed

11  steps in the United States.  *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir.

12  2005).  Elantech's sales of the accused products alone cannot constitute infringement, whether or

13  not they are capable of being used to perform the steps of the claimed methods.  *Id.* at 1317; *see*

14  *also Hillgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1342 n.2 (Fed. Cir. 2001); *Zygo Corp. v.*

15  *Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996).

16          Synaptics must, therefore, establish some actual use of an accused Elantech touchpad, by

17  Elantech or a third party in the United States, that resulted in the performance of every step of the

18  asserted method claims.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed.

19  Cir. 2004).  Absent a showing that use of the accused product *necessarily* resulted in performance

20  of the claimed method steps, Synaptics must point to specific acts of actual infringement.  *Id.* at

21  1275-76.  Here, the evidence is uncontroverted that the mere "use" of the Elantech touchpad

22  products will not result in the performance of each step in the asserted method claims.  Perhaps the

23  only fact not in dispute is that mere "use" of the accused products does not necessarily "satisfy

24  every limitation" of the accused method claims.  *See Golden Blount, Inc., v. Robert H. Peterson*

25  *Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004) (in order to find liability for inducing infringement,

26  patent owner must show that accused infringer's actions actually induced infringement—in other

27  words, that a third party directly infringed).

28

1     In fact, not only is it possible that no one has ever used the claimed methods in the United

2     States using Elantech's touchpads, it is highly probable that users of the accused touchpads never

3     perform the claimed methods.  The claimed methods are all directed at performing actions without

4     physical button inputs.  The accused products include physical buttons.  The products not only can

5     be, but are most likely used without resort to the tap, double tap, corner tap, drag or edge motion

6     features required by Synaptics' method claims.  MacKenzie Decl., ¶ 49.

7     Synaptics' claims that there is evidence that Elantech products "have been used" in the

8     United States "prior to and during this litigation."  Yet Synaptics points to no competent evidence to

9     support the claim that the claimed methods themselves are used by anyone other than one of its

10     employees in preparing for this litigation.  Synaptics first relies on the declaration of Kenneth

11     Geisler.  Mr. Geisler describes testing laptop computers purchased more than two years ago

12     containing Elantech touchpads.  Geisler Decl., ¶ 3.  First, this testing is not evidence of

13     infringement as a matter of law.  Mr. Geisler is a Synaptics employee, who was acting for the

14     company when he performed those tests.  Geisler Decl., ¶ 3.  The patentee cannot create, for

15     purposes of litigation, the direct infringement necessary to sustain a claim of indirect infringement.

16     *Sandisk Corp. v. Lexar Media, Inc.*, 91 F. Supp.2d 1327, 1331 (N.D. Cal., 2000) (to show indirect

17     infringement, must show *third parties* directly infringe); *VNUS Medical Techs. v. Diomed Holdings,*

18     *Inc.*, 2007 WL 2900532 at *1 (Oct. 2, 2007, N.D. Cal.) (in order to prove induced or contributory

19     infringement, plaintiff must prove third parties directly infringe).  Synaptics also appears to rely on

20     the purported after sale of computers including Elantech that occurred before Synaptics patent

21     claims were raised.  As discussed above, evidence that a product is offered for sale is insufficient

22     evidence to demonstrate that a method claim is practiced unless it is established that the any use of

23     the product results in infringement.  That is not the case here.  Because Synaptics' motion fails at

24     this basic level, it should be denied.

