1   KARL J. KRAMER (CA SBN 136433)
    ERIKA L. YAWGER (CA SBN 234919)
2   LAURA R. MASON (CA SBN 252251)
    MORRISON & FOERSTER LLP
3   755 Page Mill Road
    Palo Alto, California 94304-1018
4   Telephone: 650-813-5600
    Facsimile: 650-494-0792
5   KKramer@mofo.com

6   Attorneys for Defendant and Counterclaimant
    SYNAPTICS, INC.
7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   SAN JOSE DIVISION

11

12  ELANTECH DEVICES CORPORATION, a          Case No.    C06-01839 PVT
    corporation existing under the laws of Taiwan,
13  R.O.C.,                                  SUPPLEMENTAL
                                             DECLARATION OF ANDREW
14          Plaintiff,                       WOLFE Ph.D. IN SUPPORT OF
                                             SYNAPTICS' MOTION FOR
15      v.                                   PRELIMINARY INJUNCTION

16  SYNAPTICS, INC., a Delaware corporation; Date:    June 24, 2008
    AVERATEC, INC., a California corporation; and  Time:    2:00 p.m.
17  PROSTAR COMPUTER, INC., a California      Dept:    Courtroom 5, 4th Floor
    corporation,                             Magistrate Judge Patricia V. Trumbull
18
            Defendants.
19

20  AND RELATED COUNTERCLAIMS

21

22

23

24

25

26

27

28

1    I, Andrew Wolfe, Ph.D., declare and state as follows:

2    1.    I have been retained by Synaptics, Inc. ("Synaptics") as an expert witness in this

3    patent infringement lawsuit. The patents at issue in this case are directed to the use of touch-

4    sensor devices to detect, interpret and convey information relating to gestures performed on

5    touch-sensor devices. In this Supplemental Declaration, I will address whether the invalidity

6    claims made in Elantech's Opposition To Synaptics' Motion for Preliminary Injunction, and

7    the references cited therein, raise substantial questions of validity concerning claim 9 of the

8    '591 Patent, claims 14 and 18 of the '052 Patent, claims 5 and 6 of the '931 Patent, and claims

9    46 and 52 of the '411 Patent.

10    2.    In preparation of this Declaration, I have reviewed the relevant patents and

11    prosecution histories, the Court's April 6, 2007 claim construction order, the Court's April 16,

12    2008 Memorandum and Order Re: Synaptics's Partial Summary Judgment Motions ("April 16

13    Order"), Elantech's Amended Preliminary Invalidity Contentions, the references cited in

14    Elantech's Amended Preliminary Invalidity Contentions, Elantech's Opposition to Synaptics'

15    Motion for Preliminary Injunction ("Elantech's Opposition"), the Declaration of Dr. Ian Scott

16    MacKenzie in Support of Elantech's Opposition with Exhibits A-O, and all of the other

17    documents and exhibits filed in support of Elantech's Opposition.

18    **A.    "Drag" – Claim 9 Of The '591 Patent**

19    3.    Elantech relies on two references that were previously not cited in Elantech's

20    Invalidity Contentions with respect to claim 9 – U.S. Patent No. 5,432,531 to Calder ("the Calder

21    reference"), and an unauthenticated document called the "GlidePoint User's Guide." I have

22    reviewed these references and will provide some examples of why they do not disclose all of the

23    elements of claim 9 of the '591 Patent. This analysis is not intended to be exhaustive, however,

24    and it does not include all of the reasons why these references do not render claim 9 of the '591

25    Patent invalid.

26    4.    As an initial matter, the "GlidePoint User's Guide" does not appear to be prior art.

27    It has a copyright date of "1994," but does not include any additional information that would

28    suggest that it was published prior to the January 7, 1994 invention date of the '591 patent. In

WOLFE SUPP. DECL ISO SYNAPTICS' MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C06-01839-PVT
pa- 1262623

1

1  addition, the GlidePoint finger mouse was disclosed to the patent office during prosecution,

2  considered by the examiner, and discussed in the text of the '591 patent itself. Therefore, it does

3  not raise substantial questions of validity.

