1  KARL J. KRAMER (CA SBN 136433)
   ERIKA L. YAWGER (CA SBN 234919)
2  LAURA R. MASON (CA SBN 252251)
   MORRISON & FOERSTER LLP
3  755 Page Mill Road
   Palo Alto, California 94304-1018
4  Telephone: 650.813.5600
   Facsimile: 650.494.0792
5  KKramer@mofo.com

6  Attorneys for Defendant and Counterclaimant
   SYNAPTICS, INC.
7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  ELANTECH DEVICES CORPORATION, a          Case No.    C06-01839 PVT
    corporation existing under the laws of Taiwan,
13  R.O.C.,                                   CORRECTED[1] REPLY BRIEF IN
                                              SUPPORT OF SYNAPTICS'
14                 Plaintiff,                  MOTION FOR PRELIMINARY
                                              INJUNCTION
15       v.
                                              Date:     June 24, 2008
16  SYNAPTICS, INC., a Delaware corporation;   Time:     2:00 p.m.
    AVERATEC, INC., a California corporation; and   Dept:     Courtroom 5, 4th Floor
17  PROSTAR COMPUTER, INC., a California      Magistrate Judge Patricia V. Trumbull
    corporation,
18
                   Defendant.
19

20  AND RELATED COUNTERCLAIMS

21

22

23

24

25

26       _____
         [1] This version corrects a citation error for the proposition found on page 3, lines 21-23,
27  changing the citation from "*Refac Int'l, Ltd. v. IBM*, 798 F.2d 459, 230 USPQ 537 (Fed. Cir.
    1986)" to "*Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986), *rev'd
28  on other grounds*, 872 F.2d 407 (Fed. Cir. 1989)."  This is the only change.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 2

      A.    Synaptics Has Shown Likelihood Of Success On Infringement .......................... 2

            1.    The Evidence Shows Direct Infringement .................................... 3

            2.    The Evidence Shows Inducement of Infringement ....................... 3

      B.    Elantech Has Not Raised A Substantial Question Of Validity ............................ 6

            1.    Elantech's New Invalidity Arguments Should Be Ignored ........................ 7

            2.    There Are No Substantial Questions on Validity ........................ 8

                  a.    '591 Patent:  Drag Gesture ............................................................. 8

                  b.    '052 Patent:  Scroll Zone ............................................................... 9

                  c.    '931 Patent:  Corner Tap ............................................................. 10

                  d.    '411 Patent:  Edge Motion............................................................ 12

            3.    Synaptics Will Suffer Irreparable Harm...................................... 13

            4.    The Balance of Hardships Tips in Synaptics' Favor ................. 14

            5.    Public Interest Weighs in Favor of an Injunction...................... 15

III.  CONCLUSION ..................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*800 Adept, Inc. v. Murex Secs., Ltd.*,
5      505 F. Supp. 2d 1327 (M.D. Fla. 2007) .................................................................. 6

6
*Al-Site Corp. v. Cable Car Sunglasses*,
     911 F. Supp 410 (N.D. Cal. 1994)........................................................................ 15

7
*Atlas Powder Co. v. Ireco Chems.*,
8      773 F.2d 1230 (Fed. Cir. 1985) ............................................................................ 2

9
*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
10      55 F.3d 615 (Fed. Cir. 1995) ............................................................................... 6

11
*Canon Computer Sys. v. Nu-Kote Int'l, Inc.*,
     134 F.3d 1085 (Fed. Cir. 1998) .......................................................................... 13

12
*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
13      145 F.3d 1303 (Fed. Cir. 1998) ............................................................................ 3

14
*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
15      2004 U.S. Dist. LEXIS 27643 (C.D. Cal. Sept. 27, 2004) ...................................... 6

16
*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
     363 F.3d 1263 (Fed. Cir. 2004) ............................................................................ 4

17
*E.I. DuPont De Nemours & Co. v. Monsanto Co.*,
18      903 F. Supp. 680 (D. Del. 1995), *aff'd without op.*, 92 F.3d 1208 (Fed. Cir. 1996) ................ 5

19
*Gillette Co. v. Energizer Holdings, Inc.*,
     405 F.3d 1367 (Fed. Cir. 2005) ............................................................................ 2

20
*H.H. Robertson v. United Steel Deck*,
21      820 F.2d 384 (Fed. Cir. 1987) ........................................................................... 14

22
*Hamilton v. State Farm Fire & Cas. Co.*,
23      270 F.3d 778 (9th Cir. 2001)................................................................................ 3

24
*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
     49 F.3d 1551 (Fed. Cir. 1995) ........................................................................... 14

25
*Hilgraeve, Inc. v. Symantec Corp.*,
26      271 F. Supp. 2d 964 (E.D. Mich. 2003) ............................................................... 8

27
*Hybritech, Inc. v. Abbott Labs.*,
28      849 F.2d 1446 (Fed. Cir. 1988) .......................................................................... 15

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*IMX Inc. v. LendingTree, LLC,*
    469 F. Supp. 2d 203 (D. Del. 2007) ..................................................... 14

4

*Jepson, Inc. v. Makita USA, Inc.,*
    1994 U.S. Dist. LEXIS 21622 (C.D. Cal. May 27, 1994) ....................... 6

5

6

*LG Elecs., Inc. v. Q-Lity Computer, Inc.,*
    211 F.R.D. 360 (N.D. Cal. 2002) ........................................................... 7

7

8

*McGinley v. Franklin Sports, Inc.,*
    262 F.3d 1339 (Fed. Cir. 2001) ..................................................... 8, 12

9

10

*Michalic v. Cleveland Tankers, Inc.,*
    364 U.S. 325 (1960) ............................................................................. 4

11

*Moleculon Research Corp. v. CBS, Inc.,*
    793 F.2d 1261 (Fed. Cir. 1986) .......................................................... 3, 5

12

13

*Nat'l Instruments Corp. v. Mathworks, Inc.,*
    113 Fed. Appx. 895 (Fed. Cir. 2004) .................................................... 6

14

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ............................................................................. 3