25     Furthermore, those computers were marketed by defendant Averatec and dismissed

26     defendant ProStar.  *Id*.  What Synaptics fails to mention is that at or about the time Mr. Geisler

27     tested these products, both Averatec and ProStar resolved Synaptics' claims of patent infringement

28     by agreeing not to purchase Elantech touchpads.  Indeed, because both decided to include the

1 Synaptics touchpads that infringe Elantech's patents, Elantech named both Averatec and ProStar as

2 defendants when it filed this suit in late 2006. In fact, Averatec is currently advertising its use of

3 Synaptics' touchpads on its website. Declaration of Sean P. DeBruine filed herewith ("DeBruine

4 Decl."), ¶ 2. Evidence concerning Elantech products that have not been available in the U.S.

5 market for two years does not support a claim of any ongoing infringement, and provides no

6 support for Synaptics' claim that it is being irreparably harmed. *See Roper Corp. v. Litton Sys.,*

7 *Inc.*, 757 F.2d 1266, 1273 (Fed. Cir. 1985) (allegations of facts that might constitute past

8 infringement do not suffice to establish irreparable harm when nothing in the record establishes

9 present infringement).

10       Synaptics also tries to establish infringement by alleging that Elantech demonstrated "the

11 patented features" at a trade show in Las Vegas earlier this year. Motion at 3. Synaptics provides

12 no evidence, however, to support that contention. Synaptics cites the declaration of Synaptics

13 employee, Conlon, who only saw a video posted on the internet. Mr. Conlon "believes" that the

14 video was taken at the CES show in Las Vegas, but he was not there, he did not witness the alleged

15 demonstration and he cannot authenticate the video. He states that the video "appears" to have

16 been taken at the CES trade show. Mr. Conlon provides his unexplained opinion that the video

17 shows use of the 'drag gesture', but Mr. Conlon does not and cannot state what touchpad product

18 was being demonstrated, where or by whom. Not only does this testimony fail to support

19 Synaptics' position, it is wholly inadmissible at a minimum for hearsay and lack of foundation.

20       Synaptics likewise fails to inform this Court that its Summary Judgment motion was based

21 only on the firmware of the chips within Elantech products. Yet in order to operate with a computer

22 system, those touchpad products require "driver" software running on the host computer. *See*

23 Declaration of Jia-Yih Lee filed herewith ("Lee Decl."), ¶ 6. Even if a touchpad may have the

24 innate capability of performing a particular function, a user cannot access that feature unless it is

25 supported by the driver software. *Id.* Synaptics' motion for partial summary judgment, and this

26 preliminary injunction motion, fails to consider much less address this aspect at all. Without

27 evidence that a driver actually enables the function, there can be no evidence that the devices are

28 actually used in the required manner. For certain models of the Elantech products, the driver

1   software does not enable use of the corner tap or edge motion features covered by the asserted

2   claims of the '931 or '411 patents.  For other models those features, and the "scroll zone" feature of

3   the '052 patent, are not even present in the firmware code, and therefore likewise cannot be

4   performed using those products.  *Id.*

5          Despite these differences among Elantech touchpad models, nowhere in Synaptics' motion

6   is there any discussion of any particular Elantech model used or even available for use in the

7   United States.  Rather, Synaptics rests its entire showing of infringement on the alleged availability

8   of unspecified touchpads in computers allegedly available for purchase here.  Even if that showing

9   were sufficient to establish any likelihood of proving infringement, Synaptics' showing again falls

10  short.  As with Averatec and ProStar, Synaptics is relying on two year old information. DeBruine

11  Decl., ¶ 3.  It cites, for example, to models of computers apparently sold by AddictPC.  Kramer

12  Decl., Ex. 3.  That information dates from August 25, 2006.  Kramer Decl., Ex. 1 at SYN00091654.

13  The AddictPC computer model Synaptics refers to in its memorandum is apparently no longer

14  available, and there is currently, no mention of Elantech touchpads whatsoever on the company's

15  website.  DeBruine Decl., ¶ 4.  The same is true of MSI.  Again, the web page provided dates to

16  2006.  Kramer Decl., Ex. 5 at SYN00091653.  The model cited is no longer available, and a search

17  of MSI's website turned up no current mention of Elantech products.  *Id.*  While Synaptics

18  misleadingly states that these websites were "last visited" in May, 2008, it fails to inform the Court

19  that the information it provides from those websites is two years old and no longer valid, and

20  despite having visited the website in the past month, Synaptics did not provide information current

21  as of those visits.  The same appears true for the other alleged offers for sale cited in Mr. Kramer's

22  declaration.  DeBruine Decl., ¶¶ 4-5.