4      5.    Furthermore, these two references do not disclose each of the elements of claim 9

5  of the '591 patent. Specifically, the "comparing the duration of said first presence" limitation is

6  not disclosed anywhere in the cited references. Notably, the portions of Calder cited in the

7  MacKenzie Declaration (Ex. K at 6:25-28) do not even discuss the "TIMEOUT" variable as Dr.

8  MacKenzie claims, much less disclose a comparison with the "duration of said first presence" as

9  required by the patent claim. The "TIMEOUT" function disclosed in Calder is not a "reference

10  amount of time" for comparison as required by claim 9. Instead, the "TIMEOUT" variable is

11  used to reset certain count variables. (See MacKenzie Decl., Ex. K at 5:15-17.) Similarly,

12  Calder does not disclose the second comparing step in claim 9, namely, "comparing the duration

13  between said first presence and second presence with a second reference amount of time." The

14  "TIMEOUT" variable is never used to compare to the durations of the first and second presences.

15      6.    Similarly, the "GlidePoint User's Guide" vaguely refers to a "double tap and drag"

16  operation, but does not disclose the elements in claim 9 of the '591 patent. Elantech pointed to no

17  evidence that discloses the timing and signal features claimed in the '591 patent. In fact, Dr.

18  MacKenzie states in his declaration that despite having "numerous versions of the code and

19  hundreds of files code corresponding to this GlidePoint product," he did not review the code "to

20  determine where each of the claimed elements occurs." (MacKenzie Decl., ¶42.) There is simply

21  no evidence to support Dr. MacKenzie's conjecture, and the GlidePoint User's Guide does not

22  disclose the required elements of the claim.

23      7.    Finally, Elantech did not identify a specific motivation or reason to combine these

24  two references, or any prior art that discloses such a motivation. Based on my expertise in the

25  field at the time of the invention, I do not believe that a person of ordinary skill in the art would

26  have had a motivation or reason to combine these two references to achieve the "drag" gesture

27  claimed in the '591 Patent. The Calder reference is related to IBM touch screens. There would

28  have been no reason to combine this reference with the GlidePoint finger mouse, which is a

1  substantially different technology.  Accordingly, it is my opinion that there is no substantial

2  question of validity as to claim 9 of the '591 patent.

3      **B.    "Scroll Zone" – Claims 14 And 18 Of The '052 Patent**

4      8.    Elantech relies on one reference that was previously not cited in Elantech's

5  Invalidity Contentions – an unauthenticated "earlier draft" of the patent application that issued as

6  U.S. Pat. No. 5,748,185 ("the Stratos reference").  I have reviewed this references and will

7  provide some examples of why it does not disclose all of the elements of claims 14 and 18 of the

8  '052 Patent.  This analysis is not intended to be exhaustive, however, and it does not include all of

9  the reasons why these references do not render claims 14 and 18 of the '052 Patent invalid.

10      9.    As an initial matter, this Stratos reference may not constitute prior art since the

11  document is unauthenticated, and its purported creation date cannot be verified.  Furthermore,

12  Elantech has made no showing of diligence in reduction to practice from April 1996 to the

13  constructive date on the '185 patent – July 3, 1996.  At best, this Stratos reference might show

14  conception, but there is no evidence that shows diligence in reduction to practice.  Such evidence

15  is insufficient to constitute a substantial question of validity.