15

16

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
    467 F.3d 1355 (Fed. Cir. 2006) ............................................................ 7

17

18

*Oak Indus., Inc. v. Zenith Elecs. Corp.,*
    726 F. Supp. 1525 (N.D. Ill. 1989) ...................................................... 6

19

*Paice LLC v. Toyota Motor Corp.,*
    2006 WL 2385139 (E.D. Tex., Aug. 16, 2006) ..................................... 14

20

21

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
    411 F. Supp. 2d 470 (D. Del. 2006) ................................................... 4, 5

22

23

*Pittway v. Black & Decker,*
    667 F. Supp. 585 (N.D. Ill. 1987) ........................................................ 6

24

25

*Rackable Sys., Inc. v. Super Micro Computer, Inc.,*
    2007 U.S. Dist. LEXIS 33824 .............................................................. 8

26

*Rissetto v. Plumbers & Steamfitters Local 343,*
    94 F.3d 597 (9th Cir. 1996) ................................................................. 3

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*,
531 F. Supp. 2d 1084 (N.D. Cal. 2007)......................................................................... 3

4

5

*Sick A.G. v. Omron Scientific Techs., Inc.*,
2007 WL 1223675 (N.D. Cal. Apr. 24, 2007)................................................... 9, 12

6

*T.J. Smith & Nephew Ltd. v. Consol. Med. Equip. Co., Inc.*,
821 F.2d 646 (Fed. Cir. 1987) ................................................................................... 14

7

8

*Tate Access Floors v. Interface Architectural Res.*,
279 F.3d 1357 (Fed. Cir. 2002) ................................................................................. 14

9

10

*Thomas v. Bible*,
983 F.2d 152 (9th Cir. 1993) ....................................................................................... 3

11

*U.S. Surgical Corp. v. Origin Medsystems, Inc.*,
1993 U.S. Dist. LEXIS 17180 (N.D. Cal. Jan. 12, 1993)....................................... 15

12

13

*W.L. Gore v. Garlock*,
842 F.2d 1275 (Fed. Cir. 1988) ................................................................................... 6

14

15

*Yodlee, Inc., v. Cashedge, Inc.*,
2007 U.S. Dist. LEXIS 58872 (N.D. Cal. August 6, 2007) ...................................... 7

16

*Zygo Corp. v. Wyko Corp.*,
79 F.3d 1563 (Fed. Cir. 1996) ..................................................................................... 5

17

18

**OTHER AUTHORITIES**

19

Patent L.R. 3-3................................................................................................................ 7, 8

20

Patent L. R. 3-6................................................................................................................... 7

21

Patent L.R. 3-6(b)............................................................................................................... 7

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

2    Earlier this year, Elantech was granted a preliminary injunction against Synaptics based

3    on a finding of infringement of a single patent claim.  There was no evidence of any direct

4    infringement in the United States, but the Court nevertheless found that the mere inference of

5    possible infringement in the United States was enough to establish a likelihood of success on the

6    merits.  In its present motion, Synaptics has presented much stronger evidence of infringement,

7    patent validity, and irreparable harm than did Elantech, and is equally entitled to an injunction.

8    Elantech does not deny that its touchpads are currently offered for sale and sold in the

9    U.S. in various notebook computers.  (*See* Declaration of Andrew Wolfe Ph.D. in Support of

10    Synaptics' Motions for Summary Judgment ("Wolfe SJ Decl.") (Docket No. 236), 3:3-5, 3:14-15,

11    26:12-14, 31:22-26); Kramer Declaration in Support of Synaptics' Motion for Preliminary

12    Injunction ("Kramer PI Decl."), ¶ 4; Declaration of Kenneth Geisler in Support of Synaptics'

13    Motion for Preliminary Injunction ("Geisler PI Decl."), ¶ 3.)  Elantech also does not deny that it

14    participated in the Consumer Electronics Show in Las Vegas in January 2008, and was filmed

15    demonstrating its touchpad technology at the show.  (Declaration of Naimh Conlon in Support of

16    Synaptics' Motion for Preliminary Injunction ("Conlon Decl."), ¶¶ 2-7.)  Elantech does not deny

17    that it prominently features the "drag," "scrolling," "corner tap," and "edge motion" features in its

18    product advertising and instructions.  (Kramer PI Decl., Ex. 2.)  Moreover, since Synaptics filed

19    this motion, ASUS Computer International launched a new notebook computer in the United

20    States that contains infringing Elantech touchpads.  (*See* Declaration of Kenneth Geisler in

21    Opposition to Motion to Take Preliminary Injunction Off-Calendar (Docket No. 329) ("Geisler

22    Opp. Decl."), ¶¶ 3, 4; Declaration of Erika L. Yawger In Support of Synaptics' Motion for

23    Preliminary Injunction ("Yawger Decl."), Ex. H.)

24    Elantech has not proven that Synaptics' patents, which are entitled to a presumption of

25    validity, are substantially likely to be found invalid.  Most of Elantech's invalidity arguments are

26    improper arguments that were never previously disclosed in Elantech's concededly deficient final

27    invalidity contentions.  None of Elantech's invalidity arguments raises a substantial question of

28    invalidity.  A preliminary injunction should be granted to prevent further harm to Synaptics.

## II.    ARGUMENT

### A.    Synaptics Has Shown Likelihood Of Success On Infringement

At the preliminary injunction stage, a plaintiff must make a "clear showing" that it is "reasonably likely" at trial to meet its burden of proving infringement. *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005). The standard of proof for a preliminary injunction is necessarily lower than what is required at trial. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985). Elantech does not dispute Judge Breyer's ruling that the accused products meet all of the claim limitations of the drag, corner tap, edge motion, and scrolling features of Synaptics' patents.[2]  Thus, to show a likelihood of success on infringement, Synaptics need only show that it will *likely prevail* in proving that Elantech has directly infringed Synaptics' patents or that Elantech is inducing others to infringe.  Synaptics has shown both.