23         The simple truth is that Synaptics has provided no evidence whatsoever from which this

24  Court could determine that there is likely to be any current direct infringement of the asserted

25  claims.  Absent that required predicate proof, there can be no injunction.

26

27

28

1

3. **There Are Substantial Questions as to the Validity of each Asserted Patent.**

As discussed above, Synaptics bears the burden of proof in on all facts relevant to the requested injunction. That includes proving that it is likely to prevail on the issue of validity of the asserted claims. *National Steel Car, Ltd. v. Canadian Pacific Ry, Ltd.*, 357 F. 3d 1319, 1325 (Fed. Cir. 2004). Where an accused infringer raises a substantial question concerning validity, and the patentee cannot demonstrate that the defense lacks substantial merit, the injunction should be denied. *Id*. at 1335. As will be discussed below, there are substantial questions regarding the validity of Synaptics' patent claims, such that an injunction should not be granted. As discussed above, the patentee fails to make sufficient showing of likelihood of success and a motion for preliminary injunction should be denied where the evidence presented in support of invalidity raises a substantial question. *New England Braiding Co.*, 970 F.2d at 883; *Genentech, Inc. v. Novo Nordisk*, 108 F.3d at 1364.

a) **The "Corner Tap" Feature Was Known Nearly 10 Years Before the '931 Patent**

Claim 5 of the '931 patent relates to a touchpad that can be used both as a cursor-control device, moving the cursor in relation to movement of the finger on the touchpad surface, and a button input when the touchpad surface it briefly "tapped." In particular, the system of claim 5 detects a tap in a corner of the touchpad and signals the host of the tap and the corner in which it occurred. MacKenzie Decl., ¶ 10. The utility of such a touchpad is that the touchpad surface can be used both for cursor control and to emulate input buttons, such as mouse buttons.

The elements of claim 5 have been known to those of skill in the art since what was perhaps the first laptop computer included what was perhaps the very first integrated touchpad device. Synaptics claims that the '931 patent is entitled to priority based on its October 7, 1994 filing date. DeBruine Decl., Ex. 4 (Synaptics Amended Initial Disclosure of Asserted Claims), at 3. The Gavilan portable computer was available from at least 1984. The Gavilan notebook computer included a touch pad input device. Aspects of that touchpad are described in a patent application published in the UK on November 14, 1984 – nearly *ten years* before Synaptics' alleged "invention." MacKenzie Decl., Ex. F. That application, which names Prosenko, Tabor and Ravel

1  as inventors, is discussed in Synaptics' motion.  Contrary to Synaptics' misrepresentations

2  regarding that patent, it discloses every element of claim 5 and 6 of the '931 patent.

3          Synaptics' expert, Dr. Wolfe, makes the incredible claim that the prior art, including the

4  Prosenko, "do[es] not teach the 'tap gesture' defined by 'a quick tap of the finger on the pad, of

5  short duration and involving little or no movement.'"  Wolfe Decl., ¶ 27.  Apparently Mr. Wolfe did

6  not even bother to read the Prosenko patent, which very clearly, expressly and repeatedly  discloses

7  that exact tap gesture.  According to Prosenko, rather than searching for another input key or

8  button:

9              "The operator need only ***tap the touchpad quickly***, such a tap
               being discriminated by the touchpad as a different command than a
10             longer touch which typically accompanies movement of a finger
               across the pad to make the cursor move."
11

12 2:18-17.  Prosenko discloses a method of detecting the occurrence of such a tap gesture, which in

13 addition to being of short duration also involves little or no movement.  MacKenzie Decl., ¶ 11.

14 Prosenko also detects in which corner a tap occurs, and assigns a contact in the corner a particular

15 function, such as a mouse button.  *Id*. ¶¶ 12, 14.  Prosenko discloses signals to the computer in the

16 form of data packets that indicate the occurrence of a tap and its location.  *Id*. ¶ 13.  Finally,

17 because Prosenko discloses that the corner regions may be used in place of mouse buttons,

18 generally, it discloses use of the right mouse button.  *Id*.