16      10.    Nevertheless, the Stratos reference does not disclose all of the elements in claims

17  14 and 18 of the '052 Patent.  With respect to the first claim element, Elantech cites three portions

18  of the Stratos reference.  First, Elantech cites SPD 00641, which merely references "electrical

19  signals corresponding to the user's contact with different locations on the touchpad."  This does

20  not disclose sending data packets representing object motion as required by the first element of

21  claim 14.  Second, Elantech cites a scroll control signal at SPD 00642-643, but this signal reports

22  the X-Y location of the contact on the touchpad, not object motion, and also does not disclose

23  data packets.  Third, Elantech cites to the "control packets" shown in Figure 4 as a disclosure of

24  data packets representing object motion.  Figure 4 is an "exemplary software routine that is

25  operative in computer 60 to allow the computer to receive and interpret the control signals from

26  touchpad 50."  Thus, the "control packets" generated by the computer (not the touchpad) in

27  Figure 4 cannot be object motion data packets forwarded from a "cursor control input device" as

28  required by the claims.

11.    Elantech cites identical evidence for the first and second elements of claim 14. These two steps are distinct, however, and incorporate distinct data structures, namely, a "plurality of data packets" and a "plurality of messages." Neither data structure is disclosed in the Stratos reference. None of the references to Stratos disclose a "plurality of messages." Specifically, the electrical signals discussed at SPD 00641, the scroll control signals discussed at SPD 00642, and Figure 4 all fail to disclose a "plurality of messages."

12.    The Stratos reference also has no disclosure of limitations 3 and 4 of claim 14. Specifically, there is no disclosure that any of the alleged messages are "forwarded to an application controlling an active window." The only disclosure in Stratos is that the "scroll control signal" is provided to computer 60 – not that this is forwarded to an application, nor that it constitutes a message.

13.    Elantech makes no coherent argument concerning how the Stratos reference discloses the functions described in claim 18. In its new claim chart for the Stratos reference, Elantech cites to "electrical signals corresponding to the user's contact with different location of the touchpad." This text does not describe the function of "assessing whether stimuli represents a motion beginning within, but moving away from said scrolling zone" as required by claim 18. Accordingly, it is my opinion that there is no substantial question of validity as to claims 14 and 18 of the '052 Patent.

**C.    "Corner Tap" – Claims 5 And 6 Of The '931 Patent**

14.    Elantech relies on two references – UK Patent Application GB 2139762A ("Prosenko"), and U.S. Patent No. 5,666,113 ("Logan"). Attached as Exhibit D to Dr. MacKenzie's Declaration is a new claim chart for the Prosenko reference. Many of Elantech's contentions concerning Prosenko have changed considerably, including many of the cited portions of the reference. In addition, the Logan reference was never previously disclosed or charted as prior art to claims 5 and 6 of the '931 Patent. I have reviewed these references and will provide some examples of why they do not disclose all of the elements of claims 5 and 6 of the '931 Patent. This analysis is not intended to be exhaustive, however, and it does not include all of the reasons why these references do not render claims 5 and 6 of the '931 Patent invalid.

1    15.    Generally, Elantech ignores the important difference between a "tap" and a

2    "touch." As agreed by the parties, a "tap" consists of a "quick tap of the finger on the pad, of

3    short duration and involving little or no X or Y finger motion...." (See Wolfe Decl., ¶ 27; Docket

4    No. 63-2, Joint Claim Construction Chart, Ex. A, pg. 1, Item 1.)

5    16.    The Prosenko reference does not disclose all of the elements of claims 5 and 6 of

6    the '931 Patent. The defined regions, including areas 63, 65, 67, 77, and 79 cited by Elantech, do

7    not detect "tap" gestures as defined by the parties in this case. The Gavilan device described in

8    Prosenko contained a touch panel with an overlay of a keypad with numbers or letters that could

9    be touched or pressed to activate the button. Touches in these physical button regions did not

10   have the requisite time and motion requirements, which is very different from the "tap gesture"

11   claimed in Synaptics' patents under the parties' agreed claim construction. (See Synaptics, Inc's

12   Reply Claim Construction Brief Concerning the Synaptics Patents, Appx. A., Third Amended

13   Joint Claim Construction Chart, pg. 1, Term 1 (Docket No. 79) (agreeing to define "tap gesture"

14   as "a quick tap of the finger on the pad, of short duration and involving little or no X or Y finger

15   motion, that is presented to the host as a brief click of the mouse button").)