Synaptics has shown infringement with far better evidence than Elantech presented in support of its own preliminary injunction motion, which was granted in March 2008.  The only proof Elantech offered in support of its motion for preliminary injunction was that its own employee purchased a notebook computer with a Synaptics touchpad at retail in the United States and then *modified it* in Taiwan so that it reported multiple fingers to the host CPU.  (*See* Docket No. 158, Declaration of Teng-Yen Wu in Support of Elantech's Motion for Summary Judgment of Infringement, ¶¶ 3-5.)  Elantech never offered any proof of direct infringement in the United States, and never presented evidence of instructions that would have taught notebook *users* how to enable and operate the multiple finger gesture in Synaptics' touchpads.  In fact, there was no evidence that the touchpad tested by Elantech even contained the Type 2 enabled code that the Court found to infringe rather than the Type 1 code that the Court found did not infringe as a

---

[2] The Order states:

"Synaptics's motion for partial summary judgment that use of the corner tap feature of Elantech's touchpads infringes claims 5 and 6 of Synaptics's '931 patent is granted.  Synaptics's motion for partial summary judgment that use of the scroll zone feature of Elantech's touchpads infringes claims 14 and 18 of Synaptics's '052 patent is granted. Synaptics's motion for partial summary judgment that use of the edge motion feature of Elantech's touchpads infringes claims 46 and 52 of Synaptics's '411 patent is granted….Synaptics's motion for partial summary judgment that use of the drag feature of Elantech's touchpads infringes claim 9 of Synaptics's '591 patent is granted."  (April 16 Order at 20.)

1    matter of law.  This Court's ruling that such evidence is sufficient to support a preliminary

2    injunction is the "law of the case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

3    Moreover, the doctrine of judicial estoppel precludes Elantech from "gaining an unfair advantage

4    by asserting one position, and then later seeking an advantage by taking a clearly inconsistent

5    position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing

6    *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996)); *New*

7    *Hampshire v. Maine*, 532 U.S. 742, 750-75 (2001).  Elantech is precluded from taking a different

8    position since it benefited from the preliminary injunction standard the Court previously applied.

9               **1.      The Evidence Shows Direct Infringement**

10        Elantech does not deny that its employees were in fact using at least the infringing "drag"

11   gesture on an Elantech touchpad at the January 2008 Consumer Electronics Show in Las Vegas,

12   as shown in a video widely circulated online.  (Conlon Decl., Ex. A.)  Despite its suggestion to

13   the contrary, Elantech cannot avoid injunction by relying on its own persistent refusal to provide

14   the discovery sought by Synaptics.  (Yawger Decl. ¶¶ 10, 13; Ex. G.)  Synaptics has gathered and

15   continues to gather the necessary evidence to prove additional acts of direct infringement at trial.

16   (*Id.*)  For purposes of this motion for preliminary injunction, however, the issue is simply whether

17   there is a likelihood of success.  Since Elantech does not deny the evidence showing that it has

18   directly infringed Synaptics' patents, Synaptics is likely to succeed in proving infringement.

19               **2.      The Evidence Shows Inducement of Infringement**

20        Elantech misstates the law concerning proof of inducement of infringement of method

21   claims.  Inducement of infringement of a method claim of a patent may be established by

22   circumstantial evidence that direct infringement occurs as a result of the accused infringer's acts.

23   *See Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986), *rev'd on other*

24   *grounds*, 872 F.2d 407 (Fed. Cir. 1989); *see also Semiconductor Energy Lab. Co. v. Chi Mei*

25   *Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1112 (N.D. Cal. 2007) ("[W]here a plaintiff alleges

26   inducement based on a defendant's customers as a class… the court may consider circumstantial

27   evidence of direct infringement."); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,

28   145 F.3d 1303, 1312 (Fed. Cir. 1998) (affirming infringement where defendant's advertisements

1  conceded the ability of the accused device to practice the claimed method, and encouraged such

2  use); *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960) ("Circumstantial evidence is

3  not only sufficient, but may also be more certain, satisfying and persuasive than direct

4  evidence.").

5          There is substantial evidence that Elantech's touchpads with infringing features are

6  currently used and offered for sale in notebook products in the United States.  (Wolfe SJ Decl.,

7  3:3-5, 3:14-15, 26:12-14, 31:22-26; Geisler PI Decl., ¶¶ 3-4; Geisler Opp. Decl., ¶¶ 3-4; Yawger

8  Decl. ¶¶ 4-8, 11, 12, Exs. A-E, H, I; Kramer Decl., ¶ 4, Exs. 3-9.)  Just a few weeks ago, ASUS

9  Computer International launched a new line of notebook computers with infringing Elantech

10 touchpads.  (Yawger Decl., ¶ 11, Ex. H.)  A spreadsheet produced by ASUS on May 23, 2008

11 shows that ASUS had sold over 5000 notebooks with Elantech touchpads in the United States in

12 the first ten days of the product's release.  (*Id.*)  ASUS is just one of many U.S. companies selling

13 infringing Elantech touchpads. (*See, e.g.,* Yawger Decl. ¶¶ 4-8, 11, 12, Exs. A-E, H, I.)  Elantech

14 has not denied that all of the companies cited by Synaptics are indeed current or recent Elantech

15 customers.  Elantech aggressively markets its infringing touchpads in the United States, and

16 prominently features the infringing functions in its current product advertising and instructions.

17 (Kramer PI Decl., Ex. 2.)  Taken together, this evidence strongly supports the conclusion that

18 Synaptics' patents are being directly infringed by users of Elantech's touchpads.

19         Elantech incorrectly relies upon *Dynacore Holdings Corp. v. U.S. Philips Corp.*, to argue

20 that Synaptics must show "specifics acts of actual infringement."  (Opp. at 4.)  There is no such

21 blanket rule concerning the standard of proof for infringement of method claims, and *Dynacore* is

22 inapposite.[3]  *See Philips Elecs. N. Am. Corp. v. Contec Corp.*, 411 F. Supp. 2d 470, 475 (D. Del.