19          Here, there is even independent proof that those skilled in the art understood this

20 functionality was present in the Gavilan product.  An article published in April 1992 looking

21 back at the Gavilan computer, the author describes its touch panel's "solid state mouse."

22 MacKenzie Decl., Ex. N.  It described several separate areas of the touch panel to invoke specific

23 functions:

24             Tapping one of these areas with your finger called up a context-
              sensitive help screen or a menu of basic functions.
25

26 MacKenzie Decl., ¶ 17.  Even this brief article is prior art to the '931 patent and discloses the

27 steps of the asserted method claims.

28

1    Finally, U.S. Patent No. 5,666,113 to Logan (the "Logan '113 patent") also discloses the

2    claimed method. Logan discloses the operation of a touchpad that can also recognize tap

3    gestures. MacKenzie Decl., Ex. E. In a preferred embodiment a tap – a quick tap of the touch

4    pad with little or no motion – communicated to the system. *Id.* The tap is recognized as a cursor

5    motion signal. *Id.* When tapping in the corner, Logan also communicates which corner is

6    tapped, so that the appropriate command for the location is executed. In a preferred embodiment

7    Logan discloses the touchpad that doubles as a numeric keypad, such that a tap detected in a

8    corner may be used to emulate a mouse button by displaying a context sensitive menu. *Id.*, ¶ 16.

9    Each of these references taken alone describes the claimed method, and thus raises a

10   substantial question of patentability. Taken together, they clearly establish that there is no

11   difference between the prior art and the asserted claims, clearly demonstrating that the claims are

12   at least invalid as obvious. 35 U.S.C. § 103. Contrary to Synaptics' unsupported supposition,

13   there is a very serious question regarding validity of the '052 patent.

14        **b)    The '052 Patent Claims are Anticipated by the Stratos Patent**

15   Synaptics' U.S. Patent No. 5,943,052 ("the '052 patent") patent is yet another belated

16   attempt to patent well-known technology. The '052 patent describes a touchpad in which selected

17   regions are used to control "scrolling" of the display on a computer screen. For example, in the

18   Windows operating system, a program may display only part of a large document or file. Graphical

19   bars on the right side of the screen have a "slider" that can be moved up or down to scroll through

20   the document. *See* Wolfe Decl., Ex. 5; '052 patent at Fig. 1. The '052 patent describes controlling

21   a scrolling operation by moving a finger within a specific area on the touchpad – the scroll zone --

22   that corresponds to the scroll bar on the screen. In particular, when a finger (or other object) is

23   placed in the vertical area on the left most portion of the touchpad service and moved up or down,

24   the display will scroll accordingly. *Id.*, ¶ 23-25.

25   Unfortunately for Synaptics, its patent claims are very likely anticipated by U.S. Patent

26   5,748,185, assigned to Stratos Product Development Group (the "Stratos '185 patent"). Like the

27   '052 patent, Stratos discloses a touchpad with "scroll" and "pan" regions. MacKenzie Decl., Ex. F,

28   Fig. 2. Like the '052 patent, Stratos discloses that, when the finger is in the scroll zone, data

1    packets are sent to a packet processor which relays instructions to the GUI, causing the display to

2    scroll. *Id.*

3         Synaptics is correct that the Stratos '185 patent was before the patent office. Synaptics,

4    however, simultaneously disclosed the Stratos patent and then swore behind it by claiming an

5    earlier date of invention. DeBruine Decl., Ex. 5. In particular, the earliest document allegedly

6    discussing the claimed feature is dated June 5, 1996. *Id.* Stratos, however, had completed a draft

7    of its patent application clearly showing the full conception of the claimed invention on April 12,

8    1996. MacKenzie Decl., ¶ 19., Ex. F. As such, the Stratos patent is prior art and renders the

9    asserted claims invalid.