16   17.    Everything in Prosenko that describes detection of touch gestures is specific to

17   area 63 in Figure 3. (See MacKenzie Decl., Ex. C at 6:1-6:5.) Box 63 in Figure 3 is an interior,

18   centrally located portion of the touch sensor pad. The '931 patent claims require detection of the

19   actual corner of a touch sensor pad, not the corners of an interior region of a touch sensor pad like

20   area 63. There is no teaching anywhere in Prosenko that the corners of area 63 are defined to

21   have special kinds of taps – or even touches – reported. Indeed, there is no concept whatsoever of

22   reporting taps in some subpart (such as corners) of the given area.

23   18.    The actual corners of the touch sensor pad in Prosenko are not only well outside

24   the bounds of box 63, but they are not even defined regions on the touch sensor pad at all. Thus,

25   the corners of box 63 and regions 65, 67, 77, and 79 are not the "corner(s) of said touch-sensor

26   pad" as claimed in the '931 patent.

27   19.    Furthermore, Elantech has presented no evidence that the Prosenko reference

28   discloses the "detecting in which of at least one corner of the touch-sensor pad said tap gesture

1    occurred" or "sending a signal to the host indicating the occurrence of said tap gesture and in

2    which of at least one corner of said touch-sensor pad said tap gesture occurred" limitations.

3    There is no evidence that Prosenko distinguishes the corners of area 63 from any other portion of

4    that defined region. Since there is no "corner" region defined in area 63, the Prosenko reference

5    does not teach "detecting in which of at least one corner." Similarly, a touch in touch surface

6    area 63 cannot result in a signal being sent to the host including "in which of at least one corner

7    of said touch-sensor pad said tap gesture occurred" because Prosenko does not teach sending any

8    location information concerning tap gestures in box 63. The text cited by Elantech, (MacKenzie

9    Decl., Ex. C at 2:52-65), does not apply to touch surface area 63; it applies to discrete push-

10   buttons in other areas of the touch sensor. Similarly, Figure 7 and the cited passage at 5:42-49

11   also do not apply to area 63, but rather to areas 65-79. (*See* MacKenzie Decl., Ex. C at 5:39-41.)

12       20.    The Prosenko reference also fails to disclose the "right mouse button click"

13   limitation of claim 6 of the '931 Patent. The two sections of Prosenko cited by Elantech – a

14   "push button like signal" in 6:38-43 and "a two position switch for supplying instructions to the

15   computer system" in 1:81-83 – are not disclosures of a "right mouse button click" as defined by

16   claim 6.

17       21.    The Logan reference similarly fails to disclose every element of claims 5 and 6 of

18   the '931 Patent. Logan does not disclose "detecting in which of at least one corner of the touch-

19   sensor pad said tap gesture occurred" or "sending a signal to the host indicating the occurrence of

20   said tap gesture and in which of at least one corner of said touch-sensor pad said tap gesture

21   occurred" as required by claim 5. Quite simply, Logan does not define or report taps in corners at

22   all. Touches as disclosed in Logan are only used to switch the mode on the touch sensor to a

23   "keypad" mode. Once in keypad mode, the Logan reference teaches that defined areas may be

24   touched – not "tapped" – to report button information. These touches are not tap gestures as

25   required by the claims because they have no time or motion limitations. (*See* MacKenzie Decl.,

26   Ex. E at 3:53-58.)

27       22.    Finally, Elantech did not identify a specific motivation to combine these two

28   references, or any prior art that discloses such a motivation. Based on my expertise in the field at

1  the time of the invention, I do not believe that a person of ordinary skill in the art would have had

2  a motivation to combine these two references to achieve the "corner tap" gesture claimed in the

3  '931 Patent . If anything, Prosenko teaches away from the inventions claimed in claims 5 and 6 of

4  the '931 patent because Prosenko provided distinct push buttons near the corners of the touch

5  sensor which did not detect tap gestures as an alternative to detecting a tap in a defined corner

6  region of a tap-detecting touchpad.  Accordingly, it is my opinion that Elantech has failed to raise

7  a substantial question of validity concerning claims 5 and 6 of the '931 Patent.