23 2006) (under similar facts, distinguishing *Dynacore* and holding that specific proof of direct

24 infringement of the method claim was unnecessary).  In this case, it is undisputed Elantech's

25 _____

26         [3] In *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004), the patented method was performed only if a customer modified the defendants' products in a particular way that involved connecting at least three of defendants' devices. *Id.* at 1266-67.  The

27 infringing situation was *purely hypothetical*, and plaintiff could not prove that such a situation had ever occurred.  *Id.*

28

1   touchpads contain the code that enables the infringing gestures when the touchpads reach end

2   users. (*See* April 16 Order at 20.) Moreover, Elantech's website and driver windows[4]

3   specifically instruct its customers how to practice the infringing gestures. (Kramer PI Decl., Ex. 2

4   (Figs. 2-4) and Wolfe Declaration in Support of Synaptics' Summary Judgment Motion, filed

5   under seal, January 11, 2008, Ex. 11 (KTP3 User's Manual) at 17-21 and Ex. 13 (KTP5 Product

6   Features).) This substantial circumstantial evidence of direct infringement is all that is required to

7   establish Elantech's liability. *See Philips*, 411 F. Supp. 2d at 475.

8          Elantech's reliance on *NTP, Inc. v. Research in Motion Ltd.* is also misplaced.[5] The rule

9   that "a single person or entity" must perform all of the claimed method steps is implicated only

10  where the steps can be performed separately. *See, e.g., E.I. DuPont De Nemours & Co. v.*

11  *Monsanto Co.*, 903 F. Supp. 680, 735 (D. Del. 1995), *aff'd without op.*, 92 F.3d 1208 (Fed. Cir.

12  1996) (noting that "a party cannot avoid liability for infringement by having someone else

13  perform one or more steps of a patented process for them."). That rule is inapplicable here. It is

14  beyond dispute that the method claims recited in Synaptics' patents are performed in the single

15  location where the touchpad user is practicing the claimed gestures.

16         There is also no requirement that proof of actual use of the methods is required to

17  establish direct infringement. *Moleculon*, 793 F.2d at 1272 (plaintiff demonstrated infringement

18  of a puzzle method claim under § 271(b) by showing "circumstantial evidence of extensive

19  puzzle sales, dissemination of an instruction sheet teaching the method of restoring the

20  preselected pattern with each puzzle, and the availability of a solution booklet on how to solve the

21  puzzle."). Moreover, Synaptics has presented evidence of actual use of the infringing drag

22  gesture method claim in the video taken at the CES conference. (Conlon Decl., ¶¶ 4-5.)

23  Elantech's misstatement of the applicable law should be rejected.6

24         [4] The drivers and driver windows Elantech provides to make its touchpads operable allow
    and encourage infringing use of Elantech's touchpads. Elantech's attempt to draw a distinction
25  between its firmware and its drivers is meaningless with respect to its liability for inducement.
           [5] Moreover, *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563 (Fed. Cir. 1996), cited in the same
26  paragraph, does not stand for the stated proposition; the cited section involves a doctrine of
    equivalents analysis for a means plus function claim.
27         [6] Synaptics' patented gestures are not substitutes for physical buttons on the touchpad
    and, in fact, scroll zones and edge motion cannot be performed with physical buttons.
28                                                          (Footnote continues on next page.)

1    There is ample evidence supporting liability for inducement of infringement.  For

2    example, Elantech does not deny that all of its current products are sold with the infringing "drag"

3    feature enabled.  (Opp. at 5-6 (failing to include "drag" in its argument that, for some Elantech

4    products, corner tap, edge motion, and scrolling gestures cannot be performed); Lee Decl., ¶ 9.

5    (same).)  A preliminary injunction is appropriate even if only one claim is found to be infringing.

6    *See, e.g., Pittway v. Black & Decker*, 667 F. Supp. 585, 588 (N.D. Ill. 1987).  Moreover, the "fact

7    that the defendant has stopped infringing is generally not a reason for denying an injunction

8    against future infringement unless the evidence is very persuasive that further infringement will

9    not take place."  *W.L. Gore v. Garlock*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988).  *Accord Jepson,*

10   *Inc. v. Makita USA, Inc.*, 1994 U.S. Dist. LEXIS 21622, at *34 (C.D. Cal. May 27, 1994); *800*

11   *Adept, Inc. v. Murex Secs., Ltd.*, 505 F. Supp. 2d 1327, 1338 (M.D. Fla. 2007).  An injunction is

12   warranted because Elantech has not presented any evidence, much less the required "very

13   persuasive" evidence, that it no longer has the capacity to make infringing touchpads, and will

14   never resume its infringing activities. *See, e.g.*, *Cross Med. Prods. v. Medtronic Sofamor Danek,*

15   *Inc.*, 2004 U.S. Dist. LEXIS 27643 (C.D. Cal. Sept. 27, 2004) (reversed on other grounds); *W.L.*

16   *Gore*, 842 F.2d at 1282 (granting injunction where defendant failed to introduced evidence that it

17   no longer had the capacity or intention to make infringing goods).

18          **B.      Elantech Has Not Raised A Substantial Question Of Validity**

19          If the Court finds that Elantech fails to raise a substantial question of validity as to even

20   one of the asserted patent claims, the preliminary injunction should be granted.  Elantech's

21   _____

22   (Footnote continued from previous page.)

23   Furthermore, it is well established that "an accused product that sometimes, but not always,
     embodies a claimed method nonetheless infringes." *Bell Commc'ns Research, Inc. v. Vitalink
     Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995).  Elantech incorrectly suggests that its

24   touchpads have substantial non-infringing uses.  (Opp. at 4.)  Sellers of good that are capable of
     substantial non-infringing uses are still liable under § 271(b) if, in addition to the sale of that

25   product, active steps are taken to encourage direct infringement. *See Oak Indus., Inc. v. Zenith
     Elecs. Corp.*, 726 F. Supp. 1525, 1540 (N.D. Ill. 1989).  As noted above, Elantech's website is

26   written in English, actively promotes the use of its infringing touchpad gestures, and instructs
     customers on how to infringe.  *See Nat'l Instruments Corp. v. Mathworks, Inc.*, 113 Fed. Appx.