10

11         **c)    Synaptics Was Far From the First to Invent the "Edge Motion" Feature of the '411 Patent**

12         U.S. Patent No. 5,327,161 (the "Logan '161 patent") issued on July 5, 1994 from an

13    original application filed on August 9, 1989. MacKenzie Decl., Ex. H. That application date is

14    nearly two years before any priority date Synaptics could claim for the '411 patent. As such, the

15    Logan '161 patent is prior art under 35 U.S.C. § 102(e). The Logan '161 patent discloses every

16    element of asserted claim 46 of the '411 patent *as construed by the Court.* Synaptics makes much

17    of the fact that the'411 patent was considered by the patent examiner, but the fact that the Logan

18    prior art patent appears on the face of the '411 patent does not determine the inquiry. The examiner

19    initialed that he reviewed in excess of 125 prior art references – all on the same day. DeBruine

20    Decl., Ex. 6. There is no discussion of any of the prior art by the examiner, nor any indication that

21    he appreciated the disclosure of the Logan '161 patent. *Id.*, Ex. 6. More importantly, the claim

22    construction the examiner applied to the term second cursor motion signal was expressly rejected

23    by the Court in claim construction. MacKenzie Decl., ¶ 28, Ex. J. Consistent with the '411 patent

24    specification and file history, Elantech argued for a construction of the term "incremental

25    movement" in the second cursor motion signal to be calculated by the formula in the patent that

26    determined the location of the finger in the edge zone in comparison with a fixed point at the center

27    of the touchpad. '411 patent, 28:18-31; 29:1-8. The Court rejected that argument, first construing

28    "increment" to mean a calculated amount. When Elantech pointed out that its products control

1  edge motion using a constant, not calculated, amount of motion, the Court changed its construction

2  of this claim.  The construction adopted first for purposes of granting Synaptics' partial summary

3  judgment motion was "move in a series of regular consecutive additions of like or proportional size

4  or value."  *See* April 16, 2008 Order.

5      That is not the construction the PTO applied when it implicitly determined that the claims

6  were allowable.  Rather, the examiner stated that his understanding of the claims was consistent

7  with Elantech's:

> The prior art of record fails to show . . . the steps of generating a second relative
> position X signal representing the difference between the X coordinate of the
> present position of the object and an X coordinate of a fixed positions on the
> sensing plane…[o]r generating a second relative Y position signal representing
> the difference between the Y coordinate of the present position of the object and a
> Y coordinate of a fixed position on the sensing plane…

12  MacKenzie Decl., Ex. J (March 31, 1998 Notice of Allowability) at 3-4.  Thus, the examiner

13  applied a different understanding of the claim requirement than that controlling this Court's

14  determination.  As such, the PTO decision must be reviewed with the current construction.

15      Using the Court's claim construction, the Logan '161 patent anticipates the asserted claims.

16  Logan '161 describes a small touchpad that is used for cursor control.  MacKenzie Decl., Ex. H.

17  ('161 patent) at 1:21-25.  When touched by a object such as a finger or stylus, the touchpad

18  determines the X and Y coordinates – the present location – of the contact.  *Id*. at 3:35-41.  The

19  touchpad described in Logan then uses changes in the X and Y position to determine cursor motion

20  – the "first cursor motion signal" of the '411 patent.  *Id.* at 4:49-55.  Logan senses whether the

21  object moves into the "outer region proximate to an outer edge of said sensing plane."  *Id*. at 4:22-

22  25; 4:64-5:1; Fig. 3A, step 88.  When in the outer region, Logan calculates a second cursor motion

23  signal to incrementally move the cursor.  *Id*., ¶ 34.  In particular, Logan teaches using the same

24  computed dX and dY signals to continue the cursor in the same direction and velocity as when it

25  entered the border area.  *Id*.  Thus, this second cursor motion signal will continue to move the

26  cursor in a series of regular consecutive additions" of the same size.  *Id*.  Logan also discloses that

27  the cursor control will depend on finger motion with in the border area, thus combining the first

28  cursor motion signals with the second cursor motion signals.  In particular, Logan teaches the use

of dX and dY to compute the finger movement perpendicular to the outer edge, and moves the cursor using a combination of those signals and the calculated second cursor motion signals. MacKenzie Decl., ¶ 35-36.  *See Id.*, Ex. H at Fig. 3B, 5:45-66.  Because Logan discloses every element of claim 46 of the '411 patent, that claim is clearly invalid.  *Id.*, ¶ 37, Ex. I.