8          **D.     "Edge Motion" – Claims 46 And 52 Of The '411 Patent**

9          23.     Elantech relies on one reference – U.S. Patent No. 5,327,161 ("Logan"), which

10  was disclosed to the patent office during prosecution, considered by the examiner, and listed on

11  page 2 of the '411 Patent.  I have reviewed this reference and will provide some examples of why

12  it does not disclose all of the elements of claims 46 and 52 of the '411 Patent.  This analysis is not

13  intended to be exhaustive, however, and it does not include all of the reasons why these

14  references do not render claims 46 and 52 of the '411 Patent invalid.

15          24.     Elantech claims that the Examiner of the '411 Patent had a different understanding

16  of the claim language than that applied by the Court.  (*See* MacKenzie Decl., ¶¶ 27, 28; Ex. J.)

17  Based on the prosecution history of the patent, and the specification and claims of the '411 Patent

18  itself, I believe this argument is without merit.  The Examiner made no statements during

19  prosecution to suggest that prior art was relevant to his decision to allow the asserted claims (46

20  and 52).  The Examiner never rejected or required amendment of any of the 64 claims issued.

21  The March 31, 1998 Notice of Allowability cited by Elantech allowing all claims is the first

22  communication sent by the Examiner, and there is no suggestion that the Examiner considered

23  any of the prior art cited to be troubling or relevant to the allowability of the asserted patent

24  claims.  Furthermore, the language cited by Elantech in the Notice of Allowability actually tracks

25  the specific language of two other claims, claims 30 and 32, and not the asserted patent claims.

26  The examiner obviously had those claims in mind when stating his reasons for allowance.

27          25.     There is no evidence from the '411 Patent prosecution history that the examiner

28  understood the claimed invention to be limited to two specific embodiments noted in the

WOLFE SUPP. DECL. ISO SYNAPTICS' MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C06-01839-PVT
pa- 1262623

7

specification of the '411 patent.  In fact, these embodiments are actually specifically claimed elsewhere in the patent, such as in claims 9, 10, 17, 54, 59, 60.  It is my understanding that Elantech previously argued during claim construction that the term "incrementally move" should be construed narrowly in accordance with equations 12 and 13 from the patent specification, but that the Court specifically rejected all such arguments.  (Claim Construction Order, 6:14-7:5; April 16, 2006 Summary Judgment Order, 7:7-8:9.)

26.     In addition, the Logan reference relied upon by Elantech discloses an invention that is substantively different than that claimed in the '411 Patent.  Claims 46 and 52 require that the finger motion signals for the interior and exterior regions of the touchpad be combined to create the edge motion gesture.  Logan merely discloses two different types motion signals for two different regions of the touchpad.  No combination of signals is disclosed in Logan.

27.     Furthermore, even if Elantech's identification of motion signals is accurate, Elantech has merely pointed to first cursor motion signals in blocks 78, 82, 84, and 86 and second cursor motion signals in blocks 90, 100, and 102.  There is simply no disclosure in Logan that any of these motions signals are combined.  (Note that I previously discussed why the Logan patent does not invalidate the asserted claims of the '411 Patent in my Declaration in Support of Synaptics' Motion for Preliminary Injunction. (*See* Docket No. 323 at ¶ 36.))  Accordingly, it is my opinion that Elantech has failed to raise a substantial question of validity concerning claims 46 and 52 of the '411 Patent.


I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.  Executed on
6/18/08 _____, in Cupertino, California.


Andrew Wolfe, Ph.D.