27   895, 898 (Fed. Cir. 2004) (affirming jury finding of infringement where defendant instructed and
     encouraged its customers to do exercises that were covered by the method claims).

28

1    Opposition fails to raise a substantial question on any of Synaptics' asserted patent claims.

2    **1.    Elantech's New Invalidity Arguments Should Be Ignored**

3    Elantech's invalidity arguments in opposition to Synaptics' motion for preliminary

4    injunction are vastly different than those disclosed in Elantech's Patent Local Rule 3-3 Final

5    Invalidity Contentions, served on January 5, 2007, more than 17 months ago.[7]  Elantech's

6    Opposition relies upon two references that were never previously asserted and four claim charts

7    that were never previously provided prior to Friday afternoon.  (Yawger Decl., ¶¶ 14-15.)  This

8    presents obvious prejudice to Synaptics at this late date in the litigation.  *See* Pat. L. R. 3-6.

9    Elantech may not modify its invalidity contentions except upon "order of the Court upon a

10    timely showing of good cause," and "absent undue prejudice to the non-moving party."  *See* Pat.

11    L. R. 3-6; *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir.

12    2006) (parties must "act[] with diligence in promptly moving to amend when new evidence is

13    revealed in discovery"); *LG Elecs., Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360, 367 (N.D. Cal.

14    2002) (patent local rules are "designed to require parties to crystallize their theories of the case

15    early in the litigation and to adhere to those theories once they have been disclosed," thus

16    preventing the "shifting sands" approach).

17    Elantech has not even filed a motion to amend its invalidity contentions, and cannot

18    establish the required good cause.  Although not previously asserted by Elantech, all of the new

19    art and arguments were known by Elantech well before the deadline for filing its final invalidity

20    contentions.  For example, Exhibits F and L to the MacKenzie declaration were produced to

21    Elantech on or before April 3, 2007 and March 29, 2007 respectively, more than two months

22    before their final invalidity contentions were due.  (Yawger Decl., ¶ 14.)  Elantech presents no

23    justification for its belated invalidity arguments.  These new invalidity arguments should not be

24    considered.  *See also Yodlee, Inc., v. Cashedge, Inc.*, 2007 U.S. Dist. LEXIS 58872 (N.D. Cal.

25    August 6, 2007) (denying leave to amend due to over three month delay).

26    _____
     [7]  Under former Patent Local Rule 3-6(b), Elantech's Preliminary Invalidity Contentions
     automatically became its "Final Invalidity Contentions," when Elantech failed to amend its

27    Preliminary Invalidity Contentions within 50 days after Judge Breyer issued his Claim
     Construction Order on April 6, 2007.

28

1

## 2.     There Are No Substantial Questions on Validity

2      The references cited in Elantech's Pat. L. R. 3-3 invalidity disclosures do not raise

3 substantial questions of validity as to any of the asserted claims of the Synaptics Patents.

4

### a.     '591 Patent:  Drag Gesture

5      The two new references relied upon by Elantech, even if considered [8], do not raise a

6 substantial question of validity.  Elantech ignores that its burden is heightened because the

7 GlidePoint device was considered by the examiner during prosecution and actually discussed in

8 the text of the '591 patent itself.  (Wolfe PI Decl., ¶14, Ex. 3 at 4:23-36.)  *McGinley v. Franklin*

9 *Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001).

10      As an initial matter, the GlidePoint User's Guide is not prior art as a matter of law.  The

11 "1994" copyright date is insufficient evidence of public dissemination of the reference and

12 therefore does not qualify as prior art.  *Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964,

13 974-76 (E.D. Mich. 2003) (holding that a self-affixed copyright or print date was "insufficient as

14 a matter of law" to establish that the invention was known or used by others prior to Plaintiff's

15 invention date); *see also Rackable Sys., Inc. v. Super Micro Computer, Inc.*, 2007 U.S. Dist.

16 LEXIS 33824, at **56-57 (N.D. Cal. Apr. 25, 2007).  Plus, a general "1994" date at best proves

17 the last date of the period – December 31, 1994 – which is almost a year after Synaptics' January

18 7, 1994 invention date.  (*See* Docket No. 321*, Declaration of David Gillespie in Support of

19 Synaptics' Motion for Preliminary Injunction, ¶ 6.)

20      Elantech's remaining arguments concerning the GlidePoint device also fail.  Elantech

21 provided no evidence concerning timing and signal features as claimed, and Dr. MacKenzie

22 admits in his declaration that despite having "numerous versions of the code and hundreds of files

23 code corresponding to this GlidePoint product," he did not review the code "to determine where

24 each of the claimed elements occurs."  (*See* Supplemental Declaration of Andrew Wolfe, Ph.D. in

25 Support of Synaptics' Motion for Preliminary Injunction ("Wolfe Supp. PI Decl."), ¶ 15;

26      [8]  The Calder reference was never previously asserted against claim 9 of Synaptics' '591
patent.  The GlidePoint User's Guide (Exhibit L) also was never previously asserted against these
27 claims, despite the fact that Elantech had this reference in its possession for at least two months
prior to the deadline for amending its contentions.  (Yawger Decl., ¶ 14.)
28

1    MacKenzie Decl., ¶ 42.)  Elantech's conjecture and a belief that the art "possibly" discloses the

2    claim elements (*id.*), cannot, after two years of litigation, raise substantial questions concerning

3    validity. (Wolfe Supp. PI Decl., ¶¶ 4, 6.)

4         Elantech's proof of invalidity based on the Calder reference is equally deficient.  The

5    elements of "comparing the duration of said first presence" and "comparing the duration of said

6    second presence" are not disclosed anywhere in the cited references.  (*See* MacKenzie Decl., ¶ 46

7    (*citing* Calder at 6:25-28).)  For example, the "TIMEOUT" function disclosed in Calder is used to

8    reset certain count variables, not to compare the duration of a presence.  (*See* Wolfe Supp. PI

9    Decl., ¶ 5; MacKenzie Decl., Ex. K, 5:15-17.)  Likewise, Calder does not disclose comparing the

10   "amount of time between said first presence and said second presence in less than said second

11   reference amount of time" as claimed.  Elantech's arguments to the contrary are gross

12   mischaracterizations of Calder.  (Wolfe Supp. PI Decl., ¶ 5.)