### d)    Synaptics Was Not the First to Invent the "Drag" Feature of the '591 patent

Claim 9 of Synaptics' asserted U.S. Patent 5,543,591 ("the '591 patent") is also very likely to be found invalid.  U.S. Patent No. 5,432,531 to Calder *et al.* ("Calder '531 patent") is based on an original application filed October 7, 1991.  MacKenzie Decl., Ex. K.  Because the priority date for the '591 patent is October 7, 1994, the Calder '531 patent constitutes prior art. The GlidePoint User's Guide  has a copyright date of 1994 and discloses a portable touch surface and technology available at the time of the '591 patent.  *Id.*, Ex. L.  Evidence shows that the GlidePoint product was publicly disclosed and offered for sale May, 1994.  *Id.*, ¶ 38, Ex. C.  The Calder '531 patent in view of the Glide Point User's Guide discloses or suggests the each and every element of claim 9 of the '591 patent.

Claim 9 of the '931 patent refers to a method for detecting a double-tap gesture in implementing a drag operation.  Such an operation is clearly shown in the GlidePoint User's Guide which teaches an implementation of the basic mouse button click operations, including a drag operation.  MacKenzie Decl., ¶ 40, Ex. L (GlidePoint User's Guide) at 6-7.  In particular, the GlidePoint User's Guide shows how to implement a drag operation by detecting the same tap and hold method of claim 9.  For example, on page 6, the GlidePoint User's Guide how to implement what it calls a "Double tap and hold."  The "double tap and hold" is the same tap and hold drag gesture as the '931 patent.  Mackenzie Decl., ¶ 41.  The GlidePoint User's Guide also refers to this "Double Tap and Drag" gesture implemented as a tap followed by a prolonged finger contact.  *Id.*

It was well-known to emulate mouse and button operations by way of tap gestures, and one of ordinary skill would have known and been able to implement the drag feature using the

1   techniques disclosed in the Calder '531 patent to maintain the drag operation of the double tap if

2   detected.  MacKenzie Decl., ¶ 43.

3          The Calder '531 patent discloses the method detecting tap gestures as used in the '591

4   patent.  The Calder '531 patent, in FIGS. 1-5 and corresponding text, discloses a method for tap

5   and double tap gestures for a touch pad system and providing x-y information to a host.

6   MacKenzie Decl., ¶ 44.  In particular, the Calder '531 patent addresses the problem of

7   implementing "button click commands" in absolute positioning devices.  Button click commands

8   include, for example, clicks and double clicks.  *Id.*  Calder identifies that this was not considered

9   possible with absolute positioning devices, such as touch screens, prior to his invention.

10  MacKenzie Decl., Ex. K (Calder '531 patent) at 1:63-65.  Thus, the Calder '531 patent teaches a

11  means for implementing button click commands (e.g., click, double click) without using a

12  physical button; i.e., via finger or stylus gestures.  *Id.*, ¶ 44, Ex. K at 2:20-24; 2:65-3:2

13         The Calder '531 patent discloses in FIGS. 2 and 4 and corresponding text a first presence

14  of a conductive object on a touch pad.  *Id.* at  4:60-62.  The Calder '531 patent discloses in FIG. 4

15  and corresponding text a first reference amount of time as "TIMEOUT."  This TIMEOUT is

16  compared with the presence of the object on the touch sensor system, namely elapsed time

17  between t2 and the transition of stimulus pressure below THOLD between t5 and t6.  MacKenzie