13        Finally, Calder is an IBM touch screen reference, and there would have been no reason to

14   combine this reference with the GlidePoint finger mouse.  (Wolfe Supp. PI Decl., ¶ 7.)  Indeed,

15   Elantech has not pointed to any motivation or reason to combine the two pieces of art, and those

16   of ordinary skill in the art would not have done so. *Id.*; *see also Sick A.G. v. Omron Scientific*

17   *Techs., Inc.*, 2007 WL 1223675 at *2 (N.D. Cal. Apr. 24, 2007).  Thus, there is no substantial

18   question of validity as to claim 9 of the '591 patent.

19                        **b.      '052 Patent:  Scroll Zone**

20        Elantech's opposition ignores the references cited in its invalidity contentions, and instead

21   relies on a previously undisclosed and uncharted patent application produced by third party

22   Stratos Product Development Group on April 3, 2007.  (Yawger Decl., ¶ 14.) As discussed above,

23   the new infringement allegations concerning this patent application, and the application itself,

24   should not be considered.[9]  Even so, these new allegations still fail to raise a substantial question

---

25        [9] Exhibits G and F to the MacKenzie Declaration consist of an entirely new claim chart
     and allegations, and an unauthenticated document purporting to be an early draft of the '185
26   Stephan patent to Stratos.  This new reference was in Elantech's possession since at least as early
     as April 3, 2007.  (Yawger Decl., ¶ 14.)  Elantech never provided amended invalidity contentions
27   with respect to this publication.  This failure to adequately disclose these invalidity contentions in
     accordance with the Patent Local Rules substantially prejudices Synaptics and should be rejected.

28

1   of validity concerning claims 14 and 18 of the '052 patent.  (Wolfe Supp. PI Decl., ¶¶ 8-13.)

2          As an initial matter, the Stratos patent application is unauthenticated, so its purported

3   creation date cannot be trusted.  Plus, Elantech has made no showing of diligence in reduction to

4   practice from April 1996 to the constructive date on the '185 Stephan patent - July 3, 1996.  At

5   best, Elantech has based its entire invalidity argument on an unauthenticated patent application

6   that might show conception, but does not show diligence in reduction to practice.  Such evidence

7   is insufficient to constitute a substantial question of validity.  (Wolfe Supp. PI Decl., ¶ 9.)

8          Even if the Stratos application is considered, it does not disclose all four of the elements in

9   the asserted claims of the '052 patent.  (Wolfe Supp. PI Decl., ¶¶ 10-12.)  For example, the

10  evidence cited by Elantech concerning the first element of claim 14 is irrelevant because Figure 4

11  discloses "control packets" generated by the *computer* – not the touchpad.  Thus, any packets

12  generated by Figure 4 do not come from the "cursor control input device" as required by the

13  claims.  Elantech cites the same evidence for the first and second elements of claim 14, even

14  though these two steps involve distinct data structures, and neither data structure is actually

15  disclosed in the Stratos reference.  (Wolfe Supp. PI Decl., ¶ 11.)  Finally, Elantech's arguments

16  concerning elements 3 and 4 of claim 14 also fail because there is no disclosure that any messages

17  are "forwarded to an application controlling an active window."   (Wolfe Supp. PI Decl., ¶ 12.)

18         Elantech also makes no coherent argument concerning claim 18.  The generation of

19  "electrical signals corresponding to the user's contact with different location of the touchpad"

20  does not describe the claimed function of "assessing whether stimuli represents a motion

21  beginning within, but moving away from said scrolling zone." The failure to present any evidence

22  of invalidity for claim 18 alone defeats Elantech's opposition. (Wolfe Supp. PI Decl., ¶ 13.)

23                        **c.      '931 Patent:  Corner Tap**

24         Elantech has not raised a substantial question of validity concerning claims 5 and 6 of the

25  '931 patent.  Elantech bases its entire invalidity argument on claim charts and invalidity

26  contentions that were never previously disclosed in accordance with the Patent Local Rules.  In

27  particular, the Logan reference was never charted against asserted claims 5 and 6, and many of

28  the invalidity arguments related to the Prosenko patent – including those portions quoted in

1   Elantech's opposition brief – were never previously identified.  These new arguments are

2   substantially prejudicial, improper, and should be ignored.

3          Even if considered, Elantech still fails to raise substantial questions of validity.  As an

4   initial matter, Prosenko nowhere mentions the "right mouse button click" limitation of claim 6.

5   The two sections cited by Elantech – a "push button like signal" at 6:38-43 and "a two position

6   switch for supplying instructions to the computer system" at 1:81-83 – are not disclosures of a

7   "right mouse button click" as defined by claim 6.  This failure to present any evidence of

8   invalidity concerning claim 6 alone defeats Elantech's opposition. (Wolfe Supp. PI Decl., ¶ 20.)

9          In addition, Elantech glosses over the important difference between a "tap" and a "touch."

10  The parties agreed that a "tap" consists of a "quick tap of the finger on the pad, of short duration

11  and involving little or no X or Y finger motion…."  (*See* Wolfe PI Decl., Ex. A, pg. 1, Item 1.)

12  The defined regions, including areas 63, 65, 67, 77, and 79 cited by Elantech, do not detect "tap"

13  gestures as defined in the claims.  The Gavilan device described in Prosenko contained a touch

14  panel with an overlay of a keypad with numbers or letters that could be touched or pressed to

15  activate the button.  Touches in these physical button regions did not have the requisite time and

16  motion requirements as claimed in Synaptics' patents.  (Wolfe Supp. PI Decl., ¶ 15.)

17         Everything in Prosenko that describes detection of a touch is specific to area 63 in Figure

18  3.  (*See* MacKenzie Decl., Ex. C at 6:1-6:5.)  The '931 patent claims require detection of a corner

19  of a touch sensor pad, not the corners of an interior region of a touch sensor pad like area 63.