18  Decl., ¶ 46.  The Calder '531 patent discloses setting BCNT = 1 indicating the presence of the

19  first contact above THOLD and the duration of such contact being less than TIMEOUT.  *Id.*

20  Calder expressly states that this signal can be used as a single button click or as a mouse that

21  would select a given icon, as would be performed to start a drag operation, as shown in the

22  GlidePoint User's Guide at Figure 4-3.  *Id.*, ¶ 47.

23         The Calder '531 patent discloses that the second reference amount of time is that time

24  which remains in TIMEOUT after the t5/t6 transition noted above.  If the second presence does

25  not occur within this amount of time, BCNT is set to 0.  *Id.*, Ex. K at  6:50-52.  The Calder '531

26  patent discloses that  the second presence occurs at t8 (see FIG. 4). *Id.* at 6:34-37.  The Calder

27  '531 patent discloses that the third reference amount of time is TIMEOUT.  However, for the

28  second presence, TIMEOUT begins afresh at t8, as indicated by TIMEOUT RESET in FIG. 4.

1   *Id.* at 6:35-36. Because it was well known to implement a drag operation by way of a tap and

2   hold, as shown by the GlidePoint User's guide, one of ordinary skill would have known and

3   implemented maintaining the drag feature using the techniques disclosed in the Calder '531

4   patent to maintain the operation of the double tap if detected. MacKenzie Decl., ¶ 47. Claim 9

5   of the '931 patent is therefore invalid as obvious over the Calder '531 patent in view of the

6   GlidePoint User's Guide. *Id.*, ¶ 47, Ex. J.

**C.     Synaptics Has Not Shown Irreparable Harm Will Occur Absent An
         Injunction.**

8        Synaptics has the burden of proving irreparable injury. Synaptics presents two arguments

9   that it will suffer irreparable harm, that it has a patent and that its market share "may be a risk."

10  Motion at 12. As with the rest of its arguments, however, Synaptics has presented no evidence

11  that it is actually losing sales to Elantech, or that any claimed lost sales would be due to the

12  alleged infringement rather than to other features or qualities of the products. Synaptics presents

13  no market share data at all, and for a good reason. Elantech is a very small competitor world

14  wide, and has at most a trivial share of the market in the United States. Significantly, in its

15  public financial disclosures Synaptics does not even mention Elantech as a competitor. Rather, it

16  discusses Alps Electric, which competes with Synaptics with its GlidePoint touchpad products.

17  DeBruine Decl., Ex. 2 (Synaptics 10K). The GlidePoint product includes the features at issue

18  here, such as corner tap, scroll zone and button emulation by tapping the touchpad surface. *Id.,*

19  Ex. 3. In addition, Synaptics makes no attempt to tie any actual lost sales or lost market share to

20  itself or its competitors *as a result of the infringement*, it has not and cannot establish irreparable

21  harm. *See Sundance Inc., v. DeMonte Fabricating Ltd.*, No. 02-73543, 2007 WL 3053662 at *2 (

22  E.D. Mich. Oct. 19, 2007), *Praxair, Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440, 443-444(D. Del.

23  2007) (denying permanent injunction where patentee did not carry its burden of proof under

24  *eBay* where claims of lost market share, profits and goodwill were not supported by evidence of

25  specific sales, market share, customers or revenue lost).

26       Elantech is informed and believes that Synaptics has licensed its patents-in-suit to Alps

27  Electric. Without more, this suffices to show that Synaptics will not suffer irreparable harm if

1  Elantech is not preliminarily enjoined.  *See, e.g., High Tech Medical Instrumentation, Inc. v. New*

2  *Image Industries, Inc.,* 49 F.3d 1551, 1557 (Fed Cir. 1995) (no showing of prospective harm

3  where, among other things, patentee had offered the accused infringer a license and did not

4  contend that the defendant would be unable to pay damages); *T.J. Smith & Nephew Ltd. v.*

5  *Consol. Med. Equip Co., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (licensing technology is

6  inconsistent with the emphasis on the right to exclude in arguing irreparable harm);  *IMX Inc. v.*