20  There is no teaching anywhere in Prosenko that the corners of area 63 are defined to have special

21  kinds of taps reported.  Indeed, there is no concept whatsoever of reporting taps in some subpart

22  (such as corners) of the given area.  The actual corners of the touch sensor pad in Prosenko are

23  not only well outside the bounds of box 63, but they are not even defined regions on the touch

24  sensor pad.  Thus, the corners of box 63 and regions 65, 67, 77, and 79 are not the "corner(s) of

25  said touch-sensor pad" as claimed in the '931 patent. (Wolfe Supp. PI Decl., ¶¶ 16-18.)

26         Furthermore, there is no evidence that Prosenko distinguishes the corners of area 63 from

27  any other portion of that defined region.  Since there is no "corner" region defined in area 63, the

28  Prosenko reference does not teach "detecting in which of at least one corner."  Similarly, a touch

1    in touch surface area 63 cannot result in a signal being sent to the host including "in which of at

2    least one corner of said touch-sensor pad said tap gesture occurred" because Prosenko does not

3    teach sending any location information concerning tap gestures in box 63.  The text cited by

4    Elantech does not apply to touch surface area 63; it applies to discrete push-buttons in other areas

5    of the touch sensor.  Similarly, Figure 7 and the cited passage at 5:42-49 also do not apply to area

6    63, but rather to areas 65-79. (Wolfe Supp. PI Decl., ¶ 19.)

7         The Logan reference is equally irrelevant and does not disclose every element of the

8    claims.  (Wolfe Supp. PI Decl., ¶ 21.)  Quite simply, Logan does not define or report taps in

9    corners at all.  *Id.*  Touches as disclosed in Logan are only used to switch the mode on the touch

10    sensor to a "keypad" mode.  Once in keypad mode, the Logan reference teaches that defined areas

11    may be touched – not "tapped" – to report button information.  These touches are not tap gestures

12    as required by the claims because they have no time or motion limitations.  *Id.*

13         Finally, Elantech's claim that one of ordinary skill in the art would have been motivated to

14    combine the prior art references is unsupported.  *Sick A.G.*, 2007 WL 1223675, at *2.  If

15    anything, Prosenko teaches away from the inventions claimed in claims 5 and 6 of the '931 patent

16    because Prosenko provided distinct push buttons near the corners of the touch sensor as an

17    alternative to detecting a tap in a defined corner region of a tap-detecting touchpad.  There is no

18    substantial question of validity concerning claims 5 and 6 of the '931 Patent.  (Wolfe Supp. PI

19    Decl., ¶ 22.)

20              **d.        '411 Patent:  Edge Motion**

21         Elantech also failed to raise a substantial question of validity concerning claims 46 and 52

22    of the '411 patent.  Elantech cites only one reference in its opposition – the '161 Logan patent.

23    Notably, Logan was disclosed to the Patent Office during prosecution, considered by the

24    examiner, and listed on page 2 of the '411 Patent.  (Wolfe PI Decl., ¶ 35; Ex. 4.)  Elantech has not

25    met its heavy burden of proving that the examiner was wrong to grant the patent claims over the

26    Logan reference.  *McGinley*, 262 F.3d at 1353.

27         First, Elantech makes the specious claim that the Examiner of the '411 patent had a

28    different understanding of the claim language than that applied by the Court.  This argument is

1    entirely unsupportable and was previously rejected by this Court. (*See* Docket No. 91, Claim

2    Construction Order at 6:14-7:5.)  In fact, the Examiner never rejected or specifically mentioned

3    the asserted claims.  (Wolfe Supp. PI Decl., ¶¶ 24-25.)  A simple comparison of the '411 patent

4    claims to the Examiner's comments cited by Elantech shows that the Examiner was discussing

5    and paraphrasing *claims 30 and 32* specifically.  (*See* Wolfe PI Decl., Ex. 4 at 61:18-33; Docket

6    No. 80, Rebuttal Claim Construction Expert Declaration of Andrew Wolfe, ¶ 14.)  The Court has

7    already rejected Elantech's effort to narrow the claims to one of the specific embodiments

8    including particular methods of finding "increments."  (*See* Claim Construction Order at 6:14-7:5;

9    April 16 Order at 8:1-9 (Docket No. 312).)  Elantech's suggestion that all the claims of the '411

10   patent are thus limited is wrong as a matter of law.

11         Elantech's reliance on Logan is also misplaced.  Logan discloses an invention that is

12   substantively different than that claimed in the '411 patent.  (Wolfe PI Decl., ¶ 36; Wolfe Supp.

13   PI Decl., ¶ 26.)  The claim requires that the finger motion signals for the interior and exterior

14   regions of the touchpad be combined to create the edge motion gesture.  *Id.*  Logan merely

15   discloses two different types motion signals for two different regions of the touchpad.  *Id.*  No

16   combination of signals is disclosed.  *Id.*  Plus, even if Elantech's identification of motion signals

17   is accurate, Elantech has merely pointed to first cursor motion signals in blocks 78, 82, 84, and 86

18   and second cursor motion signals in blocks 90, 100, and 102.  There is simply no disclosure in

19   Logan that any of these motions signals are combined, and Elantech cannot point to any such

20   citation in the reference.  (Wolfe Supp. PI Decl., ¶ 27.)  Logan, which was considered by the

21   examiner and discloses a different invention, does not raise substantial questions of validity.

22              **3.     Synaptics Will Suffer Irreparable Harm**

23         Synaptics will suffer irreparable harm if the injunction is not granted.  As this Court noted

24   in its March 13 Order, a patentee's right to exclude is limited.  Once the patent expires, nothing

25   can restore Synaptics' exclusive rights.  (*Id.* at 15.)  Three of the Synaptics Patents have less than

26   half of their life remaining, and both the Court and the parties anticipate "continuing and

27   protracted litigation." (*Id.*; Kramer PI Decl., Ex. 10 at 2.)  Moreover, irreparable harm has been

28   found where, as here, the patentee's market share is at risk. *Canon Computer Sys. v. Nu-Kote*

1  *Int'l, Inc.*, 134 F.3d 1085, 1090 (Fed. Cir. 1998). As demonstrated, Elantech is actively

2  infringing and inducing infringement in the United States. Elantech's cited cases relate to

3  *permanent* injunctions and thus are inapposite.