7  *LendingTree, LLC*, 469 F. Supp. 2d 203, 225 (D. Del. 2007); *Paice LLC v. Toyota Motor Corp.*,

8  No. 2:04-CV-211-DE, 2006 WL 2385139 at *4 (E.D. Tex., Aug. 16, 2006), *rev'd on other*

9  *grounds*, 504 F.3d 1293 (Fed. Cir. 2007) (licensing technology is inconsistent with the right to

10  exclude and there is no irreparable harm to patentee where defendant's infringement causes no

11  harm to patentee's ability to license its technology).  In light of Synaptics' willingness to license

12  its patents for royalties, continued sales by Elantech will only benefit Synaptics if Elantech is

13  ultimately found liable for infringement, by increasing the base on which Synaptics will collect

14  royalties.

15       **D.**    **The Balance of Hardships Favors Denial of the Injunction.**

16       Synaptics sole argument regarding the balance of the hardships is that, because Elantech

17  is a relatively small company, disruption of its sales would not be a hardship.  Motion at 13-14.

18  That position makes no sense and again is not supported by any evidence.  An injunction would

19  disrupt Elantech's legitimate sales, nearly all of which are made overseas for inclusion in

20  products that will never be used in the United States.  The hardship on Elantech in lost sales that

21  have no impact on Synaptics U.S. patent rights would be a significant hardship to Elantech

22  precisely because it is relatively small.  As discussed below, Synaptics offers no evidence to

23  support its conclusory claim that its market share and good will are being adversely impacted by

24  Elantech.  Synaptics has failed to show any hardship, much less that the balance tips at all in its

25  favor.

26

27

28

1

**E.    The Public Interest Favors Denying The Injunction Because the Patents Are Likely Invalid and Enforcement Would Harm Competition and thus Consumers.**

2

3    The only public interest that Synaptics cites is the interest in favor of patent protection.

4    Yet the Supreme Court has determined that this interest alone is not sufficient to support an

5    injunction.  *eBay*, 547 U.S. at 392.  Moreover, the public interest is not served if there is a

6    substantial question as to their validity of the patent asserted.  *Abbott Labs. v. Andrx Pharma,*

7    *Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("as a substantial questions of patent validity has been

8    raised…the public interest benefits from a denial of the injunction").  In fact, "[t]here is a

9    stronger public interest in the elimination of invalid patents than in the affirmation of a patent as

10    valid."  *Nestier Corp., v. Menasha Corp.-Lewisystems Div*., 739 F.2d 1576, 1581 (Fed. Cir.

11    1984).  Nor is the public interest served if an injunction is issued when the patentee fails to

12    establish a likelihood of success on the merits.  *Abbott Labs*, 452 F.3d at 1348.  Here, an

13    injunction could disrupt the legitimate business of third party computer manufacturers who

14    currently purchase Elantech touchpads for inclusion in their products.  As discussed above, those

15    touchpads, and the computers that incorporate them, have extensive non-infringing uses.  In fact,

16    as discussed above, there is no evidence of that the allegedly infringing features are even used in

17    the United States, if at all.  The injunction requested by Synaptics would at a minimum cause

18    disruption and confusion among those legitimate third party manufacturers.  In light of the utter

19    lack of evidence supporting the issuance of the injunction, those third party interests weigh

20    heavily against issuing the injunction.  Elantech has raised substantial questions of validity as to

21    all the asserted patent claims, and Synaptic has not established a likelihood of success on the

22    merits.  As such, the injunction should be denied.

23

24

25

26

27

28

1

2    **III.    CONCLUSION**

3         For the reasons set forth above, the Court should deny the plaintiff's motion for a

4    preliminary injunction.

5

6    Dated:  June 13, 2008                    AKIN GUMP STRAUSS HAUER & FELD LLP

7
                                             By:_____/s/_____
8                                                    Sean P. DeBruine

9                                            Attorneys For Plaintiff
10                                           ELANTECH DEVICES CORPORATION

11   6252226

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28