4      Monetary damages are insufficient to compensate Synaptics for the harm it will suffer if

5  an injunction does not issue. "In the context of patent infringement cases, 'the nature of the

6  patent grant…weighs against holding that monetary damages will always suffice to make the

7  patentee whole, for the principal value of a patents is its statutory right to exclude.'" (March 13

8  Order at 13 (*quoting H.H. Robertson v. United Steel Deck*, 820 F.2d 384, 390 (Fed. Cir. 1987).)

9  Elantech's reliance on the purported "Alps License" is misplaced. [10] Elantech's cited cases[11] are

10  easily distinguished because Synaptics practices the inventions claimed in its asserted patents, has

11  never openly offered to license its patents to third parties or Elantech, and has established a strong

12  likelihood of success on the merits. Absent a preliminary injunction, Synaptics will suffer

13  irreparable harm.

14      **4.    The Balance of Hardships Tips in Synaptics' Favor**

15      Synaptics need only show that the balance of harms tips slightly in its favor. *Tate Access*

16  *Floors v. Interface Architectural Res.*, 279 F.3d 1357, 1364 (Fed. Cir. 2002). In balancing the

17  hardships, "[t]he magnitude of the threatened injury to the patent owner is weighed, in light of the

18  strength of the showing of likelihood of success on the merits, against the injury to the accused

19  infringer if the preliminary decision is in error." *H.H. Robertson*, 820 F.2d at 390. First, despite

20  Elantech's suggestion to the contrary, the scope of an injunction granted by this Court would

21  [10] Synaptics has only ever licensed its patents once, to Alps, as part of a cross-license

22  agreement to resolve certain intellectual property issues between the companies. (Yawger Decl., ¶ 18, Ex. L at 11.) When considering Elantech's preliminary injunction motion, the fact that Elantech had an agreement with ProStar that granted a royalty-free covenant not to sue against

23  ProStar or its customers was not considered relevant by the Court. (*See* Docket No. 59.)

24  [11] *Paice LLC v. Toyota Motor Corp.*, 2006 WL 2385139 (E.D. Tex., Aug. 16, 2006) (patentee did not practice the patented invention and sought to establish irreparable harm to its *licensing program*); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d

25  1551, 1557 (Fed. Cir. 1995) (patentee did not practice the patented invention and had offered a license *to the accused infringer*); *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip. Co., Inc.*, 821

26  F.2d 646, 648 (Fed. Cir. 1987) (in addition to granting two long-term licenses to its technology, patentee showed neither infringement nor validity); *IMX Inc. v. LendingTree, LLC*, 469 F. Supp.

27  2d 203, 225 (D. Del. 2007) (ruling on a *permanent* injunction, noting that the existence of licenses was "certainly not dispositive" but "one factor to consider").

28

1    never reach lawful activities conducted entirely outside the United States.  Furthermore,

2    Elantech's claims that it faces "significant hardship" because it is a small player in the

3    marketplace are spurious.  (Opp. at 16:20-22.)  In just a few months, it will be reacquired by its

4    parent company, Elan Microelectronics, who is one of the largest technology companies in the

5    world.  (Yawger Decl., ¶ 16, Ex. J.)  In fiscal year 2007 alone, Elan reported over NT$5 billion in

6    sales (*i.e.*, over US$160 million).  (Yawger Decl., ¶ 15, Ex. K.)  Elantech will not suffer

7    significant hardship if preliminarily enjoined.

8            By contrast, the harm to Synaptics' goodwill and market share, as discussed above, weigh

9    strongly in favor of granting an injunction, and Elantech has presented no evidence that it will be

10   irreparably harmed by the imposition of a preliminary injunction.

11                **5.       Public Interest Weighs in Favor of an Injunction**

12           Finally, granting Synaptics' motion for a preliminary injunction is consistent with the

13   public interest in enforcing valid intellectual property rights.  *Hybritech, Inc. v. Abbott Labs.*, 849

14   F.2d 1446, 1458 (Fed. Cir. 1988); *U.S. Surgical Corp. v. Origin Medsystems, Inc.*, 1993 U.S.

15   Dist. LEXIS 17180, *21-22 (N.D. Cal. Jan. 12, 1993); *Al-Site Corp. v. Cable Car Sunglasses*, 911

16   F. Supp 410, 418 (N.D. Cal. 1994).  Protecting Synaptics' patent rights through a preliminary

17   injunction will encourage others to engage in technological research and development.

18   Accordingly, this factor favors Synaptics.

19       **III.     CONCLUSION**

20           Based upon the principles set forth in this Court's prior preliminary injunction order and

21   the Court's order granting summary judgment for Synaptics concerning Elantech's infringing

22   touchpads, the Court should enter a preliminary injunction against Elantech's further

23   infringement.  There are no substantial questions concerning validity or enforceability as to any of

24   the Synaptics Patents.  Indeed, Elantech admitted that it could not find any case in which a court

25   denied a motion for a preliminary injunction following a finding of infringement on summary

26   judgment and no substantial question of validity or enforceability.  (Kramer PI Decl., Ex. 11 at

27   5:22-6:5.)  Synaptics respectfully requests that the Court grant its preliminary injunction motion.

28

1

Dated: June 19, 2008                    KARL J. KRAMER
                                        ERIKA L. YAWGER
2                                       LAURA R. MASON
                                        MORRISON & FOERSTER LLP
3

4
                                        By:    /s/Karl J. Kramer
5                                                  Karl J. Kramer
                                                   E-Mail:  KKramer@mofo.com
6
                                        Attorneys for Defendant and
7                                       Counterclaimant
                                        SYNAPTICS, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28